**75539**

# C L E R K ' S   R E C O R D

## = DEATH SENTENCE APPEAL =

### Volume ___ONE___ of _16 Vols_.

Trial Court Cause Number __F05-52918-MR__

In the __JUDICIAL__ District Court __NO. 265TH__

of Dallas County, Texas,

Honorable __MARK STOLTZ__, Judge Presiding.

---

__THE STATE OF TEXAS__, Plaintiff

vs.

__STEVEN L. LONG__, Defendant

**FILED IN**
**COURT OF CRIMINAL APPEALS**

**FEB 13 2007**

**Louise Pearson, Clerk**

---

Appealed to the Court of

Criminal Appeals of Texas at Austin, Texas, or

Court of Appeals for the __5TH__ District of Texas, at __DALLAS__, Texas.

---

Attorney for Appellant

Name __ROBERT UDASHEN__

Address __2301 CEDAR SPRINGS RD. STE 400. DLS. TX  75201__

Telephone No. __214.468.8100__

Fax No. __214.468.8104__

SBOT No. __20369600__

Attorney for: __STEVEN L. LONG__

---

Delivered to the Court of Criminal Appeals of Texas at Austin, Texas, or

Court of Appeals for the _____ day of _____, _____.

Signature of Clerk _____

Name of Clerk _____

Title _____

---

Appellate Court Cause No. _____

Filed in the Court of Criminal Appeals of Texas at Austin, Texas, or

Court of Appeals for the __5TH__ District of Texas, at __DALLAS__, Texas,

this __26TH__ day of __JANUARY__, __2007__.

GARY FITZSIMMONS, DALLAS COUNTY DISTRICT CLERK

By __JANE MILLER__, Deputy

```
STEVEN L. LONG                    CAUSE NO. F05-52918-MR

VS:                              IN THE 265TH JUDICIAL DISTRICT

THE STATE OF TEXAS               COURT OF DALLAS COUNTY, TEXAS
================================================================
                  = DEATH SENTENCE APPEAL =

                         = INDEX =
```

| | |
|---|---|
| CAPTION | VOL. 1-01 |
| TRUE BILL INDICTMENT (05 JUL 25) | VOL. 1-02 |
| MOTION TO AMEND THE INDICTMENT/ORDER (06 AUG 3) | VOL. 1-04 |
| TRUE BILL INDICTMENT (CHANGE MADE) | VOL. 1-05 |
| TRIAL DOCKET | VOL. 1-06 |
| CERTIFICATE OF EXAMINING TRIAL/ORDER (SIGNED 9 JUN 5) | VOL. 1-07 |
| DEFENDANT'S AFFIDAVIT OF INDIGENCE/ORDER (SIGNED 24 MAY 05) | VOL. 1-08 |
| WRIT FOR SPECIAL VENIRE (SIGNED 2 JUN 06) | VOL. 1-09 |
| ORDER FOR PSYCHIATRIC EXAM (06 JUN 28) | VOL. 1-10 |
| ORDER FOR EXAMINATION REGARDING COMPETENCY/ MENTAL ILLNESS (SIGNED 28 JUN 06) | VOL. 1-11 |
| ORDER FOR EXAMINATION REGARDING COMPETENCY/ MENTAL ILLNESS (SIGNED 14 JUL 06) | VOL. 1-35 |
| ORDER FOR PSYCHOLOGICAL TESTING (06 JUL 26) | VOL. 1-39 |
| ORDER FOR PSYCHOLOGICAL TESTING (06 JUL 26) | VOL. 1-40 |
| MOTION FOR DISCLOSURE OF ANY POSSIBLE BASIS FOR JUDICIAL QUALIFICATION OR RECUSAL (SUBMITTED 16 AUG 06) | VOL. 1-41 |
| MOTION TO SET ASIDE THE INDICTMENT (UNCONSTI- TUTIONALITY OF STATUTE/ORDER (8 16 06) | VOL. 1-47 |
| MOTION FOR COMPLETE RECORDATION OF ALL PRE- TRIAL AND TRIAL PROCEEDINGS/ORDER (16 AUG 06) | VOL. 1-53 |
| MOTION FOR IDENTIFICATION HEARING OUT OF PRESENCE (16 AUG 06) | VOL. 1-58 |

VOL. 1 INDEX CONTINUED:                                              PAGE 2

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN OR
ORAL OR EVIDENCE RESULTING FROM SAME
(16 AUG 06)                                                   VOL. 1-61

MOTION FOR HEARING ON ADMISSIBILITY OF ANY
STATEMENT BY DEFENDANT WHETHER WRITTEN OR
ORAL OR EVIDENCE RESULTING FROM SAME
(16 AUG 06)                                                   VOL. 1-65

DEFENDANT'S OMNIBUS PRE-TRIAL MOTIONS
(16 AUG 06)                                                   VOL. 1-69

MOTION FOR DISCOVERY AND INSPECTION                           VOL. 1-77

DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION
(16 AUG 06)                                                   VOL. 1-82

MOTION FOR DISCOVERY, PRODUCTION AND RULE 702/
705 HEARING (16 AUG 06)                                       VOL. 1-91

MOTION FOR EVIDENCE FAVORABLE TO THE DEFENDANT
(8 16 06)                                                     VOL. 1-98

MOTION FOR DISCVOERY OF EXTRANEOUS OFFENSES AT
GUILT AND PUNISHMENT (16 AUG 06)                              VOL. 1-101

NOTICE OF EXTRANEOUS OFFENSES (06 AUG 2)                      VOL. 1-104

DEFENDANT'S WRITTEN OBJECTION TO ADMISSIBILITY
OF EXTRANEOUS OFFENSES, REQUEST FOR PROCEDURAL
DETERMINATION BY TRIAL COURT WITH FINDINGS OF
FACTS AND CONCLUSIONS OF LAW AND FOR LIMITING
INSTRUCTION (8 16 06)                                         VOL. 1-111

SUPPLEMENTAL NOTICE OF EXTRANEOUS OFFENSES
(06 SEP 27)                                                   VOL. 1-115

DEFENDANT'S MOTION FOR DISCVOERY OF COPIES OF
AND/OR FOR ACCESS TO DNA TEST MATERIALS (16 AUG 06)           VOL. 1-116

MOTION FOR LIST OR STATE'S WITNESSES PRIOR TO
TRIAL (AUG 16 06)                                             VOL. 1-121

MOTION TO LIST OF WITNESSES TO BE CALLED OR
USED BY THE STATE AT THE PUNISHMENT STAGE                     VOL. 1-124

MOTION TO INTRODUCE THE DEFENDANT'S STATEMENT OF
ALLOCUTION, FREE FROM CROSS-EXAMINATION BY THE
STATE, REFLECTING HIS REMORSE FOR THE OFFENSE
(16 AUG 06)                                                   VOL. 1-126

1

VOL. 1 INDEX CONTINUED                                              PAGE 3

2

MOTION FOR PRODUCTION OF WITNESS STATEMENTS
(8 16 06)                                                          VOL. 1-132

3

DEFENDANT'S MOTION TO REQUIRE THE PROSECUTION
TO REVEAL ANY AGREEMENT WITH A WITNESS THAT COULD
4  INFLUENCE HIS TESTIMONY (8 16 06)                                VOL. 1-136

5  DEFENDANT'S MOTION TO DISCOVER ANY CONCESSIONS OR
AGREEMENT WITH THIRD PARTIES                                       VOL. 1-137

6  DEFENDANT'S MOTION FOR DISCVOERY OF EXPERTS
(8 16 06)                                                          VOL. 1-140

7  REQUEST FOR NOTICE UNDER THE TEX RULES OF CRIM
EVID FOR EXPERT WITNESSES                                          VOL. 1-142

8  NOTICE OF EXPERT WITNESSES (06 SEP 12)                           VOL. 1-144

9  STATE'S MOTION REQUESTING NOTICE OF DEFENDANT'S
INTENT TO USE EXPERT TESTIMONY AND REQUESTING
10 DEFENDANT'S COMPLIANCE WITH ARTICLE 39.14/ORDER
(06 AUG 2)                                                         VOL. 1-145

11 MOTION FOR APPOINT OF EXPERT                                     VOL. 1-146

12 MOTION TO PROCEED EX PARTE (16 AUG 06)                           VOL. 1-148

13 MOTION FOR PRODUCTION OF IMPEACHMENT EVIDENCE
(16 AUG 06)                                                        VOL. 1-150

14 MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE
GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL
15 (16 AUG 06)                                                      VOL. 1-154

16 MOTION TO DEFINE BEYOND A RESONABLE DOUBT/ORDER
(16 AUG 06)                                                        VOL. 1-157

17 MOTION IN LIMINE (PHOTOGRAPHS)(16 AUG 06)                        VOL. 1-160

18 DEFENDANT'S MOTION IN LIMINE TO PROHIBIT PROOF
OF EXTRANEOUS OFFENSES                                             VOL. 1-162

19 MOTION IN LIMINE PRIOR CRIMINAL RECORD (06 AUG 17)               VOL. 1-164

20 MOTION IN LIMINE (VICTIM IMPACT TYPE EVIDENCE)
(16 AUG 06)                                                        VOL. 1-166

21 MOTION FOR ORDER "IN LIMINE" TO PRESERVE THE TRUE
AND CORRECT MEANING OF "PROBABILITY" IN THE FUTURE
22 DANGEROUSNESS INSTRUCTION/ORDER (16 AUG 06)                      VOL. 1-170

23

24

VOL. 1 INDEX CONTINUED:                                         PAGE 4

MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING
OPTION/ORDER (16 AUG 06)                                        VOL. 1-176

MOTION TO DECLARE THE TEX CAPITAL SENTENCING
SCHEME UNCONSTITUTIONAL AND MOTION TO PRECLUDE
IMPOSITION OF THE DEATH PENALTY/ORDER (16 AUG 06)              VOL. 1-180

MOTION TO DECLARE THE TEX DEATH PENALTY-CAPITAL
MURDER SCHEME UNCONSTITUTIONAL BASED ON THE HOLDING
OF THE SUPREME COURT OF THE UNITED STATES IN SMITH V.
TEXAS ON A PETITION FOR WRIT OF CERTIORARI TO THE
COURT OF CRIM APPEALS OF TEX, NO. 04-5323, DECIDED
NOVEMBER 15, 2004/ORDER (16 AUG 06)                            VOL. 1-190

MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING
OPTION (SELECTION OF DEATH PENALTY CASES)/ORDER
(16 AUG 06)                                                    VOL. 1-193

MOTION  PRECLUDE THE DEATH PENALTY AS A SENTENCING
OPTION AND TO DECLARE TEX. C.CR.P ART. 37.071 UN-
CONSTITUTIONAL (RING V. ARIZONA)/ORDER (8 16 06)              VOL. 1-198

MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING
OPTION AND DECLARE ARTICLE 37.071 UNCONSTITUTIONAL]
(JONES V. US.: APPRENDI V. NEW JERSEY AND RING V.
ARIZONA)/ORDER 8 16 06)                                        VOL. 1-208

MOTION TO HOLD THAT TEX. C. CRIM. P. ART. 37.01 IS
UNCONSTITUTIONAL/ORDER (8 16 06)                               VOL. 1-214

MOTION TO HOLD UNCONSTITUTIONAL V.A.V.V.P. ARTICLE
37.071 SEC.2(E) AND (F) - BURDEN OF PROOF/ORDER
(16 AUG 06)                                                    VOL. 1-217

MOTION TO HOLD UNCONSTITUTIONAL V.A.C.C.P. ARTICLE
37.071 SEC.2(E) AND (F) - FAILURE TO REQUIRE
MITIGATION BE CONSIDERED/ORDER (8 16 06)                       VOL. 1-222

MOTION TO DECLARE TEX DEATH PENALTY STATUTE TO
BE UNCONSTITUTIONAL (JUROR'S INABILITY TO PREDICT
FUTURE DANGEROUSNESS)/ORDER (16 AUG 06)                        VOL. 1-226

MOTION TO DECLARE THE "10-12 RULE" UNCONSTITUTIONAL/
ORDER (16 AUG 06)                                              VOL. 1-230

MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S
FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE
PROSPECT OF A DEATH SENTENCE AND THE IMPACT AN
EXECUTION WOULD HAVE ON THEM/ORDER (16 AUG 06)                VOL. 1-251

DEFENDANT'S MOTION TO BE ARRAIGNED OUT OF THE JURY'S
PRESENCE (16 AUG 06)                                           VOL. 1-261

VOL. 1 INDEX CONTINUED:                                                PAGE 5

MOTION TO PROHIBIT USE OF IMPROPER HYPOTHETICALS
AT VOIR DIRE/ORDER (16 AUG 06)                              VOL. 1-264

MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS
(16 AUG 06)                                                VOL. 1-268

DEFENDANT'S ELECTION AS TO PUNISHMENT                       VOL. 1-270

CHARGE OF THE COURT (GUILT/INNOCENCE/SPECIAL ISSUE
NO. 1/SPECIAL ISSUE NO. 2)                                  VOL. 1-272

MOTION TO IMPANEL SEPARATE JURY FOR GUILT/INNOCENCE
AND PENALTY PHASE OF CAPITAL TRIAL/ORDER                    VOL. 1-278

DEFENDANT'S OBJECTIONS TO THE CHARGE AT PUNISHEMNT          VOL. 1-282

DEFENDANT'S MOTIONS AND ADDITIONAL OBJECTIONS TO
THE CHARGE AT PUNISHMENT BASED UPON ATKINS V. VIRGINIA,
536 U.S. 304(2002)                                         VOL. 1-298

DEFENDNAT'S REQUESTED JURY INSTRUCTIONS REGARDING
PAROLE FROM A CAPITAL LIFE SENTENCE                         VOL. 1-302

MOTION FOR JURY INSTRUCTIONS (8 16 06)                      VOL. 1-304

PUNISHMENT PHASE JURY INSTRUCTIONS                          VOL. 1-308

JURY ANSWER TO SPECIAL ISSUE NO. 1                          VOL. 1-311

JURY ANSWER TO SPECIAL ISSUE NO. 2                          VOL. 1-312

JUDGMENT/SENTENCE (10 13 06)                                VOL. 1-314

TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT
OF APPEAL (SIGNED 10 19 06)                                 VOL. 1-317

DEFENDANT'S MOTION FOR NEW TRIAL (06 OCT 13)                VOL. 1-318

DEFENDANT'S NOTICE OF APPEAL AND PAUPER OATH
APPOINTMENT OF ATTORNEY ON APPEAL/ORDER (06 OCT 13)         VOL. 1-319

DEPUTY REPORTER STATEMENT (SIGNED 4 AUG 06)                 VOL. 1-320

DEPUTY REPORTER STATEMENT (SIGNED 14 AUG 06)                VOL. 1-321

DEPUTY REPORTER STATEMENT (SIGNED 13 OCT 06)                VOL. 1-322

MOTION TO INCLUDE JUROR INFORMATION CARDS AND JUROR
QUESTIONNAIRES IN RECORD/ORDER (SIGNED 16 NOV 06)           VOL. 1-323

CLERK'S CERTIFICATE THAT APPELLATE RECORD IS TRUE
AND CORRECT (JAN 25 06)                                     VOL. 1-325

Caption:

The State of Texas    §

County of Dallas      §

In the  265TH JUDICIAL DISTRICT COURT  of Dallas County, Texas, the

Honorable  MARK STOLTZ  , Judge Presiding, the following

proceedings were held and the following instruments and other papers were filed in

this cause, to wit:

Trial Court Cause No.  F05-52918-MR

| The State of Texas | In the  265TH JUDICIAL |
| Vs. | District Court _____, of |
| STEVEN L. LONG | Dallas County, Texas |

01

JS

**DEFENDANT**  Long, Steven L                    W M  08171971  **CHARGE** CAP MUR FEL

**AKA:**

**ADDRESS**    13223 Fish Rd Lot 31, Dallas, Tx          **LOCATION** DSO

**FILING AGENCY**  TXDPD0000  **DATE FILED** July 06, 2005          **COURT**    JDC265

**COMPLAINANT** Smith, Kaitlyn                     F-0552918     **VT#:**

**C/C**

---

### TRUE BILL INDICTMENT

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS: The Grand Jury of

Dallas County, State of Texas, duly organized at the _____ Term, A.D.,   2005   of the

_____ 265th Judicial District Court _____ , Dallas County, in said Court at said

Term, do present that one              **LONG, STEVEN L**              , Defendant,

On or about the    21 st   day of May A.D., 2005      in the County of Dallas and said State, did

unlawfully then and there intentionally cause the death of KAITLYN SMITH, an individual, hereinafter
called deceased, by STRANGLING DECEASED WITH A CORD, A DEADLY WEAPON, AND AN
UNKNOWN OBJECT, A DEADLY WEAPON, THE EXACT NATURE AND DESCRIPTION OF
WHICH IS UNKNOWN TO THE GRAND JURY, and the defendant was then and there in the course of
committing and attempting to commit the offense of AGGRAVATED SEXUAL ASSAULT of said
deceased,

against the peace and dignity of the State.

_Peggy Polito_

**Bill Hill**

Criminal District Attorney of Dallas County, Texas          Foreman of the Grand Jury.

TDC/COURT

02



THE STATE OF TEXAS                    §        IN THE _065_ JUDICIAL

v.                                    §        DISTRICT COURT OF

_Steven Long_                         §        DALLAS COUNTY, TEXAS

2006 AUG -3 AM 10: 58

## MOTION TO AMEND THE INDICTMENT

TO THE HONORABLE JUDGE OF SAID COURT:                GREGORY JOHNSON   DEPUTY

DALLAS CO., TEXAS

    Comes Now The State of Texas before the Court, by and through her Assistant District
Attorney, and moves the Court to amend the Indictment in this cause, pursuant to Tex. Code
Crim. Proc. Ann. Art. 28.10. The State asks the Court to allow the amending of the indictment
in the above-styled and numbered cause to read as follows:

    in line(s) _4_ of the indictment, the word(s) _and blunt force trauma
to the pelvic region_ ___

Should be deleted; and the word(s)_____

_added_

should be ~~substituted~~, so as to make the indictment, in pertinent part, read as follows:

..._UNKNOWN TO THE GRAND JURY AND BLUNT FORCE
trauma to the pelvic region_ ......"

    The State would show that said amendment does not charge the Defendant with an
additional or different offense, nor does it prejudice the substantial rights of the Defendant.

    WHEREFORE, The State Prays that the Court grant this motion and amend the indictment
as requested herein.

                              Respectfully submitted,

                              _____
                              Assistant District Attorney
                              Dallas County, Texas
                              Bar Card Number: _01944900_

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of this Motion to Amend The Indictment
was, ☒ hand-delivered, ☐ mailed, and/or ☐ faxed, to the attorney of record for the Defendant
on the _3RD_ day of _Aug_ , ~~19~~ _2006_ .

## ORDER TO AMEND THE INDICTMENT

    On this the _3_ day of _Aug_ ~~19 00~~, came on to be heard the above
Motion, and is hereby ☒ GRANTED ☐ DENIED.

    The Court further finds that the said Amendment does not charge the Defendant with an
additional or different offense, nor does it prejudice the substantial rights of the Defendant.

                              _____
                              Judge Presiding

                                              AMENDINDJDC

04

JS

DEFENDANT  Long, Steven L _____  W  M  08171971  CHARGE  CAP MUR FEL _____

AKA:

ADDRESS ____ 13223 Fish Rd Lot 31, Dallas, Tx _ _ _ _ _ _ ____  LOCATION  DSO _____ _____

FILING AGENCY  TXDPD0000   DATE FILED  July 06, 2005 _____   COURT ____ JDC265 _____

COMPLAINANT  Smith, Kaitlyn _____  F-0552918 _____ VT#: _____

C/C _____

_____

TRUE BILL INDICTMENT

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:  The Grand Jury of

Dallas County, State of Texas, duly organized at the _____ Term, A.D., ____ 2005 ____ of the

_____ 265th Judicial District Court _____ , Dallas County, in said Court at said

Term, do present that one          **LONG, STEVEN L**              , Defendant,

On or about the ____ 21 st ___ day of May, A.D., 2005 . . . .  in the County of Dallas and said State, did

unlawfully then and there intentionally cause the death of KAITLYN SMITH, an individual, hereinafter
called deceased, by STRANGLING DECEASED WITH A CORD, A DEADLY WEAPON, AND AN
UNKNOWN OBJECT, A DEADLY WEAPON, THE EXACT NATURE AND DESCRIPTION OF
WHICH IS UNKNOWN TO THE GRAND JURY, and the defendant was then and there in the course of
committing and attempting to commit the offense of AGGRAVATED SEXUAL ASSAULT of said
deceased,

and
[ blunt force trauma to the pelvic region
8-3-06

against the peace and dignity of the State.

**Bill Hill**
Criminal District Attorney of Dallas County, Texas

*Peggy Polito*
Foreman of the Grand Jury.

COURT

ʋ5

BAIL STATUS: JAIL.

TRIAL DOCKET — CRIMINAL DISTRICT COURT — DALLAS COUNTY, TEXAS

No. _____

F05-52918-MR

| STATE OF TEXAS | | OFFENSE | DATE OF FILING |
|---|---|---|---|
| STEVEN L. LONG | | CAPITAL MURDER, A CAPITAL FELONY OFFENSE AS CHARGED IN THE INDICTMENT/FEL | JULY 25, 2005 |

| DATE OF ORDER | ATTORNEYS | | ORDERS OF COURT |
|---|---|---|---|
| 7-27-05 | 7-29-05 | Paul Johnson Appt. | |
| | | A. Baca 469 385-1712 | 214-761-0707 |
| 7-29-05 | 8-18-05 | Paul Johnson Appt. | |
| 8-18-05 | 8-18-05 | | Case called for trial. Both sides announced ready. Jury selected, impaneled and sworn. Defendant arraigned. |
| 8-30-05 | 8-30-05 | " | Indictment read. Plea of not guilty before the jury. |
| 8-30-05 | 9-14-05 | " | Evidence presented. Jury charged. Arguments of counsel. |
| 9-14-05 | 9-14-05 | " | Jury verdict of guilty of Capital Murder |
| 9-14-05 | 9-29-05 | * | Punishment fixed by Law at Death confinement in the Texas Department of Corrections. The Jury's answers to the Special Issues are 1) Yes 2) No |
| 9-29-05 | 10-13-05 | " | |
| 10-20-05 | 10-18-05 | " | |
| 10-20-05 | 11-9-05 | " | |
| 11-9-05 | 12-2-05 | * (to set for trial) | |
| 12-2-05 | 1-12-06 | " | |
| 1-12-06 | 2-9-06 | " | |
| 2-13-06 | 3-15-06 | " | |
| 3-15-06 | 5-15-06 | " (to set for JT) | |
| 11-20-06 | 8-4-06 | other special Voire | |
| 4-20-06 | 10-2-06 | JT | |

06

Case No. P-05579J-HR

OFFENSE: Capital Murder

BY MAGISTRATE: Chapman

ON $ _____ BOND

THE STATE OF TEXAS VS.

IN THE _____ 265th _____

Long, Steven L.
"The Defendant"

DISTRICT COURT _____

AKA: _____

OF DALLAS COUNTY, TEXAS

CERTIFICATE OF EXAMINING TRIAL

The undersigned Magistrate of Dallas County, Texas, hereby certifies that on this date there was conducted an examining trial in this cause in accordance with Article 16.01 et seq. Of the Texas Code of Criminal Procedure.

_____
Court Reporter Cert 1981

_____
Attorney for Defendant

_____
Assistant District Attorney

ORDER

Probable cause is found to bind the Defendant over to the Dallas County Grand Jury. Bond is set at: $ 750,000

SIGN AND ENTERED this ___ day of June, 200 5

_____
MAGISTRATE

No probable cause is found to bind the Defendant over to the Dallas County Grand Jury, and the Defendant is Ordered discharged.

SIGNED AND ENTERED this ___ day of _____, 200 _____

_____
MAGISTRATE

WAIVER OF EXAMINING TRIAL

COME NOW the undersigned Defendant and Defendant's Attorney in the above cause, and do hereby waive the right of the Defendant to an examining trial under Article 16.01 et seq., Texas Code of Criminal Procedure in the above cause.

SIGNED AND ENTERED THIS ___ day of _____, 200 _____

_____
Defendant

_____
Attorney for Defendant

The foregoing Waiver of Examining Trial is hereby approved.

_____
MAGISTRATE

# DEFENDANT'S AFFIDAVIT
## OF INDIGENCE



Cause No. **F0552918**
Court     **265th District Criminal Court**
Dallas County, Texas

The State of Texas
vs.
**STEVEN L LONG**

Before me, the undersigned authority, of this date, personally appeared the defendant in the above styled and numbered cause, known to me to be the person whose name is subscribed hereto as affiant. The defendant, having stated that he was indigent and unable to employ counsel, was placed under oath and inquiry was made in the following factors: the defendant's income and source of income, property owned, outstanding obligations, necessary expenses, number and ages of dependents, spousal income and other matters indicating that he is in fact indigent.

The defendant then deposed and stated as follows:
On this **22** day of _____ **May** _____ , **05** _____ , I have been advised by the Court of my right to representation by counsel in the trial of the charges pending against me. I certify that I am without means to employ counsel of my own choosing, and I hereby request the Court to appoint counsel for me.

My total monthly income, including spouse's income, SSI, child support, disability or other is:
$ _____

The total value of my assets, including house, cars, cash, stocks, bonds or other is:
$ _____

_____
Defendant/Affiant

SUBSCRIBED AND SWORN before me, the undersigned authority, on this the **22** day of
_____ **May** _____ , **05** _____ .

_____
Magistrate

### ORDER

On this the _____ day of _____ , _____ , the Court, having reviewed the foregoing affidavit finds that the defendant is NOT indigent and is financially able to employ counsel.

Signed this _____ day of _____ , _____ .

_____
Judge, **265th District Criminal Court**
Dallas County, Texas

### ORDER

On this the _____ day of _____ , _____ , the Court, having reviewed the foregoing affidavit finds the defendant is indigent and unable to employ counsel, and hereby approves the affidavit and appoints:
(1.) The Honorable __Paul Johnson__ , Phone: __214- 761- 0707__
(2.) The Chief Public Defender represented by the Honorable _____ ,
Phone: _____ , a practicing attorney of this state to represent the defendant in said causes.

Signed this **24** day of **May** , **2005** .

_____
Judge, **265th District Criminal Court**
Dallas County, Texas

U8

CAUSE NO. _F05- 52918- R_

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE _265th Judicial_ |
| VS. | * | _Dist. Ct._ _____ OF |
| _Steven L. Long_ | * | DALLAS COUNTY, TEXAS |

## WRIT FOR SPECIAL VENIRE

It appearing to the Court that a motion for Special Venire was filed in the above-numbered and styled cause, and;

It further appearing to the Court that this cause is a capital case;

**IT IS THEREFORE THE ORDER** of this Court that a writ for special venire be and hereby is granted;

**IT IS FURTHER ORDERED AND COMMANDED** that the Sheriff of Dallas County, Texas, summon by mail _2400_ persons to appear in the Central Jury Room, Dallas County, Texas, at the Frank Crowley Criminal Courts Building, 133 North Industrial Blvd., Dallas, Texas, at _10:00_ a.m. on _August 4th_, 200 _6_, for jury duty in the above-numbered and styled cause.

SIGNED this the _2nd_ day of _June_____, 200 _06_

_____, JUDGE

_265th Judicial Dist_ COURT

DALLAS COUNTY, TEXAS

09

THE STATE OF TEXAS

VS.

STEVEN LONG

FILED

2006 JUN 28 PM 1: 56

~~ HAMLIN
DISTRICT CLERK
DALLAS CO. TEXAS
KELLY PRUITT
DEPUTY

IN THE ___265 th___

JUDICIAL DISTRICT CT.

DALLAS COUNTY, TX

F-0552918R

### ORDER FOR PSYCHIATRIC EXAM

ON THIS, The 28th of June, 2006, the Court orders that the Dallas County Jail

Secures the attendance of inmate Steven Long, Bookin No. 05040773, for the psychiatric

Examination by Dr. David Self on this same date.

JUDGE OF THE 265TH DIST. CT

10

Cause No. _F-05-52918 R_

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE __Judicial__ |
| VS. | § | DISTRICT COURT __265__ |
| _Steven L. Long_ | § | DALLAS COUNTY, TEXAS |

## ORDER FOR EXAMINATION
## REGARDING COMPETENCY/MENTAL ILLNESS

On this day the Court considered the issue of the competency of the Defendant to stand trial in this cause; and the Court being of the opinion that the Defendant should be examined as provided in Chapter 46B of the Code of Criminal Procedure;

**IT IS THEREFORE ORDERED** that Dr. __Pittman__ shall examine the Defendant, __Steven L. Long__, to determine if the Defendant is competent to stand trial and/or if the Defendant is a person with mental illness in accordance with Chapter 46B of the Code of Criminal Procedure.

**IT IS FURTHER ORDERED** that said doctor shall have access to, and copies of, all psychiatric and medical records in possession of the jail with respect to this defendant.

**SIGNED** this __28__ day of __June__, 20__06__.

_Keith Dean_

**JUDGE PRESIDING**

Book-in #: __05 04 0773__

Location: __West / 04 P 03__

11

CRIM. COURT MANAGER          X 214-653-5777

** Transmit Conf. Report **

P.1                                                    Jun 28 2006  16:22

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 94693843917 | NORMAL | 28,16:22 | 0'30" | 2 | # O K | |

Cause No. _F-05-52918 R_

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE ___Judicial___ |
| VS. | § | DISTRICT COURT ___265___ |
| _Steven L. Long_ | § | DALLAS COUNTY, TEXAS |

## ORDER FOR EXAMINATION
## REGARDING COMPETENCY/MENTAL ILLNESS

On this day the Court considered the issue of the competency of the Defendant to stand trial in this cause; and the Court being of the opinion that the Defendant should be examined as provided in Chapter 46B of the Code of Criminal Procedure;

IT IS THEREFORE ORDERED that Dr. ___Pittman___ shall examine the Defendant, ___Steven L. Long___, to determine if the Defendant is competent to stand trial and/or if the Defendant is a person with mental illness in accordance with Chapter 46B of the Code of Criminal Procedure.

IT IS FURTHER ORDERED that said doctor shall have access to, and copies of, all psychiatric and medical records in possession of the jail with respect to this defendant.

SIGNED this ___28___ day of ___June___, 20___06___.

12

CAUSE NO. _F05-52918_

| STATE OF TEXAS | § | IN THE _265th_ |
| | § | |
| VS. | § | DISTRICT COURT _____ |
| | § | |
| _Steven Long_ | § | DALLAS COUNTY, TEXAS |

## Order For Medical/Mental Health Record Release

On this _29_ day of _June_ , 20_06_ , the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

**IT IS HEREBY ORDERED** that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED _6-29_ ,20_06_

_____
The Honorable Judge Presiding

13

# SUBPOENA APPLICATION – DUCES TECUM

TO THE CLERK OF THE _____ DISTRICT COURT, _____ DALLAS COUNTY TEXAS

IN THE CASE OF THE STATE OF TEXAS VS.

_Steven Long_

CAUSE NO. F- _05-52918-R_ (COURT LETTER REQUIRED, NOT OPTIONAL)

CHARGED WITH _Cap. Murder_

DATE SET FOR TRIAL _8-18_ 20_06_ AT _9_ _A_. M.

WILL YOU PLEASE ISSUE SUBPOENA IN ACCORDANCE WITH THE LAW, FOR THE FOLLOWING NAMED WITNESS:

_Custodian of Records PMH_

AND WHOSE VOCATION IS THAT OF _____

RESIDING IN _____ COUNTY, TEXAS AND WHOSE LOCATION IS:

_Inv. Will Serve_
STREET ADDRESS/CITY/STATE/ZIP CODE/TELEPHONE NUMBER

AND SAID WITNESS BRING AND PRODUCE IN SAID COURT, AT SAID TIME AND PLACE THE FOLLOWING:

_All Psycological Records Re:_
_Steven L. Long, W/M_
_8-17-71._

_The Records May Be Released_
_to Jeffrey Gardner in Lieu_
_of Appearing._

THE TESTIMONY OF SAID WITNESS IS BELIEVED TO BE MATERIAL TO THE STATE/DEFENDANT  (CIRCLE ONE)

_Paul Johnson_
ASSISTANT DISTRICT ATTORNEY / DEFENSE ATTORNEY

_Dallas, Tx._
ADDRESS/CITY/STATE/ZIP CODE

_214-761-0767_
PHONE NUMBER

SWORN TO AND SUBSCRIBED BEFORE ME, THIS _____ DAY OF _____ 20 _____

JIM HAMLIN, DISTRICT CLERK
DALLAS COUNTY, TEXAS

_S Peppers_
DEPUTY DISTRICT CLERK

ISSUED BY: _SP-8-14-06_

CAUSE NO. _F05 - 52 918_

| STATE OF TEXAS | § | IN THE _265_ |
|  | § |  |
| VS. | § | DISTRICT COURT _____ |
| _Steven Long_ | § | |
|  | § | DALLAS COUNTY, TEXAS |

## ORDER FOR MEDICAL/MENTAL HEALTH RECORD RELEASE

On this _29_ day of _June_ , 20_06_ , the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

IT IS **HEREBY ORDERED** that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED _6-29_ , 20_06_

_____
The Honorable Judge Presiding

15

# SUBPOENA APPLICATION – DUCES TECUM

TO THE CLERK OF THE _265th_ DISTRICT COURT, _____ DALLAS COUNTY TEXAS

## IN THE CASE OF THE STATE OF TEXAS VS.

_Steven L. Long_

CAUSE NO. F- _05- 52918- K_ (COURT LETTER REQUIRED, NOT OPTIONAL)

CHARGED WITH _Cap. Murder_

DATE SET FOR TRIAL _8/28_ 20_06_ AT _9 A_ M.

WILL YOU PLEASE ISSUE SUBPOENA IN ACCORDANCE WITH THE LAW, FOR THE FOLLOWING NAMED WITNESS: _Custodian of Records_

AND WHOSE VOCATION IS THAT OF _____

RESIDING IN _____ COUNTY, TEXAS AND WHOSE LOCATION IS:

_Buckner Children & Family Center_
STREET ADDRESS/CITY/STATE/ZIP CODE/TELEPHONE NUMBER

AND SAID WITNESS BRING AND PRODUCE IN SAID COURT, AT SAID TIME AND PLACE THE FOLLOWING:

① _See enclosed. Release_
_of information Re:_
_Judy Long (Judy Tidwell)_
_all records Re: Dorothy_
_Tidwell_

THE TESTIMONY OF SAID WITNESS IS BELIEVED TO BE MATERIAL TO THE STATE/DEFENDANT (CIRCLE ONE)

_Paul Johnson_
ASSISTANT DISTRICT ATTORNEY / DEFENSE ATTORNEY

_____
ADDRESS/CITY/STATE/ZIP CODE

_____
PHONE NUMBER

SWORN TO AND SUBSCRIBED BEFORE ME, THIS _23_ DAY OF _Aug_ 20_06_

JIM HAMLIN, DISTRICT CLERK
DALLAS COUNTY, TEXAS

ISSUED BY _____

DEPUTY DISTRICT CLERK

16

# Authorization for Release or Receipt of Information

Regarding (Name):  Judy Long, formerly Judy Tidwell

Social Security No.: _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_  DOB: _7-29-45_  Date: _8-6-06_

This will authorize _Buckner's Orphanage_ to release / receive general medical, psychological/psychiatric information including alcohol/drug abuse or addiction from my health records in accordance with all state Statutes and State and Federal Administrative Rules and Regulations to/from:

[X] To  [ ] From

**KELLY R. GOODNESS, Ph.D.**
121 Olive Street
Keller, Texas 76248
(817) 379-4663
Fax: (817) 379-0320

*[ ] To  [X] From

_BUCKNER'S ORPHANAGE_

_____

_____

_____

Information to Be [ ] Released  [ ] Received Is as Follows:

- [X] Notes
- [X] Chart Information
- [X] Histories and physicals
- [X] Psychological testing raw data
- [X] Initial psychiatric evaluations
- [ ] Discharge psychiatric summary
- [ ] Hospital discharge summary
- [X] Social history
- [X] Reports of any kind including psychological testing
- [X] Other written information on the identified client
- [ ] Other:

_Social history, case summary_

_Any + all_

_Complete file including any + all information related to the above Named person_

Purpose of Release

[ ] Continued Treatment  [X] Other     _legal case_
[ ] Psychological/Neuropsychological Evaluation

*Notice of Prohibition on Redisclosure: This information has been disclosed to you from records protected by Federal Rules governing confidentiality rules (42 CFR Part 2) and Texas Statutes. The Federal Rules and State Statutes prohibit making further disclosure of this information without the specific written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2.

I understand that I have the right to refuse to sign this authorization and that the facility named above is released from all legal liability that may arise from the release of the information requested. Consent is subject to revocation at any time except to the extent that the action based on this consent has already been taken. This authorization for release will automatically expire without further action 180 days after the date on which it was signed.

_Judy Long_                          _8-7-06_
[Signature]                          [Date]

_____        _____
[Signature of Empowered Representative            [Witness]
(If patient is unable to sign)

17

CAUSE NO. _F05-52918_

| STATE OF TEXAS | § | IN THE _265th_ |
| | § | |
| VS. | § | DISTRICT COURT _____ |
| | § | |
| _STEVEN Long_ | § | DALLAS COUNTY, TEXAS |

## ORDER FOR MEDICAL/MENTAL HEALTH RECORD RELEASE

On this ___29___ day of ___June___, 20_00_, the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

IT IS HEREBY ORDERED that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED ___6-29___, 20_06_

_____
The Honorable Judge Presiding

18

# SUBPOENA APPLICATION – DUCES TECUM

TO THE CLERK OF THE _265_ DISTRICT COURT, _____ DALLAS COUNTY TEXAS

IN THE CASE OF THE STATE OF TEXAS VS.

_STEVEN LONG_

CAUSE NO. F- _05-52918-R_ (COURT LETTER REQUIRED, NOT OPTIONAL)

CHARGED WITH _CAP. MURDER_

DATE SET FOR TRIAL _9/4_ 20 _06_ AT _9_ A. M.

WILL YOU PLEASE ISSUE SUBPOENA IN ACCORDANCE WITH THE LAW, FOR THE FOLLOWING NAMED WITNESS: _Charlotte Towe_ _Office of General Counsel_

AND WHOSE VOCATION IS THAT OF _____

RESIDING IN _____ COUNTY, TEXAS AND WHOSE LOCATION IS:

_TDCJ_, ~~Correctional Records~~

STREET ADDRESS/CITY/STATE/ZIP CODE/TELEPHONE NUMBER    _Huntsville, TX_

AND SAID WITNESS BRING AND PRODUCE IN SAID COURT, AT SAID TIME AND PLACE THE FOLLOWING:

_Complete and entire_ ~~~~
_TDCJ File, including_
_but not limited to UTMB_
_medical records for_
_Steve Ramon, TDCJ # 00399988_
_And Tommy L. Tidwell_

THE TESTIMONY OF SAID WITNESS IS BELIEVED TO BE MATERIAL TO THE STATE/(DEFENDANT) (CIRCLE ONE)

_Paul Johnson_

ASSISTANT DISTRICT ATTORNEY / DEFENSE ATTORNEY

_____

ADDRESS/CITY/STATE/ZIP CODE

_214-761-0707_

PHONE NUMBER

SWORN TO AND SUBSCRIBED BEFORE ME, THIS _23_ DAY OF _Aug_ 20 _06_

JIM HAMLIN, DISTRICT CLERK
DALLAS COUNTY, TEXAS

ISSUED BY: _____

DEPUTY DISTRICT CLERK

**19**

CAUSE NO. *F05-52918*

| STATE OF TEXAS | § | IN THE *265th* |
|---|---|---|
| | § | |
| VS. | § | DISTRICT COURT _____ |
| | § | |
| *Steven Long* | § | DALLAS COUNTY, TEXAS |
| | § | |

## ORDER FOR MEDICAL/MENTAL HEALTH RECORD RELEASE

On this _*29*_ day of _*June*_, 20*06*, the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

**IT IS HEREBY ORDERED** that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED _*6-29*_, 20*06*

_____
The Honorable Judge Presiding

20

## SUBPOENA APPLICATION – DUCES TECUM

TO THE CLERK OF THE _265_ DISTRICT COURT, _____ DALLAS COUNTY TEXAS

IN THE CASE OF THE STATE OF TEXAS VS.

_Steven Long_

CAUSE NO. F- _05- 52918_ - _____ (COURT LETTER REQUIRED, NOT OPTIONAL)

CHARGED WITH _Cap. Murder_

DATE SET FOR TRIAL _Instanter_ 20____ AT _____ ____. M.

WILL YOU PLEASE ISSUE SUBPOENA IN ACCORDANCE WITH THE LAW, FOR THE FOLLOWING NAMED WITNESS:

_Tina Hill - ~~Pettis~~_

AND WHOSE VOCATION IS THAT OF _____

RESIDING IN _Dallas_ COUNTY, TEXAS AND WHOSE LOCATION IS:

_Frank Crowley Courthouse , 5th Floor_
STREET ADDRESS/CITY/STATE/ZIP CODE/TELEPHONE NUMBER

AND SAID WITNESS BRING AND PRODUCE IN SAID COURT, AT SAID TIME AND PLACE THE FOLLOWING:

_Any + All Medical And/or
Psycological Records
Re: Steven Long, W/M
8-17-71

Records May Be Released
to Jeffrey Gardner_

THE TESTIMONY OF SAID WITNESS IS BELIEVED TO BE MATERIAL TO THE STATE/DEFENDANT (CIRCLE ONE)

_Paul Johnson_
ASSISTANT DISTRICT ATTORNEY / DEFENSE ATTORNEY

_Dallas, Tx._
ADDRESS/CITY/STATE/ZIP CODE

_____
PHONE NUMBER

SWORN TO AND SUBSCRIBED BEFORE ME, THIS _29_ DAY OF _June_ 20 _06_

JIM HAMLIN, DISTRICT CLERK
DALLAS COUNTY, TEXAS

ISSUED BY: _____

_____
DEPUTY DISTRICT CLERK

**21**

CAUSE NO. _F05 - 52 918_

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE _265th_ |
| | § | |
| VS. | § | DISTRICT COURT _____ |
| | § | |
| _Steven Long_ | § | DALLAS COUNTY, TEXAS |

### ORDER FOR MEDICAL/MENTAL HEALTH RECORD RELEASE

On this _29_ day of _June_, 20_06_, the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

**IT IS HEREBY ORDERED** that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED _6-29_, 20_06_

_____
The Honorable Judge Presiding

22

# SUBPOENA APPLICATION – DUCES TECUM

TO THE CLERK OF THE ___265___ DISTRICT COURT, _____ DALLAS COUNTY TEXAS

IN THE CASE OF THE STATE OF TEXAS VS.

_Steven L. Long_

CAUSE NO. F- _05- 52918. R_ (COURT LETTER REQUIRED, NOT OPTIONAL)

CHARGED WITH ___Cap. Murder___

DATE SET FOR TRIAL _Instanter_ 20____ AT _____ ____. M.

WILL YOU PLEASE ISSUE SUBPOENA IN ACCORDANCE WITH THE LAW, FOR THE FOLLOWING NAMED WITNESS:

_Custodian of Patient Records_

AND WHOSE VOCATION IS THAT OF _____

RESIDING IN _Terrell_ COUNTY, TEXAS AND WHOSE LOCATION IS:

_Terrell State Hospital, Terrell, TX._

STREET ADDRESS/CITY/STATE/ZIP CODE/TELEPHONE NUMBER

AND SAID WITNESS BRING AND PRODUCE IN SAID COURT, AT SAID TIME AND PLACE THE FOLLOWING:

_All documentation noted within the enclosed authorization for release of information._

THE TESTIMONY OF SAID WITNESS IS BELIEVED TO BE MATERIAL TO THE STATE/DEFENDANT (CIRCLE ONE)

_Paul Johnson_

ASSISTANT DISTRICT ATTORNEY / DEFENSE ATTORNEY

_Dallas, TX_

ADDRESS/CITY/STATE/ZIP CODE

_214-761-0707_

PHONE NUMBER

SWORN TO AND SUBSCRIBED BEFORE ME, THIS _____ DAY OF _____ 20 ____

JIM HAMLIN, DISTRICT CLERK
DALLAS COUNTY, TEXAS

ISSUED BY: _8-15-06_

_Sheppers_

DEPUTY DISTRICT CLERK

23

# Authorization for Release or Receipt of Information

Regarding (Name): Judy Long, formerly Judy Tidwell____

Social Security No.: 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 DOB: 7-29-45 ___ Date: 8-6-06

This will authorize _TSH_____ to **release** **receive** general medical, psychological/psychiatric information including alcohol/drug abuse or addiction from my health records in accordance with all state Statutes and State and Federal Administrative Rules and Regulations to/from:

[ ] To [ ] From

**KELLY R. GOODNESS, Ph.D.**
121 Olive Street
Keller, Texas 76248
(817) 379-4663
Fax: (817) 379-0320

* [ ] To [ ] From  _Terrell State Hospital_

_____

_____

_____

Information to Be [ ] Released [ ] Received Is as Follows:

☐ Notes
☑ Chart Information
☑ Histories and physicals
☑ Psychological testing raw data
☑ Initial psychiatric evaluations
☐ Discharge psychiatric summary
☐ Hospital discharge summary
☑ Social history
☑ Reports of any kind including psychological testing
☑ Other written information on the identified client
☐ Other: _Complete file including any + all information related to the above named person_

_Social history; case summary_

_Any + all_

Purpose of Release: _____
[ ] Continued Treatment [✓] Other _____
[ ] Psychological/Neuropsychological Evaluation/ _legal case_

**\*Notice of Prohibition on Redisclosure:** This information has been disclosed to you from records protected by Federal Rules governing confidentiality rules (42 CFR Part 2) and Texas Statutes. The Federal Rules and State Statutes prohibit making further disclosure of this information without the specific written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2.

I understand that I have the right to refuse to sign this authorization and that the facility named above is released from all legal liability that may arise from the release of the information requested. Consent is subject to revocation at any time except to the extent that the action based on this consent has already been taken. This authorization for release will automatically expire without further action 180 days after the date on which it was signed.

_Judy Long_                              _8-7-06_
[Signature]                              [Date]

_____          _____
[Signature of Empowered Representative          [Witness]
(If patient is unable to sign)

24

CAUSE NO. F05-52918

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN CRIMINAL** |
| | § | |
| **VS.** | § | **265th  DISTRICT  COURT** |
| | § | |
| **Steven Lynn Long** | § | **DALLAS COUNTY, TEXAS** |

## ORDER FOR MEDICAL/MENTAL HEALTH RECORD RELEASE

On this ___2___ day of ___AUGUST___, 20 _06_, the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

**IT IS HEREBY ORDERED** that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED ___8-2___, 20 _06_

_____
The Honorable Judge Presiding

25

# THE STATE OF TEXAS

## TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER OF THE STATE OF TEXAS - GREETINGS:

### YOU ARE HEREBY COMMANDED to summon

CUSTODIAN OF RECORDS. MS. TINA HILL P.H.H.S OR DESIGNEE
3 N. INDUSTRIAL. 5TH FLOOR RM A-14
DALLAS TX

o be and appear before the __265 TH JUDICIAL__ District Court

of Dallas County, Texas, at the Courthouse of said County, in the City of Dallas, on the
__02 ND__ day of __OCTOBER__ , 20_6_ , at _900_ o'clock _A_ M.,
to and there to testify as a witness in behalf of the __STATE__ in a Criminal

action pending in said Court, wherein THE STATE OF TEXAS is plaintiff, and
__STEVEN L LONG__ Defendant; No. __F-0552918R__

□ NOT APPLICABLE

## DUCES TECUM (IF APPLICABLE)

and that he/she bring with him/her and produce in said Court, at said time and place the following: Certified
copies of any and all medical and/or psychiatric records to include, but not limited to, prognosis, diagnosis,
prescriptions, doctors notes, nurses notes, medical staff notes, evaluations and any other medical documentation
for inmate Steven Lynn Long W/M DOB 8-17-1971, AIS#01762127, Current Book In #0504077.3. Please release
the requested records to Dallas District Attorney's Office Criminal Investigator Hoyt Hoffman.
desired as evidence in said Criminal action, to-wit: in a certain suit pending in said court.

and there remain from day to day and from term to term until discharged by the Court

HEREIN FAIL NOT, But of this Writ make due return, showing how you have executed the same.

## OUT OF COUNTY (IF APPLICABLE)

A DISOBEDIENCE OF this Subpoena is punishable by fine not exceeding $500, to be collected as
fines and costs in other criminal cases.

X □ NOT APPLICABLE

WITNESS MY OFFICIAL SIGNATURE, THIS __02 ND__ day of __AUGUST__ , 20 _06_ .

Form 371 - SUBPOENA - CRIMINAL (FELONY)
LOCAL - DUCES TECUM - OUT OF COUNTY

JIM HAMLIN
Clerk, District Courts
Dallas County, Texas

By __F LILLEY__ ———— Deputy

---

NO. __F-0552918-R__

JUDICIAL DISTRICT COURT 265 TH
DALLAS COUNTY, TEXAS

THE STATE OF TEXAS

VS.

STEVEN L LONG

## SUBPOENA

ISSUED

_2 ND_ day of __AUGUST__ , 20_6_

JIM HAMLIN
Clerk, District Courts
Dallas County, Texas

By __F LILLEY__ ———— Deputy

ATTORNEY:
ANY BRACH
133 N. INDUSTRIAL
DALLAS, TX 75207
469 385 1710

REPORT TO:
FRANK CROWLEY COURTS BLDG.
133 N. INDUSTRIAL BLVD.
DALLAS, TEXAS

26

# OFFICER'S RETURN

CAME TO HAND on the ..2.. day of ...*AUGUST*.............................................. 20.*06*, and executed by delivering a copy of the within Subpoena to the following within named witnesses, all of whom were summoned in ........................................... County, on the dates and at the places hereinafter set forth, as follows:

| NAME | NAME | DATE | WHERE | COURSE | DISTANCE |
|---|---|---|---|---|---|
| *TINA HILL* | | *8-2-2006* | miles ............ from ............................... | | miles |
| | | | miles ............ from ............................... | | miles |
| | | | miles ............ from ............................... | | miles |
| | | | miles ............ from ............................... | | miles |
| | | | miles ............ from ............................... | | miles |
| | | | miles ............ from ............................... | | miles |

I actually and necessarily traveled.................................... miles in the service of this Subpoena, in addition to any other mileage I may have traveled in the service of other Subpoenas, or Attachments, in this or any other case during the same trip.

AMOUNT OF MONEY FURNISHED ABOVE NAMED WITNESS ..................................................

.................................................... .................... $ ..........................
.................................................... - .................. $ ..........................
.................................................... .................... $ ..........................
TOTAL ............ $ ..........................

The following named witnesses not summoned for the reasons set opposite their names:

..................................................................................................
..................................................................................................
..................................................................................................
..................................................................................................
..................................................................................................
..................................................................................................

To total amount of money furnished ...............
witnesses ................ $...............
For summoning ............. witnesses
at ............... each ........... 
Mileage, ........... miles at.......... ..............
TOTAL, ................... $...............

Sheriff ......*DALLAS*................................... County, Texas
By ................................................... ~~Deputy~~
*D.A. INV. HOYT HOFFMAN*

Subscribed and sworn to before me, this the ................... day of ....................................................20...
..................................................................................................
..................................................................................................

**27**

CAUSE NO. F05-52918

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN CRIMINAL** |
| | § | |
| **VS.** | § | **265th   DISTRICT   COURT** |
| | § | |
| **Steven Lynn Long** | § | **DALLAS COUNTY, TEXAS** |

## <u>Order For Medical/Mental Health Record Release</u>

On this ___2___ day of ___AUGUST___, 20 _06_, the Court has reviewed the attached subpoena and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

**IT IS HEREBY ORDERED** that the health care provider/mental health care provider named in the subpoena release all records designated therein.

SIGNED ___8-2___ ,20 _06_

_____
The Honorable Judge Presiding

28

## APPLICATION FOR SUBPOENA IN THE DISTRICT COURTS/CRIMINAL....DUCES TECUM

TO THE CLERK OF 265TH DISTRICT COURT DALLAS COUNTY, TEXAS

In the case of the STATE OF TEXAS VS. STEVEN LYNN LONG CAUSE NUMBER: F05-52918

CHARGED WITH: CAPITAL MURDER SET FOR TRIAL: OCTOBER 2, 2006, **at 9:00 A.M.**, you will please issue...

subpoena...in accordance with the law, for the following named witness...residing in the County, as set out:

<u>Ms. Tina Hill P.H.H.S. Custodian of Records or Designee</u>

whose vocation is that of <u>Custodian of Record</u> residing in <u>Dallas</u> County , Texas, and whose location is <u>133 N. Industrial Boulevard 5th Floor Room A-14, Dallas, Texas 75207</u>

and that he/she bring with him/her and produce in said Court, at said time and place the following: Certified copies of any and all medical and/or psychiatric records to include, but not limited to, prognosis, diagnosis, prescriptions, doctors notes, nurses notes, medical staff notes, evaluations and any other medical documentation for inmate Steven Lynn Long W/M DOB 8-17-1971, AIS#01762127, Current Book In #05040773.  Please release the requested records to Dallas District Attorney's Office Criminal Investigator Hoyt Hoffman.

The testimony of said witness is believed to be material to the State.

**Andy Beach**
Assistant District Attorney
133 North Industrial Blvd. LB 19
Dallas, Texas 75207-4399
Phone Number: 469/385-1710

SWORN TO AND SUBSCRIBED before me, this _2nd_ day of _August_ , 20_06_.

JIM HAMLIN, DISTRICT CLERK
DALLAS COUNTY, TEXAS

ISSUED BY:

DEPUTY DISTRICT CLERK

DATE: 8/2/06

[REV. August 2, 2006]

DUCESMED_JBL

**29**

## CAUSE NO. F05-52918

| STATE OF TEXAS | ' | IN THE 265th JUDICIAL |
| | ' | |
| VS. | ' | DISTRICT COURT OF |
| | ' | |
| Steven Lynn Long | ' | DALLAS COUNTY, TEXAS |

## ORDER FOR MEDICAL / THERAPEUTIC / PSYCHIATRIC RECORD RELEASE

On this the **9th** day of **October** , 2006 the Court has reviewed the attached subpoena application for ANY AND ALL medical / therapy records of any kind from, **St. Paul** ~~Hospital~~ Medical Gr. pertaining to **Olga Gonzalez/Long, dob-12-11-72** and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

**IT IS HEREBY ORDERED** that the health care provider named in the subpoena release all records designated therein.

SIGNED October 9th, 2006

The Honorable Judge Presiding

Crim. District Court # 6

☒ **INVESTIGATOR WILL SERVE**     ☐ **CONSTABLE WILL SERVE**

39

## APPLICATION FOR SUBPOENA DUCES TECUM (MEDICAL RECORDS)

To The Clerk Of the 265th Judicial District Court of Dallas County, Texas:

In the case of the STATE OF TEXAS VS. STEVEN LYNN LONG

Cause Number: F-0552918 Charge: Capital Murder

**Date set for trial:** October 10th, 2006, at 9:00, A.M.

Please issue a subpoena in accordance with the law, for the following witness: Shannon Wentz or designee

whose vocation is that of *Custodian of Medical/Surgical Records*, residing in Dallas County County, Texas,

and whose location is St. Paul Medical Center commanding that he/she bring with him/her and produce in said

Court, at said time and place the following:

*A true and correct copy, under affidavit authenticating same, of any and all records relating to any medical/surgical treatment administered to Olga Gonzalez/or Long, D.O.B:12-11-72, who was admitted on or about 1991-94 for treatment of various injuries and miscarriage.*

The testimony of said witness is believed to be material to the State.

Andy Beach
Assistant District Attorney
133 North Industrial Blvd. LB 19
Dallas, Texas 75207-4399
Phone Numbers: 214-653-3600

SWORN TO AND SUBSCRIBED before me, this ____ day of _____, 20__.

Jim Hamlin
District Clerk
Dallas County, Texas

Issued by: _____

Date: _____

By: _____
Deputy

[REV. October 9, 2006]

DUCESMED.ju.

31

CAUSE NO. F05-52918

| STATE OF TEXAS | ˮ | IN THE 265th JUDICIAL |
| VS. | ˮ | DISTRICT COURT OF |
| Steven Lynn Long | ˮ | DALLAS COUNTY, TEXAS |

## ORDER FOR MEDICAL / THERAPEUTIC / PSYCHIATRIC RECORD RELEASE

On this the 9th day of October , 2006 the Court has reviewed the attached subpoena application for ANY AND ALL medical / therapy records of any kind from, St. Paul Hospital ~~Medical Ctr.~~ pertaining to **Olga Gonzalez/Long, dob-12-11-72** and good cause has been shown for the issuance of the attached subpoena to further the prosecution of a criminal matter pending before this court.

IT IS HEREBY ORDERED that the health care provider named in the subpoena release all records designated therein.

SIGNED October 9th, 2006

The Honorable Judge Presiding

Crim. District Court # 6

☒ INVESTIGATOR WILL SERVE      ☐ CONSTABLE WILL SERVE

32

# THE STATE OF TEXAS

## TO ANY SHERIFF OR ANY CONSTABLE OR ANY PEACE OFFICER
## OF THE STATE OF TEXAS - GREETINGS:
## YOU ARE HEREBY COMMANDED to summon

CUSTODIAN OF MEDICAL/SURGICAL RECORDS. ST. PAUL MEDICAL CTR
ST. PAUL MEDICAL CENTER
5909 HARRY HINES
DALLAS, TX

to be and appear before the _____ 265 TH JUDICIAL _____ District Court

of Dallas County, Texas, at the Courthouse of said County, in the City of Dallas, on the

_____ day of _____ OCTOBER _____, 20 06, at 0900 o'clock _____ AM,

then and there to testify as a witness in behalf of the _____ STATE _____ in a Criminal

action pending in said Court, wherein THE STATE OF TEXAS is plaintiff and

STEVEN L LONG _____ Defendant; No. _____ F-0552918R

## DUCES TECUM (IF APPLICABLE)

And that he bring with him and produce in said Court, at said time and place,

A TRUE AND CORRECT COPY UNDER AFFIDAVIT AUTHENTICATING SAME OF ANY AND
ALL RECORDS RELATING TO ANY MEDICAL/SURGICAL TREATMENT ADMINISTERED TO
STEVEN L LONG D.O.B. 12 11 72. WHO WAS ADMITTED ON OR ABOUT
1991-94 FOR TREATMENT OF VARIOUS INJURIES AND MISCARRIGES

☐ NOT APPLICABLE

and there remain from day to day and from term to term until discharged by the Court

HEREIN FAIL NOT, But of this Writ make due return, showing how you have executed the same.

## OUT OF COUNTY (IF APPLICABLE)

A DISOBEDIENCE OF this Subpoena is punishable by fine not exceeding $500, to be collected as
fines and costs in other criminal cases.

☒ NOT APPLICABLE

WITNESS MY OFFICIAL SIGNATURE, THIS _____ 09 TH _____ day of _____ OCTOBER , 20 06.

JIM HAMLIN
Clerk, District Courts
Dallas County, Texas

By _____ F LILLEY _____ Deputy

---

NO. _____ F-0552918-R

JUDICIAL DISTRICT COURT 265 TH
DALLAS COUNTY, TEXAS

## THE STATE OF TEXAS

VS.

STEVEN L LONG

CAP MUR FEL

## SUBPOENA

☐ NOT APPLICABLE

This 09 TH day of _____ OCTOBER , 2006

## ISSUED

JIM HAMLIN
Clerk, District Courts
Dallas County, Texas

By _____ F LILLEY _____ Deputy

ATTORNEY:
ANDY BEACH
133 N. INDUSTRIAL
DALLAS. TX 75207
214 653 3600

REPORT TO:

FRANK CROWLEY COURTS BLDG.
133 N. INDUSTRIAL BLVD.
DALLAS. TEXAS

33

**OFFICER'S RETURN**

CAME TO HAND on the _____ day of _____ 20___, and executed by delivering a copy of the within Subpoena to the following within named witnesses, all of whom were summoned in _____ County, on the dates and at the places hereinafter set forth, as follows:

| NAME | NAME | DATE | WHERE | COURSE | DISTANCE |
|---|---|---|---|---|---|
| | | | miles | from | miles |
| | | | miles | from | miles |
| | | | miles | from | miles |
| | | | miles | from | miles |
| | | | miles | from | miles |
| | | | miles | from | miles |
| | | | miles | from | miles |

I actually and necessarily traveled _____ miles in the service of this Subpoena, in addition to any other mileage I may have traveled in the service of other Subpoenas, or Attachments, in this or any other case during the same trip.

AMOUNT OF MONEY FURNISHED ABOVE NAMED WITNESS

| | | |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| TOTAL | | $ |

The following named witnesses not summoned for the reasons set opposite their names.

To total amount of money furnished witnesses .......... $ _____

For summoning .......... witnesses

at .......... each .......... $ _____                    County, Texas

Mileage .......... miles at .......... By _____ Deputy

TOTAL .......... $ _____

Subscribed and sworn to before me, this the _____ day of _____ 20___.

Cause No. _F05-52918-R_

| THE STATE OF TEXAS | § | IN THE _Judicial_ |
| VS. | § | DISTRICT COURT _265_ |
| _Steven L. Long_ | § | DALLAS COUNTY, TEXAS |

## ORDER FOR EXAMINATION
## REGARDING COMPETENCY/MENTAL ILLNESS

On this day the Court considered the issue of the competency of the Defendant to stand trial in this cause; and the Court being of the opinion that the Defendant should be examined as provided in Chapter 46B of the Code of Criminal Procedure;

**IT IS THEREFORE ORDERED** that Dr. _Jay Crowder_ shall examine the Defendant, _Steven L. Long_, to determine if the Defendant is competent to stand trial and/or if the Defendant is a person with mental illness in accordance with Chapter 46B of the Code of Criminal Procedure.

**IT IS FURTHER ORDERED** that said doctor shall have access to, and copies of, all psychiatric and medical records in possession of the jail with respect to this defendant.

SIGNED this _14_ day of _July_, 20 _06_.

_Keith Dean_
_____
JUDGE PRESIDING

Book-in #: _05040773_
Location: _West tower/04 P 03_

35

## F A X   C O V E R   S H E E T

### CRIMINAL COURTS OF DALLAS COUNTY
133 North Industrial Blvd, Dallas, Texas 75207

To: _Dr Jay Crowder_

At Fax No.: _469- 330 - 7388_

From: _Doris Irvin_   Phone No. _214-653-58_

☐   County Criminal Courts Manager

☐   District Criminal Courts Manager

☐   County Criminal Court No. _____

☐   _Judicial_ Criminal District Court No. _265_

☐   Other _____

Originating Fax Number:   (214)-653-5777

Comments:

Number of Sheets: _____ _3_ _____ (including this page)



TWO HUNDRED SIXTY-FIFTH
JUDICIAL DISTRICT COURT
KEITH DEAN, JUDGE

8-14-06

Please leave Deft
Steven Long 05040773 In
Closed B/O Tank.
Cancell S/C order at Request
of Deft + Atty.

Judge Dean

Frank Crowley Courts Building          Dallas, Texas 75207-4312

37

CRIM. COURT MANAGER     X:214-653-5777

## ✳✳ Transmit Conf.Report ✳✳

P.1                                                    Jul 14 2006  9:36

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 94693307388 | NORMAL | 14, 9:36 | 0'35" | 3 | # O K | |

# F A X   C O V E R   S H E E T

## CRIMINAL COURTS OF DALLAS COUNTY
133 North Industrial Blvd, Dallas, Texas 75207

To: **Dr Jay Crowder**

At Fax No.: **469-330-7389**

From: **Davis Irvin**   Phone No. **214-453-58**

☐   County Criminal Courts Manager

☐   District Criminal Courts Manager

☐   County Criminal Court No. _____

☐   **Judicial** Criminal District Court No. **265**

☐   Other _____

Originating Fax Number:   (214)-653-5777

Comments:

38

No. *F05-52018-R*

2006 JUL 26   AM 10: 04

| | |
|---|---|
| The State of Texas | In the 265th Judicial |
| | DISTRICT CLERK DALLAS CO., TEXAS |
| Vs. | District Court of |
| | DEPUTY |
| Steven Long | Dallas County, TX |

<u>Order for Psychological Testing</u>

It is hereby ordered that the Dallas County Sheriffs' Department make

Inmate Steven Long (BNO 05040773) available for neuropsychological

Testing  on the 1st day of August, 2006, to be conducted by Dr. Laura Lacritz.

Please provide her access to the inmate, a table and two chairs, and access to

The jail area designated as M1 to facilitate this process.

Judge

No. FOS-52918.R

2006 JUL 26  AM 10: 04

JIM HAMLIN
DISTRICT CLERK
DALLAS CO., TEXAS
KELLY PRUITT    DEPUTY

The State of Texas                    In the 265th Judicial

Vs.                                   District Court of

Steven Long                           Dallas County, TX


Order for Psychological Testing

It is hereby ordered that the Dallas County Sheriffs' Department make

Inmate Steven Long (BNO 05040773) available for psychological testing on

August 2 and August 3, 2006, to be conducted by Dr. Robert Lovett and his

Staff.


Judge

49

CAUSE  NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR DISCLOSURE OF ANY POSSIBLE BASIS FOR JUDICIAL QUALIFICATION OR RECUSAL

Now comes PAUL JOHNSON, counsel for the Defendant, STEVEN L. LONG, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and  Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution Article 1, sections 3, 10, 13 & 19 and Art. 5, § 11 of the Texas Constitution and 29.08 respectfully moves this Court to reveal any possible basis for judicial recusal.  In support of his motion, Mr. Long states as follows:

1. "The judiciary must not only attempt to give all parties a fair trial, but it must also try to maintain the trust and confidence of the public at a high level." Lee v. State, 555 S.W.2d 121, 125 (Tex. Crim. App. 1977).  Courts, like Caesar's wife, must be not only virtuous but above suspicion." U'Ren v. Bagley, 118 Or. 77, 245 P. 2d 1074, 1075 (1926); See also Pearson v. Parsons, 541 So. 2d 447, 456 (Miss. 1989) (Pittman, J., concurring) (A judge "must be, to quote from the bench opinion, 'Like Caesar's wife . . . his conduct must be beyond doubt above suspicion.'").

2. The question of recusal of a judge is different to that of disqualification. The Texas Constitution and statutory provisions lay out exclusive grounds in criminal cases for automatic disqualification.

The State Constitution provides in pertinent part:

No judge shall sit in any case wherein the judge may be interested or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.

41

<u>Tx. Const. Art. 5, § 11</u>.  Whilst the Code of Criminal Procedure states;

> No judge or justice of the peace shall sit in any case in which he may be
> the party injured, or where he has been of counsel for the State or the
> accused, or where the accused or the party injured may be connected
> with him by consanguinity or affinity within the third degree, as
> determined under Chapter 573, Government Code.

<u>Tex. Code Crim. Proc. Ann. Art 30.01</u>.  A parallel provision in the Government Code provides:

> A judge or justice of the peace may not sit in a case if either of the parties is
> related to him by affinity or consanguinity within the third degree, as
> determined under Chapter 573.

<u>Tex. Govt. Code Ann. § 21.005.</u>  The law is clear that if any of the reasons set out in the code

exist, a court must disqualify him or herself - the onus is not on the parties to object and the

disqualification may not be waived by consent of the parties.  <u>Gamez v. State</u>, 737 S.W.2d 315,

318 (Tex. Crim. App. 1987).

      3.  Recusal  however, is appropriate when there is even a possibility that the judge

could be biased.  It is a tool for placing the judge out of harm's way.  The Texas Rules of Civil

Procedure enumerate the grounds for recusal:

Rule 18b. Grounds For Disqualification and Recusal of Judges(1) Disqualification....
(2) Recusal A judge shall recuse himself in any proceeding in which:(a) his impartiality
might reasonably be questioned;(b) he has a personal bias or prejudice concerning the subject
matter or a party, or personal knowledge of disputed evidentiary facts concerning the
proceeding;(c) he or a lawyer with whom he previously practiced law has been a material
witness concerning it;(d) he participated as counsel, adviser or material witness in the matter
in controversy, or expressed an opinion concerning the merits of it, while acting as an
attorney in government service;(e) he knows that he, individually or as a fiduciary, or his
spouse or minor child residing in his household, has a financial interest in the subject matter
in controversy or in a party to the proceeding, or any other interest that could be substantially
affected by the outcome of the proceeding;(f) he or his spouse, or a person within the third
degree of relationship to either of them, or the spouse of such a person:(i) is a party to the
proceeding, or an officer, director, or trustee of a party;(ii) is known by the judge to have an
interest that could be substantially affected by the outcome of the proceeding;(iii) is to the

42

judge's knowledge likely to be a material witness in the proceeding;(g) he or his spouse, or a person within the first degree of relationship to either of them, or the spouse of such a person, is acting as a lawyer in the proceeding.

Tex. R. Civ. P. Ann. 18(b)

  4. These grounds are applicable to a criminal case. See, DeBlanc v. State, 799 S.W.2d 701, 705 (Tex. Crim. App. 1990) (holding the provisions directly applicable); Stafford v. State, 948 S.W.2d 921, 924 (Tex. App. Texarkana, 1997) (applying the common law recognition of bias as a basis for recusal to the facts) and Kemp v. State, 846 S.W.2d 289 (Tex. Crim. App. 1992) (adopting the language of the civil rules by holding that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to, instances where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding).

  5. In holding that the trial judge should have recused himself, a court does not "cast a shadow upon the trial judge", and should have no doubt that "the trial judge's integrity is of the highest." Lee v. State, 555 S.W.2d 121, 125 (Tex. Crim. App. 1977). However, as Chief Justice Willie stated, "It was the object of the Constitution to place judicial officers beyond the temptation which such circumstances would throw in their way." Hodde v. Susan, 58 Tex. 389, 395 (1883). Other States' courts similarly treat recusal as a faultless necessity.

  6. The question for deciding if there could be grounds for recusal then, is not whether a judge actually is biased, for a judge should recuse him or herself "*without finding fault . . . so that even the appearance of impropriety can be avoided.*" Collins v. Dixie Transport, Inc., 543 So. 2d 160, 166-67 (Miss. 1989) (emphasis in original) (quoting Haralson v. Haralson, 483 So. 2d 378, 380 (Miss. 1986)); See also; State v. Le Blanc, 367 So. 2d 335, 341

(La. 1979) (courts should not only be impartial, but above the suspicion of partiality).  As the federal courts have held:

> The question is not whether the judge is impartial in fact.  It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances.

Rice v. McKenzie, 581 F.2d 1114, 1116 (4th Cir. W. Va. 1978).  See also  Hall v. Small Business Admin., 695 F.2d 175, 179  (5th Cir. 1983) (recusal required "if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.").

7.  A trial judge ruling on a motion alleging a basis for disqualification or recusal must decide whether it has been provided with sufficient facts to establish that a reasonable man, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge.  Kemp v. State, 846 S.W.2d 289, 305 (Tex. Crim. App. 1982), citing Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1165 (5th Cir. 1982); see also McClenan v. State, 661 S.W.2d 108, 109 (Tex. Crim. App. 1983).  A judge should also take into account the Texas Code of Judicial Conduct, Canon 2:

> Canon 2: Avoiding Impropriety and the appearance of impropriety in all of the judge's activities.
> A. A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
> B. A judge shall not allow any relationship to influence judicial conduct or judgment.

44

The judge should also consider the ABA's test  for the appearance of impropriety in the parallel canon of the ABA Code of Judicial Conduct:

> "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."

ABA Code of Judicial Conduct, Canon 2, n.1.

8. Bias may be a ground for recusal because it may deny the defendant due process of law. M. Teague & B. Helft, 2 Texas Criminal Practice Guide §§ 63.04 [1][e] at 63-17 (1990); see also, McClenan v. State, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983). Therefore, courts have been willing to assume that a violation of the Code of Judicial Conduct could be a ground for reversal. Kemp v. State, 846 S.W.2d 289, 305.

9. Therefore even when this Court may be sure that the Court will strive to be absolutely impartial, recusal is rightly required so that "justice [will] satisfy the appearance of justice." In re Murchison, 349 U.S. 133, 136 (1955) (quoting Offutt v. United States, 348 U.S. 11 (1954) (emphasis supplied)). This rule has been jealously guarded by the appellate courts, fully realizing that "this 'stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.'" Marshall v. Jerrico, Inc., 446 U.S. 238, 243 (1980) (quoting In re Murchison, 349 U.S. 133, 136 (1955)).

10. Nothing ill is imputed to anyone by a suggestion of disqualification or recusal However, "[t]he protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." United States v. Columbia Broadcasting System, Inc., 497 F.2d 107, 109 (5th Cir. 1974). Against this backdrop, Mr. CLIENT respectfully moves that this Court consider any possible basis for disqualification or recusal in this case.

11. It obviously cannot be left up to the defendant to assure that the trial judge is impartial -- the duty rests upon the trial judge to act on any hint of impropriety *sua sponte*. As the federal courts acknowledge, there is "place[d] on the judge a personal duty to disclose on the record any circumstances that may give rise to a reasonable question about his impartiality." United States v. Murphy, 768 F.2d 1518, 1537 (7th Cir. 1985); accord SCA Servs. Inc. v. Morgan, 557 F.2d 110, 117 (7th Cir. 1977); United States v. Amerine, 411 F.2d 1130, 1134 (6th Cir. 1969).

Wherefore, premises considered, Mr. Long prays that this court consider whether any possible bases for disqualification or recusal exist and, if they do, Mr. Long requests that they be made known to both parties in open court so that the parties may properly evaluate whether a further motion to disqualify or recuse would be appropriate.

Respectfully Submitted on this the ___16___ day of _August_ 2006.

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _ ___August___,2006.

Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

46

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO SET ASIDE THE
## INDICTMENT (UNCONSTITUTIONALITY OF STATUTE)

NOW COMES, the Defendant, Steven L. Long, by and through his attorneys of record, and moves to set aside the indictment, and for good cause shows the following:

### I.

The Texas capital punishment scheme, which limits the jury to consideration of the special issues, does not permit the jury to consider and give effect to all the mitigating circumstances which exist concerning Defendant, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, §~10, 13 and 19 of the Texas Constitution. See, Penry v. Lynaugh, 109 S.Ct.2934(1989);Eddings v. Oklahoma, 455 U.S. 104 (1982); and Lockett v. Ohio, 438 U.S. 586 (1978)

### II.

The Texas capital punishment scheme unconstitutionally chills Defendant's ability to present relevant mitigating evidence to the jury, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and Article I §~10, 13 and 19 of the Texas Constitution.

### III.

The unconstitutional chilling effect described in Paragraph II above denies Defendant the effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I §10 of the Texas Constitution.

### IV.

The Texas death penalty scheme gives prosecutors unfettered discretion in deciding whether to seek the death penalty in any particular case in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution.

1

47

## V.

Article 37.071 of the Texas Code of Criminal Procedure mandates that "jury should return a special verdict of 'yes' or 'no' on each issue submitted." It further requires the Court to instruct the jury that it may not answer "yes" unless it agrees unanimously, and that it may not answer "no" unless 10 or more jurors agree. The article mandates a life sentence if the jury is unable to agree on a special verdict. And the article provides that nobody inform jurors that a failure to agree on a special issue will result in a life sentence. These provisions considered together violate the Eighth and Fourteenth Amendments of the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution for the following reasons:

1. Informing a juror that he <u>shall</u> answer the questions "yes" or "no" might reasonably cause this juror to shift his position to satisfy the requirements of the 12-0 rule.

2. The statutory prohibition against informing jurors of the impact of his individual vote relieves him of psychological responsibility for the jury's collective decision to impose death as punishment.

3. The statutory prohibition fails to provide the jury with accurate information concerning the sentencing process in Texas.

4. The statutory 10 vote prerequisite to a "no" response establishes an artificial numerical threshold which bears no relationship to conditions required by Texas law for assessment of a life sentence. See r. <u>Clary, Voting for Death:   Lingering Doubts About the Constitutionality of Texas' Capital Sentencing Procedure</u>, 19 St.M.L.J. 353,374—75 (1987).

## VI.

Under the Texas law, a capital jury may not be informed that Defendant would have to serve at least 40 years in prison before becoming eligible for parole on a life sentence. Without such information, a jury will not have an accurate and proper understanding of the parole system in Texas. That is the jury will be required to predict the Defendant's future danger to society without knowing how long he will have to be incarcerated. Such an uninformed prediction promotes arbitrary, capricious and standardless sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution, and fails to promote the concept of individualized sentencing required by those constitutional provisions.

## VII.

The Texas capital punishment scheme is unconstitutional in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I, §~10, 14 and 19 of the Texas Constitution, because it does not provide for the possibility of a life sentence without parole, which virtually insures that the jury will impose a death sentence.

## VIII.

The Texas death penalty scheme is a mandatory one, in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I, §~10, 14 an 19 of the Texas Constitution.

## IX.

The Texas death penalty scheme is unconstitutional in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §~10, 14 and 19 of the Texas Constitution, because it does not define the various terms and phrases used in the three special issues in ways that would permit the jury to give full mitigating significance to those terms.

## X.

The procedure by which the death penalty is imposed in Texas denies the Defendant protection from cruel and unusual punishment. A close analysis of the statute reveals that the system for imposition of the death penalty permits arbitrary and unchecked discrimination amounting to a denial of equal protection under the law. Pursuant to the provisions of the Texas *statutes,* two persons could commit capital offenses under similar circumstances, yet one could receive the death penalty and the other life imprisonment. The special issue submission pursuant to Article 37.071 provides no real standard for the guidance of juries in death penalty cases. Turning to the issues themselves, one can readily see that they are couched in nebulous terms that defy a realistic answer.

There is no properly defined policy for assisting jurors with the life and death question. The only guidance with the Court gives the jury under Article 37.071, concerning capital punishment, is simply to submit these three rather meaningless issues, affirmative answers to which result in a mandatory death sentence. Consequently, the Defendant is not adequately protected from jurors acting arbitrarily and with caprice in arriving at the awesome decision between life and death.

## XI.

The Defendant has a right to be free from punishment imposed arbitrarily and capriciously in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution

3

of the United States and Article I §~13 and 19 of the Texas Constitution. The special issues procedure set out in Article 37.071 allows total discretion to a jury to make unfavorable findings against a defendant, and such findings may be based on any prejudices the jury may have, individually or as a whole.

## XII.

Article 37.071 is so vague and indefinite as to be incapable of interpretation by reasonable men and is therefore facially void as violating the Defendant's rights to due process and due course of law and fundamental fairness guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I §~10, 13 and 14 of the Texas Constitution.

## XIII.

The statutes upon which said prosecution is based are violative of the Eighth Amendment to the United States Constitution and Article I §~13 and 19 of the Texas Constitution in that the death penalty is not a deterrent to future homicides.

## XIV.

Article 37.071 is violative of the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution in that questions number one and three have already been answered by the jury in convicting the Defendant, and that whether there is a "probability" the Defendant would commit violent criminal acts in the future is a "vague" and indefinite inquiry because there is always some mathematical probability that any person might commit a violent act in the future and the statute provides no guidelines or other statutory limitations upon the factors to be considered by the jury in making that determination.

## XV.

Death by lethal injection is cruel and unusual punishment in violation of the Eights and Fourteenth Amendments of the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution.

## XVI.

Capital punishment per se is violative of the Eighth Amendment protection against cruel and unusual punishment and the Fourteenth Amendment right to due process of law. The death penalty cannot be justified as furthering any of the accepted purposes of punishment.

4

## XVII.

The Texas death penalty scheme does not provide for meaningful appellate review because it does not require a proportionality review in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution.

## XVIII.

Interpreting Article 35.13 of the Texas Code of Criminal Procedure to require peremptory challenges to be made prior to examination of the entire jury panel in capital cases only denies the right to effective assistance of counsel, a fair and impartial jury, due process, due course, and equal protection under the laws as guaranteed by the United States and Texas Constitutions.

## XIX.

The death penalty in Texas is, and for many years has been, administered in a manner that purposefully discriminates against members of the minority race in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §~10,13 and 19 of the Texas Constitution.

## XX.

The Texas death penalty scheme does not properly narrow the *class* of persons eligible for the ultimate punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I §~10, 13 and 19 of the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court set aside the indictment herein and dismiss said cause, and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

5

51

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the _____ day of __

_____ 8/16/06 _____, 2006.

Paul Johnson

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### ORDER ON DEFENDANT'S SECOND MOTION TO SET ASIDE THE
### INDICTMENT (UNCONSTITUTIONALITY OF STATUTE)

On this _____ day of _____, 2006, came on to be heard the Defendant's

Second Motion to Set Aside the Indictment (Unconstitutionality of Statute), and after due

consideration, the Court is of the opinion, and it is hereby ORDERED, that said Motion is:

_____ GRANTED

_____ DENIED, to which ruling
Defendant timely excepts.

_____
JUDGE PRESIDING

8-23-06

6

52

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR COMPLETE RECORDATION OF ALL PRE-TRIAL AND TRIAL PROCEEDINGS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PAUL JOHNSON, Attorney for the Accused, STEVEN L. LONG, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and moves this Court enter an order that a court reporter take down in shorthand or by any other reliable method, and record all of his pre-trial and trial proceedings. In support of his motion, Mr. Long states as follows:

1. This is a capital murder case. Mr. Long, an indigent, faces the death penalty.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and procedural safeguards than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed.2d 306 (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. In any capital case, there is a critical need for a complete record. This record should include, but not be limited to:

‣ a complete transcript of all pre-trial proceedings (with the sole exception of telephone calls reasonably necessary to the establishment of an agenda);

‣ all bench conferences;

   &#9656; all discussions of any sort concerning the case which are held in chambers with or without one or more of the counsel in the case;

   &#9656; all objections and rulings thereon;

   &#9656; all voir dire and the exercise of challenges for cause or peremptory challenges;

   &#9656; the race of every venire person called for jury duty or excused from jury duty for any reason;

   &#9656; the race of all witnesses;

   &#9656; all testimony of all witnesses, including a careful record of all exhibits relating to each witness, and the inclusion of copies of all exhibits proffered, submitted and admitted into evidence;

   &#9656; all arguments, both to the jury and to the trial court;

   &#9656; all contacts between the jury and any other person, except for contacts explicitly and carefully allowed by the trial court, at a hearing, after consultation with defense counsel;

   &#9656; any and all questions or written statements made by jurors;

   &#9656; anything else which may transpire in the course of this case.

      A.     <u>The need for a total record of the case.</u>

4. The State bears the burden of establishing a clear and complete record of criminal proceedings. Wright v. Lacy, 664 F. Supp. 1270, 1275 (D. Minn. 1987) (citing Golden v. Newsome, 755 F.2d 1478, 1479 (11th Cir. 1985)).

5. In light of the judge's role as arbiter of the accused's constitutional right to a fair trial, the duty to ensure the complete recordation of the case rests with the court. See United States v. Garner, 581 F.2d 481 (5th Cir. 1978). "The trial judge has a duty to see that the reporter makes a true, complete and accurate record of all proceedings." American Bar Association, Standards Relating to the Trial Judge Section 2.5 (1972) (emphasis supplied).

6. A record must be made of all portions of the proceedings needed to ensure an adequate defense or meaningful appeal.  See, e.g.,  Doby v. State, 557 So. 2d 533, 536 (Miss. 1990) (voir dire examination);  Suan v. State, 511 So. 2d 144, 147 (Miss. 1987) (bench and chambers conferences); Fountain v. State, 269 Ark. 454, 601 S.W. 2d 862 (Ark. 1980) (bench conferences); Sheffield v. State, 777 S.W. 2d 743, 744 (Tex. App. 1989) (exhibits); Bond v. State, 694 S.W. 2d 622, 623 (Tex. App. 9th Dist. 1985) (closing arguments); Harris v. State, 552 So. 2d 866, 873 (Ala. Crim. App. 1989) (coram nobis proceedings).

**B.  Transcription of Pre-trial proceedings.**

_____7.  In Roberts v. LaVallee, 389 U.S. 40, 88 S. Ct. 194, 19 L. Ed. 2d 41 (1967), the Supreme Court recognized the right of the indigent accused in any criminal case (not simply those where life is at stake) to a free copy of the preliminary hearing.  This transcript must be made prior to trial, to honor the accused's right to equal protection and to foster his right to effective assistance of counsel.

8.  As the Fifth Circuit recently explained in Tague v. Puckett, 874 F.2d 1013 (5th Cir. 1989):    A state must provide an indigent with a transcript of prior proceedings when needed for an effective defense. Id. at 1014 (quoting Britt v. North Carolina, 404 U.S. 226, 227, 92 S. Ct. 431, 433, 30 L. Ed. 2d 400 (1971)).  See also Fisher v. State, 532 So. 2d 992, 999 (Miss. 1988) ("[t]here can be no doubt . . . that the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense"); State v. Johnson, 261 La. 620, 260 So. 2d 645, 649 (1972); Carter v. State, 156 Ga. App. 633, 275 S.E.2d 716, 718 (1980) (transcript of prior trial); Harris v. State, 582 So. 2d 857 (Ala. Crim. App. 1987);  People v. Wells, 776 P.2d 386

(Colo. 1989);  Matter of Bullabough, 89 N.C. App. 171, 365 S.E.2d 642, 646 (N.C. App. 1988);  State v. Moss, 44 Ohio App. 3d 747, 748 (1988);  Billie v. State, 605 S.W.2d 558, 562 (Tex. Crim. App. 1980).

9.  Applying Roberts and Britt, many courts have ordered the transcription of pre-trial hearings in preparation for trial.  See, e.g., State v. Lewis, 215 N.W.2d 293, 295 (Iowa 1974);  Hunter v. District Court for the Twentieth Judicial District, 184 Colo. 238, 519 P.2d 941, 943 (Colo. 1974);  Hawkins v. State, 486 P.2d 743 (Okla. Crim. App. 1971);  People v. Montgomery, 18 N.Y. 2d 993, 224 N.E.2d 730 (1966);  Graham v. State, 296 Ark. 400, 757 S.W.2d 538, 541 (Ark. 1988);  Gardner v. State, 296 Ark. 41, 754 S.W.2d 518, 524 (Ark. 1988)

WHEREFORE, Mr. Long  moves that his motion be granted, and that all proceedings be recorded, both prior to and during the trial.

Respectfully submitted on this the __16__ day of __August__ 2006.

By: _____
Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

56

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _____, 2006.

_____
Paul Johnson

## **ORDER**

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

**57**

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR IDENTIFICATION
## HEARING OUT OF PRESENCE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Defendant in the above-styled and numbered cause and prior to the introduction of any testimony in the above styled and numbered cause, advises the Honorable Court that he objects to the introduction of any testimony from any witness in this cause concerning any purported identification of the Defendant by any witness until such time as the Court has conducted a hearing out of the presence of the jury to determine what pre-trial identification procedures were followed by the Police Department or by any of the witnesses to determine:

(1)     Whether or not the Defendant's right to counsel under the Sixth Amendment and the Fourteenth Amendment of the Constitution of the United States has in any way been violated, and

(2)     Whether or not any in-court identification by any witness has been in any way unfairly influenced by any police officer or anyone else in violation of the Due Process Clause of the Fourteenth Amendment.

Defendant would further object to the introduction of any hearsay evidence of identification by any witness from any third party witness who may have been present at any line-up proceeding or photograph identification proceeding on the basis that the evidence would be hearsay and on the basis as set out above.

Defendant further objects to any evidence of any identification of Defendant, either by photograph or in a line-up in that said evidence would not be admissible as it would have been obtained:

(1)   In violation of Defendant's right to counsel under the Sixth and Fourteenth Amendments of the Constitution of the United States of America, there being no waiver of counsel, and

(2)   The introduction of said testimony would be cumulative and would serve only to bolster a witness whose identification of this Defendant has not been impeached by showing contradictory testimony as to the identification of this Defendant.

WHEREFORE, Defendant PRAYS that this Honorable Court grant this Motion, excuse the jury, and hear evidence on any pre-trial identification procedure involving any of the identification witnesses and any police officer who has investigated same.   Defendant also respectfully requests leave of this Court to refer to this trial, the trial of this cause so as to avoid the necessity of repeating the foregoing objection in the presence of the jury.

                                    Respectfully submitted


                                    Paul Johnson
                                    311 No. Market St. Ste 300
                                    Dallas, Texas 75202-1846
                                    (214) 761-0707
                                    SBOT# 10778230
                                    ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the *16* day of _____, 2006.

Paul Johnson

**ORDER**

On this the _____ day of _____, 2006, prior to the introduction of any

testimony by the State of Texas, the foregoing motion was presented to the Court and the Court

hereby (granted) (denied), to which action of the Court the Defendant excepted.

JUDGE PRESIDING

69

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PAUL JOHNSON, Attorney for the Accused, STEVEN L. LONG , and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. R. Crim. P. Art. 28.01 and respectfully requests the Court to hold a hearing, in advance of the trial, on the admissibility of:

(a) statements made by the Defendant;

(b) acts that are tantamount to statements made by the Defendant;

(c) statements made in the presence of the Defendant which Defendant did not deny in response; or

(d) any physical items, statements or witnesses obtained as a result of same, or evidence/testimony discovered from same.  In support of this Motion, Defendant respectfully shows the Court as follows:

-1-

**61**

1. Defendant makes this request based upon the Constitutional provisions cited above and Tex. C. Crim. P. Art. 38.21, 38.22 and 38.23 and the requirements of *Jackson v. Denno*, 378 U.S. 368, as well as the doctrine of the fruit of the poison tree of *Wong Sun v. U.S.*, 371 U.S. 471 (1963).

2. Defendant further alleges that at the time of various conversations with certain police officers, the Defendant was either under arrest or substantially deprived of Defendant's freedom by the attendant conduct of the officers and the surrounding circumstances.

3. In addition, Defendant would show that said statements and/or acts were the fruit of illegal arrest and/or search and seizure, and are therefore inadmissible.

4. This motion is sought by the defendant as a continuing motion to suppress any and all statements or acts. It is sought to suppress evidence as the same exists at the time of the hearing on this motion to suppress, or at any time during trial when evidence appears, subsequent to the initial suppression hearing, to be the subject of this motion. Defendant moves this honorable court to consider this motion as continuing from the date of filing to the time this case is finally concluded.

5. Defendant further requests the Court to instruct the District Attorney and his assistants to ask no questions in the presence of the jury concerning:

(a) statements made by the Defendant;

-2-

62

(b) acts or the failure to act that may be considered tantamount to statements made by the Defendant; and

(c) statements made in the presence of Defendant which he did not deny in response, whether oral or written, or whether incriminative or exculpatory until hearing has been given the Defendant with findings of fact and conclusions of law made by this Court.

6. It is further urged, that this hearing be held prior to the empanelling of the jury. The jury would not then be needlessly idle during the time that this Motion would be heard outside the presence of the jury. This reasoning was endorsed by the Court of Criminal Appeals in *Martinez vs. State*, 437 S.W.2d 842 in a parallel suppression situation.

7. Furthermore, a hearing on this Motion in advance of trial will avoid misleading and potentially harmful *voir dire* regarding the prospective jurors' attitudes toward a confession that may found to be inadmissible.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Motion be in all things granted, and that a hearing be conducted prior to trial on the admissibility

-3-

of any statements by Defendant, at the conclusion of which, such statements by Defendant be found to be inadmissible.

Respectfully submitted on this the ___ day of _____ 2006.

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____, 2006.

_____
Paul Johnson

-4-

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR HEARING ON ADMISSIBILITY OF ANY STATEMENT BY DEFENDANT WHETHER WRITTEN OR ORAL OR EVIDENCE RESULTING FROM SAME

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, Paul Johnson Attorney, for the Accused, STEVEN L. LONG , and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. R. Crim. P. Art. 28.01 and respectfully requests the Court to hold a hearing, in advance of the trial, on the admissibility of:

(a) statements made by the Defendant;

(b) acts that are tantamount to statements made by the Defendant;

(c) statements made in the presence of the Defendant which Defendant did not deny in response; or

(d) any physical items, statements or witnesses obtained as a result of same, or evidence/testimony discovered from same.  In support of this Motion, Defendant respectfully shows the Court as follows:

-1-

65

1. Defendant makes this request based upon the Constitutional provisions cited above and Tex. C. Crim. P. Art. 38.21, 38.22 and 38.23 and the requirements of *Jackson v. Denno*, 378 U.S. 368, as well as the doctrine of the fruit of the poison tree of *Wong Sun v. United States*, 371 U.S. 471 (1963).

2. Defendant further alleges that at the time of various conversations with certain police officers, the Defendant was either under arrest or substantially deprived of Defendant's freedom by the attendant conduct of the officers and the surrounding circumstances.

3. In addition, Defendant would show that said statements and/or acts were the fruit of illegal arrest and/or search and seizure, and are therefore inadmissible.

4. This motion is sought by the defendant as a continuing motion to suppress any and all statements or acts.  It is sought to suppress evidence as the same exists at the time of the hearing on this motion to suppress, or at any time during trial when evidence appears, subsequent to the initial suppression hearing, to be the subject of this motion.  Defendant moves this honorable court to consider this motion as continuing from the date of filing to the time this case is finally concluded.

5. Defendant further requests the Court to instruct the District Attorney and his assistants to ask no questions in the presence of the jury concerning:

      (a)  statements made by the Defendant;

      (b)  acts or the failure to act that may be considered  tantamount to statements made by the Defendant; and

-2-

(c) statements made in the presence of Defendant which he did not deny in response, whether oral or written, or whether incriminating or exculpatory until hearing has been given the Defendant with findings of fact and conclusions of law made by this Court.

6. It is further urged, that this hearing be held prior to the empanelling of the jury. The jury would not then be needlessly idle during the time that this Motion would be heard outside the presence of the jury. This reasoning was endorsed by the Court of Criminal Appeals in *Martinez v. State*, 437 S.W.2d 842 in a parallel suppression situation.

7. Furthermore, a hearing on this Motion in advance of trial will avoid misleading and potentially harmful *voir dire* regarding the prospective jurors' attitudes toward a confession that may found to be inadmissible.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Motion be in all things granted, and that a hearing be conducted prior to trial on the admissibility of any statements by Defendant, at the conclusion of which, such statements by Defendant be found to be inadmissible.

Respectfully submitted on this the___ day of _____ 2006.

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

-3-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _____, 2006.

PAUL JOHNSON

## **ORDER**

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

-4-

68

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S OMNIBUS PRE-TRIAL MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant, by and through his attorney of record, Juan Sanchez, in the above-entitled and numbered cause and files this Omnibus Pretrial Motion requesting and pleading the following:

1.    Complete record.

Defendant requests that a complete record be made of the trial, including voir dire, all testimony, bench conferences, and argument of counsel

GRANTED _____   DENIED_____    AGREED_____   WITHDRAWN_____

2.    Arraignment.

Defendant requests arraignment outside the presence of the jury.

GRANTED _____   DENIED_____    AGREED_____   WITHDRAWN_____

3.    Shuffle.

Defendant requests that a shuffle of the jurors be made.

GRANTED _____   DENIED_____    AGREED_____   WITHDRAWN_____

4.    List of Witnesses

Defendant requests a list of witnesses by the State who will or may be called in the case-in-chief or rebuttal at the guilt/innocence stage or at the punishment stage of the trial.

GRANTED _____   DENIED_____    AGREED_____   WITHDRAWN_____

5.    Grand Jury Testimony.

Defendant requests that counsel for the Defendant be permitted to examine the testimony of each witness who testified before the Grand Jury at such time as they are passed for cross-examination, and to be advised, prior to trial, of the names of any persons who testified in regard to this case at the Grand Jury hearing.

GRANTED _____   DENIED_____      AGREED_____   WITHDRAWN_____

6.    Identification Hearing.

Defendant requests an identification hearing outside the presence and hearing of the jury.

GRANTED _____   DENIED_____      AGREED_____   WITHDRAWN_____

7.    Physical Evidence

Defendant requests a hearing outside the presence and hearing of the jury to determine the admissibility of any physical evidence recovered during the investigation of this case which the District Attorney intends to offer as evidence herein, and would request the Court to suppress this evidence if the Court determines that the evidence was obtained in violation of the United States Constitution or federal law or the Constitution or laws of the State of Texas.

GRANTED _____   DENIED_____      AGREED_____   WITHDRAWN_____

8.    Defendant's Statements.

Defendant requests a hearing outside the presence of the jury prior to the introduction of any statements allegedly made by the Defendant, either orally or in writing, to determine the voluntariness and admissibility of them, and requests disclosure of these statements prior to trial.

Jackson v. Denno

GRANTED _____   DENIED_____      AGREED_____   WITHDRAWN_____

9.    Exculpatory, Mitigating, or Evidence Inconsistent with Guilt.

Defendant requests the disclosure of any and all exculpatory, mitigating, and/or evidence

inconsistent with guilt to the Defendant in any way, which the prosecution or any law

enforcement agency may have in its possession or within its knowledge or which it has a duty to

inquire of concerning this defendant in this case.  Brady v. Maryland

GRANTED _____    DENIED_____    AGREED_____   WITHDRAWN_____

10.    Disclosure/Production of Physical Evidence.

Defendant requests the production and disclosure of all physical evidence or tangible

items, objects, and matters not the work product of the State which are or may be relevant to the

guilt or innocence of the accused, and which evidence will or may be offered by the State in the

trial of this cause.  Further, the Defendant requests the State to produce prior to trial any

laboratory reports or expert opinions pertaining to any test conducted at the request of the State

or any law enforcement agency on any physical evidence.

GRANTED _____    DENIED_____    AGREED_____   WITHDRAWN_____

11.    Expert Testimony

Defendant requests a 705(b) T.R.C.E. hearing on any Expert testifying for the State.

Defendant would also request notice prior to trial that an Expert will be used and on what the

Expert plans to testify to or about.

GRANTED _____    DENIED_____    AGREED_____   WITHDRAWN_____

12.    Evidence of Other Crimes.  404(b) T.R.C.E. and 38.37 T. C.C.P. (For children under 17)

Defendant requests a hearing outside the presence of the jury before any evidence of

extraneous transactions or evidence of other crimes, wrongs, or acts allegedly committed by the

Defendant, or reputation testimony, is offered by the State, and further requests notice prior to

trial, pursuant to Rule 404(b) T.R.C.E. and 38.37 T.C.C.P. (For children under 17).

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

13.   Witness's Statements.

Defendant requests that the State make available to counsel any and all written statements

made or adopted by a witness who testifies, and/or any statements used by a witness to refresh

his memory as to the events involved in the trial, at such time as the witness is passed by the

State for cross-examination.

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

14.   Criminal History of Witness

Defendant requests that the Court order the State to produce, prior to trial, any and all

criminal records of State's witnesses, as well as juvenile records, that they intend to call to the

stand in the trial of this case, and further, to determine and disclose any pending charges that the

witnesses may have.

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

15.   Influenced Testimony by Witness (Confidential Informants).

Defendant requests the Court t instruct and order the State, prior to trial, to reveal any

agreement entered into between the State and/or any law enforcement agency that could

conceivably influence the witness's testimony.  Defendant would further request that the State

reveal, whether implied or express, any and all promises, aid, assistance, reward, compensation,

or benefit conferred upon the witness that the witness could, would, or might receive if the

witness complies with the State and/or any law enforcement agency.  In the event that any

agreement has been entered into between the State and/or any law enforcement agency and the

witness, Defendant requests, prior to trial, a complete and exact disclosure of the agreement including all notes, documents, and records reflecting the agreement.

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

16.   Reputation.

Defendant requests a hearing outside the presence and hearing of the jury to consider the admissibility of all reputation evidence presented by the State before such testimony is offered before the jury.

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

17.   Impeachment of Defendant. 609(a) T.R.C.E.

Defendant moves the Court, pursuant to 609(a) T.R.C.E., to allow him to testify at the guilt/innocence stage of the trial free from impeachment by any or all of his prior convictions as well as any extraneous offenses that the State has given notice of intent to use for such purposes. Defendant would request a hearing outside the jury's presence in regard to this matter. _Theus v. State_.

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

18.   Punishment Notice. 37.07 T.C.C.P.

Defendant requests notice prior to trial of any evidence of bad acts or unadjudicated offenses allegedly committed by the Defendant, or for which he may be held criminally responsible, which the State intends to admit before the jury in the sentencing stage under 37.07 T.C.C.P. Further, Defendant requests the Court to have a hearing outside the jury's presence and hearing prior to the admission of any such evidence to rule upon its admissibility.

GRANTED _____   DENIED_____   AGREED_____   WITHDRAWN_____

19.   Agreements with third parties.

Defendant requests that the prosecutors in this cause be required to disclose any effort which they may have made in the past or any efforts that they may make in the future to enter into an agreement between themselves and any other persons to seek reduction in sentences or not to prosecute certain parties and certain other agreed or offered concessions by which such persons are rewarded for their cooperation with the prosecution in this case in seeking a conviction of the Defendant.

GRANTED _____   DENIED_____     AGREED_____   WITHDRAWN_____

20.   Records.

The Defendant requests that the Court order that all arrest records, juvenile records, and records of conviction in any Court, in any, of the Defendant be produced.

GRANTED _____   DENIED_____     AGREED_____   WITHDRAWN_____

21.   Reports.

The Defendant requests that the Court order produced all offense reports made by the police or any other law enforcement officials in connection with the case at bar, and/or to be made available pursuant for impeachment pursuant to Gaskin v. State.

GRANTED _____   DENIED_____     AGREED_____   WITHDRAWN_____

22.  ·  Laboratory reports.

The Defendant requests that the Court order the State to produce all laboratory reports or other scientific or forensic test results and fingerprint identification of the defendant or anyone else obtained at the scene of this crime or otherwise in any way connected with this prosecution.

GRANTED _____   DENIED_____     AGREED_____   WITHDRAWN_____

23.    Photographs.

The Defendant requests that the Court order the State to produce all photographs,

drawings, charts, or moving pictures, in any way connected with this case or the defendant

herein.

GRANTED _____    DENIED_____    AGREED_____    WITHDRAWN_____

24.    Expert witnesses.

The Defendant requests that the Court order the State to produce a list of the names,

addresses and telephone numbers of all expert witnesses the State intends to use in the

presentation of its case in chief on "guilt or innocence" and "punishment."

GRANTED _____    DENIED_____    AGREED_____    WITHDRAWN_____

25.    Disclosure of criminal record.

The Defendant requests that the Court order disclosure of criminal record for

impeachment papers of any of the State's witnesses.

GRANTED _____    DENIED_____    AGREED_____    WITHDRAWN_____

WHEREFORE, PREMISES CONSIDERED, Defendant prays that a hearing be

held on this Election and Motion and that the Court orders the State to produce the requested

items as designated above and permit the Defendant to inspect, copy, photograph, and conduct

any necessary tests on such items.  The items are not privileged and are within the propr scope of

discovery.

Defendant prays that this Election and Motion be in all things granted.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Motion in Limine- Extraneous Matters was forwarded to the Collin County District Attorney, or his duly appointed agent, on the ___ day of *8/10/06*, 2006.

Paul Johnson

## ORDER

ON this the ___ day of _____, 2006 came to be considered Defendant's election and Omnibus Pretrial Motion and the Court's rulings are put beside the corresponding request.

_____
JUDGE PRESIDING

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR DISCOVERY AND INSPECTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Defendant in the above-styles and numbered cause, by and through his attorney of record, Paul Johnson, under authority of Article 39.14 of the Texas Code of Criminal Procedure; Article 1, Section 10 of the Constitution of the State of Texas, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and presents this his Motion for Discovery and Inspection and respectfully moves this Honorable Court to order the State of Texas, by and through its prosecuting attorney, to produce the items designated in paragraph II herein, and permit the Defendant to inspect, copy, photograph, and/or conduct analytical tests on such items.

I.

In support of this Motion for Discovery and Inspection, the Defendant will show this Honorable Court the following:

1.     The items requested herein are in the possession of the State of Texas and under the custody and control of the State of Texas by and through its agents, including the Police and the District Attorney's Office and/or Institute of Forensic Science and are unavailable to this indigent Defendant.

2.     The items requested are not privileged and are within the proper scope of Article 39.14 V.A.C.C.P.

77

II.

The Defendant specifically requests that the Court order that the following items be produced:

1.     A copy of any and all written and/or oral statements made by the Defendant before or after Defendant's arrest or any notes reflecting on the same by any State's witness.

GRANTED/DENIED

2.     A copy of the Grand Jury Minutes and testimony in connection with the indictment of the Defendant in this cause.

GRANTED/DENIED

3.     All arrest records, police records, juvenile records,  and records of conviction in any Court, if any, of the Defendant.

GRANTED/DENIED

4.     All (a) arrest records, (b) juvenile records,(c) the existence of any criminal charges pending against any witness for the State, whether by complaint, information, or indictment,  in the courts of this or any other state of the United States, and (d) records of conviction in any Court, if any, of any witness to be used by the State to testify against the Defendant.

GRANTED/DENIED

5.     All offense reports made by the police or any other law enforcement officials in connection with the case at bar, and/or to be made available pursuant for impeachment pursuant to Gaskin v. State.

GRANTED/DENIED

6.    All written statements, notes, or files containing any paperwork made by any witness who will testify on behalf of the State.

GRANTED/DENIED

7.    All laboratory reports or other scientific or forensic test results and fingerprint identification of the defendant or anyone else obtained at the scene of this crime or otherwise in any way connected with this prosecution.

GRANTED/DENIED

8.    All magnetic tape recordings, records, or other devices for reproduction of sound containing the voice of the defendant or any potential witnesses in the case.

GRANTED/DENIED

9.    All photographs, drawings, charts, or moving pictures, in any way connected with this case or the defendant herein.

GRANTED/DENIED

10.    Disclosure of any effort which the State may have made in the past or any effort they may make in the future to enter into an agreement with any other person for leniency in any form or any concession or reward to a person for their cooperation or testimony in this case.

GRANTED/DENIED

11.    Any and all evidence that is exculpatory and/or mitigating as to punishment (witnesses favorable to Defendant on any issue) known to the State which is inconsistent with the guilt of the defendant pursuant to the doctrine of Brady v. Maryland as enunciated by the Supreme Court of the United States and/or which shows Defendant's mental condition at the time of the alleged offense or in any manner deals with Defendants competency to stand trial.

GRANTED/DENIED

73

III.

The Defendant will show the Court that unless this Motion is granted permitting the discovery of the items listed herein in advance of the trial, the Defendant would be denied compulsory process of witnesses who may have knowledge of this cause which may be available to the defense; that the defendant will be denied effective assistance of counsel and a fair and impartial trial in violation of the Sixth Amendment to the Constitution of the United States.

IV.

The Defendant would further show that all the items and information sought are in the possession of the State and cannot be examined prior to trial except by Court Order. The materiality of the items requested will be further shown at the hearing of this Motion. This Motion is made in good faith and not for the purpose of delay.

WHEREFORE, PREMISES CONSIDERED, the Defendant moves this Court to in all things grant this Motion and order the production of the items designated herein.

Respectfully submitted

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

**ORDER**

IT IS THEREFORE ORDERED that the District Attorney shall produce for inspection or copying by the Defendant's Counsel the preceding items described in each numbered paragraph or subparagraph of this Motion for Discovery.

_____
JUDGE PRESIDING

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR DISCOVERY AND INSPECTION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes the Defendant, STEVEN L. LONG, by and through Defendant's attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13, 19 and 29 of the Texas Constitution and by authority of Tex. C. Crim. P. Articles 28.01 and 39.14, and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963) [exculpatory material], *United States v. Augurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 342 (1976) [request not necessary for material evidence], *Giles v. Maryland*, 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed.2d 737 (1967) [evidence regarding complaining witness], Giglio v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed.2d. 104 (1972) [promise of leniency to state's witness], *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed.2d 490(1995), *U.S. v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed.2d 481 (1985) and *Wood v. Bartholomew*, 516 U.S. 1, 116 S. Ct. 7, 133 L. Ed.2d 1 (1995) and respectfully moves this Honorable Court to order the District Attorney to produce and/or allow defense counsel to inspect and copy and/or photograph the following items which are in the possession and/or within the knowledge of the State of Texas or an agency thereof:

82

## STATEMENTS BY DEFENDANT

1.     Any statement, including Grand Jury testimony, made by Defendant to the police, District Attorney, or any of his employees, any law enforcement officials, State agency, or any private citizen within the knowledge of the police or the District Attorney, or any of his employees, any law enforcement official or State agency, whether under arrest or not, or whether written or oral.

GRANTED _____                    DENIED _____

## EXCULPATORY/INCULPATORY STATEMENTS

2.     Any and all exculpatory or inculpatory written and/or oral statements, confessions or admissions (whether or not reduced to writing) presently in the possession, custody or under the control of the State, its agents, or agencies, made by the Defendant to any witness or person the State intends to call to testify in this cause of action.

GRANTED _____                    DENIED _____

## PHOTOGRAPHS

3.     Any photographs, drawings or charts made by the police, the District Attorney's Office or anyone else which were made with references to this case, which are in the possession of the police, District Attorney, law enforcement official, State agency or private citizen within the knowledge of the police, District Attorney, any of his employees, any law enforcement official, State agency, or employee or representative of same.

GRANTED _____                    DENIED _____

## SCENE PHOTOGRAPHS

4.     Any and all photographs of the scene that relate to the alleged offense, including but not limited to the interior and exterior of the premises, appurtenances thereto, the

curtilage, the street, or surrounding vicinity, including the names and addresses of the individuals who took said photographs and the date said photographs were taken.

GRANTED _____                           DENIED _____

## PHOTOGRAPHS OF COMPLAINANT

5.    Any and all photographs taken of the complainant by or at the request of, or within the knowledge of the police, District Attorney or any if his employees, any law enforcement official, State agency or agents thereof.

GRANTED _____                           DENIED _____

## PHOTOGRAPHS OF DEFENDANT

6.    Any and all photographs which may have been made of the Defendant while in custody and control of the police, District Attorney, their employees, or an agency of the State of Texas.

GRANTED _____                           DENIED _____

## IDENTIFICATION

7.    Information regarding the identification of the Defendant whether by photographs, films, line-ups, or show-ups as follows:

a.    Names and addresses of persons identifying the Defendant, specifying the crime for which the Defendant was identified and the corresponding date of the identification and the date of the alleged offense for which the Defendant was identified;

b.    Photographs used in any photographic identification;

c.    Identification and description of persons participating in any and all line-ups or show-ups with the Defendant;

84

d.   The names and their particular participation of all officers conducting any and all line-ups or show-ups in which the Defendant was placed for the purpose of identification wherein the Defendant was identified, the corresponding offense and date said offense for which Defendant was identified;

e.   The dates, times and locations of any and all line-ups or show-ups which were conducted wherein the Defendant was identified; and

f.   Any and all waivers of Defendant's right to have counsel present at any line-up or show-up which were signed by the Defendant.

GRANTED _____                    DENIED _____

## WITNESSES-INJURIES

8.    The names and addresses of any and all persons relating to or connected with the making of any notes, medical reports or other reports of the complainant's alleged injuries that allegedly resulted from this offense and this is to include any statements made by any complainant to, or in the presence of, any such person in connection with said injuries or the occurrence of the alleged offense.

GRANTED _____                    DENIED _____

## EXCULPATORY EVIDENCE

9.    Any and all favorable evidence which is in the possession, custody, or control of the State, or investigating body of the State of Texas, or any police department or any of their agencies including, but not limited to the following:

a.   Any prior inconsistent statements of witnesses for the State which are favorable to Defendant or are exculpatory in nature regarding any alleged offense by the Defendant;

b.   The names and addresses of any eyewitnesses to the offenses alleged which are favorable to the Defendant or are exculpatory in nature;

c.   Failure of any witness to identify Defendant either from photographs, films, or in person while in a line-up or show-up; and

85

d.   Results of any scientific tests conducted which are favorable to the Defendant or exculpatory in nature including, but not limited to ballistic tests or fingerprints at the site of the offense or on other tangible evidence.

GRANTED _____                    DENIED _____

## REAL EVIDENCE

10.   Any papers, objects or real evidence that is in the possession of the police, the District Attorney's Office or their employees or State agencies which may in any way be material to the guilt or innocence of this Defendant.

GRANTED _____                    DENIED _____

## SCIENTIFIC TEST RESULTS

11.   Any written report of any test that is a biological, microscopic or scientific analysis of any items which was conducted pursuant to the investigation of the instant case regardless of whether said test was prepared or conducted at the request of any law enforcement official, by the State of Texas or its agents, State agency or any private citizen, within the knowledge of the police or the District Attorney, or any of his employees, together with any descriptions, test dates, and any determinations as well as the name and address of the individuals who conducted such tests or analysis.

GRANTED _____                    DENIED _____

## TEST ON COMPLAINANT

12.   The results of any and all blood tests, electrocardiogram, chemical, or other medical or biological tests run on complainant and/or deceased by whomsoever made.

GRANTED _____                    DENIED _____

## EVIDENCE OF SCENE

13.    Any and all tests, records, diagrams, charts, or written reports relating to the actual scene of the alleged offense, e.g., diagrams of where any complainant was or where any person was allegedly located at the time of the alleged offense.

GRANTED _____                                DENIED _____

## POLICE INFORMATION

14.    The names, rank and badge number of all police officers of the State or County law enforcement agents and all employees of the Criminal District Attorney who participated in any way in the investigation of this case, whether at the scene, the police station, county jail or elsewhere.

GRANTED _____                                DENIED _____

## FINGERPRINT

15.    Any and all fingerprint impressions obtained by whatever means and process from the scene of the alleged offense in question, found as a result of the investigation of this offense, whether such fingerprints were fingerprints of the Defendant or were fingerprints from some other person or persons known or unknown.

GRANTED _____                                DENIED _____

## CONVICTION RECORD

16.    The criminal arrest and/or conviction record of the complainant, together with any juvenile record complainant may have.

GRANTED _____                                DENIED _____

## WEAPON

17.   The weapon or weapons which the State of Texas alleged or may allege was or were used in the commission of the alleged offense.

GRANTED _____                    DENIED _____

## EVIDENCE FROM DEFENDANT

18.   Any and all objects of evidence the State intends to use which was found on Defendant's person at the time of his apprehension or arrest.

GRANTED _____                    DENIED _____

19.   At least five (5) days prior to trial the "pen packets" which will be relied on in order to enhance this Defendant, if any.  This is necessary so that defense counsel may have adequate time to review these documents which will be the basis of the State's case on punishment, if any.

As a basis for this Motion, the Defendant states that the objects requested are vital and material to the issue of the Defendant's innocence for the following reasons:

That the items requested are material to the issue of Defendant's attorney to render effective counsel as is guaranteed to the Defendant by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America and by Sections 10, 19 and 29 of Article I of the Constitution of the State of Texas and are needed in order that the Defendant may be informed of the nature and causes of the accusation against Defendant.

20.   Should this Court deny the Defendant access to material that is in the possession or control of the State of Texas or its agencies, Movant asks that the Court review such evidence, in camera. *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed.2d 40 (1987).  During that inspection, Movant requests the Court to determine if such material contains exculpatory evidence, (*Brady, supra,*), evidence that could be used to impeach evidence

88

or witnesses of the state (*Bagley, supra,*), evidence that lead this Defendant to seek out other evidence (*Wood*, supra.).

21. Movant further requests that any evidence that the Defendant is denied access to and that is viewed, in camera, by the Court, be made a part of the record of this case for the purpose of appellate review and that the Defendant be given such additional hearings as are necessary to preserve that error in the Court's denial of this motion.

This Motion is made in good faith and not for the purpose of delay.

WHEREFORE PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court order:

(1) The District Attorney to permit the Defendant to inspect, copy or photograph the above set out tangible objects prior to the trial in this cause which are in the possession or subject to the control of the State of Texas or any agency thereof pursuant to Articles 39.14, 28.01, 1.03, 1.04 and 1.05 of the Texas Code of Criminal Procedure, Article I, Sections 10 and 19 of the Constitution of the State of Texas and pursuant to the Defendant's right to due process of the law, the effective assistance of Counsel as guaranteed to Defendant by the Fourteenth and Sixth Amendments to the Constitution of the United States respectively;

(2) That a timely hearing on said Motion be had;

(3) That an, *in camera* inspection of all evidence sought to be discovered but withheld by the prosecution be had;

(4) That an inquiry be made of the prosecutors and agents of the State of Texas to determine the extent of compliance with any discovery that is Ordered by this Honorable Court; and

(5) That any and all evidence requested but not Ordered subject to discovery by this Honorable Court be included in the Appellate record of this cause for review by the Appellate Court; and for any and all further relief to which this Court may deem the Defendant entitled.

WHEREFORE, PREMISES CONSIDERED, Movant prays that upon hearing hereof the court order that the jury be instructed as requested herein and that the Accused have such other and further relief to which he may show himself to be just entitled.

Respectfully submitted on this the 16 day of April, 2006.

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____, 2006.

Respectfully submitted,

_____
Paul Johnson

90

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR DISCOVERY, PRODUCTION AND RULE 702/705 HEARING

(Motion asking the Court to require the State to provide to the Court and Counsel for the
Defendant, documentation that is relevant to the Court's determination of the admissibility of
opinion testimony, request for a pre-trial hearing to determine the admissibility of that testimony
and the underlying facts or data upon which any opinion is based and other relief)
*****************************************

COMES NOW, PAUL JOHNSON, attorney for the Defendant, STEVEN L. LONG, and
pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1,
sections 3, 10, 13, 15 & 19 of the Texas Constitution, and further pursuant to Tex. R. Crim.P.
39.14 (a) and (b) and Tex.R.Evid. 104, 702, 703 and 705.  In support thereof, the Defendant
would show the following:

1.  The Defendant has been indicted by the Dallas County grand jury for the offense of
capital murder;

2.  The State is seeking the death penalty;

3.  The Defendant anticipates that during trial of this case the State will call one or more
witnesses who will offer opinions that are either scientific in nature or are based upon
personal training or experience.  The admissibility of such opinions are governed by
Tex.R Evid. 702, 703, 705 and *Daubert v. Merrell Dow*, 113 S.Ct. 2786 (1993), *Kumho
Tire Company v. Carmichael*, 119 S.Ct. 1167 (1999),  *Kelly v. State*, 824 S.W.2d 568,
573 (Tex.Crim.App. 1992) and *Jordan v. State* 928 S.W.2d 550 (Tex.Crim.App.1996)
and *Nenno v. State*, 970 S.W. 2d 549 (Tex. Crim. App. 1998) (overruled in part on other
grounds).

4.  The proponent of scientific evidence bears the burden of demonstrating by clear and
convincing evidence that the evidence is reliable.  This is accomplished by showing: (1)

1

the validity of the underlying scientific theory; (2) the validity of the technique applying the theory and (3) proper application of the technique on the occasion in question. *Kelly, supra.*

Prior to the offer of scientific evidence, the trial court must conduct a hearing outside the presence of the jury to determine whether the proponent has established all three criteria. This pre-admission determination is required whether the science at issue is novel or well established. *Jackson v. State*, 17 S.W. 3rd 664 (Tex.Crim.App. 2000).

5.  The United States Supreme Court has said:

> Faced with a proffer of expert scientific testimony, then, the trial
> judge must determine at the outset, pursuant to Rule 104(a),
> whether the expert is proposing to testify to (1) scientific knowledge
> that (2) will assist the trier of fact to understand or determine a fact
> in issue.  This entails a preliminary assessment of the reasoning or
> methodology underlying the testimony is scientifically valid and of
> whether that reasoning or methodology properly can be applied to
> the facts in issue.  *Daubert., supra* at page 482;

6.  This Court must find that the opinion evidence is not only reliable, but that it is relevant under Tex. R. Evid. 401, that it meets the standard set in Rule 702 and that it "assists the trier of fact [in] understanding the evidence [in] determining a fact in issue." If the trial judge finds the proposed expert testimony meets both the Rule 401 and Rule 702 requirements, then the judge must perform a Rule 403 analysis to determine whether the evidence should, in fact, be presented to the jury. *Morales v State*, 32 S.W. 3d 862 (Tex.Crim.App. 2000) at page 6;

This Court is the "gatekeeper" that must screen expert testimony for scientific reliability. Evidentiary reliability is based on scientific validity. *Jordan, supra at page 6;*

2

7. The Texas Court of Criminal Appeals, identified the following factors that the trial judge could consider in performing its "gatekeeper function:"

(a) the extent to which the underlying scientific theory and technique are accepted, as valid, by the relevant scientific community, if such a community can be ascertained;

(b) the qualifications of the expert(s) testifying;

(c) the existence of literature supporting or rejecting the underlying scientific theory and technique; specifically, this Court should be provided citations to empirical studies supporting the opinion and citations to articles or chapters in scientific treatises or journals supporting the opinion.

(d) the potential rate of error of the technique;

(e) the availability of other experts to test and evaluate the technique;

(f) the clarity with which the underlying scientific theory and technique can be explained to the court;

(g) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly,* at page 573.

8. Should the Court determine that the testimony to be offered is in a field of science that is based upon experience and training, as opposed to a scientific method, the Court's review of the reliability of the science is even more important and the Court must find:

(a) whether the field of expertise is a legitimate one;

(b) whether the subject matter of the expert's testimony is within the scope of that field; and

(c) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field.  *Nenno,* at page 561;

3

9. The Court of Criminal Appeals in *Nenno v. State*, 970 S.W.2s 549 (Tex. Crim.App.1998) said that not only were the criteria described in *Kelly, supra* (peer review, rate of error, etc.) not categorically ruled out when reviewing the reliability of opinions based on "soft science" but in addition, the Court listed the following **additional** criteria for the trial court to consider:

> (i) interviews conducted by the witness while in the field in which he is to express and opinion;

> (ii) the facts of the cases in which he conducted those interviews;

> (iii) statistical research performed in the field in which the witness is to express an opinion. Specifically, the witness should provide to the Court data collected by the witness or those under his or her supervision and provide the data collection instruments that were used, the data collection procedures and the statistical analysis applied to the date in forming the opinion to be proffered.

10. The United States Supreme Court has held that the reliability standard announced in *Daubert* applies to all expert testimony regardless of whether it is scientific expert testimony or clinical opinion expert testimony. *Kumho Tire Company v. Carmichael*, 119 S.Ct. 1167 (1999). All of the material that is sought by this motion is relevant to reliability of opinions based upon "soft or hard science" testimony. The Supreme Court of Texas has held that *Daubert*, and therefore *Robinson*, applies to all expert testimony–"Whether the expert would opine on economic valuation, **advertising psychology** (emphasis added), or engineering, application of the *Daubert* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers." *Gammill v. Jack Williams Chevrolet*, Inc., 972 S.W. 2d 713, 725 (Tex. 1998) (affirmed in part and reversed in part).

11. So as to aid the Court in its "gatekeeping" function to determine the reliability of the offered opinion, the State should be required to provide the Court, at least _____ days prior to trial, the following:

> (a) a concise and specific statement of each expert opinion the State intends to introduce at trial;

4

94

(b) the name, address and curriculum vita of each witness the State intends to qualify as an exert in order to present such testimony;

(c) all  literature supporting or rejecting the underlying theory, methodology or technique used or relied upon by each State witness that will provide opinion testimony at trial.  This information will allow the Court to determine if the relevant theory, methodology or technique has been subjected to review by the witnesses's peers and if the purported science is generally accepted in the field.

(d) the results of any tests that have been performed on the science or methodology relied upon by each State witness that will provide opinion testimony at trial.  This information will allow the Court to determine if the basis for the opinion has been or can be subjected to testing to determine its reliability;

(e) the names of each person about whom a witness to be called by the state has expressed an opinion in the past and the opinion expressed as to each by the State's witness.  This information will allow the Court to determine if a known or potential rate of error exists;

(f) a listing of any standards that control the technique or methodology used to arrive at any opinion that may be expressed at trial.  This will allow the Court to determine if there is an accepted  protocol for gathering relevant information and interpreting that information in arriving at an opinion;

(g)  the qualifications that allow the witnesses to form and express the opinions. This will allow the Court to determine if the opinion of the witness is based on scientific knowledge and training or is merely an opinion based on personal belief, bias or prejudice.

(h)  a list of each interview conducted by the witness while in the field in which he is to express and opinion;

(i)  the facts in each of the cases in which he conducted those interviews;

(j) statistical research performed in the field in which the witness is to express an opinion with supporting documentation as outlined in Paragraph 9 (iii) above.

5

12.  The Nenno Court, at page 562, said:

> "To the extent that a fact finder could decide that the absence of peer review casts doubt on the credibility of the testimony, such affects the weight of the evidence rather than its admissibility"

If some of the described material goes to the weight that a jury should give the testimony, as is stated in Nenno, supra at page 562, then it should be provided to the Defendant as impeachment material under *U.S. v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481.  In addition and as provided for in Tex. C.Crim. Proc. Art. 39.14(a) counsel for the Defendant should be given the opportunity to not only examine, but to copy any documents that are provided  to the Court pursuant to its Order.


WHEREFORE, PREMISES CONSIDERED, Counsel for the Defendant prays that upon hearing of this motion the Court:

(1) Order the State to provide to the Court those documents that have been identified in this motion as being important to the Court's "gatekeeping" function;

(2) Order that counsel for the Defendant be allowed to photocopy each of the documents, if any, produced by the State in support of the witness's opinion testimony;

(3) Order that this matter be set for a pre-trial hearing at which the State be required to establish, under the cited authority, the reliability of any opinions that are to be offered at trial;

(4) Order that this hearing be set sufficiently in advance of trial so that the accused can arrange for necessary rebuttal testimony should any of the State's opinion testimony be found to be scientifically reliable and helpful to the trier of fact; and

6

96

(5)  Such other and further relief to which the Defendant, or his counsel, may show himself to be entitled.

Respectfully submitted on this the ___ day of ___, 2006.

_____

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *MOTION FOR DISCOVERY,*

*PRODUCTION AND RULE 702/705 HEARING* was personally delivered to the Dallas

County District Attorney's Office on this day, _____, 2006.

_____

Paul Johnson

## ORDER

On this ─── day of_____ , 2006, came on to be considered *MOTION FOR*

*DISCOVERY, PRODUCTION AND RULE 702/705 HEARING* and it is ORDERED

that the same is set for hearing at__o'clock _.m. on the ____ day of____, 2006.

_____
JUDGE PRESIDING

7

**97**

CAUSE  NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR EVIDENCE FAVORABLE TO THE DEFENDANT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN L. LONG, the Defendant in the above styled and numbered cause, prior to trial, and moves the Court to order the prosecution to disclose to counsel for the Defendant all exculpatory evidence or evidence favorable to the Defendant that the prosecution may have in its possession and for cause would show the Court as follows:

1.      Material or information in the hands of the prosecution is discoverable "where the evidence is material to guilt or to punishment." It includes evidence "favorable to the accused either direct or impeaching". *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *Giles v. Maryland,* 386 U.S. 66, 76 (1967); *Giglio v. United States,* 405 U.S. 150 (1972).

The obligation to disclose favorable evidence to the accused is that of the government and failure to disclose such information is not excused merely because the prosecutor did not have actual knowledge of such favorable evidence. *United States v. Auten,* 632 F. 2d 478 (5th Cir. 1980); *Rhinebart v. Rhay,* 440 F. 2d 718, 725 (9th Cir 1971), *cert. denied,* 404 U.S. 825.

"The duty of disclosure affects not only the prosecutor, but the government as a whole, including it's investigative agencies." *United States v. Bryant,* 132 U.S. App. D.C. 132, 439 F.2d 642, 658 (D.C. Cir. 1971).

Further, the Texas Disciplinary Rules of Professional Conduct require a prosecutor in a criminal case to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense, and, in connection

1

98

with sentencing, disclose to the defense and the tribunal all unprivileged mitigating information
known to the prosecutor...." TEX. DISCIPLINARY R. PROF. CONDUCT 3.09(d).

2.    The Defendant specifically requests the Court to order the prosecution to provide defense
counsel with any information or material that is exculpatory, favorable to the accused or which act
to impeach any State's witness, including but not limited to the following:

a. Prior statements by a witness that are inconsistent with later statements; *Levin v. Clark*,
133 U.S. App. D.C. 6, 408 F.2d 1209 (D.C. Cir. 1967);

b. Facts or evidence indicating the unreliability of any State's witness; *Mesarosh v. United
States*, 352 U.S. 1 (1956);

c. Evidence or information indicating the untruthfulness of a State's witness; *Napue v.
Illinois*, 360 U.S. 264 (1959);

d. Instructions to a State's witness not to speak with defense counsel or to do so only in the
presence of the State's counsel; *Gregory v. United States*, 125 U.S. App. D.C. 140, 369
F.2d 185 (D.C. Cir. 1966).

e. Evidence regarding any prior false accusations made by the Complainant on behalf of
the Complainant against the Defendant that the Defendant or some other person had made
threats against the Complainant or engaged in assaultive conduct against the Complainant.
*Thomas v. State*, 669 S.W.2d 420 (Tex. App.—Houston [1st Dist.] 1984, *pet.ref'd.*);
*Rushton v. State*, 695 S.W.2d 591(Tex. App.—Corpus Christi 1985,no pet.); *Polvado v.
State*, 689 S.W.2d 945 (Tex. App.--Houston [14th Dist.] 1985, *pet. ref'd.*); *Davis v. Alaska*,
415 U.S. 308, 318 (1984); TEX. R. EVID. 412(b).

f. Any evidence which would tend to show that the Defendant did not
commit the offense alleged in this cause.

g. Any evidence which would indicate that a person other than the
Defendant committed or is criminally responsible for the offense alleged.

2

99

3.     The Defendant further moves the court to require the prosecution to reveal its entire file to the court, and to order the prosecution to determine if any prosecution witness has knowledge of any evidence that is possibly exculpatory or favorable to the Defendant and that such information be provided to the court for review in camera for the court's determination as to what evidence therein is exculpatory or favorable to the Defendant and that the court order a copy of the aforesaid material not deemed to be exculpatory to be sealed for further review by an appellate court, if necessary.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that his motion be in all things granted.

Respectfully Submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Defendant's Request for Notice of Extraneous Offenses was served upon the attorney for the State on ___8/16/06___, 2006.

Paul Johnson

**ORDER**

On this day came on to be heard the foregoing Defendant's Motion For Evidence Favorable To The Defendant. The Court, having considered the motion and argument of counsel, it is hereby

_____.

SIGNED this _____ day of _____, 2006.

_____
JUDGE PRESIDING

3

100

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR DISCOVERY OF EXTRANEOUS
## OFFENSES AT GUILT AND PUNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, the Defendant in the above-styled and numbered cause, by and through his attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 15 and 19 of the Texas Constitution files this Motion for Discovery of Extraneous Offenses pursuant to Texas Rules of Criminal Evidence Rule 404(b) and Tex. C. Crim. P.37.07 §3(g), V.A.C.C.P., and as grounds therefore would show the Court as follows:

1. The Defendant is aware that evidence of a Defendant's character or trait of character is not generally admissible. However, if the State intends to offer evidence of other crimes, wrongs, or acts the Defendant is entitled to reasonable notice in advance of trial.

The Defendant hereby makes Defendant's timely request pursuant to the 404(b) Texas Rules of Criminal Evidence and requests that the State give notice of the time, date and place of any alleged crime, wrong or act, as well as the name and current address of any and alleged complainant and any evidence of those crimes, wrongs, or acts the State intends to offer against the Defendant.

2. If the Defendant does not have sufficient time in order to investigate any and all extraneous and/or unadjudicated acts of misconduct that the State may present at trial in this cause, Defendant will be denied his rights in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I, §10, §13, §15 and §19 of the Texas Constitution and the lack of or late notice of such evidence will result in an unfair surprise to this Defendant and his counsel.

3. In order for Defendant's counsel to effectively investigate and defend against any and all extraneous and/or unadjudicated acts of misconduct that the State may present at trial in this cause, counsel is entitled to discovery of such acts with sufficient notice. Granting Defendant's request for discovery will avoid any last minute investigation which may hinder Defendant's counsel from properly conducting voir dire and other responsibilities during trial. In this way, Defendant may be afforded effective assistance of counsel. This notice is required at punishment pursuant to 37.07 §3(g), V.A.C.C.P.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Court require the State to disclose any and all extraneous and/or unadjudicated acts of misconduct to Defendant's counsel immediately or as ordered by this Court.

Respectfully submitted on this the _16_ day of _August_, 2006.


By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the *16* day

of _____, 2006.

Respectfully submitted,

Paul Johnson

F05-52918

| | | |
|---|---|---|
| THE STATE OF TEXAS KELLY PRUITT | § | IN THE 265th JUDICIAL |
| 2006 AUG -2 AM 9: 16 | § | |
| V. | § | DISTRICT COURT OF |
| DISTRICT CLERK | § | |
| STEVEN LYNN LONG. AS CO., TEXAS | § | DALLAS COUNTY, TEXAS |
| DEPUTY | § | |

## NOTICE OF EXTRANEOUS OFFENSES

Pursuant to **TEX. R. CRIM. EVID. 404(B), TEX. R. CRIM. EVID. 609(f) and CODE CRIM. PRO. ART. 37.07, Sec. 3(g),** I am hereby giving you notice that during presentation of State's case in chief, or during punishment, in the above-captioned and numbered criminal actions, the following crimes, prior convictions, wrongs or acts, other than the act alleged in the indictment, may be introduced or used to impeach the above-named defendant:

| NATURE OF ACT | DATE COMMITTED (on or about) | VICTIM | LOCATION |
|---|---|---|---|
| Assault | continuous course of conduct from 1989–1994 | Olga Gonzalez | Dallas Co., TX |
| Sexual Assault | continuous course of conduct from 1989–1994 | Olga Gonzalez | Dallas Co., TX |
| AA/DW | 1994 | Olga Gonzalez | Dallas Co., TX |
| Attempted Murder | May 1, 1991 | Jose Gonzalez | Dallas Co., TX |
| Agg. Sex. Assault | December 1991 | Amber Chewning | Henderson Co., TX |
| Numerous violations of TDC rules & regulations *(as reflected in Exhibit A which is attached to this Notice and incorporated by reference for all purposes)* | continuous course of conduct from 1995–2002 | *(see Exhibit A)* | Correctional Facilities of TDC |
| Participation in prison riot | Jan. 27, 1997 | Correctional Officers of the French Robertson Unit, TDC | Jones Co., TX |
| Indecency with Child by Exposure | continuous course of conduct from 2002-2004 | Breana Long | Dallas Co., TX |
| Masturbation in Presence of | 2002-2004 | Breana Long | Dallas Co., TX |

104

| | | | |
|---|---|---|---|
| Deviant Sexual Acts | continuous course of conduct from 2003-2004 | Melanie Chapa | Dallas Co., TX |
| Assault | 2003-2004 | Melanie Chapa | Dallas Co., TX |
| Criminal Mischief $500 | Sept. 13, 2004 | J. Young | Dallas Co., TX |
| Possession & Use of Marijuana, Cocaine & Methamphetamine | continous course of conduct from 2003-2005 | State of Texas | Dallas Co., TX |
| Indecent Exposure/Masturbating | July 2005 | DSO Detention Officer Jennings | Dallas Co., TX |

Respectfully submitted,

_____
ANDY BEACH
Assistant District Attorney
Dallas County, Texas
SBN: 01944900

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Notice of Extraneous Offenses* has been [x] hand-delivered, [ ] mailed, [ ] faxed, to the Attorney for the Defendant on this the 4th day of August, 2006.

_____
Andy Beach
Assistant District Attorney

### Steven Lynn Long Prison Timeline

| Date | Offense | Punishment | Comment |
|---|---|---|---|
| 1/9/95 | | | • Date Long was sentenced *(Revocation)* |
| 6/20/95 | | | • TDC completes Long's Initial Assessment<br> ○ Scores a 97 I.Q.<br> ○ E.A. Score not tested<br> ○ Tattoos:<br> • "Leo" on stomach<br> • A tree on upper right chest<br> • Skull on upper right arm<br> • Skull on upper left arm |
| 6/30/95 | | | • Long alleges that 2 inmates, Danny Cortez #632032 and Richard Madrigal #548534, approached him and asked Long where he was from<br> • Long said that he was from "D-town"<br> • The 2 inmates allegedly stated that he was going to ride with them<br> • Long stated that he would not do the 2 inmates and the 2 inmates allegedly pushed Long back into his cell and assaulted him<br> • Long had to pay them $10<br> • Long does not fear for his safety due to the alleged assailants are locked up at this date<br> • Long requests a transfer to another unit for personal reasons only |
| 11/12/95 | • Solicited Assistance from Employee | • Rec – 45 days<br>• Commissary – 45 days<br>• Property – 45 days | • Long solicited assistance from Officer Knight to violate an employee rule in that Long asked Officer Knight to bring him something from the Free World |
| 11/29/95 | • Failed to turn out for work assignment | • Rec – 30 days<br>• Commissary 30 days<br>• Extra duty hours – 30 | • Long failed to turn out for work assignment in the garment factory without a legitimate reason |
| 11/30/95 | | | • Long alleges that he has been threatened by inmates: Jerry Failing #669997, Spurgeon Allen #597627, Stacy Bivins #674080, and Terry Teague #522523<br> • Inmates have labeled him a snitch<br> • Long alleges to have paid $45 in commissary to Failing to avoid being hurt<br> • Long states that he is still being threatened by Allen and that his Nike personal shoes, radio and various commissary items have been stolen<br> • Long is requesting a transfer |
| 12/8/95 | | | • Long states that Michael Garcia's cousin is at the Wallace Unit and knows that Long testified against Garcia<br> • Long has been told that he "would be taken care of" if he made medium custody |
| 12/12/95 | | | • UCC recommends a transfer of Long due to a life in danger situation<br> • Long has been labeled a "snitch" because he provided info to the administration regarding an employee bringing tobacco into the inmates |
| 1/8/96 | | | • Long is transferred from the Wallace Unit to the Robertson Unit |
| 1/14/96 | • Possessed Contraband | • Rec – 30 days<br>• Commissary – 10 days<br>• Property – 10 days | • Long possess contraband being 3 towels and 3 blankets which is in excess of the amount authorized<br> • Authorized amount is 1 towel and 2 blankets |
| 1/29/96 | | | • Inter-Office Communications from Milholland to Isenberg |

STATE'S EXHIBIT
NOT / EXTR
"A"
PENGAD·Bayonne, N. J.

002309

| Date | | | |
|---|---|---|---|
| | | | • Long stated that he is supposed to be in protective custody status<br>• Long states that he was raped while in transit status last Saturday<br>• Long verbalized thoughts of harming himself in order to get attention brought to his situation |
| 2/14/96 | | | • An interview was conducted regarding Long's previous allegations that his life was in danger<br>• Long states both verbally and in writing that he no longer feels that his life is in danger at this time |
| 4/4/96 | • Self – Inflicted Injury | • Rec – 30 days<br>• Commissary – 30 days<br>• Property – 30 days | • Long gave himself a self-inflicted injury by cutting his wrist with a razor blade<br>• Long made statement to guards, "I can't take it anymore" |
| 7/1/96 | | | • Long files a grievance because he feels his life has been threatened by his cell-mate<br>• When long informed the guard on duty the guard told Long to fight his cell-mate but Long doesn't want to fight |
| 7/12/96 | | | • Long alleges that he was verbally threatened for his life by his cell-mate Kavin Matthews #627200 a few weeks ago when Long was first assigned to close custody<br>• Long said no other confrontation has occurred between cell-mate but he still feels threatened by him<br>• Long further alleges that while assigned to seven building he had problems with his cell-mate and in order to get moved he had cu himself on the wrist |
| 7/28/96 | • Failure to Obey Order | • Rec – 15 days<br>• Commissary – 15 days | • Officer Sprowls ordered Long to step back from his cell door and stop yelling and Long failed to obey the order |
| 8/8/96 | | | • Long is interviewed concerning allegations that his life was in jeopardy<br>• Long states that Michael Garcia #606123 threatened him in the world but has not threatened him while they have been incarcerated<br>• Long does not want Garcia to know that Long has made these statements against him and when Long discovers that Garcia would have to interviewed over this matter Long says, "Never mind then" |
| 8/14/96 | • Failure to Obey Order | • Rec – 15 days<br>• Commissary – 20 days | • Officer Templeton ordered Long to stop yelling through his cell door and long failed to obey the order |
| 8/18/96 | • Failure to Obey Order | • Rec – 30 days<br>• Commissary – 30 days<br>• Property – 30 days | • Long was ordered by CO III E. Gonzalez to remove the towel covering his window and said inmate failed to obey the order |
| 9/30/96 | | | • Inter-Office Communications from G. Isenburg to Capt. Dalton:<br>   • Long has been moved almost evertime he has a "problem" with his cellie. If he does not get a cell move, then he claims that his life is in danger |
| 11/9/96 | | | • Long alleges that he is in fear of his life because of an inmate who Long testified against in State Court lives in his wing, Michael Garcia #606123<br>• Long states that he has also turned into a homosexual and feels that he will be abused by other unknown inmates once they find out<br>• Long states that he does not belong to any gang affiliations, however, he feels that disruptive gourps known as Bario Aztecas and Texas Syndicate will try to hurt him because he has turned into a homosexual |

002310

| | | | |
|---|---|---|---|
| | | | ○ No action recommended due to lack of evidence to substantiate Long's allegations |
| 12/13/96 | ○ Unauthorized Commodity Exchange | | • Long allowed cellmate, Rickey Little #646615, to possess his state I.D. for the purpose of false indentification to go to outside rec while Little was on rec restriction |
| 1/27/97 | ○ Riot | ○ 2 years TDCJ | • Long with 6 other inmates participated in a riot in which they struck correctional officers of the French Robertson Unit<br>○ Assaulted numerous correctional staff and created a danger of damage to property and injury to persons and substantially obstructed the performance of unit operations<br>○ CO Wendell Stanley was struck over the head by a chair<br>• Chemical agents had to be administered to gain control of the situation |
| 2/25/97 | | | • Long is interviewed due to his allegations of Life Endangerment<br>• Long alleges that inmate Michael Garcia has made several threats toward him for testifying against Garcia in State Court on the Attempted Murder Charge<br>○ Long claims that Garcia is a member of the Texas Syndicate and Long has also received threats from other T.S. members<br>• No action was taken due to a lack of substantial evidence |
| 4/8/97 | | | • Long requests for Protective Custody<br>• Long stated that he is a homosexual and has recently disclosed this fact to several inmates and because of this several inmates have begun to threaten him with physical violence<br>• No status change recommended due to lack of evidence |
| 4/22/97 | | | • Robertson Unit Administration requests that Long be reviewed for placement in safekeeping status<br>• Long states that he is having problems with the inmates in population due to his being a homosexual<br>  • Long alleges that inmates are wanting him to perform sexual favors in return for protection<br>  ○ Long states that he has been sexually active while incarcerated and he will continue to participate in homosexual activity but is afraid of being forced into unconsented sexual activities by stronger inmates |
| 3/12/98 | ○ Masturbating | ○ Rec – 15 days<br>○ Commissary – 30 days | • Long was standing on his cell table masturbating towards Officer Snyder<br>• Long says that Officer Snyder wrote the case because they had a confrontation in the past because Long called her a tramp. Long says that he is gay and Officer Snyder just doesn't like him |
| 12/14/97 | ○ Possessed Tobacco | ○ Rec – 15 days<br>○ Commissary – 30 days<br>○ Property – 30 days | • Officer Wilkinson was conducing a routine cell search and found Long to be in possession of 3 hand rolled cigarettes wrapped up in celophane and 4 pieces of lead wrapped up in toilet paper<br>• Items were bundled up with a rubberband located in Long's foot locker |
| 4/22/98 | ○ Masturbating | ○ Rec – 15 days<br>○ Commissary – 15 days<br>○ Reprimand<br>○ Loss of 9 Days Good | • Officer T. Bristow was doing a security check and Long was standing at his cell door masturbating<br>• Long was ordered to stop 3 times and Long refused and responded, "I'm sorry Ms. Bristow, just let me finish |

002311

| Date | | Time | |
|---|---|---|---|
| | | | and I'll never jack off on you again." |
| | | | • Inmate E. Pedraza #645145 and Inmate E. Deleon #615444 made official statements claiming this offense never occurred |
| | | | • Long says that this never happened because he doesn't jack off on women because he is gay |
| 4/20/99 | • Failed to Obey Order | • Reprimand | • Long was ordered by Officer D. Ybanez to accept and move into 7H-30T cell, and Long failed to obey the order because he claimed to have problems on that pod |
| 5/13/99 | • Masturbating in Public | • Rec – 30 days<br>• Commissary – 30 days<br>• Reprimand | • Long was sitting in shower masturbating as he looked at OFC. Marlin<br>• Long begged OFC. Marlin to not give him a case and to forgive him |
| 2/14/00 | • Masturbating in Public | • Rec – 45 days<br>• Commissary – 45 days<br>• Cell Restriction – 45 days | • Long was inside the shower stall with the door wide open with his hand wrapped around his penis masturbating<br>• Long was ordered to stop and close the door<br>• Long complied with the order and closed the door |
| 2/17/00 | • Possess Contraband | • Commissary – 15 days<br>• Cell Restriction – 15 days | • Officer Villarreal did a search of Long's cell due to the smell of tobacco filtering through and found rolling paper under his mattress<br>• Also in Long's locker box was an unauthorized container of jelly and velcro tape |
| 6/3/00 | • Present in Unauthorized Area | • Rec – 30 days<br>• Commissary – 30 days<br>• Cell Restriction – 30 days<br>• Loss of 10 days Good Time | • While conducting a security check in H-Wing, Officer Pena observed Long out of place by being in the dayroom<br>• Long did not have permission to be in such place |
| 7/21/00 | • Failure to Obey Order | • Cell Restriction – 15 days | • Long was ordered by Officer Duran to stay at his assigned work area and Long failed to obey the order |
| 8/24/00 | • Failure to Obey Order | • Rec – 15 days<br>• Commissary – 15 days<br>• Reprimand | • Long was ordered by Officer Klinker to go into his cell and Long failed to obey the order |
| 8/27/00 | • Masturbating in Public | • Rec – 30 days<br>• Commissary – 30 days<br>• Cell Restriction – 30 days<br>• Loss of 30 days good time | • Officer Sanchez was in the picket and saw Long masturbating with the shower door open<br>• Long made no attempt to close the door and continued to stroke his erected penis looking directly at the picket<br>• When Officer Sanchez asked why he would do such a thing, Long replied, "I had nothing else better to do"<br>• When Long was informed that he was going to written up he replied, "that is your business" |
| 8/30/00 | • Present in Unauthorized Area | • Rec – 28 days<br>• Commissary – 28 days<br>• Cell Restriction – 30 days<br>• Loss of 20 days good time | • When the rover signaled the picket to open the section for rack-up time, Long runs into Cell K-106 and takes about 2-3 minutes before walking out<br>• Long states, "I did not go into that cell" |
| 8/30/00 | • Improper Dress | • Cell Restriction – 30 days | • Long violated a posted TDCJ rule requiring that all offenders should be properly dressed in the dayroom and Long was only dressed in boxer shorts<br>• When Long was told that he needed proper dress he said, "NO" and went back to his place in front of the TV |
| 8/31/00 | • Masturbating in Pubic | • Rec – 30 days<br>• Commissary – 30 days<br>• Cell Restriction – 30 days<br>• Loss of 60 days good | • Long was in the showers and did masturbate in public with the intent to gratify the sexual desire of himself |

002312

| | | time | |
|---|---|---|---|
| 8/31/00 | | | • Long indicated that he feared for his safety due to members of the Texas Syndicate had knowledge of his father's decision in disassociating himself from the Texas Syndicate and since Long was his son, he would be physically assaulted for his father's decision<br>○ Long indicated that he is a "bi-sexual" and does participate in "homosexual activities" on this unit and according to this the T.S. does not want any thing to do with him *(will not let him become a prospect nor an esquina for them)* because he told them about the type of acts he is involved in so they consider him "trash"<br>• Long indicated that he "rides" with a black for protection because there are more blacks on this farm |
| 1/2/01 | • Failure to Obey Orders | • Rec – 30 days | • Long was ordered by Officer Mijares to sit down several times in the dayroom and Long failed to obey the order<br>• Long did violate a posted TDCJ rule requiring that no offender shall be standing up in the dayroom but shall remain sitting down at all times |
| 12/24/01 | • Masturbating in Public | • Commissary – 30 days<br>• Cell Restriction – 30 days | • Long was in shower area and was looking directly at Officer Nobles in the control picket<br>• Long was stroking his penis when Officer Nobles motioned Long to come to the d-space<br>• Officer Nobles asked for Long's I.D. card and Long then said, "Is it not big enough for you"<br>• Long then apologized by saying, "I am sorry, I knew better."<br>• Long later claimed that his cell-mate who allegedly is his half brother, Steve Ramon #731419, was the one masturbating and had given the officer Long's I.D. card instead of his own |
| 1/12/02 | • Present in Unauthorized Area | • Commissary – 30 days<br>• Loss of 30 days good time | • Long was in the dayroom when in fact Long had no authorization to be in such a place<br>• Long is not allowed due to his cell restriction until 1/29 |
| 11/17/02 | | | • An anonymous I-60 was received that stated that Long is going to die by Saturday, his dad is an ex – TS gang member<br>• Investigation concluded that there was no evidence to substantiate Long's life being in danger |
| 5/24/02 | • Unauthorized Commodity Transfer | • Rec – 15 Days<br>• Commissary – 15 days | • Long made an unauthorized commodity transfer with an unknown offender by receiving an extra piece of cake |
| 5/30/02 | • Tampered with Restraints | • Received an I-210<br>• Loss of 60 days good time | • Long was transported to Montford Unit.  Upon arrival it was noticed that Long had defeated the restraints systems required for his transport<br>• Long had removed his lock box, padlock and belly belt<br>• Transfer officers from the Daniels Unit assure that lock was in place and properly locked before transfer |
| 11/22/02 | | | • Long is discharged |

002313

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

**DEFENDANT'S WRITTEN OBJECTION TO ADMISSIBILITY OF EXTRANEOUS OFFENSES, REQUEST FOR PROCEDURAL DETERMINATION BY TRIAL COURT WITH FINDINGS OF FACTS AND CONCLUSIONS OF LAW AND FOR LIMITING INSTRUCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes STEVEN L. LONG, the Defendant herein, by and through Counsel, and files this his Written Objection to Admissibility of Extraneous Offenses, Request for Procedural Determination by Trial Court with Findings of Fact and Conclusions of Law, and for Limiting Instruction, and in support thereof would show the Court as follows:

## I.

The State of Texas is seeking the admission of extraneous offenses. Such evidence may be admissible where it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Texas Rules of Evidence. "Evidence which is not relevant is inadmissible." Rule 402, Texas Rules of Evidence. Although evidence may be deemed relevant, such evidence is still not admissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Rule 403, Texas Rules of Evidence.

## II.

The Defendant objects to the admission of such extraneous offense evidence under Rules 401, 402, 403, and 404(b) and requests the State prove such evidence has relevance other than

**111**

proving the character of the Defendant, or suggesting that he acted in conformance with a criminal propensity. *Montgomery vs. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991).

## III.

If the Court overrules the objection in paragraph II above, the Defendant hereby requests that the Court make findings of fact and conclusions of law supporting its determination that the evidence (1) establishes an elemental fact, (2) establishes an evidentiary fact that inferentially leads to an elemental fact, (3) rebuts a defensive theory, or (4) has some other logical relevance, and that the need for the evidence outweighs reasons for exclusion under Rule 403. See *Montgomery*, supra.

## IV.

Further, the Defendant requests that the Court properly instruct the jury to confine and limit its consideration of such evidence to the purpose articulated by the State, under the authority of Rule 105, Texas Rules of Evidence.

## V.

In support of the foregoing, Defendant makes these requests to preserve his rights to the effective assistance of counsel, due process and due course of law, in accordance with the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10, 13 and 19 of the Texas Constitution, and Articles 1.04, 1.05, and 1.051 of the Texas Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, Defendant requests this Honorable Court grant to Defendant all relief requested herein and such other relief to which he may be entitled.

Respectfully Submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

112

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Defendant's Written Objection to Admissibility of Extraneous Offenses, Request for Procedural Determination by Trial Court with Findings of Facts and Conclusions of Law and for Limiting Instruction was served upon the attorney for the State on _____8/16/06_____, 2006.

Paul Johnson

CAUSE  NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

**ORDER ON DEFENDANT'S WRITTEN OBJECTION TO ADMISSIBILITY OF EXTRANEOUS OFFENSES, REQUEST FOR PROCEDURAL DETERMINATION BY TRIAL COURT WITH FINDINGS OF FACTS AND CONCLUSIONS OF LAW AND FOR LIMITING INSTRUCTION**

BE IT REMEMBERED, that on the _____ day of _____, 2006, came to be considered the above and foregoing Motion by Defendant.  After consideration of the same, it is the opinion of the Court that Defendant's Motion be:

_____   GRANTED as to paragraph(s) _____.

_____   DENIED as to paragraph(s) _____, to which ruling the Defendant timely excepts.

_____   SET FOR HEARING ON THE _____ day of _____, 200___, at _____ o'clock _____.

SIGNED on _____, 2006.


_____
JUDGE PRESIDING

114

F05-52918

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 265th JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| STEVEN LYNN LONG | § | DALLAS COUNTY, TEXAS |

### SUPPLEMENTAL NOTICE OF EXTRANEOUS OFFENSES

Pursuant to **TEX. R. CRIM. EVID. 404(B), TEX. R. CRIM. EVID. 609(f)** and **CODE CRIM. PRO. ART. 37.07, Sec. 3(g)**, I am hereby giving you notice that during presentation of State's case in chief, or during punishment, in the above-captioned and numbered criminal actions, the following crimes, prior convictions, wrongs or acts, other than the act alleged in the indictment, may be introduced or used to impeach the above-named defendant:

| NATURE OF ACT | DATE COMMITTED (on or about) | VICTIM | LOCATION |
|---|---|---|---|
| Assault | December 1991 | Theresa West | Henderson Co., TX |
| Indecent Exposure | August 22, 2006 | Kacey Robinson | Dallas Co., TX |
| Sexual and emotional abuse | March-May 2004 | Amber Holmes | Dallas Co., TX |



Respectfully submitted,

ANDY BEACH
Assistant District Attorney
Dallas County, Texas
SBN: 01944900

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Notice of Extraneous Offenses* has been [X] hand-delivered, [ ] mailed, [●] faxed, to the Attorney for the Defendant on this the 27th day of September, 2006.

Andy Beach
Assistant District Attorney

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR DISCOVERY
## OF COPIES OF AND/OR FOR ACCESS TO DNA TEST MATERIALS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN L. LONG, Defendant, by and through one of his attorneys of record, Paul Johnson, and moves this Court to order the State to produce copies of and/or permit access to test material(s) to the Defendant's trial attorney, Honorable Paul Johnson, and/or expert, if required, created and/or in the possession of any investigatory agency of the State of Texas or Collin County, saying more particularly as follows:

### I.

The state collected physical and biological evidence directly from the deceased complaining witness and Defendant, and through a "sexual assault kit" from the deceased complaining witness. The evidence collected may include:

a) vaginal swabs and smears of the complaining witness;

b) debris under fingernail collection;

c) pubic hair combings collection;

d) pulled pubic hair collection;

e) pulled head hair collection;

f) blood samples of the complaining witness;

g) the complaining witness' outer clothing and samples therefrom;

116

h) the complaining witness' panties, and samples therefrom and;

i) Defendant's blood sample, and hair, and or other relevant material unknown to the Defense.

## II.

The State has given information to the Defense that they may use DNA type evidence to prove up any issue in the case at bar. Therefore, in order to provide effective assistance of counsel; Defense Counsels on behalf of Defendant moves this Honorable Court to additionally order the State to provide the following evidence pursuant to this discovery request:

1. All notes, records, recordings, photographs, autoradiograms, electropherograms, data sheets, electronic data files, or any other means of documenting or recording any and all results, conclusions, or other data related to the analysis, reporting and release of evidence by the Cell Mark Laboratory used by the State for its analysis.

2. Any and all data related to the testing performed in this case, to include chain of custody and all data generated from the point of initial examination through the generation of the final report, including but not limited to:

   1. photographic quality copies of slot blots, yield gels, product gels, PM/DQA1 typing strips, and D1S80 gels;

   2. copies of all original, unedited image files generated during STR testing;

   3. paper copies of all original, unedited electropherograms and data tables generated during STR testing;

   4. paper copies of all edited image files and electropherograms generated during STR testing;

   5. and electronic files for all raw data and all original and edited image filed including graphic images, electropherograms, and all other files generated during testing performed by the Cell Mark Laboratory.

3. Any and all validation studies performed by the Cell Mark Laboratory as they pertain to AmpFlSTR Profiler Plus and Cofiler DNA analysis and any data

underlying the validation studies conducted which purport to validate the use

of the AmpFISTR Profiler and Cofiler testing kit systems;

4. The Cell Mark Laboratory protocol as followed by all analysts involved with

the DNA testing of evidence in this case with notations as to any variation

from this protocol in the testing performed in this case;

5. Copies of the database(s) utilized in the calculation of frequencies for the

genetic sequences detected in this case;

6. Any and all proficiency tests run by any and all analysts involved in the

analysis or handling of evidence in this case, to establish their ability to

perform DNA typing in an accurate and correct manner;

7. All documentation of any and all incidences of contamination detected on

DNA testing performed 30 days prior to the analysis of evidence in this case

through 30 days after completion of analysis of the evidence and corrective

measures implemented to prevent the same. And that they also provide

corrective action logs (or any such logs that include unexplained results or

anomalies) for the same period of time;

8. A copy of a Resume or Curriculum Vitae for any and all analysts involved in

the analysis of evidence in this case;

9. The AmpFISTR Profiler Plus and Cofiler profiles of all individuals who

collected, handled or analyzed evidence or prepared reagents used in the

analysis of said evidence in this case;

10. The number of cases in which the laboratory has utilized AmpFISTR profiler Plus and Cofiler DNA testing, how many of these have resulted in testimony with regard to the results of this typing, and case citations for these cases.

11. Copies of and expert access to these materials are essential to the defense in that proper analysis is necessary to determine the existence of exculpatory evidence.

### III.

Defendant moves this court to order the state to preserve and not destroy all evidence and material tested by the state and/or made the basis of any conclusion of any state expert witness for any future testing by a third party expert witness or independent laboratory.

### IV.

WHEREFORE, Defendant moves this Court to order the State to provide copies of and/or to permit Defendant's expert to have access to the referenced materials and information.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

119

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _August_, 2006.

_____

Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____

JUDGE PRESIDING

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR LIST OF STATE'S WITNESSES PRIOR TO TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above styled and numbered cause, by and through his attorneys of record, and respectfully moves the Court for an order directing the attorney for the prosecution to furnish the Defendant, prior to trial, a list containing the names, addresses and telephone numbers of all persons the prosecution intends to call as witnesses in the trial of this cause. In support of this request the Defendant would show the court as follows:

1. In preparing the present information/indictment/complaint, the attorney representing the State failed to endorse thereon the names of the witnesses on whose testimony the allegations contained in the information/indictment/complaint are based;

2. Article 20.20 of the Texas Code of Criminal Procedure requires the attorney who prepares an indictment for the State to endorse thereon the names of the witnesses on whose testimony the indictment is based;

3. "Notice of the State's witnesses shall be given upon request." *Young vs. State*, 547 S.W.2d 23, 27 (Tex. Crim. App. 1977); *Martinez vs. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993). This court has authority to compel the State's attorney to endorse the names of such witnesses upon the information/indictment/complaint or to compel the State's attorney to furnish Defendant with a list of said witnesses. *Jenkins v. State*, 468 S.W.2d 432 (Tex. Crim. App. 1971); *Mullins v. State*, 425 S.W.2d 354 (Tex. Crim. App. 1968);

4. To deny Defendant the opportunity to investigate the factual allegations against him by denying access to those persons who have information concerning those allegations would be a denial of due process of law and a denial of Defendant's right to effective assistance of counsel as guaranteed

121

by the 5th, 6th and 14th Amendments of the United States Constitution, Article 1, Sections 10 and 19 of the Texas Constitution and Article 1.04 of the Texas Code of Criminal Procedure;

   5.  Effective confrontation and cross examination of witnesses against the Defendant can be accomplished only if the identity of these witnesses is known in advance of trial, thus enabling the Defendant to conduct the out of court investigation necessary to obtain information which might shed light on the witnesses' credibility. Failure to grant the Defendant's motion would deprive him of rights secured by the 6th and 14th Amendments to the United States Constitution, Article 1, Section 10 of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure.

   WHEREFORE, the Defendant prays that the court order the attorney for the prosecution, prior to trial, to furnish defense counsel with a list of the names, addresses and telephone numbers of all persons who the prosecution intends to call as witnesses in this case.

            Respectfully Submitted,

          Paul Johnson
          311 N. Market St. Ste 300
          Dallas, Texas 75202-1846
          (214) 761-0707
          SBOT# 10778230
          ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

   This is to certify that a true and correct copy of the foregoing Motion for List of States Witnesses Prior to Trial was served upon the attorney for the State on _____8/16/06_____, 2006.

          Paul Johnson

122

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION FOR LIST OF STATE'S WITNESSES PRIOR TO TRIAL

On this date came the foregoing Motion For List of State's Witnesses Prior to Trial was heard, and the Court, having considered the motion and argument of counsel, it is hereby:

_____ GRANTED, and the attorney for the State is ordered to furnish the attorney for the Defendant with a list of the names, addresses and telephone numbers of the state's witnesses on or before the _____ day of _____, 2006.

_____ DENIED, to which the Defendant duly excepts.

SIGNED on _____, 2006.

_____
JUDGE PRESIDING

123

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR LIST OF WITNESSES TO BE CALLED
## OR USED BY THE STATE AT THE PUNISHMENT STAGE

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the Defendant in the above-entitled and numbered cause and respectfully moves this Court to require the State to list witnesses to be used at the punishment stage, if any, of the trial in this cause and in support of this Motion would show the Court the following:

I.

The Defendant is entitled to discovery of witnesses expected to be used by the State at the punishment stage of this trial under holdings of the Texas Court of Criminal appeals. Young v. State, 547 S.W.2d 23 (Tex. Crim. App. 1977); Haogland v. State, 494 S.W.2d 186; and Choice v. State, Tex. Crim. App. 628 S.W.3d 475 (1982), which states in relevant part:

> "Upon proper motions, witnesses should be disclosed if they will be used by the State at any stage of the trial. Young v. State, 547 S.W.2d 23 (Tex. Crim. App. 1977)." (Page 478)

II.

The Defendant would further show the Court that to properly voir dire the jury panel, he needs the names of all witnesses, including witnesses to be called during the punishment phase, if any, of this trial.

124

III.

The Defendant further has a special need for a list of all the witnesses prior to trial so that he may prepare for trial, prepare to cross-examine the witnesses against him and otherwise receive a fair trial and render effective assistance of counsel.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully moves the Court to grant this Motion and require the District Attorney to provide the Defendant with a list of witnesses to be called during the punishment stage, if any, of this trial, and that such a list be provided to the Defendant prior to voir dire of the jury panel.

Respectfully submitted

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## ORDER

IT IS THEREFORE ORDERED that said Motion is hereby (granted) (denied) to which ruling of the Court the Defendant excepts.

Signed and entered on this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

125

CAUSE  NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 265TH  JUDICIAL |
| VS | § | DISTRICT COURT OF |
| STEVEN L. LONG | § | DALLAS  COUNTY, TEXAS |

**MOTION TO INTRODUCE THE DEFENDANT'S STATEMENT OF ALLOCUTION, FREE FROM CROSS-EXAMINATION BY THE STATE, REFLECTING HIS REMORSE FOR THE OFFENSE.**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, STEVEN L. LONG, by Counsel, and offers the following in support of this Motion:**

> THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 '13 AND '19 OF THE TEXAS CONSTITUTION REQUIRE THAT A CAPITAL DEFENDANT SHOULD HAVE THE RIGHT TO PRESENT A PERSONAL STATEMENT OF ALLOCUTION TO THE JURY, FREE FROM CROSS-EXAMINATION FROM THE STATE.  THIS IS PARTICULARLY SO IN TEXAS BECAUSE THE MITIGATION ISSUE IS NOT SUBJECT TO REVIEW FOR SUFFICIENCY OR PROPORTIONALITY, AND REMORSE IS A STATUTORILY RECOGNIZED MITIGATING FACTOR.

**Summary of Argument**

Increasing numbers of jurisdictions within the United States are recognizing a capital defendant's right to testify during the punishment phase of trial, free from cross-examination by the prosecution.  These courts have recognized that the right to allocution is required by the eighth and fourteenth amendments of the Constitution, and in some instances by common law or statutory law.  They have also recognized that statements of allocution are peculiar to capital trials, and that they present issues which are wholly collateral to the merits of the charges against the defendant and more general mitigation.

Texas has recognized that there may be constitutional or statutory exceptions to the general rule that a defendant who takes the stand can be cross-examined by the prosecution. It is submitted that subsequent development of constitutional guarantees and statutory law as applicable to capital defendants have extended the exceptional circumstances applicable to defendants in capital trials, and have fortified the right to allocution in Texas. Based on the sound reasoning of courts in other jurisdictions in the United States, and the development of capital law in Texas, the defendant should be permitted to present a statement of allocution to the jury.

### Constitutional requirement of a right to allocution

It is well settled that due process protects rights are "deeply rooted in this Nation's history and tradition", *Moore v City of East Cleveland*, 431 U.S. 494, 503 (finding that reasonable doubt requirement was protected by due process because firmly entrenched in history of Anglo-American trial). Few rights are more deeply rooted in the traditions of Anglo-American justice than the right of allocution; see *McGautha v California,* 402 U.S. 183, 217 (1971) (right is "of immemorial origin"), *United States v Behrens,* 375 U.S. 162 (1963) (right is "ancient law"), *DeAngelo v Schneider,* 757 P.2d 1355, 1356 (Or. 1988) ([a]llocution...is of such ancientness that it is difficult, if not impossible, to discover its historical origin").

While the Supreme Court has yet to rule that denial of allocution violates due process, several lower federal courts have held that it does, on the basis that the right is so firmly rooted in the history and traditions of the Anglo-American trial, see *Boardman v Estelle,* 957 F.2d 1523, 1523-30 (9th Cir. 1992) ("[W]e hold that allocution is a right guaranteed by the due process clause of the Constitution", limited to circumstances in which the defendant affirmatively requests opportunity to allocute).

Because allocution is mitigating in nature, its denial also violates the prohibition of cruel and unusual punishment in both the United States and the Texas constitution. See *Young*, 853 P.2d at 376 (noting that the Supreme Court has not decided whether denial of allocution violates post-*Furman* Eighth Amendment safeguards and concluding that "[f]oreclosing the jury's opportunity to hear [the defendant's] personal statement prevented the jury from making the individualized sentencing determination required by the Eighth Amendment"). In *United States v Myers*, 150 F.3d 459, 461-62 (5th Cir. 1988) the court recognized defendant's personal statement to sentencer as opportunity for mitigation of punishment.

**Recognition of the limited nature of allocution**

This concept of limited allocution has been recognized by courts outside Texas; In *State v Cazez*, 875 S.W.2d 253, 266 (Tenn. 1994) the court agreed with the analysis of the Third Circuit in *Lesko v Lehman*, 925 F.2d 1527 (3rd Cir. 1991) *cert. Denied*, which held that the fifth amendment right against self-compelled incrimination and the eighth amendment right of a capital defendant to place mitigating evidence before a jury were very much in play in a request to permit only limited or no cross-examination of a defendant. The Tennessee court, while recognizing the general rule that a testifying defendant could be cross-examined on any matter relevant to the issue in the case, nevertheless found that:

> "...[W]e are also cognizant of the gravity of a capital sentencing proceeding and the constitutional mandate to ensure that all relevant mitigating circumstances be presented to a sentencing body. We thus conclude that, only in the limited sphere of a death penalty sentencing hearing, a capital defendant's testimony regarding mitigating factors that are wholly collateral to the merits of the charges against him does not operate as a complete waiver of the privilege against self-incrimination. Accordingly, a defendant has a right to limited cross-examination if he or she wishes to testify about only collateral mitigating circumstances at the penalty phase of a capital trial. We reiterate, however, that even in

128

such special situations, a defendant may be completely and thoroughly cross-examined about all testimony given or fairly raised by that defendant on direct examination".

*State v Cazez*, supra.

The concept of 'partial waiver' is particularly appropriate in the circumstances of this particular type of testimony in the special arena of a capital trial.

### The Position in Texas

Defendant recognizes the following general rule as stated in *Huffman v State*, 746 S.W.2d 212 (Tex.Crim.App. 1988), and submits that the underlined exception should be applicable in this case:

> "It is well established that a defendant who takes the stand as a witness on the trial on the merits may be cross-examined and impeached in the same manner as any other witnesses. McCormick and Ray, Texas Law of Evidence, Vol. I, Chapter 8, § 643, p. 487; 1 Branch's Ann. P. C., 2nd Ed., § 168, p. 170, and cases there cited; 62 Tex. Jur. 2d, Witnesses, § 205, p. 130; Shelton v. State, 397 S. W. 2d 850 (Tex. Cr. App. 1965); Cerda v. State, 33 Tex. Cr. R. 458, 26 S. W. 992 (1894). See also Davis v. State, 478 S. W. 2d 958 (Tex. Cr. App. 1972); Dunlap v. State, 440 S. W. 2d 672 (Tex. Cr. App. 1969). Thus such a defendant may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter and treated in every respect as any other witness except when there are overriding constitutional and statutory provisions. Taylor v. State, 612 S. W. 2d 566 (Tex. Cr. App. 1981); Williams v. State, 607 S. W. 2d 577 (Tex. Cr. App. 1980); Myre v. State, 545 S. W. 2d 820 (Tex. Cr. App. 1977); Sensabaugh v. State, 426 S. W. 2d 224 (Tex. Cr. App. 1968). See also Valerio v. State, 494 S. W. 2d 892 (Tex. Cr. App. 1973); Black v. State , 440 S. W. 2d 668 (Tex. Cr. App. 1968); Gonzales v. State, 160 Tex. Cr. R. 548, 272 S. W. 2d 524 (1954) "

> Once the defendant testifies "the interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination". *Brown v United States,* 356 U.S.148 (1958). See also, *Fitzpatrick v United States*, 178 U.S. 304 (1900)."

**New constitutional and statutory provisions, since Huffman, override the State's right to cross-examine the capital defendant's statement in mitigation.**

When *Huffman,* supra was decided,  in 1988, the "constitutional and statutory provisions" that might override the State's right to cross-examine a testifying defendant were different from and less than they are today.  After the Supreme Court's decisions in *Penry v Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) and *Penry v Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9(2001), and the Texas legislature's passage of the statute granting the capital defendant independent consideration of his proffered mitigating evidence in the special issue, the Texas capital defendant gained a greater interest, guaranteed by constitutional and statutory provisions, in presenting his personal statement in mitigation, free from cross-examination by the state.

The State's interest in cross-examination; to contradict, impeach, discredit and attack a witness and to make him give evidence against himself, did not change.  The regard for the function of the courts to ascertain the truth did not change.  Only the capital defendant's interest was enlarged and secured by the Eighth Amendment decisions of the supreme court affecting the scope of his mitigation rights and the actions of the Texas legislature codifying those rights. Therefore it has become the capital defendant's interest in placing mitigation before the jury that "prevail(ed) in the balance of considerations" determining the scope of his right to testify in mitigation without being cross-examined by the prosecutor.  The *Huffman* balancing of interests may remain the same, but the scales have shifted.

It is clear that with regard to this very unusual type of 'testimony' offered in capital trials, which the defendant seeks to present, the State does not have a justifiable interest in cross-examination in its usual sense.  Defendant's statement of remorse to the jury is simply not the kind of historical fact that cross-examination is designed to test, in a search for the truth.  Even the additional use of cross-examination, as a tool for revealing a witness's motive to lie, is but a corollary to the search for the truth.  It has no legitimate role in a capital trial punishment phase, when the defendant is making a statement to the jury revealing his remorse, his character, his apology, the feelings in his heart, the effect on him of the crime he committed, and perhaps a plea for mercy.  The defendant has a right to offer his statement to the jury as a basis for finding a life sentence more appropriate than death.

New factor of Victim Impact/Character evidence, admissible after *Huffman*, gives a capital defendant greater interest in making personal statement of allocution, free from cross-examination.

The Supreme Court's decision in *Payne v Tennessee*, 501 U.S. 808 (1991) followed by the decision in *Mosley v State*, 983 S.W.2d 249 (Tex.Crim.App. 1998) *Cert. Denied, 526 U.S. 1070* (1999), established the admissibility of victim impact/victim character evidence at the punishment phase of a capital trial.  Although defendant argues the irrationality and the unfairness of this rule, the reality of trial is that this jury will hear from the victim's survivors how they miss their loved one and what harm they have suffered from her loss. (Although in theory the victim's survivors are subject to cross-examination, even the Supreme Court recognized that the 'prudent' defense lawyer will likely refrain from such action; the witnesses are in effect free from cross-examination).  Defendant wants to tell the jury that he is sorry and he wants to apologize for the harm he has caused. He should be able to do so without being attacked on "cross-examination" by the prosecutors.

At the time *Huffman* was decided in 1988, balancing the interests of the State and the defendants, the defendant had no secured constitutional and statutory right to present independent mitigating evidence and submit the question to the jury as a basis for sparing his life. The Texas Court of Criminal Appeals later decided to place the prize of victim impact evidence upon the mitigation question, and this court should recognize the changed conditions for the defendant in determining now that he has an even greater need to be able to address the jury personally and make his statement in mitigation as it relates to the victim and her survivors.

The mitigation special issue is not subject to review, so this is the only opportunity the Defendant will have to present this type of mitigation.

In the Texas "non-weighing" capital murder statute, there is no list of aggravating and mitigating factors for the jury, and the statutory definition of mitigating evidence restricts the jurors to considering only that evidence which they "might regard as reducing the defendant's moral blameworthiness", Art. 37.071, Sec.2(f)(4), V.A.C.C.P. The mitigation verdict is not reviewable for sufficiency and there is no proportionality review. In these circumstances, it is obvious that this capital defendant has one and only one chance to gain a benefit from evidence he proffers as mitigating. If he does not persuade the jury, he will have no chance of persuading any reviewing court. This emphasizes the constitutional importance of giving him this opportunity now.

Defendant therefore asks the court to acknowledge that the law in Texas since *Huffman* has been altered, by the restructuring of the special issue and the decisions in *Penry* and Mosley, supra. Based on those considerations and the sound reasoning in other courts on this issue, defendant urges the court to allow him to present his personal statement in mitigation to the jury.

Respectfully submitted on this the _16_ day of _August_, 2006.

By: _____

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _August_, 2006.

Paul Johnson

131

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR PRODUCTION OF WITNESS STATEMENTS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, STEVEN L. LONG, the Defendant in the above styled and numbered cause, by and through his undersigned attorney, and based upon the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States of America, Article 1, Sections 10 and 19 of the Constitution of the State of Texas, Rules 612 and 615, Texas Rules of Evidence, and Article 39.14, C.C.P., and respectfully moves this Honorable Court to order the District Attorney or his Assistant to produce, after a witness called by the State has testified on direct examination, the following requested items, to-wit:

1.     All of the statements, whether in writing or however recorded and whether signed or unsigned, of any witness called to testify by the State, after his direct examination.  Texas Rules of Evidence Rule 615(a).

_____GRANTED

_____DENIED

2.     All documents used by the witness to refresh his memory concerning the facts in this cause, either prior to his testimony in this case or as he was giving direct testimony in this cause before the trier of fact.  Texas Rules of Evidence Rule 612.

_____GRANTED

_____DENIED

1

3.     A transcript of the Grand Jury testimony of any witness called by the State to testify after the witness has completed his direct examination.  Texas Rules of Evidence, Rule 615(a).

         _____GRANTED

         _____DENIED

4.     Any police report where same is shown to purport to be what the witness observed or did at the time in question and which concerns facts testified to by the witness on direct examination whether made by the witness or not as long as the witness has adopted same as correct.  Texas Rules of Evidence, Rules 615(a) and (f).

         _____GRANTED

         _____DENIED

5.     Any document, object, photo or chart, the contents of which may in any way be placed before the jury before or during direct examination of the witness.

         _____GRANTED

         _____DENIED

6.     The Defendant further requests the Court to order the District Attorney or his Assistant to not, in the presence of the jury, offer any of the foregoing statements, documents, charts, photographs or other requested objects in evidence until their admissibility has been established outside the presence of the jury.

         _____GRANTED

         _____DENIED

7.     The Defendant further requests the Court to recess the trial upon production of the above requested statements for the purpose of allowing the Defense to examine the statement prior to cross examining the witness.  Texas Rules of Evidence, Rule 615(d).

         _____GRANTED

         _____DENIED

2

As a basis for this motion, Defendant would show the Honorable Court that he cannot under the Sixth and Fourteenth Amendments of the Constitution of the United States and Article 1, Sections 10 and 19 of the Texas Constitution, properly cross examine the witnesses without the production of the material requested.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays this Motion be in all things granted.

Respectfully Submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion for Production of Witness' Statements was served upon the attorney for the State on _____8/16/06_____,
2006.

Paul Johnson

3

134

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANTS MOTION FOR PRODUCTION OF WITNESS STATEMENTS

On this_____day of_____, 2006, the Defendant's Motion For Production of Witness

Statements was presented to the Court. Upon consideration, the motion is hereby:

_____GRANTED as above indicated

_____DENIED as above indicated, to which action of the Court the Defendant duly

excepts.

The prosecution is further ordered to have available in Court, after the witness testifies, all of the documents ordered produced herein.

SIGNED AND ENTERED this _____ day of _____, 2006.

_____
JUDGE PRESIDING

4

135

CAUSE  NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### DEFENDANT'S MOTION TO REQUIRE THE PROSECUTION TO REVEAL ANY AGREEMENT WITH A WITNESS THAT COULD INFLUENCE HIS TESTIMONY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN L. LONG , the Defendant in the above entitled and numbered,

cause by and through his attorney of record and moves the Court to require the prosecution to reveal

any agreement with any witness in the nature of concessions by the State of Texas to the witness

which could influence the witness' testimony.  If the prosecution has either made, promised or

implied that it will make concessions to the witness in order to induce his testimony, the defense

has a right to know the nature of the concessions that have been made, promised or implied to the

witness and any discussions which the prosecution has had with the witness or his representatives in

order to prove that the witness' testimony was biased by such discussions.  Without disclosure

defense counsel can only speculate that the concessions probably involved either pending or future

charges against the witness or payment of money.  The disclosure is vital to proof on the issue of

credibility.  To deny disclosure of information which could influence the witness' testimony violates

the accused's right to due process of law as guaranteed by the 5th and 14th Amendments of the

United States Constitution and due course of law as guaranteed by Article I, Sec. 10 of the Texas

Constitution.  *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed. 2d 104 (1972).

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court issue an

order requiring the prosecutor to reveal the exact nature of all negotiations and discussions with any

witness or his representatives concerning any promises or expectations, express or implied, of

136

concessions which could or might be expected to occur in the event that the witness cooperates with the prosecution by testifying against the Defendant.

Respectfully Submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
Attorney for Defendant

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Defendant's Motion to Require the Prosecution to Reveal Any Agreement with a Witness That Could Influence His Testimony was served upon the attorney for the State on _____ 8/16/06 _____, 2006.

Paul Johnson

## ORDER

Came on to be considered the Defendant's motion to reveal any agreements made by the Prosecution with any witness in this case. Having considered the motion and the argument of counsel, the motion is GRANTED. The Prosecution is ordered to reveal to Defense counsel, at the time of the entry of this Order or as soon thereafter as possible, but prior to the trial of this cause, all negotiations and discussion with any witness in this case against the Defendant regarding any promise, expectation or concession, expressed or implied, that might inure to the benefit of the witness in regard to his testimony or participation in this case.

IT IS SO ORDERED.

SIGNED on the _____ day of _____, 2006.

_____
JUDGE PRESIDING

137

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION TO DISCOVER ANY
## CONCESSIONS OR AGREEMENTS WITH THIRD PARTIES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant in the above-styled and numbered cause, by and through his attorney of record, PAUL JOHNSON, and moves that the prosecutors in this cause be required to disclose any effort which they may have made in the past or any efforts that they may make in the future to enter into an agreement between themselves and any other person s to seek reduction in sentences or not to prosecute certain parties and certain other agreed or offered concessions by which such persons are rewarded for their cooperation with the prosecution in this case in seeking a conviction of the Defendant.

This information is discoverable as it goes directly to bias, notice and/or prejudice of that person as to the manner in which he or she testifies as a witness.

Respectfully submitted

BY:
Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

138

## ORDER

On this day came on to be heard the foregoing Motion and the same is hereby (granted, in all things), (granted, except as modified hereafter), or (denied, to which action of the Court the Defendant duly excepts in open Court).

SIGNED AND ENTERED on this the _____ day of _____, 2006.

_____

JUDGE PRESIDING

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR DISCOVERY OF EXPERTS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant, STEVEN L. LONG, by and through his attorneys of record, and pursuant to the 5th, 6th, 8th & 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13 & 19 of the Texas Constitution makes this his Defendant's Motion for Discovery of Experts, and as grounds therefore would show as follows:

1. Tex. C. Crim. P. Article 39.14 (b) was amended, effective September 1, 1999, and now provides:

> On motion of a party and on notice to the other party the court in which an action is pending may order one or more of the other parties to disclose to the other party making the motion the name and address of each person the other party may use at trial to present evidence under rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later that the 20th day before the trial begins.

2. The Defendant hereby moves this Court to order the State to disclose to Defendant, the name and address of each person the State may use at trial to present evidence under 702, 703 and 705 of the Texas Rules of Evidence. By serving a copy of the motion, Defendant has notified the State of the filing of this motion.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Court grant the

Defendant's Motion for Discovery of Experts and order the State to make disclosure of its

experts no later than the 21st day before the trial begins and such other relief to which the

Defendant may show himself to be entitled.

Respectfully submitted on this the _16_ day of _August_, 2006.

By: _____

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument
has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day
of _8/16/6/y_, 2006.

_____
Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be

heard the above and foregoing motion of the defendant herein and the Court having considered

same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

141

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### REQUEST FOR NOTICE UNDER THE
### TEXAS RULES OF CRIMINAL EVIDENCE FOR EXPERT WITNESSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant and respectfully requests notice under various rules of the Texas Rules of Criminal Evidence as follows:

I.

Under Rule 705, the Defendant hereby requests prior notice and disclosure of facts or data to be relied upon by any experts who may testify for the State in this case.

II.

The Defendant hereby represents to the Court that a copy of this request has heretofore been provided to the attorneys for the State on _____ 8/1c/06 ____, 2006. Defendant respectfully moves the Court to grant the request prayed for in this motion and to suppress in advance of trial any evidence which would be introduced by the State in violation of the notice requirements set out above and contained in the Texas Rules of Criminal Evidence.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

142

ORDER

On this day came on to be heard the foregoing Motion and the same is hereby

(GRANTED) (DENIED).  SIGNED AND ENTERED on this the _____ day of

_____, 2006.


_____

JUDGE PRESIDING

CAUSE NUMBER: F 05-52918

THE STATE OF TEXAS

§

IN THE 265th

2006 SEP 12 AM II: 32

VS.

§

DISTRICT COURT _____ OF

Steven Long

DISTRICT CLERK
DALLAS CO. TEXAS     DALLAS COUNTY, TEXAS

KELLY PRUITT DEPUTY

**NOTICE OF EXPERT WITNESSES**

In response to the Defense's motion requesting notice of the State's intent to offer expert

witness testimony in the above-entitled and numbered cause, the State of Texas tenders the

following information:

DR. ROBERT WILLIAMS / BITE MARKS

A.P. MERILLAT / ROYCE SMITHEY
"Rebuttal" PRISON EXPERTS

DR. JONI McCLAIN / CAUSE DEATH

TARA JOHNSON / DNA

Respectfully Submitted,

Assistant District Attorney
Dallas County, Texas
Bar Card Number: 01944900

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion has been

hand-delivered ☑, mailed ☐, and/or faxed ☐, to the Attorney for the Defendant on this the 12th

Sept day of _____, 20 06 .

Assistant District Attorney

144

F05-52918

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 265th JUDICIAL |
| | § | |
| V. | § | DISTRICT COURT OF |
| | § | |
| STEVEN LYNN LONG | § | DALLAS COUNTY, TEXAS |

KELLY PRUITT

2006 AUG -2 AM 9: 16

DISTRICT CLERK
DALLAS CO. TEXAS

### STATE'S MOTION REQUESTING NOTICE OF DEFENDANT'S INTENT TO USE EXPERT TESTIMONY AND REQUESTING DEFENDANT'S COMPLIANCE WITH ARTICLE 39.14

To the Honorable Judge of Said Court:

COMES NOW the State of Texas and moves this Honorable Court to require the Defendant to give notice of his intent to use expert witness testimony and to comply with Article 39.14 of the Texas Code of Criminal Procedure. In support of this motion, the State would show the court the following:

I.

Article 39.14(b) of the Texas Code of Criminal Procedure provides that on motion of a party and on notice to the other parties, the court may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705 of the Texas Rules of Evidence.

WHEREFORE, PREMISES CONSIDERED, the State respectfully prays this Motion be in all things granted.

RESPECTFULLY SUBMITTED,

_____
Andy Beach
SBN: 01944900
Assistant District
Dallas County, Texas

### ORDER

On this ___ day of _____, 2006 came to be heard the above Motion and is hereby [ ] GRANTED   [ ] DENIED.

_____
JUDGE PRESIDING

145

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR APPOINTMENT OF EXPERT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN L. LONG, Defendant in the above styled and numbered cause, and moves the court to appoint an expert to assist his/her counsel in this case and for cause would show the court as follows:

I.

The Defendant is charged by indictment with the offense of Capital Murder  The Defendant is unable to pay an attorney to represent him in this case.

II.

The court has appointed the undersigned counsel to represent the Defendant in this case.  The Defendant also requests that the court appoint_____ to assist defense counsel in representing the Defendant in this case.  TEX. CODE CRIM. PROC. art. 26.05; *Ake v. Oklahoma*, 470 U.S. 68 (1985); TEX. CONST. art. I, § 10; TEX. CONST. art. I, § 19.

WHEREFORE, the Defendant prays that this court appoint additional counsel and authorize the payment of reasonable fees and expenses for the cousnel relating to his case.

Respectfully Submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## ORDER APPOINTING EXPERT

Came on to be heard the Motion for Appointment of Expert of Defendant, STEVEN L. LONG, in this case. Upon consideration of the motion and argument of counsel, it is hereby GRANTED.  The court hereby appoints _____ to provide expert services to Defendant and to his/her counsel in order to assist the Defendant's counsel in representing the Defendant in this case. The court hereby authorizes the payment of reasonable expert fees and expenses upon submission of a statement of the fees and expenses incurred.

IT IS SO ORDERED.

SIGNED AND ENTERED on _____, 2006.

_____
JUDGE PRESIDING

147

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO PROCEED *EX PARTE*

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Defendant, STEVEN L. LONG, by and through his attorneys of record, and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 & 19 of the Texas Constitution further pursuant to the rights accorded to this Defendant by Tex. C. Crim. P. Art. 26.052(f) moves the court allow him to move, *ex parte*, for necessary funding. In support thereof, the Defendant would show:

1. An indigent defendant is entitled to access to competent psychiatric assistance in preparing his defense if his sanity will be a significant factor at trial. *Ake v. Oklahoma,* 470 U.S. 68 (1985).

2. Tex. C. Crim. P. Art. 26.052(f) provides:

"Appointed counsel may file with the trial court, a pretrial, *ex parte* confidential request for advance payment of expenses to investigate potential defenses"

3. In order to make the threshold showing required by *Ake v. Oklahoma* to demonstrate that the Defendant is entitled to this funding, it will be necessary for the Defendant to reveal information which would otherwise be privileged. The Defendant should not be forced to abandon his request for essential help for fear that the very information which entitles him to that help will be used against him.

148

4. This motion is made so that Defendant will not be deprived of due process, due course of law and equal protection of the laws, the effective assistance of counsel, his right to confront witnesses against him, his right to a fair and impartial trial, his right to represent evidence on his own behalf, and his right to explain or deny evidence presented against him in the punishment phase, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 13 and 19 of the Texas Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant, requests permission to present his funding motions, *ex parte*.

Respectfully submitted on this the *16* day of *Aug*, 2006.

By

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _____, 2006.

Respectfully submitted,

Paul Johnson

143

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION FOR PRODUCTION OF IMPEACHMENT EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion For Production of Witness Related Evidence, and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. The Defendant has a Constitutional right to confront and cross-examine witnesses that testify against him. Impeaching as well as exculpatory evidence is favorable to the accused under *Brady v. Maryland. United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

4. The State, and its prosecutors, should be Ordered (with a continuing duty to disclose newly discovered material previously and here ordered), to furnish defense with, and permit defense to inspect, copy and/or photograph the following information, objects or copies relating to expert and/or medical evidence within the possession, custody, control or knowledge of the prosecution or which by exercise of due diligence may become known to the State:

The identity of each expert witness the State consulted with or intends to call as a witness in the instant matter, including:

    (a) name and title;

    (b)  work address and home addresses (if known);

    (d) work and home telephone numbers;

    (e) profession or occupation, and the field in which (s)he is allegedly an expert;

    (f) a copy of the witnesses' Curriculum Vitae that contains the formal education and training, including the name and address of each school where special education or training was received in this expert's field of expertise; the dates of said education and training; the name or description of each degree (s)he received, including the date when each was received and the name of the school from which received;

    (g) membership in any professional or trade association in that field of expertise including the name of each professional or trade association, dates of membership and description of office(s) held;

    (h) authorship of any books, papers or articles, including title and subject matter of book, paper or article, name and address of each item's publisher and each item's date of publication;

    (i) licenses to practice in the field of expertise, including the governmental authority by whom licensed, the general requirements that had to be met and how these requirements were fulfilled; and whether any license had ever been revoked or suspended;

    (j) employment, including type of practice or work in the field of expertise, names and addresses of employers and/or associates, dates of said employment, positions held and/or duty performed.

    The identity of any object, sample or material tested, analyzed or examined by each expert in regard to the instant matter, including as to said test, analysis and/or examination (all three are hereinafter called "exam")

    (a) the exam's date;

    (b) the exam's location;

    (c) the exam's purpose;

    (d) the steps or methods employed in said exam;

    (e) the information provided by another to the expert prior to said exam;

    (f) the identity of any other person(s) assisting in said exam; and

    (g) the present location of any samples or materials used in said exam.

The results or conclusions reached by each expert the State consulted or intends to call as a witness in the instant matter, including:

(a) written reports;
(b) oral opinions, including the date thereof and to whom reported.

4. The amount of compensation provided to each expert consulted or whom the State intends to call as a witness in regard to this matter.

5. In support of said motion, the Defendant respectfully states that the scientific complexity of the instant case requires that full discovery of medical and scientific facts and opinions be provided. The prosecution had access and opportunity to perform scientific analysis prior to counsel's appearance in the case or in some instances, such analysis can no longer be replicated or reproduced by defense counsel. The defendant requires a complete exposition of that information prior to the beginning of the introduction of evidence to the jury in the above case.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that relief be granted as prayed for herein.

Respectfully submitted on this the 16 day of August, 2006.

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____ 8/16/06 _____, 2006.


_____
Paul Johnson


152

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____

JUDGE PRESIDING

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO PROHIBIT COMMENT ON THE WEIGHT TO BE GIVEN OR CREDIBILITY OF TESTIMONY DURING TRIAL

COMES NOW, STEVEN L. LONG, the Defendant, by counsel, and pursuant to 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19 and 29 of The Texas Constitution and Tex.C. Crim. Proc. Articles 1.03, 1.04, 1.05, 38.04 and 38.05 and moves the Court to refrain from commenting on the weight to be given to evidence and in particular the credibility of testimony of any witness for the State or Defendant and in support thereof would show:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact finding than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. Upon information and belief, the Defendant anticipates that the State will offer testimony from a witness who will attempt to offer one or more opinions pursuant to Tex.R.Evid. 702.

4. A determination by the Court that any witness who testifies for the State or the Defendant is an expert should be made outside of the hearing of the jury. Announcing to the jury that a witness is accepted by the Court as an "expert" is an inappropriate and

unfair comment by the Court on the credibility of the testimony and the weight that should be given to testimony by the witness and violates Tex.C.Crim.P. Art. 38.04 and 38.05. "Consequently, a jury more readily accepts the opinion of an expert witness as true simply because of her or her designation as an expert". *Gammill v. Jack Williams Chevrolet, Inc.*, 972, S.W. 2d 713 (Tex. 1998) (citing E.I. duPont de Nemours and Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995). See also Flores v. Johnson, 210 F3d 456, 465-6 (5th Cir. 2000) (Garza, J. specially concurring) "the problem here is not the introduction of one man's opinion on another's future dangerousness, but the fact that the opinion is introduced by one whose title and education [not to mention designation as an 'expert'], gives him significant credibility in the eyes of the jury as one whose opinion comes with the imprimatur of scientific fact.

5. Tex.C.Crim.P. Art. 38.04 provides, in part:

> "[t]he jury is the **exclusive** judge of the facts proved, and of the weight to be given to the testimony...". (emphasis added)

6. Tex.C.Crim.P. Art. 38.05 provides in part:

> "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, **but shall simply decide whether or not it is admissible**..." (emphasis added)

155

Wherefore premises considered, Movant prays that upon hearing herein, this Court make its Order that any determination that a particular witness qualifies as an "expert" shall be made outside of the presence of the jury. Further, that the Defendant have such other relief as he may show himself to be justly entitled.

Respectfully submitted on this the *16* day of *August*, 2006.

By: _____

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

COUNSEL FOR THE DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the *16* day of ___*August*___, 2006.

Respectfully submitted,

_____
Paul Johnson

156

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO DEFINE BEYOND A REASONABLE DOUBT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW , STEVEN L. LONG, Defendant in the above-named and numbered cause and files this, his Motion to Define "Beyond a Reasonable Doubt" in the Court's Charge to the jury, and in support hereof shows as follows:

### I.

In *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991) the Court of Criminal Appeals held that trial courts were required to define the term "beyond a reasonable doubt" to jurors and a failure to do so constituted reversible error. That court then endeavored to define the term, a copy of which definition is attached hereto as Exhibit A.

### II.

Thereafter, in *Paulson v. State,* 28 S.W.3d *570* (Tex.Crim.App. 2000), the Court of Criminal Appeals overruled *Geesa.* In holding that trial courts were under no obligation to define the term "beyond a reasonable doubt" in the court's charge, the Court deprives any defendant denied such a definition of Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution.

## III.

Defendant moves the Court to define the term "beyond a reasonable doubt" in the language of the *Geesa* definition or similar language approved for usage in Federal Courts.[1] A failure to define "beyond a reasonable doubt" renders meaningless a constitutionally required standard of proof in all criminal cases.

WHEREFORE, PREMISES **CONSIDERED,** Defendant prays that this Motion be, in all things granted and for such other and further relief to which he may be entitled.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the *16* day of *August* _____,2006.

Paul Johnson

---

[1]"A 'reasonable doubt' is a doubt based upon reason and common sense after careful and impartial consideration of all he evidence in the case. Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." (Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Criminal Cases, Instruction No. 1.06 (1990)).

## ORDER

On the_____day of _____, 2006, came on to be heard Defendant's

Motion to Define "Beyond a Reasonable Doubt" and, after due consideration, it is the opinion of

the Court that it should be ~~GRANTED~~/DENIED.

JUDGE PRESIDING

8-23-06

159

CAUSE  NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION IN LIMINE (PHOTOGRAPHS)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above-entitled and numbered

cause, and moves the court to order the State not to proffer crime scene photographs in the

presence of the jury until the court has conducted a hearing and had an opportunity to rule on

their admissibility, and in support of such motion Defendant shows:

**I.**

The Defendant believes that at some point in the trial the State may attempt to introduce

crime scene and/or autopsy photographs depicting the body of the complainant in the above

referenced case.

**II.**

These crime scene and/or autopsy photographs are not relevant, as relevance is defined

by Rule 401, TEX.R.CRIM.EVID. To the extent they might be relevant, the probative value of

the photographs are greatly outweighed by their prejudicial effect and are inadmissible for all the

reasons set out in Rule 403, TEX.R.CRIM.EVID. For this reason, Defendant would be denied a

fair trial if such photographs were admitted.

WHEREFORE, Defendant prays that the court grant this motion and order the District

Attorney not to mention or allude to any such photographs, display any such photographs in the

1

presence of the jury or proffer any such photographs without first advising the court of this

intention, so that the jury may be removed and a hearing held to determine the admissibility of

photographs.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 1077823
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _ _____,2006.

Paul Johnson

## ORDER

On this the _____ day of _____, 2006 came on to be heard

Defendant's Motion in Limine and it appears to the Court that this motion should be

(GRANTED) (DENIED)

_____
JUDGE PRESIDING

2

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION IN LIMINE TO PROHIBIT
## PROOF OF EXTRANEOUS OFFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant in the above-entitled and numbered caus by and through his attorney of record, PAUL JOHNSON, and files this his Motion in Limine concerning the issue of Extraneous offenses and hereby moves the Court for an order restricting the Assistant District Attorneys of Dallas County, Texas who are serving as prosecutors in this cause, from mentioning, alluding, referring, or in any manner suggesting to the jury that the Defendant committed any offense to this charge, and further that the Court admonish the State's witnesses, not to volunteer any information concerning any extraneous offense and in support thereof the Defendant would show unto the Court as follows:

I.

Defendant is on trial for the offense of Capital Murder. The Defendant anticipates that the State, by and through its prosecutor and/or the State's witnesses may attempt to introduce evidence of inadmissible, extraneous offenses, which offenses the State's alleged proof would tend to show was committed by the Defendant.

II.

The Defendant's case on trial will be illegally and improperly prejudiced if the State or its witnesses are allowed to comment and give evidence concerning the existence of this aforestated

extraneous offense before the trier of fact without first having a hearing outside the presence of the jury to determine the admissibility of evidence. The accepted rule in our State is that a Defendant is entitled to be tried not as a criminal generally, but rather upon the charge against him. A Defendant is not to be tried before a jury for collateral matters which may tend to prejudice the jury. Thus, evidence of collateral and independent crimes is not admissible generally.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court grant this Motion in all things.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## ORDER

The Court being of the opinion that the foregoing application should be in all things granted.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the Assistant District Attorneys of Dallas County, Texas be restricted from mentioning, alluding to, referring, or in any other manner suggesting to the jury that the Defendant committed any extraneous offense to this charge, and further that the Assistant District Attorney admonish the State's witnesses, not to volunteer any information concerning any extraneous offense and that the District Attorneys request that the jury be retired and that a hearing outside the presence of the jury be held to determine the admissibility of any proffered evidence of any extraneous offense to the charge in this case.

_____

JUDGE PRESIDING

163

CAUSE NO. F05-52918-MR                    KELLY PRINTS

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

DEPUTY

## MOTION IN LIMINE
## PRIOR CRIMINAL RECORD

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above styled and numbered cause and respectfully requests this honorable Court to instruct the prosecution not to mention, allude to, or refer to, directly or indirectly, during any stage of this trial, including but not limited to the voir dire examination, opening statements of counsel, the direct and cross-examination of any witnesses, jury arguments, or during any part of the punishment hearing, if same becomes necessary, that the Defendant may have been previously convicted of any criminal law offense or may have been charged or arrested for any criminal offense or may have any criminal case presently pending against him/her, in the presence of the jury until a hearing has been held outside the presence of the jury to determine the admissibility of such testimony.

The Defendant further requests that this Court instruct the prosecution to advise the Court prior to eliciting any such testimony in order for the Court to excuse the jury and conduct a hearing outside the presence of the jury, without the necessity of counsel for the Defendant having to object to said testimony and request that the hearing be held outside the presence of the jury. In an effort to avoid prejudice by the jury and abuse of discretion by the court, Defendant urges this motion in limine.

1

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this

honorable Court will grant this his Motion In Limine .

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion in Limine  (Prior Criminal
Record) was served upon the attorney for the State on _____8/16/6 6_____, 2006.

Paul Johnson

## ORDER

On this the _____ day of _____, 2006, came on to be heard the

Defendant's Motion In Limine  and the same is hereby GRANTED and the prosecution is ordered to

advise the Court prior to eliciting any testimony concerning any prior record of arrest or conviction

of the Defendant, in the presence of the jury, until a hearing has been held outside the presence of

the jury to determine the admissibility of such testimony.

SIGNED this _____ day of _____, 2006.

_____
JUDGE PRESIDING

2

165

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

MOTION IN LIMINE
(Victim Impact Type Evidence)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant, by and through his attorneys of record, and pursuant to Rule 104 of the Texas Rules of Evidence and the 5th, 6th, 8th, and 14th Amendments to the United States Constitution and Article 1, Sections 1, 3, 10, 13, 19 and 29 of the Texas Constitution and Tex. C. Crim. P. Articles 1.05 and 1.09 and makes this his Motion in Limine. In support thereof, Defendant would show:

1. The Defendant requests that this Court order the State and its counsel, witnesses, and agents, to refrain from making any mention, reference, argument, or interrogation, either directly or indirectly, in any manner whatsoever, concerning any of the matters hereinafter set forth. In the alternative, Movant asks the Court to instruct the aforesaid individuals by appropriate order to refrain from making any such motion, reference, argument, or interrogation without first approaching the Bench and obtaining a ruling from the Court. The Court should further order that any argument as to the admissibility of any of the evidence set out below should be made outside of the presence of both prospective jurors and those jurors who are sworn to hear this case.

2. The State and its counsel, witnesses and agents, during the **guilt/innocence** phase of this trial, are not to allude to any evidence regarding the physical or psychological effect

166

of the alleged crime on victims or their families or friends, including, but not limited to, any testimony that could be considered as "victim impact" as defined in *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App.1991). Such evidence does not make more or less probable any fact that is of consequence during the **guilt/innocence** phase of the trial. *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App.1990).

3. Further, the State, its witnesses and agents should be prevented by Order of this court from offering, at the guilt/innocence **OR** the penalty phase of the trial, any characterizations or opinions about the crime, the Defendant or the appropriate sentence. *Booth v. Maryland*, 482 U.S. 496 (1987) (overruled) and *Payne v. Tennessee*, 501 U.S. 808 (1991) or any evidence that tends to measure the worth of the victim as compared to other members of society. *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998); accord *Jackson v. State*, 992 S.W.2d 469, 480 (Tex. Crim. App. 1999).

4. Prior to the offer of any evidence, the court should perform a analysis under Rule 403 of the Texas Rules of Evidence to determine if the evidence is relevant. If the evidence is found not to be relevant, it should be inadmissible. If the evidence is found to be relevant, the Court should determine if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion or the issues or misleading the jury. This analysis should consider the (a) nature of the testimony, (b) the relationship between the witness and the victim, (c) the amount of testimony to be introduced, (d) the availability of other testimony relating to victim impact and character and (e) mitigating evidence introduced by the defendant. Further, the Court should prevent evidence that is cumulative and place appropriate limits upon the amount, kind and source of victim impact and character evidence *Mosley*, at 62. Specifically, the

Court should preclude the use of friends and family to prove facts which can be established through less prejudicial witnesses. As to "victim impact" evidence that is found to be relevant, the Court should appropriately instruct the jury on the limited purpose for which each juror may consider that evidence.

5. Further, the State should be precluded from offering, at any time during the course of this trial, any "victim impact" evidence from an alleged victim of an offense for which the Defendant is not indicted in this cause. Such "extraneous victim impact evidence" is irrelevant to the special issues under Rule 401 of the Texas Rules of Evidence and Tex. C. Crim. P. Article 37.071. The danger of unfair prejudice from such evidence is unacceptably high. Cantu v. State, 939 S.W.2d 627, 635-38 (Tex. Crim. App. 1996).

6. So as to provide the Defendant with effective assistance of counsel and due process of law, as guaranteed to him by the 6th and 14th Amendments to the United States Constitution and Article 1, Sections 10 and 13 of the Texas Constitution and Art. 1.09 of the Tex. Code Crim. Proc., the Defendant moves the Court to require the prosecutor to provide to counsel for the Defendant, well in advance of trial, the names of family and friends of the deceased who will testify and any other witnesses that will offer evidence that is any way related to what is described herein as "victim impact" evidence and the substance of that testimony. Such notice is necessary so that counsel for the Defendant can effectively advocate on behalf of the Defendant during the trial of this case generally, and specifically, when the court conducts its Rule 403 analysis.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that this Motion be sustained and relief be granted as prayed for herein by appropriate Order of the Court.

Respectfully submitted on this the _16_ day of _August_, 2006.

By: _____

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _August_, 2006.

_____
Paul Johnson

### ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

MOTION  FOR ORDER  "IN LIMINE" TO PRESERVE
THE TRUE AND CORRECT MEANING OF "PROBABILITY"
IN THE  FUTURE DANGEROUSNESS INSTRUCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered cause, who makes and files the above captioned motion, on the following grounds:

1.  Defendant stands charged with capital murder; the state seeks to impose death as a penalty.

2.  In order to impose the death penalty, Texas law requires the state to secure a jury verdict finding that the defendant will be sufficiently dangerous in the future that his death is the appropriate penalty. [Texas Code of Criminal Procedure, Article 37.071, Section 2(b)(1)]

3.  The text of the future dangerousness special issue is as follows: "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society".

4.  Defendant says that the common and ordinary understanding of the word "probability" is "more likely than not", rather than the mathematical sense of the word, " any possibility". See Robison v State 888 S.W.2d 473 (Tex. Crim. App. 1994), where our Court of Criminal Appeals declared that our legislature intended

the common and ordinary meaning, suggested above, in the "future dangerousness" special issue.

5.    The force and meaning of the word "probability" in this special issue may not be diluted or rendered meaningless without serious constitutional implications affecting the conduct of this trial. See Jurek v Texas 428 U.S. 262 (1976), citing Furman v Georgia 408 U.S. 238 (1972), where the Supreme Court made it clear that the three Texas special issues were needed to accommodate the Eighth Amendment and the Due Process Clause. Put simply, after Furman, the death penalty was reserved for the worst murders and the worst murderers; the three special issues were upheld because they were thought adequate to assist and guide Texas sentencing juries in making the final selection among those death eligible individuals for whom death is the appropriate penalty.

6.    Further, after Furman, the death penalty can not be imposed under sentencing procedures that create a substantial risk that it will be inflicted in an arbitrary and capricious manner. Gregg v. Georgia, 428 U.S. 153, 188 (1976) cautioned that the sentencing authority must be apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information." 428 U.S. at 195. That guidance is sufficient only if it channels the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death. Godfrey v. Georgia, 446 U.S. 420, 428 (1980).

7.    Aggravating factors, (such as the Texas future dangerousness requirement), essential to the constitutionality of any death penalty scheme, must genuinely

**171**

narrow the class of death-eligible persons in a way that reasonably justifies the imposition of a more severe sentence on the defendant compared to others found guilty of murder. Zant v. Stephens, 462 U.S. 862 (1983).

8.    Further, both on their face, and as applied, aggravating circumstances must permit the sentencer to make a "principled distinction between those who deserve the death penalty and those who do not." Lewis v. Jeffers, 497 U.S. 764, 774 (1990); see also Richmond v. Lewis, 506 U.S. 40, 46 (1992) ("a statutory aggravating factor is unconstitutionally vague if it fails to furnish principled guidance for the choice between death and a lesser penalty"); Clemons v. Mississippi, 494 U.S. 738, 758 (1990) ("invalid aggravating circumstance provided "no principled way to distinguish the case in which the death penalty is imposed, from the many cases in which it was not "); Maynard v. Cartwright, 486 U.S. 356 (1988) ("[t]he construction or application of an aggravating circumstance is unconstitutionally broad or vague if it does not channel or limit the sentencer's discretion in imposing the death penalty").

9.    The three special issues upheld in Jurek inquired into the defendant's deliberation, his expectation that his acts would cause the death of the victim, and whether the defendant had any sense of provocation or self defense, in addition to the "future dangerousness" of the defendant.

10.   The Supreme Court has not been called upon to determine the constitutionality of the Texas "future dangerousness" question, stripped, as it now is, of the other important guiding and channeling elements present in Jurek.

11.   Further, the many Texas and federal cases rejecting claims of Texas death sentenced prison inmates for instructional definitions of the words in the future

172

dangerousness question have been cast into doubt by the so-called "Penry Amendments" to Art. 37.071, which <u>eliminated</u> the specific safeguards described above while adding a new, conditional, special issue on mitigating evidence which comes into play, if at all, under a presumption in favor of death, far too easily raised by an affirmative "future dangerousness" finding.

7.   The recent Texas cases rejecting complaints of the trial court's failure or refusal to define the term "probability" have misplaced their great  reliance on <u>Jurek</u> v <u>Texas</u>, supra, as our Supreme Court did not then have the present, abbreviated statutory scheme before it. [See  <u>Chamberlain</u> v <u>State</u> 998 S.W.2d 230 (Tex. Crim. App. 1999)]

8.   The elimination of the requirement of a reasonable expectation of the death of the victim has huge implications in this case; Mr. Blue apparently caused the death of the victim with less than a pint of gasoline, some of which was used on a Mr. Larence Williams, not the murder victim. The new, stripped-down version of the Texas special issues now requires the inquiry into future dangerousness to do the job of all three former issues.

9.   Defendant says that the jurors must be instructed, from voir dire on, that the word "probability" means a very high probability, because life itself is in the balance. [See the dissenting opinions of justices Odom and Roberts in <u>Jurek</u> v <u>State,</u> 522 S.W.2d 934 (Tex. Crim. App. 1975).]

10.   This is necessary to assure that the jury will not impose death except for the worst murders and murderers, (<u>Furman</u>) and that it will engage in a <u>reasoned</u> moral process, rather than a frivolous or capricious one, as required by <u>Penry</u> v <u>Johnson</u>, 121 S. Ct. 1910 (2001).

**173**

11.   By indoctrinating the jury that "probability" meant "any possibility", the state secured so great and unfair an advantage over the defendant, at the expense of the Eighth Amendment and the Due Process Clauses contained in our Bill of Rights, that confidence in the reliability of the outcome is undermined.

12.   By way of illustration, Defendant says that it is useful here to imagine the most pious and righteous person in the recent history of our civilized society, perhaps Mother Teresa, the Reverend Billy Graham, Barbara Bush, or former president Jimmy Carter. One simply cannot say that there is "no possibility" that such a person would never, ever, pose some danger to person or property in the future. The truthful answer to the Texas special issue would have to be "yes", even in the cases of the three great citizens mentioned. To give this meaning to the word "probability" deprives the whole special issue of its intended purpose: to separate the merely bad from the worst of the worst.

13.   Defendant says that in order to secure to him the true and intended, and constitutional, meaning of the "future dangerousness" special issue, the court should order the prosecutors to refrain from stating or even suggesting to the prospective jurors, or the trial panel of 12, that the word "probability" as used in the "future dangerousness" issue, means anything less than 95% probable, and if such relief is denied, then defendant requests that the jury be instructed that the word "probability" means a high probability, and if such relief is denied, he requests that as a very minimum, the word be defined for the jury as meaning "more likely than not".

14.   To permit the prosecutor to give a false impression of our law in this regard would effectively deprive the Defendant of his rights under Texas Code of Criminal

174

Procedure, Article 37.071, Section 2(b)(1), and the Fifth, Sixth, Eighth, and Fourteenth Amendment to the United States Constitution; the requested order in limine must issue.

Defendant prays the court to grant this motion in all things, by signing an order in substantially the same form as that appended hereto.

Respectfully submitted,

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was delivered to the office of the Criminal District Attorney, ___ Texas, on this the *16* day of *August* 2006.

_____
Paul Johnson

**ORDER**

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the *23* day of _____, 2006.

_____
JUDGE PRESIDING

175

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PAUL JOHNSON, Attorney for the accused, STEVEN L. LONG, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, moves this Court to preclude the death penalty as a sentencing option in this case. In support of his motion, Mr. Long states as follows:

1. Mr. Long was indicted for the offense of capital murder. The State is seeking the death penalty.

2. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. _Gilmore v. Taylor,_ 508 U.S. 333 (1993); _Woodson v. North Carolina,_ 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. _Ellason_ v. State, 815 S.W.2d 656 (Tex. Crim. App. 1991).

3. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole is 40 years. Tex. Penal Code § 12.31 (Lexis through 2002). It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and

176

then only if the jury concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (West 2002). The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks the death penalty, and (2) a Capital Felony where the state does not seek the death penalty. Tex. Penal Code § 12.31(a) (Lexis through 2002).

4. Mr. Long has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury. Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); Cook v. State, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses). Further, Mr.Long has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him. See In re Oliver, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense … are basic in our system of jurisprudence…").

5. Indictment by grand jury protects citizens against arbitrary accusations by the government. King v. State, 473 S.W.3d 43, 45 (Tex. Crim. App. 1971). The most "celebrated purpose" of the grand jury "is to stand between the government and the citizen" and protect individuals from the abuse of arbitrary prosecution. United States v. Dionisio, 410 U.S. 19, 45 (1973).

6. An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, § 12(b); <u>Cook</u>, 902 S.W.3d at 475. The purpose of an indictment is to provide notice of the charged offense so that the presumptively innocent accused may prepare, before trial, an informed and effective defense. <u>Riney v. State</u>, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." <u>Brasfield v. State</u>, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980), overruled on other grounds by <u>Janecka v. State</u>, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987).

7. In <u>Jones v. United States</u>, 526 U.S. 227 (1999), the United States Supreme Court held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact, other than a prior conviction, that increase[d] the maximum penalty for a crime must be charged in an indictment, submitted to a jury and proven beyond a reasonable doubt," *Jones*, at 243, n.6. In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the United States Supreme Court extended the Jones holding to the States through the Fourteenth Amendment. In *Ring v. Arizona*, 122 S. Ct. 2428 (2002) the United States Supreme Court held that the rule of *Jones* and *Apprendi* applies with equal force to capital cases. Aggravating factors operate as the functional equivalent of an element or a greater offense. *Ring*, 122 S. Ct. at 2443. "The relevant inquiry is one not of form but of effect." *Apprendi*, 530 U.S. at 494. Thus, aggravating factors must be pled in the indictment, submitted to a jury and proved by the prosecution beyond a reasonable doubt. Likewise, the absence of a circumstance that would justify a life sentence must be plead in the indictment and established by the state, beyond a reasonable doubt.

8. The logical conclusion that can be drawn from this is that the discretion to choose to seek death in a "capital eligible" case lies with the grand jury, not the State of Texas through its

prosecutors.  The only discretion that is left to the prosecutors following the application of *Jones*, *Apprendi* and *Ring* are to (1) decide if evidence of statutory and non-statutory aggravators are to be presented to the grand jury and (2) should the grand jury find the aggravators to be "true," whether or not the State will offer evidence in support of those aggravators.   This constitutionally mandated procedure was not followed in this case in that no evidence of aggravating circumstances was presented to this grand jury, no findings were made as to the existence of aggravating circumstances,  accordingly death should be precluded as a sentencing option.

WHEREFORE, PREMISES CONSIDERED, Mr. Long prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted on this the _16_ day of _August_ 2006.

By: _____

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _August_, 2006.

Paul Johnson

179

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO DECLARE THE TEXAS CAPITAL
## SENTENCING SCHEME UNCONSTITUTIONAL AND
## <u>MOTION TO PRECLUDE IMPOSITION OF THE DEATH PENALTY</u>

COMES NOW, STEVEN L. LONG, Defendant, who challenges the constitutionality of the Texas death penalty on the following constitutional grounds.

### I.

THE STATUTORY "<u>PENRY</u>" SPECIAL ISSUE IN TEX. CODE CRIM.
PRO. ARTS. 37.071 & 37.0711 IS UNCONSTITUTIONAL BECAUSE
IT FAILS TO PLACE THE BURDEN OF PROOF ON THE STATE
REGARDING AGGRAVATING EVIDENCE.

The Supreme Court has held that the Eighth Amendment requires the State to prove the existence of aggravating factors during the capital punishment phase. *See, e.g.,* <u>Walton v. Arizona</u>, 100 S.Ct. 3047, 3055 (1990) (state's "method of allocating the burdens of proof" during capital sentencing phase cannot "lessen the State's burden . . . to prove the existence of aggravating factors") . In order to understand why <u>Walton</u> applies to the statutory "<u>Penry</u>" special issue, the Court must recognize that this special issue is a conduit for aggravating (as well as mitigating) factors. By asking jurors to determine whether there are *"sufficient .. mitigating* circumstances," TEX.CODE CRIM.PRO. Art. 37.071,S(e), the statutory special issue in effect tells jurors to consider any possible aggravating factors that may outweigh the mitigating factors present in the case. Although the statute does not explicitly use the term "aggravating circumstance," clearly that is how a reasonable juror would interpret the statute. *Cf.* <u>Johnson v. Texas</u>, 113 S.Ct. 2568 (1993) (describing jurors' determination of answer to "future dangerousness" special issue to require balancing of aggravating and mitigating circumstances) . Because the statute is silent about whether the State or the defense has the burden of proof on aggravating factors, and moreover, because the language of the special issue implies that the burden to disprove aggravating circumstances is on the defense, the statute is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution.

1

## II.

### THE STATUTORY "PENRY" SPECIAL ISSUE IS UNCONSTITUTIONAL UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BECAUSE IT PERMITS THE VERY TYPE OF OPEN-ENDED DISCRETION CONDEMNED BY THE UNITED STATES SUPREME COURT IN FURMAN V. GEORGIA.

In Furman v. Georgia, 408 U.S. 238 (1972), in which the Supreme Court struck down capital punishment as it then was being administered, the chief constitutional infirmity that the controlling Members of the Court pointed to in their respective concurring opinions was arbitrariness. In particular, the Court condemned the open—ended, unstructured discretion that was given to capital sentencing juries. *See also,* Gregg v. Georgia, 428 U.S. 153 (1976); Spaziano v. Florida, 468 U.S. 447, 460—64 (1984)

In the years following the Supreme Court's decision in Penry v. Lynaugh, 109 S.Ct. 2934 (1989), the Texas Legislature enacted a new capital sentencing scheme that sought to cure the constitutional defect in the former capital sentencing scheme identified by the Court in Penry. The new statutory "Penry" special issue contained in TEX.CODE CRIM.PRO.Arts. 37.071 & 37.0711 (Vernon 1994), provides as follows:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Five Members of the modern Supreme Court have, directly or indirectly, condemned an open-ended, unstructured capital sentencing instruction -- such as Texas' statutory "Penry" special issue -- as violative of the Eight and Fourteenth Amendments to the United States Constitution. See, Penry v. Lynaugh, 109 S.Ct. 2934, 2969 (1989) (Scalia, J., dissenting, joined by Rehnquist, C.J., White, J., & Kennedy, J.) ("In holding that the jury had to be free to deem Penry's mental retardation and sad childhood for whatever purpose it wished, the Court has come full circle, not only permitting but requiring what Furman once condemned."); Graham v. Collins, 113 S.Ct. 892, 903-15 (1993) (Thomas, J., concurring) ("Penry reintroduces the very risks that we had sought to eliminate through the simple directive that States in all events provide rational standards for capital sentencing.") . In dicta, Justice Thomas has explicitly suggested that the type of sentencing scheme in operation at Appellant's trial violates Furman. See Graham, 113 S.Ct. at 913 n. 9 (discussing the present Texas capital sentencing statute)

Rather than submit such an open—ended, unstructured sentencing issue, the Eighth Amendment requires a trial court in the sentencing phase of a capital case to instead submit a charge that adequately structures the jury's sentencing discretion regarding mitigating and aggravating factors. *Cf.* Gregg v. Georgia, 428 U.S. 153 (1976) (discussing Georgia's

2

181

post—Furman capital sentencing statute) . Unless such an instruction is submitted in this case, a death sentence returned by Defendant's jury would violate the Eighth and Fourteenth Amendments.

III.

TEXAS' STATUTORY CAPITAL SENTENCING SCHEME IS UNCONSTITUTIONAL UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS BECAUSE IT DOES NOT PERMIT MEANINGFUL APPELLATE REVIEW.

As discussed above, the pivotal sentencing issue in Texas capital cases -- the statutory "Penry" special issue -- does not specify the types of mitigating or aggravating factors relevant to a capital sentencing jury's deliberations during the punishment phase. Rather, the jury is simply asked whether there are "sufficient mitigating circumstance or circumstances" to warrant a life sentence rather than a death sentence. See TEX.CODE CRIM.PRO.Arts. 37.071 & 37.0711 (Vernon 1994). In a larger sense, however, the "Penry" special issue requires Texas juries to perform the same functions that other states' post-Furman capital sentencing juries perform: (i) the threshold finding of particular aggravating and mitigating circumstances; and (ii) the balancing process, whereby jurors determine whether the mitigating factors outweigh aggravating factors. *Cf*. Gregg v. Georgia, 428 U.S. 153 (1976) (discussing Georgia's post-Furman statute)

Defendant contends that Texas' unstructured sentencing scheme I unconstitution because it does not permit meaningful appellate review, which is not only required by a Texas statute[11] but also is a prerequisite to a constitutionally implemented capital sentencing scheme.[22] Because the second statutory special issue is open—ended and unstructured -- *i.e.,* not enumerating a list of mitigating and aggravating factors and not requiring jurors to make specific "findings" in this regard -- the Court of Criminal appeals has not way to know which aggravating and mitigating factors that jurors considered. Thus, the appellate court has no way to know how, and indeed *whether,* the jury considered all of the constitutionally relevant mitigating evidence offered at trial. In this way, meaningful appellate review is impossible. The Supreme Court has recognized that an appellate court is in a virtually impossible position to review a jury's consideration of mitigating and aggravating evidence without knowing which factors the jury in fact considered. See Sawyer v. Whitley, 112 S.Ct. 2514, 2522—23 (1992) (noting "how difficult [a] task" a reviewing court faces in "assess[ing] how jurors" reacted to mitigating and

---

[1] See TEX.CODE CRIM. PRO. Art. 44.251 (Vernon 1994)

[2] See Gregg v. Georgia, 428 U.S. 153, 195, 206 (1976);Parker v. Dugger, 498 U.S. 308, 321 (191); Jurek v.Texas, 428 U.S. 262, 276 (1976); *see also* Stringer v.Black, 112 S.Ct. 1130, 1136 (1992)

3

aggravating evidence "particularly considering the breadth of those factors that a jury . . . must be allowed to consider" without knowing how jurors actually considered the totality of the evidence) .~

Sawyer did not address the exact issue in this case. Rather, the Court was speaking of the difficulty of an appellate court's attempted hypothetical re—creation of a capital sentencing phase involving mitigating evidence that trial counsel failed to introduce. However, for purposes of the present case, the Court's discussion is highly apposite. The point both in Sawyer and in this case is that without actually knowing whether and how a particular jury considered evidence during a capital sentencing phase, an appellate court cannot accurately assess the jury's decision-making.

Because the Court of Criminal Appeals is required by statute and by the Constitution to review the sufficiency of the evidence supporting a jury's negative answer to the statutory "Penry" special issue, the open-ended and unstructured nature of Arts. 37.071 & 37.0711, which prevents meaningful appellate review, renders the Texas capital sentencing stature unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution.

## IV.

ARTICLE 37.071'S SECOND SPECIAL ISSUE VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

The second statutory special issue contained in TEX. CODE CRIM. PRO. Art. 37.071, §2(b) (Vernon 1994) reads as follows:

[I]n cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

Defendant contends that this statutory special issue is facially unconstitutional because of the statute's *use* of the language *"or anticipated that a human life would be taken."* Defendant believes that such language -- which permits a capital sentencing jury to impose a death sentence based upon a finding that a defendant found guilty under the "law of the parties" simply "anticipated" that death might occur -- violates the Eighth Amendment principle announced by the Supreme Court in Tison v.Arizona, 481 U.S. 137 (1987) and Enmund v. Florida, 458 U.S. 782 (1982)

V.

THE TEXAS CAPITAL SENTENCING STATUTE'S DEFINITION OF
"MITIGATING EVIDENCE" IS UNCONSTITUTIONAL BECAUSE IT LIMIT THE
EIGHTH AMENDMENT CONCEPT OF "MITIGATION" TO FACTORS THAT
RENDER A CAPITAL DEFENDANT LESS MORALLY "BLAMEWORTHY" FOR
COMMISSION OF THE CAPITAL MURDER.

The present Texas capital sentencing stature defines "mitigating evidence" *as* "evidence
that a juror might regard as reducing the defendant's moral blameworthiness." TEX. CODE
CRIM. PRO. Arts. 37.071, §2(c) (4) & 37.0711, §3(f) (3) (Vernon 19194). This definition of
"mitigating evidence" is unconstitutionally narrow. The Supreme Court has held that
constitutionally relevant mitigating evidence is not simply that type of mitigating evidence that
relates to a capital defendant's moral culpability or blameworthiness for the crime,[4] but also
includes any mitigating evidence relevant to a defendant's character, history, or circumstances of
the crime that militates in favor of a life sentence. *See, e.g.,* Skipper v. South Carolina, 476 U.S.
1 (1986). Numerous types of constitutionally relevant mitigating evidence thus have nothing to
do with a capital defendant's moral culpability or blameworthiness -- such as a history of positive
character traits, kindness shown toward children, or artistic talent.[5] Although the statutory
"Penry" special issue speaks of "the circumstances of the offense, the defendant's character and
background, and the personal moral culpability of the defendant," Art. 37.071, §2(e), the statute's
separate definition of "mitigating evidence" limits jurors' consideration of such evidence to those
mitigating factors that specifically implicate the defendant' s moral blameworthiness.

Therefore, the statute's limited definition of "mitigating evidence" violates the Eight and
Fourteenth Amendments to the United States Constitution.

**VI.**

THIS COURT MUST PRECLUDE THE IMPOSITION OF THE DEATH
PENALTY ON DEFENDANT BECAUSE, AT LEAST AS PRESENTLY
ADMINISTERED IN TEXAS, CAPITAL PUNISHMENT IS CRUEL AND
UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE
I, §13 OF THE TEXAS CONSTITUTION.

A.     Federal constitutional claim.

Put another way, a capital defendant who has tremendous artistic talent is no less
morally culpable or blameworthy for committing a horrible, senseless capital murder
crime than a capital defendant who committed an identical crime but who does not
possess such artistic talent. However, a rational jury may be less willing to sentence
the talented capital defendant to death because his talents are a redeeming quality.

5

184

Rather than engage in a lengthy exposition about why capital punishment is *per se* unconstitutional —— at least as it is presently administered —— Defendant herein adopts the cogent arguments of Justice Harry Blackmun, which were made in his dissent from denial of certiorari in the Texas capital case of Callins v. Collins, 510 U.S. 1141, 114 S.Ct. 1122, 127 L.Ed.2d 435 (1994) . Justice Blackmun, who dissented in Furman and who voted in the majority in the 1976 cases affirming various states' post— Furman death penalty statutes, *see, e.g.,* Jurek v. Texas, 428 U.S. 262 (1976), did not condemn capital punishment in the abstract as a cruel and unusual method of punishment that offends "evolving standard of decency." *Cf.* Gregg v. Georgia, 428 U.S. 153, 227-41 (1976) (Brennan & Marshall, JJ., dissenting). Rather, Justice Blackmun contended, *inter alia,* that capital sentencing procedures employed in the post- Furman era are *per se* unconstitutional because they are the product of paradoxical constitutional commands: on the one hand, jurors must be free to consider any and all types of constitutionally relevant mitigating evidence, while, on the other hand, there must be "structured discretion" in sentencing, as required by Furman. *See* Callins, supra, slip op., at 2 ("Experience has taught us that the constitutional goal of eliminating arbitrariness and discrimination from the administration of death . . . can never be achieved without compromising an equally essential component of fundamental fairness-- individualized sentencing.").

Thus, at least regarding the death penalty as it is presently being administered in Texas, it *is per se* unconstitutional under the Eighth and Fourteenth Amendments. In particular, the present Texas capital sentencing scheme -- including the statutory "Penry" special issue -- **is** unconstitutional because it permits the very type of open-ended discretion condemned by the Supreme Court in Furman. Accordingly, this Court should preclude the State from seeking the death penalty against Defendant, at least so long as the present capital sentencing scheme remains in effect.

B.   Texas constitutional claim.

Although Defendant has cited federal Eighth Amendment authority *supra,* he intends that this Court should separately consider his claim under the Texas and United States Constitutions. As this Court has noted, it can and should interpret the Texas Constitution in a more expansive manner than the federal Constitution.

Particularly noteworthy is the fact the Texas Constitution proscribes "cruel or unusual punishments," while the United States Constitution proscribes "cruel and unusual punishments." Obviously, the Texas Constitution, based on its plain language, was intended offer broader protections than the United States Constitution. *Cf.* People v. Anderson, 493 P.2d 880, 883-87 1972)(attributing textual significance to similar state constitutional proscription against "cruel or unusual punishments")

6

## VII.

ART. 37.071'S "10-12 RULE," WHICH REQUIRES AT LEAST TEN "NO" VOTES FOR THE JURY TO RETURN A NEGATIVE ANSWER TO THE FIRST OR SECOND SPECIAL ISSUES AND AT LEAST TEN "YES" VOTES FOR THE JURY TO RETURN AN AFFIRMATIVE ANSWER TO THE THIRD SPECIAL ISSUE, VIOLATES THE EIGHTY AMENDMENT PRINCIPLE IN <u>MILLS V. MARYLAND</u>.

Defendant contends that the "10—12 provision" in Art. 37.071,~2(d)(2) & §2(f)(2), violates the constitutional principles discussed in <u>Mills v. Maryland</u>, 486 U.S. 376 (1988); *see also* <u>McCoy v. North Carolina</u>, 494 U.S. 294 (1990). The "10—12 provision" requires that, in order for the jury to return answers to the special issues that would result in a life sentence, (i) at least ten jurors must vote "no" in answering the first special issue, (ii) at least ten jurors must vote "no" in answering the second special issue, or(iii) at least ten jurors must vote "yes" in answering the third special issue.[6] Defendant contends that this "10-12 provision" violates the Eighth and Fourteenth Amendments because there is a reasonable possibility that, under the present Texas capital sentencing scheme, all twelve jurors in a capital case could believe that a life sentence would be appropriate under state law, but, because at least ten jurors could not collectively agree on their answer to any one of the special issues, the jury could not return a life sentence. As an illustration, consider the following hypothetical circumstance: at trial, four of the twelve jurors conclude that, as consequence of a capital defendant's positive character traits, he would not pose a future threat to society; thus, those jurors individually vote to answer the first special issue negatively.[3] Assume that those four jurors also believe, however, that the defendant possessed the requisite *mens rea* under the second special issue (the *"parties"* special issue" and that there is insufficient mitigating evidence as a whole to result inn an affirmative answer to the third special issue (the "<u>Penry</u>" special issue)

Further suppose that four other jurors believe that the same capital defendant did not possess the requisite *mens rea* under the second special issue and, thus, those four jurors individually vote to answer the parties special issue negatively.[4] Assume, however, that those four jurors believe that the capital defendant does pose a future danger to society and that those four jurors also believe that the defendant's mitigating evidence, as a whole, is insufficient to result in a "no" vote to the statutory "<u>Penry</u>" special issue.

---

[3] Of course, a "no" answer to the "future dangerousness" special issue -- a finding that a capital defendant does not pose a future threat to society -- is a constitutionally recognized mitigating factor. See <u>Franklin v. Lynaugh</u>, 487 U.S. 164 (1988); <u>Skipper v. South Carolina</u>, 476 U.S. 1 (1986)

[4] A capital defendant's lack of such a mens rea is, of course, a constitutionally relevant circumstance. *Cf.* <u>Tison v. Arizona</u>, 481 U.S. 137 (1987)

7

Finally, suppose that the four remaining members of the jury conclude, as a result of the capital defendant's mitigating evidence of a troubled childhood,[5] that the statutory Penry special issue should be answered affirmatively. However, for whatever reason, assume that those four jurors also believe that the capital defendant would pose a future threat to society and also that the defendant possessed the requisite *mens rea* under the "parties" special issue. Thus, those four remaining jurors only vote in the defendant's favor on the third special issue.

Such a breakdown can be graphically illustrated:

| | 1st SPECIAL ISSUE | 2nd SPECIAL ISSUE | 3rd SPECIAL ISSUE |
|---|---|---|---|
| Juror 1: | NO (life) | YES (death) | NO (death) |
| Juror 2: | NO (life) | YES (death) | NO (death) |
| Juror 3: | NO   (life) | YES (death) | NO (death) |
| Juror4: | NO   (life) | YES (death) | NO (death) |
| Juror5: | YES (death) | NO (life) | NO (death) |
| Juror6: | YES (death) | NO (life) | NO (death) |
| Juror7: | YES (death) | NO (life) | NO (death) |
| Juror8: | YES (death) | NO (life) | NO (death) |
| Juror9: | YES (death) | YES (death) | YES (life) |
| Juror10: | YES (death) | YES (death | YES (life) |
| Juror11: | YES (death) | YES (death) | YES (life) |
| Juror12: | YES (death) | YES (death) | YES (life) |

Hypothetically speaking, all twelve members of the jury in such a case individually agree that one of *the three statutory mitigating factors* has been established and that, under state law, a life sentence is appropriate. That is, all twelve jurors could have believed that a mitigating factor exists which, under state law, should have caused the capital defendant to be sentenced to life. However, Texas law forbids the imposition of a death sentence *only if* ten members of a capital sentencing jury agree collectively as to *which* statutory mitigating factor has been established; because such jurors could disagree about which of the three factors has ben established, however, they are left without guidance as to how to proceed. In the absence of such guidance, there is a constitutionally unacceptable risk that Texas capital sentencing juries may feel coerced by a "majority rules" mentality into returning answers to the special issues that would result in a death sentence. A death sentence imposed by a jury so instructed is too likely a product of arbitrary decision-making for the Constitution to tolerate. See McKoy v. North Carolina, supra Mills v. Maryland, supra.

---

[5] Of *course,* the second ("Penry") special issue also implicates a potentially limitless range of mitigating factors, including "troubled background" evidence. *See* Penry v. Lynaugh, 492 U.S. 302 (1989).

8

## VIII.

THE TEXAS CAPITAL SENTENCING STATUTE'S FAILURE TO INFORM
THE JURY THAT A SINGLE HOLDOUT JUROR ON ANY SPECIAL ISSUE
WOULD RESULT IN AN AUTOMATIC LIFE SENTENCE VIOLATES THE
EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION.

The Texas capital sentencing statutes provide that a deadlocked jury -- even based on a
single holdout juror -- during the capital sentencing phase requires the trial court to automatically
sentence the defendant to death. See TEX. CODE CRIM. PRO. Arts. 37.071, 2(g) & 37.0711,
3(g) (Vernon 1994). However, the jury cannot be informed of this provision of the law. *See* Arts.
37.071, §2(a) & 37.0711, §3(i). Such a denial of this aspect of the law violates the Eighth and
Fourteenth Amendments to the United States Constitution. *See* State v. Williams, 392 So.2d 619,
631(La. 1980) (on rehearing) ; State v. Ramseur, 524 A.2d 188, 284 (N.J. 1987) Kubat v. Thieret,
867 F.2d 351, 369-73 (7th Cir.), *cert. denied*, 493 U.S. 874 (1989); *see also* Andres v. United
States, 333 U.S.740, 752 (1948) (federal capital case)

## CONCLUSION

For the foregoing reasons, this Court should declare the Texas capital sentencing scheme
unconstitutional and further preclude the imposition of the death penalty in this case.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has
been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of __
_____,2006.

Paul Johnson

9

183

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION TO
## DECLARE THE TEXAS CAPITAL SENTENCING
## SCHEME UNCONSTITUTIONAL AND MOTION
## TO PRECLUDE IMPOSITION OF THE DEATH PENALTY

On this the __ day of _____, 2006 came on to be heard the Defendant's

Motion to Declare the Texas Capital Sentencing Scheme Unconstitutional and Motion to Preclude

Imposition of the Death Penalty, and after due consideration, the Court is of the opinion, and it is

hereby ORDERED, that said Motion is:

_____ GRANTED

_____ DENIED
to which ruling Defendant timely excepts.

_____
JUDGE PRESIDING         8-23-06

10

189

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO DECLARE THE TEXAS DEATH PENALTY-CAPITAL MURDER SCHEME UNCONSTITUTIONAL BASED ON THE HOLDING OF THE SUPREME COURT OF THE UNITED STATES IN *SMITH V. TEXAS* ON A PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS, NO. 04-5323, DECIDED NOVEMBER 15, 2004

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant Steven L. Long by and through his attorney, Paul Johnson, and respectfully submits that the Death Penalty-Capital Murder scheme as it exists in its present form in Article 37.071 Texas Code of Criminal Procedure is unconstitutional based on the recent opinion of the United States Supreme Court in *Smith v. Texas*, ibid. In that case the Court held in relevant part that the Eighth Amendment to the United States Constitution requires the trial court to empower the jury with a vehicle capable of giving full consideration and effect to mitigating evidence, *Smith v. Texas*, ibid.

Defendant submits that the current special issue submission authorized by Art. 37.071 Texas Code of Criminal Procedure creates the same ethical dilemma faced by jurors in the *Smith* case even though the Texas Legislature has amended the death penalty special issues to be submitted to the jury. The current special issue scheme was not directly addressed in the *Smith* case. Defendant submits that the mitigation special issue currently required by Art. 37.071 of the Texas Code of Criminal procedure is equivalent to the nullification issue discussed in the *Smith* case. Currently the jury is presented a special issue on the State's burden of proof on the issue of

future dangerousness and if the jury answers "yes" then the defendant is sentenced to death unless the jury nullifies this answer by answering "yes" to the mitigation special issue. The current statutory mitigation special issue is not as comprehensive as the 'instruction on mitigation' found in *Smith*.

In other words, the jury must first find that the State carried its burden of proof that the defendant was a future danger and should be put to death unless the jury finds some mitigating factor that changes their mind from their original determination that the defendant should be exterminated. This procedure presents the same ethical dilemma to the ethical juror as in the *Smith* case and is violative of the Eighth Amendment.

Additionally, the scheme as used today in special issues submission implements an indirect burden on the defense to present adequate mitigation in order to avoid the effect of the jury's decision in the previously submitted and answered special issue on further dangerousness that calls for death; even though the jury is instructed that neither side has any burden on the issue of mitigation. This is an illusory concept.

The bottom line is that if the jury votes unanimously that the defendant is a future danger to society (prison society, as default punishment is life in prison) and should be sentenced to death; then the defense is saddled with the implied burden of changing the jury's mind to nullify its previous answer to the first special issue. This presents an untenable ethical dilemma and

violation of due process by indirectly requiring the defendant to meet some undefined burden of proof for mercy to avoid the death sentence.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-18
(214) 761-0707
SBOT# 10778230

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _____ day of _ _8/16/06_____,2006

Paul Johnson

8-23-06

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION
### (SELECTION OF DEATH PENALTY CASES)

COMES NOW, STEVEN L. LONG, the Defendant, by counsel, and pursuant to the 5th,

6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 19

and 29 and Tex. C. Crim. Proc. Articles 1.05, 1.06 and 1.09  and moves the Court to preclude the

death penalty as a sentencing option and in support thereof would show the court the following:

1.  The Defendant has been indicted by the county grand jury for capital murder.

2.  The State is seeking the death penalty.  The Eighth Amendment to the United States

Constitution  requires a greater degree of accuracy and fact finding than would be true in

a noncapital case.  Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306

(1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3.  Tex.C. Crim. P. 37.071 fails to provide a method by which the state determines the

death-worthiness of the Defendant.  This failure eliminates rationality and consistency in

the decision to seek death and violates the Defendant's right to equal protection and due

process as set out in the 5th and 14th Amendment to the United States Constitution,

Article 1, Sections 13 and 19 of the Texas Constitution and Tex. C. Crim Proc. Art.1.04.

4.  The decision as to which defendant is to be subjected to the death penalty varies from

county to county.  There are likely 254 different methods in determining which cases

shall be prosecuted as capital cases and in which of those the penalty of death will be

sought.  Often the decision can turn on the county's willingness to fund the defense, the race of the defendant, the age, sex,  race or status of the victim in the community.  When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied. *Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).

5. Justice Potter Stewart said  in his concurring opinion in *Gregg v. Georgia*, 96 S.Ct. 2909, 2949 (1976):

> Petitioners argument that prosecutors behave in a standard less fashion in deciding which cases to try as capital felonies is unsupported by any facts. Petitioner simply asserts that since prosecutors have the power not to charge capital felonies they will exercise that power in a standard less fashion.  This is untenable.  Absent facts to the contrary it cannot be assumed that prosecutors will be motivated in their charging decisions by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts.

The Supreme Court of the United States is saying that those facts are relevant to a challenge to the decision making process.  Accordingly, it is necessary for this Court to consider those facts and determine  what standards are used by district attorneys in Texas in deciding what cases are to be prosecuted as death cases and those that will be prosecuted as non-death capital cases.   It is only when the standards are determined, through pre-trial testimony of those charged with making the decision, can this Court properly rule on this Defendant's challenge.

6. The cited decision of the United States Supreme Court involved varying standards used to count votes in a presidential election.   The Court noted that voters should be

accorded Equal Protection even though the right to vote is not guaranteed by the Constitution. But as history has "favored the voter" the right to vote as the legislature has prescribed is fundamental". *Bush*, 531 U.S. at 104. " Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." id

7. Although the Supreme Court tried to limit the holding in Gore to the circumstances of the particular case. Can it be said that the Supreme Court should have a more lenient standard for its favorite political candidate, but require those facing the death penalty to adhere to the stricter cause and prejudice standard announced in *McCleskey*? *McCleskey v. Zant*, 499 U.S. 467 (1991).

8. As the right to life is guaranteed by the Constitution certainly the life of a citizen demands as much consideration and protection as does a voter. The right to life is a fundamental one. Furman v. Georgia, 408 U.S. 238, 359 (1972). The failure of the State to set forth uniform and specific standards to determine against whom a death sentence will be sought, violates the principles set forth by the Supreme Court in *Bush v. Gore*, *supra* as well as the Constitutional and statutory provisions cited herein.

9. The Texas Death Penalty scheme magnifies the arbitrary and freakish manner in which the death penalty is imposed in the state, all in violation of the Due Process clause of the 5th Amendment to the United State Constitution and the prohibition against the imposition of Cruel and Unusual Punishment of the 8th Amendment. Specifically, the potentially arbitrary and capricious discretion of the county prosecutors is made worse by the fact that (a) Tex.C. Crim.P. Art. 37.071 does not require a proportionality review to be performed on sentences of death; (b )Texas juries are not told that their failure to

195

agree on any of the sentencing phase special issues will result in a life sentence. Jurors are in fact told that ten (10) of them must agree in order to return a verdict in favor of the Defendant; (c) the Governor of Texas does not have independent authority to grant Clemency and can only do so upon recommendation of the Texas Board of Pardons and Parole; (d) the Texas Board of Pardons and Parole does not meet when considering Clemency petitions and "faxes" or "calls in" their votes; (e) counsel for Clemency petitioners are denied compensation for their assistance provided to a condemned inmate, essentially denying him counsel in the final hour of life.

Wherefore premises considered, Movant prays that upon hearing herein, the Indictment returned against the Defendant be quashed or in the alternative that the jury who will hear this case be precluded from considering death as a sentencing option and such other relief that the Defendant may show himself to be justly entitled.

Respectfully submitted on this the _16_ day of _Aug_, 2006.

By: _____
Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

196

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____8/16/06_____, 2006.

Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

JUDGE PRESIDING

8-23-06

197

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION AND TO DECLARE TEX. C.CR.P ART. 37.071 UNCONSTITUTIONAL (RING V. ARIZONA)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PAUL JOHNSON, Attorney for the accused, STEVEN L. LONG, and pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 3, 10, 13 and 19 of the Texas Constitution, moves this Court to preclude the death penalty as a sentencing option in this case based upon the constitutionally defective indictment against him. In support of his motion, Mr. Mendoza states as follows:

1. Mr. Long was indicted for the offense of capital murder. The State is seeking the death penalty.

2. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333 (1993); Woodson v. North Carolina, 428 U.S. 280, 305 (1976). The courts of this state are bound by the law to make certain that a death sentence is not wantonly or freakishly imposed and that the purposes of Art. 37.071 are accomplished in a constitutional manner. Ellason v. State, 815 S.W.2d 656 (Tex.Crim.App. 1991).

198

3. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole for 40 years. Tex. Penal Code § 12.31 (Lexis through 2002). It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the jury concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b)(1) (West 2002). The Texas legislature has created two offenses: (1) a Capital Felony where the state seeks the death penalty, and (2) a Capital Felony where the state does not seek the death penalty. Tex. Penal Code § 12.31(a) (Lexis through 2002).

4. Mr. Long has the constitutional right to be accused of Capital Murder only on an indictment of a grand jury. Tex. Const. art I, § 10 ("no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary"); Cook v. State, 902 S.W.2d 471, 475 (Tex. Crim. App. 1995) (holding that Texas Constitution guarantees right to indictment by grand jury for all felony offenses). Further, Mr. Long has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10, 13, and 19 of the Texas Constitution, to be informed of the specific nature of the accusations against him. See In re Oliver, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense … are basic in our system of jurisprudence…").

5. Indictment by grand jury protects citizens against arbitrary accusations by the government. King v. State, 473 S.W.2d 43, 45 (Tex. Crim. App. 1971). An indictment is essential to vest the trial court with jurisdiction. Tex. Const. art. V, § 12(b); Cook, 902 S.W.3d

at 475. The purpose of an indictment is to provide notice of the charged offense so that the presumptively innocent accused may prepare, before trial, an informed and effective defense. Riney v. State, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish." Brasfield v. State, 600 S.W.2d 288, 295 (Tex. Crim. App. 1980), overruled on other grounds by Janecka v. State, 739 S.W.2d 813, 819 (Tex. Crim. App. 1987).

6. Therefore, an indictment must aver all the elements of the crime with which it charges. Campbell v. State, 5 S.W.3d 693, 701 (Tex. Crim. App. 1999); Garcia v. State, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998) ("[A]n indictment must allege, in plain and intelligible language, all the facts and circumstances necessary to establish all the material elements of the offense charged."); Ward v. State, 829 S.W.2d 787, 794 (Tex. Crim. App. 1992), overruled on other grounds, Riney, 28 S.W.3d at 566; Labelle v. State, 720 S.W.2d 101, 110 (Tex. Crim. App. 1986); Ex parte County, 577 S.W.2d 260, 261 (Tex. Crim. App. 1979); Benoit v. State, 561 S.W.2d 810, 813 (Tex. Crim. App. 1977); State v. Draper, 940 S.W.2d 824, 826 (Tex. App. Austin 1997); cf. Hamling v. United States, 418 U.S. 87, 117 (1974). Indeed, the Texas Legislature has mandated that an indictment must contain all material elements of the offense charged: "Everything should be stated in an indictment which is necessary to be proved." Tex. Code Crim. Proc. Ann. art. 21.03 (West 2002); see also Tex. Code Crim. Proc. Ann. art. 21.11 (West 2002).

7. In the past, Texas courts have rejected the contention that, where the State seeks the death penalty, the failure of the capital murder indictment to allege the punishment criteria—the special issues for the jury, mandated by Article 37.071, section 2(b), of the Texas Code of

Criminal Procedure—renders a subsequent death sentence constitutionally invalid. <u>See, e.g.,</u>

<u>Moore v. State</u>, 969 S.W.2d 4, 13 (Tex. Crim. App. 1998).

      8. Those courts justified their holdings with two arguments. First, the courts reasoned

that since the purpose of an indictment is to provide notice, the punishment special issues need

not be alleged in the indictment because "the very fact of a capital murder indictment puts the

defendant on notice that conviction will result in either life imprisonment or the death penalty"

<u>Aranda v. State</u>, 640 S.W.2d 766, 770 (Tex. App. San Antonio 1982); <u>see also</u> <u>Moore</u>, 969

S.W.2d at 13; <u>Callins v. State</u>, 780 S.W.2d 176, 186-87 (Tex. Crim. App. 1989) ("a defendant

who is charged under capital murder indictment is effectively put on notice that the special

questions under Article 37.071 . . . will be issues in the case and that such procedural provisions

need not be alleged in the indictment") (citations omitted); <u>Castillo v. State</u>, 739 S.W.2d 280,

298-99 (Tex. Crim. App. 1987); <u>Vigneault v. State</u>, 600 S.W.2d 318, 329-30 (Tex. Crim. App.

1980) (observing that "the fact that the issues to be submitted to the jury are in every capital case

identical and wholly independent of the varying fact situations which may come to trial places

the capital defendant in a substantially different posture as regards notice thereof, from that of a

civil litigant," and therefore holding that the failure to allege the special issues in the indictment

did not deprive the appellant of notice) (footnote omitted).

      9. The argument that capital defendants are already provided all the notice

constitutionally required of the punishment special issues by a capital murder indictment that

does not allege the facts to support the issues cannot seriously be maintained. With respect to

Mr. Mendoza's rights under the Texas Constitution, that notice must "come from the face of the

indictment. Indeed the accused is not required to look elsewhere." <u>Ward</u>, 829 S.W.2d at 794;

<u>Labelle</u>, 720 S.W.2d at 110 (observing that Article I, section 10, of the Texas Constitution

requires that notice must come from the face of the indictment); <u>Benoit</u>, 561 S.W.2d at 813 (holding that defendant's knowledge of the offense with which he was charged does not obviate inquiry into whether the charge, in writing, furnished that information in plain and intelligible language). An indictment that does not allege, for example, that a probability exists that Mr. Long would commit criminal acts of violence that constitutes a "continuing threat to society" fails to provide notice of that accusation from its face. Likewise, an indictment that fails to allege that no circumstance exists that would justify a life sentence fails to provide notice of that allegation. Mr. Long is not clairvoyant; he cannot use the indictment sworn out against him as a crystal ball to read the prosecutor's mind and foresee the State's intention to prove at trial that Mr. Long is a "continuing threat to society." and that there is nothing that will justify a life sentence.

10. Nor does the fact that the future dangerousness issue and lack of mitigating evidence are raised in every capital murder case provide Mr. Long with the constitutionally required notice that these will be issues in his case. For instance, that the victim was killed is a fact at issue in every capital murder case, but a capital murder indictment that fails to allege the victim's death is patently defective. <u>Cf.</u> <u>Welch v. State</u>, 543 S.W.2d 378, (Tex. Crim. App. 1976) (requiring indictment for theft to allege, *inter alia*, that stolen personal property was owned, and to name the owner if known); <u>Ex parte Winton</u>, 549 S.W.2d 751, 752 (Tex. Crim. App. 1977) (holding that failure to allege required culpable mental state renders indictment defective). Underscoring the fallaciousness of assuming that what is at issue in one capital murder case provides adequate notice in another case, the "continuing threat to society" and "mitigation" special issues embrace a confluence of factors that varies from case to case. <u>See, e.g.,</u> <u>Tong v. State</u>, 25 S.W.3d 707 (Tex. Crim. App. 2000) (unadjudicated extraneous offenses);

Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App. 1998) (evidence of pedophilia and unlikelihood of rehabilitation); Walbey v. State, 926 S.W.2d 307 (1996) (facts of crime); Ford v. State, 919 S.W.2d 107 (1996) (lack of remorse); Mason v. State, 905 S.W.2d 570 (1995) (membership in white-supremacist organization that engaged in criminal activities); McBride v. State, 862 S.W.2d 600 (1993) (psychiatric testimony). Mr. Long has not been provided with notice as to which, if any, of these theories will be pursued by the State at punishment. As such, the indictment is defective as a matter of state and federal constitutional law. See Tex. Const. art. I, §§ 10, 13, & 19; see also Ables v. Scott, 73 F.3d 591, 593-94 & n.4 (5ᵗʰ Cir. 1996) (resting refusal to grant relief for indictment's failure to allege "deadly weapon" sentence enhancement under Fifth, Sixth, and Fourteenth Amendments on the fact that petitioner had actual notice of State's punishment theory, and because, at the time the case was decided, pre-Apprendi, aggravating factors increasing punishment were not considered elements of the offense but are now).

11. The second reason why the Texas courts have not required the punishment special issues to be alleged in the indictment is that the courts deemed them not to be elements of the offense of capital murder. See Moore, 969 S.W.2d at 13; Rosales v. State, 748 S.W.2d 451, 458 (Tex. Crim. App. 1987); Castillo, 739 S.W.2d at 298-99; Sharp v. State, 707 S.W.2d 611, 624-25 (Tex. Crim. App. 1986) ("Appellant is correct in his assertion that everything necessary to be proven to sustain a conviction *in the guilt/innocence phase* must be alleged in an indictment. However, the special issues of Art. 37.071, supra, are not an element of the offense of capital murder; Art. 37.071 relates only to punishment").

12. The notion that the punishment special issues are not elements of the offense of capital murder contradicts over a century of Texas case law addressing accusations on what

constitutes a "crime." This authority establishes that a "crime" includes every fact that is by law a basis for imposing or increasing—as opposed to mitigating—punishment. Only facts that were not the basis for punishment were not elements, and thus did not need to be alleged in the indictment. See 1 J. Bishop, Law of Criminal Procedure § 81, at 51 (2d ed. 1872) ("The indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted."), adopted, Hobbs v. State, 44 Tex. 353, 354 (1875). Statutory aggravating facts were treated the same way—as elements of a new, aggravated grade of the common law crime rather than some sort of "non-element" that enhances the sentence of a common law crime. Indictments not alleging these statutory aggravators were deficient as a matter of law, even if the jury found the presence of the aggravating circumstance beyond a reasonable doubt. See, e.g., Gooden v. State, 145 S.W.2d 177, 178 (Tex. Crim. App. 1940); Williams v. State, 108 S.W.2d 371, 372 (Tex. Crim. App. 1908); Garcia v. State, 19 Tex. Ct. App. 389, 393 (1885); Searcy v. State, 1 Tex. Ct. App. 440, 444 (1876); Hobbs, 44 Tex at 355; see generally Apprendi v. New Jersey, 530 U.S. 466, 500-18 (2000) (Thomas, J., concurring) (gathering case law).

13. This principle—that a fact that increases the penalty for a crime beyond the prescribed statutory maximum must be alleged in the indictment and proved to the jury beyond a reasonable doubt—is a matter of constitutional law. See Apprendi v. New Jersey, 530 U.S. 466, 476-77 (2000); Jones v. United States, 526 U.S. 227, 243 n.6 (1999) ("any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt.") (emphasis added). The question of whether a fact denominated a sentencing factor by the legislature defining the offense is an element "is not one of form, but of effect." Apprendi, 530 U.S. at 494. If a State makes a defendant's authorized punishment contingent on the finding of a fact, that fact—"no matter how

the State labels it"—constitutes an element of the offense. Ring v. Arizona, No. 01-488, 2002

U.S. LEXIS 4651, at *34 (June 24, 2002).

14. Furthermore, the Texas Court of Criminal Appeals has implicitly acknowledged that the punishment special issues are elements of the offense of capital murder where the State seeks the death penalty, as distinguished from the offense of capital murder where the State does not seek the death penalty. In Powell v. State, the Texas Court of Criminal Appeals, construing the version of Article 37.071 of the Texas Code of Criminal Procedure then in effect, stated that the "legislature defined a *capital murder punishable by death* as including the element of [the punishment special issue] deliberateness." 897 S.W.2d 307, 316 (Tex. Crim. App. 1994) (emphasis added), overruled by Prystash v. State, 3 S.W.3d 522, 532 (Tex. Crim. App. 1999). Revisiting the issue following Apprendi, the Texas Court of Criminal Appeals denied that the punishment special issues are elements of capital murder; however, in the same breath, the court confirmed that their centrality to the imposition of a death sentence, stating that "the 'deliberateness' special issue is an element of the death penalty, not capital murder." Smith v. State, 74 S.W.3d 868, 873-74 (Tex. Crim. App. 2002). Tellingly, the Smith court conceded that a punishment special issue might be an element of capital murder when a death sentence is sought, though the court concluded that the capital murder statute nevertheless complies with the Apprendi rule in the context of the claim in that case. Id. at 874.

15. Since Smith, the U.S. Supreme Court has verified that a statutory aggravating circumstance that, when found by the fact finder, increases the punishment for capital murder from life imprisonment to the death penalty is an element of the offense of capital murder. Ring, 2002 U.S. LEXIS 4651, at *44 (overruling Walton v. Arizona, 497 U.S. 639 (1990)).

16. While Mr. Long has been indicted for capital murder under section 12.31(a) of the Texas Penal Code and the State is seeking the death penalty, the indictment against him fails to allege the requisite statutory aggravating circumstances for a death sentence. See Tex. Code Crim. Proc. Ann. art. 37.071, § 2 (West 2002). Specifically, the indictment fails to allege, much less assert the factual predicates for such an accusation, that Mr. Long constitutes a "continuing threat to society." Id. at § 2(b). Evidence of Mr. Long's future dangerousness must be presented to the grand jury and alleged in the indictment, if such dangerousness is found to be true by the grand jurors. If the indictment does not make the proper allegation, then this Court lacks the jurisdiction to try Mr. Long for anything other than a non-death capital felony, and death should therefore be precluded as a sentencing option. To proceed otherwise would violate Mr. Long's rights under the Texas and United States Constitutions.

17. Likewise, the absence of a circumstance that would justify a life sentence must be plead in the indictment and established by the state, beyond a reasonable doubt. The failure of Article 37.071 to place the burden of establishing, beyond a reasonable doubt, that no circumstance exists that would justify a sentence of life violates the rights and protections afforded to the accused by the provisions of the 5th, 6th, 8th and 14th Amendments to the United States Constitution. *Ring, supra.*

WHEREFORE, PREMISES CONSIDERED, Mr. Long prays that this Court preclude the death penalty as a sentencing option in this case.

Respectfully submitted on this the _16_ day of _August_, 2006.

By:_____

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of ___ 8/16/06 ___, 2006.

_____
Paul Johnson

**ORDER**

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING   8-23-06

207

CAUSE  NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION PRECLUDE THE DEATH PENALTY AS A SENTENCING OPTION AND DECLARE ARTICLE 37.071 UNCONSTITUTIONAL (JONES V. US.; APPRENDI V. NEW JERSEY and RING V.ARIZONA)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution.

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty. The Eight Amendment requires a greater degree of accuracy and fact finding than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L. Ed.2d 306 (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

3. The maximum penalty for the offense of capital murder is life in prison without the possibility of parole for 40 years. Texas Penal Code 12.31. It is only when the state seeks the death penalty that the prescribed statutory maximum can be exceeded and then only if the finder of fact concludes, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. C. Crim. P. 37.071(2)(b)(1).

4. A fact ("future dangerousness") that increases the penalty for a crime beyond the prescribed statutory maximum( a sentence of LWOP-40 increased to death) must be alleged in the indictment and proved to the jury beyond a reasonable doubt. *Jones v. U.S.* 526 U.S. 227 (1999) *Apprendi v. New Jersey*, 530, U.S.466, 147 Led. 2d 435, 120 S.Ct. 2348 (2000). The Texas legislature has created two offenses, one is a Capital Felony where the state seeks death and a Capital Felony where the state does not seek death, Texas Penal Code Section 12.31 (a). Evidence of the Defendant's future dangerousness must be presented to the grand jury, and alleged in the indictment, if such dangerousness is found to be true by the grand jurors. If the indictment does not make the proper allegation, then the Court does not have jurisdiction to prosecute the Defendant for anything other than a non-death capital felony and death should be precluded as a sentencing option.

5. In *Ring v. Arizona*, — U.S. —, 122 S.Ct. 2428 (2002), the Supreme Court held that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to capital cases: Where a sentence of death is authorized only upon the finding of certain facts, those facts "operate as 'the functional equivalent of an element of a greater offense . . . .'" *Ring*, 122 S.Ct. at 2443 (quoting *Apprendi*, 530 U.S. at 494 n.19). In *Ring*, the Sixth Amendment's jury trial guarantee thus required that the Arizona death penalty statute's aggravating factors be treated as elements: "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury.'" *Ring*, 122 S.Ct. at 2443 (quoting *Apprendi*, 530 U.S. at 494 n.19 ). Ring did not "contend that his indictment was constitutionally defective" because the Fourteenth Amendment "has not been construed

to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.'"

*Ring*, 122 S.Ct. at 2437 n.4 (quoting *Apprendi*, 530 U.S. at 477 n.3).

Article 1, Section 10 of the Texas Constitution provides, in part:

> "..no person shall be held to answer for a criminal offense,
>
> unless on an indictment of a grand jury except in cases in which
>
> the punishment is by fine or imprisonment, otherwise than in the penitentiary.."

6. The State of Texas is trying to kill the accused. The issues relating to future "criminal acts of violence" and mitigation are submitted to the jury. In violation of the rule of *Ring*, Tex.C.Crim.P. Art. 37.071 treats the special issue questions not as elements, but as sentencing factors, and provides for proof of these facts without indictment by a grand jury. Because the procedures that are set out (or omitted from) Art. 37.071, the statute violates the rule of *Jones*, *Apprendi*, and *Ring* and it is facially unconstitutional. *Cf. Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) ("In the hands of the grand jury lies the power to charge a greater or a lesser offense . . . a capital or a noncapital offense — all on the basis of the same facts."); *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998) (grand jury controls "whether to charge a greater or lesser offense, including the important decision to charge a capital crime"). Because Art. 37.071 is fatally defective and the indictment fails to make the allegations that are necessary before the jury can even consider to impose death, death must be excluded as a sentencing option for the jury that will hear this case.

7. Tex. C. Crim. P. Art 37.071(2)(3)(e)(1) requires the Court to instruct the jury as follows:

Whether, taking into consideration of all of the evidence including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

If the jury finds that a probability exists that the defendant will commit future acts of criminal violence and an affirmative finding on the "anti-parties" instruction, the jury must consider the "mitigation" issue. However, Art. 37.071 does not state who has the burden on this issue. This omission has been approved by the Texas Court of Appeals which added that it will not review the sufficiency of the evidence offered in support of the issues. *Colella v. State,* 915 S.W.2d 834  (Tex.Crim.App. 1995).

The burden on this instruction is clearly not on the prosecution. *Barnes v. State,* 876 S.W. 2d 316, 329-330.  In fact of practice, however, the defendant has the burden of proof for two reasons. First, the Defendant must convince the jury that it is more likely than not that at least one circumstance exists that would justify a life sentence. Secondly, the jury is instructed to consider the "moral culpability of the defendant" against mitigating evidence presented. This death qualified jury has just found the defendant guilty of intentional murder (legal culpability). It is not possible for a jury then to eliminate "legal culpability" from its deliberation and distinguish "legal culpability" from "moral culpability". The jury is even instructed to consider the circumstances of the offense which makes it impossible for them to find a circumstance that would justify a life sentence without also finding that such circumstances exceed the legal/moral culpability of the defendant.

211

Ap*prendi* and Ring both require that "If a state makes an increase in defendant's authorized punishment contingent on the finding of a fact, that fact–no matter  how the State labels it–must be found by a jury beyond a reasonable doubt.  *Apprendi* at  482-483. Art.37.071 fails to require that the state prove the absence of a circumstance that would justify a life sentence and is therefor in violation of the 8th Amendment to the United States Constitution and should be found to be unconstitutional.

WHEREFORE, PREMISES CONSIDERED, the Defendant  prays that this Court preclude the death penalty as a sentencing option in this case and further the Article 37.071(2)(e)(1) is unconstitutional..

Respectfully submitted on this the __16__ day of __Aug__ 2006.

By: _____

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

212

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _____, 2006.

_____
Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _23_ day of _____, 2006.

_____
JUDGE PRESIDING

213

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO HOLD THAT TEX. C.CRIM. P. ART. 37.01 IS UNCONSTITUTIONAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, the Accused, by and through his attorney of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and Tex.C.Crim.P. Art. 2.03 and 38.03 and makes this his motion to hold that Tex.C.Crim.P. Article 37.071 is unconstitutional and as grounds therefore would show the Court as follows:

1. The Defendant has been indicted by the county grand jury for capital murder.

2. The State is seeking the death penalty. The Eighth Amendment to the United States Constitution requires a greater degree of accuracy and fact-finding than would be true in a noncapital case. Gilmore v. Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed.2 d 306 (1993) and Woodson v. North Carolina, 428 U.S. 280, 305 (1976).

-1-

214

3. TEX. CODE CRIM. PROC. ANN. art. 37.071 is unconstitutionally vague and arbitrarily applied to the Accused in violation of the 5th, 6th 8th and 14th Amendments to the United States Constitution.

4. Specifically, the following words and phrases are not defined for the jury:

      (a) "..the personal moral culpability of the defendant..."

      (b) "..probability.."

      (c) "...criminal acts of violence phrase ..."

      (d) "..continuing threat..."

      (e) "..society..."

5. Such terms, without proper definition, are vague, ambiguous and do not offer sufficient guidance to the jury. See *Maynard v. Cartwright*, 486 U.S. 356 (1988). The words "probability" and "society" are capable of definition in such a way as to provide meaning to the jury and relevance to the issues to be decided, i.e. "probability" can be defined to mean "more likely than not," "continuing" can be defined to mean "uninterrupted;" and society can be defined to mean "prison society."

6. The failure of the Texas legislature to define these terms allows the jury to decide the issue without the guided discretion that the 8th Amendment requires. *Furman v. Georgia*, 408 U.S. 238 (1972).

7. The failure to define these terms deprives the Accused of his right to a unanimous jury as each juror can decide on their own how to define the terms with the result that the

-2-

215

Accused may be sentenced to death, not by a unanimous jury but by a jury that has decided the case based upon twelve (12) different sets of guidelines.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this court will hold this statute unconstitutional, and for such other relief as Defendant may be entitled.

Respectfully Submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion ~~was~~ ~~served upon~~ was served upon the attorney for the State on 8/16/06 , 2006.

Paul Johnson

8-23-06

-3-

216

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO HOLD UNCONSTITUTIONAL
## V.A.C.C.P. ARTICLE 37.071 SEC. 2(e) AND (f) - BURDEN OF PROOF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, the Accused, by and through his attorney of record and pursuantto the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, sections 3, 10, 13, 15 & 19 of the Texas Constitution and makes this his Motion to Hold Unconstitutional V.A.C.C.P. Article 37.071 Sec. 2(e) and (f) - Burden of Proof, and as grounds therefore would show the Court as follows:

1. Effective September 1, 1991, a jury which has convicted a defendant of capital murder, in which the State is seeking the death penalty, shall be charged as follows:

Article 37.071, Sec. 2

(e) The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and

-1-

217

background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

(f)   The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:

> (1)  shall answer the issue "yes" or "no";

> (2)  may not answer the issue "no" unless it agrees unanimously and may not answer the issue "yes" unless 10 or more jurors agree.

2.  This statute is unconstitutional for the following reasons:

(a)   It impermissibly shifts the burden of proof on mitigation to the Defendant in violation of Article I §10 of the Texas Constitution.   The statute requires the jury to consider, along with mitigating evidence, the "moral culpability of the defendant."   This is the jury that has just found the defendant had no defense to the charge of capital murder and that he was guilty of that offense, beyond a reasonable doubt.

The statute then demands that the defense produce "sufficient" mitigation (while considering this same "moral culpability") to warrant a sentence of life imprisonment.   The mitigating evidence must be "sufficient" to overcome "moral culpability" that has already been established in the minds of the jurors.   In death penalty deliberations, "moral culpability" is not evidence, it is a finding that the jury has already made.   The statute places an unfair, undue and unconstitutional

-2-

218

emphasis on the finding that the jury has already made. The Defendant, if he is to save his life, must offer evidence that is somehow greater than the finding of moral culpability beyond a reasonable doubt.

(b) Aside from shifting the burden of proof to the Defendant, the statute provides no other guidance to the jury that is called upon to make this life and death decision. As a result, the death penalty is imposed in a wanton and freakish manner in violation of the Defendant's rights to due process and protection from cruel and unusual punishment. Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I §13 of the Texas Constitution.

(c) This impermissible shift of the burden to the Defendant is made more unconscionable by the language of V.A.C.C.P. 37.071(2)(f) which provides that the jury shall not answer the mitigation issue "yes" (resulting in a life sentence) unless 10 or more jurors agree. The Defense, according to the instructions to the jury, must then offer "sufficient" mitigating evidence to not only overcome the "moral culpability" that has already been established in the eyes of the jury, but 10 or those jurors must be convinced of the sufficiency of that evidence.

3. State Law Violations

The infirmities in the statute discussed above are also in violation of State Constitutional Law. Under the "due course of the law" provision of the Texas Constitution, Article I §10, the citizens of this state are guaranteed that any punishment for an offense will be in

-3-

219

accordance with the law. ***McFarlane v. State***, 254 S.W.2d 136 (Tex. Crim. App. 1953).

When the burden of proof is shifted to the Defendant, the State's burden has essentially

been reduced. *See e.g., **Cobarrubio v. State***, 675 S.W.2d 749 (Tex. Crim. App. 1983)

overruled in part, ***Lawrence v. State***, 700 S.W.2d 208 (Tex. Crim. App. 1985), and

***Elliott v. State***, 858 S.W.2d 478, 487-488 (Tex. Crim. App. 1993). Such a punishment,

based on a reduced burden, is not in accordance with Texas law and is unconstitutional.

WHEREFORE, PREMISES CONSIDERED, Defendant prays this court will hold

this statute unconstitutional, and for such other relief as Defendant may be entitled.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

-4-

220

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the _16_ day of _August_ _____,2006.

Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING        8-23-06

-5-

221

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO HOLD UNCONSTITUTIONAL V.A.C.C.P.
## ARTICLE 37.071 SEC.2(e) AND (f) -
## FAILURE TO REQUIRE MITIGATION BE CONSIDERED

COMES NOW, STEVEN L. LONG, by and through his attorneys of record, and makes this his Motion to Hold Unconstitutional V.A.C.C.P. Article 37,071 Sec. 2(e) and (f) — Failure to Require Mitigation be Considered, and as grounds therefore would show the Court as follows:

### I.

Article 37.071 Sec. 2(c) and (f), submitted to a jury upon conviction of capital murder reads as follows:

### Article 37.071, Sec. 2

(e)     The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

(f )     The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:

(1)     shall answer the issue *"yes"* or "no";

1

222

(2)    may not answer the issue "no" unless it agrees unanimously and may not answer the issue "yes"unless 10 or more jurors agree.

II.

This statute is unconstitutional because it fails to <u>require</u> that mitigation be considered. A juror is required to consider all mitigation. After the juror has considered the mitigation, it is then up to the juror to determine what effect to give the mitigation. Failure to mandate consideration of mitigating evidence makes this statute unconstitutional in violation of the Eighth Amendment.

Capital murder statutes that have survived constitutional scrutiny all require that the jury be told that it must consider all mitigating evidence. E.g., <u>Johnson v. Texas</u>, 113 S.Ct. 2658 (1993); <u>Boyde v. California</u>, 494 U.S. 370 (1990); <u>Blystone v. Pennsylvania</u>, 494 U.S. 299 (1990)

WHEREFORE, PREMISES CONSIDERED, Defendant prays this Court will find Article 37.071 Sec. 2(e) and (f) unconstitutional, and for such other relief as Defendant may be entitled.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

2

223

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has

been furnished to counsel for the State by hand-delivery of a copy of same this the _____ day of _

_____ 8/10/06 _____,2006.

Paul Johnson

3

224

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION TO HOLD UNCONSTITUTIONAL V.A. C. C. P. ARTICLE 37.071 SEC.2(e) AND (f) - FAILURE TO REQUIRE MITIGATION BE CONSIDERED

On this _____ day of _____, 2006 came on to be heard the Defendant's Motion to Hold Unconstitutional V.A.C.C.IP. Article 37.071 Sec. 2(e) and (f) — Failure to Require Mitigation be Considered, and after due consideration, the Court is of the opinion, and it is hereby **ORDERED,** that said Motion is:

_____  GRANTED

_____  DENIED  To which ruling Defendant timely excepts.

_____  8-23-06
JUDGE PRESIDING

4

225

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO DECLARE TEXAS DEATH PENALTY STATUTE TO BE UNCONSTITUTIONAL

### (Juror's inability to Predict Future Dangerousness)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and files this Motion to Declare the Texas Death Penalty Statute to be Unconstitutional and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. Tex. C. Crim. P. Art. 37.071(2)(b)(1) requires a jury during the penalty phase of a capital trial to answer the following question:

> "Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society"

4. The ability to accurately predict whether or not a person would commit criminal acts of violence is not within the ability of the lay people on the jury. The probability that a person will commit future violence is not a prediction that even the psychiatric community can make, particularly in the long run. The unreliability of psychiatric

226

predictions of long-term future dangerousness is by now an established fact within the profession. *American Psychiatric Association Task Force on Clinical Aspects of the Violent Individual*, "Clinical Aspects of the Violent Individual" (1974) and *Amicus Brief of the American Psychiatric Association (APA) in Barefoot v. Estelle*, (1983).   The APA, in its brief, said that the primary finding of the task force was that judgments concerning the long-run potential for future violence and the dangerousness of a given individual are "fundamentally of very low reliability," adding that the state of the art regarding predictions of violence is very unsatisfactory.

5. The unreliability of long term predictions of future dangerousness is acknowledged even today by those who take the position that there is some ability to predict dangerousness.  "Using modern assessment tools, however, there is a growing body of data to suggest that psychiatrists can, in fact, predict violence more accurately than many believe–**at least in the short term**.  Ken Hausman, "Predicting Violence Risk Possible but Complex" *Psychiatric News*, Vol 36, Number 13 (2001).  These predictions of violence, even if more accurate than in the past, come in a civil setting where a determination is made about possible civil commitment, not in the context of a capital murder case where the issue is whether someone is going to live or die, not will their civil liberties be limited for short period of time.

> "Despite the pervasiveness of violence risk assessment in mental health law, research continues to indicate that the unaided abilities of mental health professionals to perform this task are modest at best".  *MacArthur Research Network on Mental Health and the Law*, "Executive Summary," at 1. ( April, 2001).

6. The consideration for the jury must necessarily be a long-term consideration as a defendant who is given a life sentence will not be eligible for parole for 40 calendar

years. The ability to make such long-term predictions is rendered more unreliable by the propensity of a person to commit violence to "age out" as he grows older.

7. The State will often make the argument that the Defendant is a "future danger" to prison society because he has an anti-social personality. The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)states: at page 648:

> Anti-social Personality Disorder has a chronic course but may become less evident or remit as the individual grows older, particularly by the fourth decade of life. Although this remission tends to be particularly evident with respect to engaging in criminal behavior, three is likely to be a decrease in the full spectrum of antisocial behaviors and substance abuse. (DSM-IV) at 648.

8. The jurors are not instructed to consider either the unreliability of long-term predictions nor the "aging-out" effect noted by the DSM-IV. This makes the application of the Texas Death Penalty statute both arbitrary and capricious. It further denies this Defendant a fair trial and due process of law.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that:

1. Art. 37.071 be found to be unconstitutional and the death penalty be precluded as a sentencing option for the jury that is sworn to decide this case;

2. In the alternative, that the jury that is empaneled to decide this case be instructed as to the unreliability of long term predictions of future dangerousness; and

3. that the jury be instructed that as a person ages, their propensity to commit violent acts remits, particularly in the 4th decade of life; and

4. That the Defendant have such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted on this the 16 day of August 2006.


By: _____

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 16 day of _____August_____, 2006.


_____
Paul Johnson


## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING    8-23-06


229

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 265TH JUDICIAL |
| VS | § | DISTRICT COURT OF |
| STEVEN L. LONG | § | DALLAS COUNTY, TEXAS |

## MOTION TO DECLARE THE "10-12 RULE" UNCONSTITUTIONAL

TO THE HONORABLE JUDGE OF SAID COURT:

STEVEN L. LONG, pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article One, Sections Three, Ten, Thirteen, and Nineteen of the Texas Constitution; and other applicable law, moves this Court: (1) to declare Tex. C. Crim. P. Article 37.071(2)(d)(2) and 37.071(2)(f)(2) unconstitutional on the ground that they create an impermissible risk of arbitrary imposition of the death penalty by placing a false dilemma before the jury; (2) to declare Article 37.071(2)(a) unconstitutional with respect to its prohibition on informing the jury that a life sentence necessarily results from an inability to answer any of the special issues; and in the alternative (3) to provide clarifying instructions to the jury with regard to the failure of jurors to agree upon answers to special issues; and (4) to allow the attorneys to voir dire prospective jurors in order to discover their beliefs regarding the substantive outcome of deadlock at the sentencing phase.

In support of his motion, Steven L. Long states as follows:

### The "10-12 Rule"

1. Tex. C. Crim. P. Article 37.071(2)(d)(2) requires the Court to charge the jury that it may not answer any issue submitted under Subsection (b) of this article "yes" unless it agrees unanimously, and it may not answer any issue "no" unless ten or more jurors agree.

2. The Court is required by Tex. C. Crim. P. Article 37.071(2)(f)(2) to charge the jury that it may not answer the issue submitted under Subsection (e) "no" unless it agrees unanimously and it may not answer "yes" unless ten or more jurors agree.

1

3.   Under Tex. C. Crim. P. Article 37.071(2)(c) and 37.071(2)(f)(1) the jurors "shall" answer each interrogatory either "yes" or "no."

4.   In the event that the jury is unable to answer any issue, either because it was unable to secure unanimity for a "yes" answer or ten votes for a "no" answer pursuant to the issues submitted under Subsection (b), or because it was unable to secure unanimity for a "no" answer or ten votes for a "yes" answer pursuant to the issue submitted under Subsection (e), Tex. C. Crim. P. Article 37.071(2)(g) requires the Court to sentence the defendant to life in prison.  This is substantively identical to the sentence that results if the jury is able to answer "no" to at least one issue submitted under Subsection (b) or "yes" to the issue submitted under Subsection (e).

5.   Tex. C. Crim. P. Article 37.071(2)(a) prohibits the Court, either attorney, and the defendant himself from informing the jury, or any prospective juror, that the failure to answer any of the issues presented will result in a mandatory life sentence.  Jurors who ask questions regarding the consequences of such a deadlock are routinely reread the original instructions.

6.   Death is different not only in severity but also in kind from all other punishments. The Eighth and Fourteenth Amendments to the United States Constitution demand additional procedural safeguards in capital trials.  See generally, Furman v. Georgia, 408 U.S. 238 (1972); Gregg v. Georgia, 428 U.S. 153 (1976); See Woodson v. North Carolina, 428 U.S. 280, 305 (1976)(holding that "death is qualitatively different").  The effect of this is that legislatures and courts are obligated to strike a difficult, but constitutionally mandated, balance between the non-arbitrary imposition of the death penalty, and the right of each defendant to individualized sentencing.[1]  The Texas death penalty statute, by providing misleading information to jurors and then prohibiting the court, the attorneys, and the defendant from correcting that misinformation, both creates a constitutionally impermissible risk of arbitrariness, and denies defendants their right to individualized sentencing.

---

[1] It is precisely this difficulty that caused Justice Blackmun to conclude that the entire enterprise of seeking to make the death penalty constitutionally acceptable was flawed.  In his dissent from the Court's denial of a petition to grant a writ of certiorari, Blackmun declared: "From this day forward, I no longer shall tinker with the machinery of death . . . . It is virtually self-evident to me now that no combination of procedural rules or substantive regulations ever can save the death penalty from its inherent constitutional deficiencies."  Callins v. Collins, 510 U.S. 1141, 1145 (1994)(Blackmun, J. dissenting).

## The "10-12 Rule" Creates an Impermissible Risk of Arbitrariness

7.   The requirement that a death sentence not be imposed arbitrarily is derived from the "Eight Amendment's heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" Caldwell v. Mississippi, 472 U.S. 320, 323 (1985)(quoting Woodson v. North Carolina, 428 U.S. at 305 (1976)).  It was chiefly the concern that decisions of life and death were being arbitrarily that led the Supreme Court in 1972 to declare the death penalty in violation of the Eighth and Fourteenth Amendments to the Constitution.  See generally, Furman v. Georgia, 408 U.S. 238 (1972).  In capital cases, therefore, the Court is committed to ensuring that there is sufficient process to "guarantee, as much as is humanly possible, that the sentence was not imposed out of whim . . . or mistake." Eddings v. Oklahoma, 455 U.S. 104, 118 (1982)(O'Connor, J., concurring) (overruled on other grounds).

8.   The Texas death penalty statute affirmatively creates confusion in the minds of the jurors.  Jurors are first told that the jury as a whole "shall" answer "yes" or "no" to each issue presented; they are subsequently told that ten or more jurors must be in agreement to give one set of answers and that they must be unanimous in order to give another.  This necessarily raises the question of what happens in the event that the jury, despite being instructed that it must answer each question, is unable to get the minimum number of votes required to give either answer.  The statute clearly provides that in the event of a non-answer, the defendant is to receive a sentence that is substantively identical to that which he or she would have received had there been a verdict in favor of life, and thus the law itself exhibits no confusion with regard to the situation presented.  However, not only does the statute fail to do all that is humanly possible to ensure that decisions regarding life and death are not made as a result of that manufactured confusion, but it actively prohibits any clarification of the confusion by preventing jurors from being informed at any point of the effect of a non-answer.

9.   It is true that state legislatures are often given discretion to decide what information is relevant to a capital sentencing determination, and are thus able to exclude some information from jury instructions.  See California v. Ramos, 463 U.S. 992, 1001 (1983)(holding that the Court generally "defer[s] to the State's choice of substantive factors relevant to the penalty determination").  However, that discretion is bounded by

3

232

the requirements of due process. See, e.g., Simmons v. South Carolina, 512 U.S. 154, 175 (1994)(O'Connor, J. concurring in judgment); Ramdass v. Virginia, 530 U.S. 156, 195 (2000)(Stevens, J. dissenting); Shafer v. South Carolina, 532 U.S 36, 39 (2001); Kelly v. South Carolina, 534 U.S. 246, 248 (2002).

10. In Ramos, the Court permitted a jury instruction regarding the State Governor's commutation powers on the ground that the instruction was both accurate and relevant to a legitimate state penological interest. Ramos, 463 U.S. at 1001-06. Despite being prompted to apply Ramos in the case of Caldwell v. Mississippi, the Court refused, holding that when the State argues that automatic appellate review is meant to determine whether the death penalty is appropriate in a given case, this information not only inaccurately depicts the role of the appellate court, but more importantly it serves an illegitimate state purpose by diminishing the ability of jurors to feel the gravity of their task. Caldwell v. Mississippi, 472 U.S. 320, 336-41 (1985).

11. The Texas procedural rules and corresponding jury instructions are equally inaccurate and illegitimate. When jurors are instructed that they may not give a verdict of life unless ten or more agree upon a life answer in response to at least one of the three issues, this provides an incorrect picture of the state of the law. In fact, if only one juror is able to conclude that sufficient mitigation exists to warrant the imposition of a life sentence, despite that juror's inability to convince nine other jurors of his or her position, a life sentence will be imposed. This situation is unique to capital sentencing juries. During the guilt/innocence phase of a criminal trial, it is strictly correct to inform the jury that unanimity is required for either a verdict of guilt or acquittal. Although anything short of unanimity will lead to a mistrial, and thus might lead the defendant to be released as though he were acquitted, he may still be retried and is thus unable to claim numerous basic constitutional protections such as that of double jeopardy. Under the Texas sentencing scheme, while the legislature might prefer a life sentence that derives from the agreement of ten jurors to one that arrives by default, the position of the defendant is identical in both. See Padgett v. State, 717 S.W.2d 55, 58 (Tex. Crim. App. 1986) (holding that "a jury's inability to answer a punishment question in a capital murder case has the same sentencing effect as a negative answer"). Thus, instructing the jury that ten or more of them must agree upon a "life" answer in order to sentence the defendant to

life, regardless of whether the court informs the jury of the effects of a non-answer, is an incorrect statement of the law. So long as the Texas statute equates the sentencing consequences of a life verdict with the consequences of a non-verdict, the jury must not be misled to believe that anything more than one vote for life is required to secure that sentence. The false distinction between a "life" answer of ten or more jurors and a non-answer of less than ten jurors must be removed.

12. This was not the case prior to 1981. Under Texas's former capital sentencing statute, if a jury failed to respond to any of the three special issues the result was a complete mistrial, requiring a new trial not just on sentencing but on guilt as well. See Eads v. State, 598 S.W.2d 304, 308 (Tex. Crim. App. 1980). Under such a scheme, setting aside the other arguments proffered here, an instruction that ten or more jurors are required for a life sentence would be just as unobjectionable as an instruction that unanimity is required for death, a finding of guilty, or an acquittal. Presumably in response to Eads and the additional costs and difficulties that such a situation would pose, the Texas legislature in 1981 amended the death penalty statute, inserting the default sentence of life in the event of a non-answer. It was at this time that the legislature also added the infirm language that is now in Article 37.071(2)(a), prohibiting jurors from being informed of this default result. It is clear that the legislature wished to change the sentencing reality of defendants without informing jurors of this change. In doing so, however, the legislative change made the old instructions inaccurate depictions of the law.

13. Not only are the instructions inaccurate, but they were intended to be inaccurate and confusing in order to serve an illegitimate state interest. Just as jurors who are informed that their decision will be reviewed for appropriateness by an appellate court are impermissibly led to deflect their awesome responsibility onto the appellate courts, Texas jurors are impermissibly led to relieve themselves of a sense of responsibility by placing it either upon the other jurors who are unwilling to join the vote in favor of life ("It is their fault that the defendant will be killed because by not joining me they prevent us from reaching the required minimum of ten votes"), or upon the statutory scheme that purports to require ten votes, rather than merely one, in order to give life ("It is the fault of the Texas statute because unless I can get at least ten votes for life, I myself may not

vote for life"). The principle behind <u>Caldwell</u> is that courts must ensure that jurors are not invited to place their individual responsibility onto anyone else. Just as it is impermissible to lead jurors to place that responsibility upon the appellate courts, it is impermissible to lead them to place it upon their fellow jurors, or upon a restrictive sentencing statute.

14. Assuming *arguendo* that the Texas statute does not provide the jury with the type of inaccurate and illegitimate information prohibited by a traditional reading of <u>Caldwell</u>, new empirical data suggests that such a reading of <u>Caldwell</u> is entirely inadequate to ensure that capital jurors feel the "truly awesome responsibility" placed upon them. <u>McGautha v. California</u>, 402 U.S. 183, 208 (1971). One recent study by the Capital Jury Project concluded that "many death penalty jurors seek, and manage to find, ways to deny their personal moral responsibility for the sentencing decision." Joseph L. Hoffman, "Where's the Buck? – Juror Misperception of Sentencing Responsibility in Death Penalty Cases," 70 Ind. L. J. 1137, 1157 (Fall 1995). Given that jurors hardly need to have inaccurate information provided to them in order for them to deflect responsibility, the Caldwell rule itself should be read in light of the empirically supported premise that "death penalty jurors will take advantage of any available opportunity to *mislead themselves* about the extent of their responsibility for the sentencing decision." <u>Id.</u> If we are to give any meaning to Justice Harlan's concern that death penalty jurors be required to individually feel this terrific weight upon their shoulders, courts must inform jurors that just as each of them is required to vote for death in order for that punishment to take place, each has the power to give the defendant life unilaterally.

15. The result of misinforming jurors and forcing them to deliberate without knowledge of what happens in the event of a non-answer is that they are presented with a false dilemma. Jurors are given general instructions that they must answer either "yes" or "no" to the issues before them, and specific instructions that define the minimum number of votes required to give each of these answers. Because they are told that a death sentence follows from one set of answers, and a life sentence follows from another, a reasonable juror might conclude that the *only* way to get either of these punishments is to answer the questions posed to them. <u>See</u> <u>California v. Brown</u>, 479 U.S. 538, 541 (1987)(quoting <u>Francis v. Franklin</u>, 471 U.S. 316 (1985)(holding that the constitutional

6

sufficiency of capital sentencing instructions is determined by "what a reasonable juror could have understood the charge as meaning"). This leaves jurors free to speculate as to what would occur should they be unable to provide an answer to the issues. While it is possible that jurors might correctly guess that the failure to agree will result in a life sentence, it is perhaps more likely that they will conclude that a non-answer will lead to a lesser sentence, a costly retrial or resentencing proceeding, or absolute freedom for the defendant. Given that each of the jurors has already found the defendant guilty of a capital offense, none of these options would look desirable to a juror who honestly believes that a life sentence in warranted. Jurors are left to deliberate with the false belief that if they are unable to gain unanimity for a death sentence or ten or more votes for a life sentence, an altogether unacceptable third option will result.

16. In <u>Simmons</u> the Court prohibited just this sort of unfairness, holding that "The State may not create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." <u>Simmons</u>, 512 U.S. at 171. The Texas statute instructs jurors that at least ten of them must agree in order for a life sentence to be imposed and yet prohibits jurors from learning that only one vote is actually required for a life sentence. It is precisely because jurors are left to speculate when capital juries are not informed of the consequences of a deadlock that several states have declared the practice to be in violation of Eight Amendment protections as found in <u>Gregg v. Georgia</u>, 428 U.S. 153 (1976). <u>See, e.g.</u>, <u>Louisiana v. Williams</u>, 392 So.2d 619, 634-35 (1980)(holding that "by allowing the jurors to remain ignorant of the true consequence of their failure to decide unanimously upon a recommendation, the trial court failed to suitably direct and limit the jury's discretion so as to minimize the risk of arbitrary and capricious action"; <u>New Jersey v. Ramseur</u>, 106 N.J. 123, 314 (1987)(stating that "the jury must be told, in effect, that the law recognizes deadlock as a permissible result, an outcome allowed by the statute, a legal trial verdict that by law results in imprisonment rather than death").

17. While this confusion might pressure voters to change their position in order to avoid the unknown third option, it might lead to an even more basic misunderstanding. Because jurors are told that each question must be answered, and voting ballots do not

include an option for non-answer, a reasonable juror following the instructions might believe that a non-answer is not only undesirable, but is in fact impermissible. Such a juror might believe that because he or she is unable to secure the ten votes required to give the answer that that juror wishes the jury to give, and because some answer either way must be given, that juror is in fact obliged to vote with the others and sentence the defendant to death. Although the law is clear that a death sentence may never be mandatory, and individual jurors must always be free to vote for life, such a belief would reasonably follow from the instructions mandated by the Texas sentencing scheme. In fact, jurors often mistakenly believe that they are required by law to impose death.[2] One study found that when jurors asked for clarification and were simply referred back to the original instructions, rather than being disavowed of their false belief they became *more likely* to mistakenly believe that the evidence required them to vote for death.[3] This is precisely what the Texas statute would have judges do when jurors ask questions regarding the implications of a non-answer. The Texas statutory scheme creates a set of instructions that lead jurors to have false beliefs regarding their sentencing options, prohibits them from learning their true options, and then operates in a fashion that solidifies their pro-death leanings.

18. It is not mere conjecture that jurors might be confused by the Texas statute in particular. A quick survey of Texas capital cases reveals numerous instances in which jurors have exhibited their confusion by asking the judge for clarification.[4] Even in the absence of such evidence of confusion, however, the Court has stated unambiguously that the "trial judge's duty is to give instructions sufficient to explain the law, an obligation that exists independently of any question from the jurors or any other indication of perplexity on their part." Kelly, 2002 U.S. LEXIS 402, 19. The Court in Kelly recently held that though the jury in that case did not exhibit its confusion by inquiring about

---

[2] See generally, Garvey, Stephen P., Sheri Lynn Johnson, and Paul Marcus, "Correcting Deadly Confusion: Responding to Jury Inquiries in Capital Cases," 85 Cornell L. Rev. 627 (March 2000). In addition to this mistaken belief, one study also found that "[a]bout half the jurors incorrectly believe that a mitigating factor must be proved beyond a reasonable doubt. Less than a third of jurors understand that mitigating factors need only be proved to the juror's personal satisfaction. The great majority of jurors – in excess of sixty percent in both life and death cases – erroneously believe that jurors must agree unanimously for a mitigating circumstance to support a vote against death." Eisenberg, Theodore, and Martin T. Wells, "Deadly Confusion: Juror Instructions in Capital Cases," 79 Cornell L. Rev. 1 (Nov. 1993).
[3] 85 Cornell L. Rev. at 639.

parole as the juries in <u>Simmons</u> and <u>Shafer</u> had, common sense was all that was required to know that the jurors might have been confused. <u>Id.</u> at 20. Similarly, even if empirical evidence were not available to demonstrate that the "10-12 Rule" fosters confusion among jurors, common sense is sufficient to conclude that the statute itself, and in particular its prohibition on permitting trial judges from fulfilling their duty to give sufficient instructions to explain the law, is unconstitutional.

19. Commenting on the prohibition on informing juries of the effect of deadlock, Judge Clinton was likely correct when he stated in his dissent in <u>Sattiewhite v. Texas</u> that "[i]t seems apparent to me that the purpose . . . is to act as a kind of inverted 'dynamite' charge. The Legislature did not want jurors to know that failure to reach a punishment verdict – a hung jury – would *not* result in the State incurring the additional expense of a retrial." <u>Sattiewhite v. Texas</u>, 786 S.W.2d 271, 292 (Tex. Crim. App. 1989)(Clinton, J. dissenting). The converse of this is that the Texas legislature did want to foster the false belief of jurors that a non-answer would require the additional expense of a retrial. Even when it is true that a hung jury will result in a costly retrial, the Constitution does not permit judges to refer to the additional expenses when they urge deadlocked juries to try to come to a verdict. <u>See</u> <u>United States v. Taylor</u>, 530 F.2d 49, 52 (5th Cir. 1976). In the event that such costs do not in fact exist, as is the case under the Texas statute, it is all the more clear that the Constitution cannot permit the legislature to benefit from that misperception by prohibiting judges and lawyers from correcting the mistaken beliefs of jurors.

20. The inaccurate and illegitimate instructions provided to Texas capital sentencing juries creates an unacceptable risk that decisions are being made arbitrarily or by mistake. While it is true that uncertainty about the consequences of a non-answer might lead a lone holdout for a life sentence to join the other jurors voting for death, it is equally true that this confusion might lead at least one of the three holdouts for death to join the nine other jurors voting for life. <u>See, e.g.</u>, <u>Jones v. U.S.</u>, 527 U.S. 373, 394 (1999)(stating that the petitioner could not demonstrate prejudice because "[i]t is just as likely that the jurors, loathe to recommend a lesser sentence, would have compromised on a sentence of life imprisonment as on a death sentence"). With regard to the Texas statute, while this point might be correct, it fails to prevent serious constitutional

9

infirmities for two reasons. First, because the statute provides defendants with the exact same sentence regardless of whether they receive one vote for life or ten, the State itself is not prejudiced when votes for death are changed into votes for life for the sake of obtaining the ten vote minimum. The defendant, however, suffers a tremendous wrong when holdouts for life switch their votes to death out of confusion or a feeling of obligation. Thus, only the defendant, and not the State, could suffer harm from such confusion. Even if the State did have an interest in keeping life sentences that derive from a verdict distinct from life sentences that derive by default, that interest is vastly overshadowed by the defendant's interest. See Lowenfield v. Phelps, 484 U.S. 231, 252 (Marshall, J. dissenting)(stating that when the substantive outcome of a deadlock is identical to that of a life verdict, "the State's interest in a verdict . . . [is] relatively weak, whereas the defendant's interest in preserving the integrity of a dissenting vote [is] correspondingly strong"). Stated simply, while the defendant never needs to have a voter change his or her vote out of confusion, the State, because death may only be imposed through a unanimous verdict, does. Thus, while it might be true that it would be difficult to determine whether a particular defendant was prejudiced, it is beyond dispute that the system as a whole can only prejudice the defendant.

21. Second, it is eminently clear that when confusion regarding the outcome of a deadlock leads jurors to change their votes in either direction simply for the sake of a verdict, those decisions regarding life and death are being made arbitrarily. In cases in which the jury does not quickly, and without dispute, come to agreement on the appropriate punishment, the two most important factors remaining for a decision are the general confusion of the jurors caused by misinformation, and the initial disposition of the jury regarding whether or not to impose death. If nine jurors find sufficient mitigation to warrant a life sentence, at least one of the three jurors holding out for death will be likely to switch over solely out of uncertainty regarding the consequences of a non-answer or due to a mistaken belief that an answer must be reached at all costs. If eleven jurors vote for death and one finds that the mitigating evidence warrants life, that juror might be swayed to vote for death for identical reasons. When jury instructions misinform jurors and purposefully prevent clarification, and verdicts are rendered out of such confusion, it is clear that those instructions "introduce[] a level of uncertainty and

unreliability into the factfinding process that cannot be tolerated in a capital case." <u>Beck v. Alabama</u>, 447 U.S. 625, 643 (1980) (overruled on other grounds).

<u>The "10-12 Rule" Denies the Defendant's Right to Individualized Sentencing</u>

22. The Constitution requires that states balance the obligation to minimize the risk of arbitrariness with the need for individualized sentencing. "[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting death." <u>Woodson</u>, 428 U.S. at 304. In furtherance of this demand, the Court held in <u>Lockett</u> that "[T]he sentencer . . . [can] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978). Later cases have clarified that such mitigating evidence need only be proven by a preponderance of the evidence. <u>See</u> <u>Walton v. Arizona</u>, 497 U.S. 639, 649-50 (1990) (overruled on other grounds). More importantly, the Court has unequivocally held, and the Texas statute clearly states under Article 37.071(2)(f)(3) that a single juror must be permitted to consider and weigh mitigating evidence unilaterally, regardless of whether any other jurors accept the evidence as mitigation. <u>See</u> <u>McKoy v. North Carolina</u>, 494 U.S. 433, 435 (1990); <u>Mills v. Maryland</u>, 486 U.S. 367, 374-75 (1988).

23. Although the capital sentencing jury resembles juries that sit in the guilt/innocence phase of capital and non-capital trials, its role is distinct. All juries have historically been expected "to secure unanimity by comparison of views, and by arguments among the jurors themselves." <u>Jones</u>, 527 U.S. at 382 (quoting <u>Allen v. United States</u>, 164 U.S. 492, 501 (1896). The capital sentencing jury, however, is charged more precisely with the duty to "express the conscience of the community on the ultimate question of life or death." <u>Lowenfield</u>, 484 U.S. at 238 (citation omitted). Because extraordinary protections are constitutionally required to ensure against unwarranted impositions of death, the Texas sentencing scheme, like the Louisiana statute, creates "a situation unique to the capital trial that a single juror, by persisting in a sentencing recommendation at variance with all of his fellow jurors, may alone cause

11

imposition of a life sentence." State v. Loyd, 459 So.2d 498, 503 (La. 1984). The requirement of individualized sentencing in capital trials means not simply that defendants must be judged based upon their own character, but that they must be judged as such by individual jurors charged with considering the evidence and asked to make determinations of life and death. This clearly follows from the Court's demands that each individual juror be capable of considering mitigating evidence that that juror alone finds to exist simply by a preponderance of the evidence.

24. Members of a capital sentencing jury sit through the court's instructions, take an oath, and pass through the extraordinary process of death qualification. More than any other jury that sits in a courtroom, we can be confident in our presumption that such jurors are unbiased, impartial, and capable of deliberation. It cannot be correct, therefore, to say that informing jurors of the effects of a deadlock would act as an "open invitation for the jury to avoid its responsibility and to disagree." Davis v. State, 782 S.W.2d 211, 221 (Tex. Crim. App. 1992)(quoting Justus v. Commonwealth, 266 S.E.2d 87, 92 (Va. 1980). Rather, when a juror decides that sufficient mitigation exists to warrant a life sentence, and wishes to stick to that position despite the fact that it will prevent the jury from reaching a verdict, he does not violate some abstract duty to "secure unanimity" or to not "disagree." It is true that under the Texas sentencing statute, a juror would be abdicating his or her responsibility were he or she to not answer one of the questions. "The issues are framed in a manner which permits them to be answered either affirmatively or negatively, and it is the purpose of the deliberative process to resolve juror vacillation." Nobles v. State, 843 S.W.2d 503, 510 (Tex. Crim. App. 1992). Once deliberation has taken place, vacillation has been resolved, and each juror has settled upon his or her answer to the three special issues, however, surely the failure of those votes to meet the numerical requirements of the "10-12 Rule" cannot be considered a violation of the jury's duty. On the contrary, as the Supreme Court of New Jersey held in Ramseur, and as is equally true under Texas's statutory scheme, "A capital jury does not 'avoid its responsibility' by disagreeing – genuine disagreement is a statutorily permissible conclusion of its deliberations." Ramseur, 106 N.J. at 311.

25. Indeed, McKoy and Mills together stand for the principle that setting up barriers to prevent the jury from disagreeing can itself be constitutionally prohibited. This is

precisely the case with the "10-12 Rule," the substantive effect of which is that it prohibits individual jurors from having a "meaningful opportunity" to judge the defendant on the basis of mitigation by creating the appearance that while each juror may introduce and weigh mitigating evidence unilaterally, a minimum of ten jurors are required to pass judgment on such factors.[5] This was exactly what the Court was concerned about in McKoy when it held that "*Mills* requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." McKoy, 494 U.S. at 442-43. It is not enough for Texas to inform the jury that they "need not agree on what particular evidence supports an affirmative finding on the issue [of mitigation]," Article 37.071(2)(f)(3), if the effect of the entire instruction is that ten or more jurors must agree upon an affirmative finding in order to give effect to the finding of any one juror. Each juror must be capable of giving effect to mitigating evidence when determining the appropriate punishment, and thus only one juror, not ten, must be sufficient under Article 37.071(2)(f)(2) to answer "yes" to the mitigation issue present by 37.071(2)(e)(1). By instructing the jury that ten jurors are required in order to give a "yes" answer, the Texas statute violates the principles underlying Mills and McKoy by preventing individual jurors from having a meaningful opportunity to consider mitigating factors.

The "10-12 Rule" Denies the Defendant's Right to a Fair and Impartial Jury

26. As discussed above, the "10-12 Rule" operates by necessarily creating confusion in the minds of the jurors, and then prohibiting them from having their confusion clarified. This was earlier discussed within the context of the additional Eighth Amendment safeguards required to reduce the risk of arbitrary and unreliable sentences. An additional problem created by such confusion is that it permits jurors with misconceptions about the law formed prior to the trial and outside of the courtroom to introduce such ideas into deliberations.

---

[5] In Roberts v. Louisiana, the Supreme Court invalidated Louisiana's mandatory death penalty scheme on the grounds that it "afford[ed] no meaningful opportunity for consideration of mitigating factors presented by the circumstances of the particular crime or by the attributes of the individual offender." Roberts v. Louisiana, 428 U.S. 325, 333-34 (1976). That the sentencer must have a "meaningful opportunity" to consider mitigating factors suggests that not only may legislatures not actively prohibit such consideration, but they also must also take positive steps to foster it when necessary.

27. It is beyond dispute that capital juries are often dominated by misconceptions regarding the state of the law, their role as jurors, and the definition of key concepts such as mitigation. As discussed above, a reasonable juror who conscientiously attempts to understand the Texas sentencing statute might be led to believe that just as a sentence of death may not be imposed unless the jury is unanimous with regard to all three special issues, a sentence of life may not be imposed unless at least ten jurors agree with respect to at least one of the three special issues. Not only does this mistaken belief raise an Eighth Amendment problem with regard to arbitrariness and reliability, but the possibility that jurors might draw upon their preconceived notions to resolve such a situation raises Sixth Amendment concerns.

28. The right to an impartial jury has long been recognized as fundamental. See, e.g. Lockhart v. McCree, 476 U.S. 162 (1986). This is particularly crucial in capital cases, where the Constitution demands that "the decision whether a man deserves to live or die must be made on scales that are not deliberately tipped toward death." Witherspoon v. Illinois, 391 U.S. 510, 523 n. 20 (1968) (overruled on other grounds). To protect this right, courts are obliged to take reasonable steps to ensure the impartiality of a jury. It is for this reason that voir dire is made available to both parties, the judge is equipped with the power to strike jurors for cause, each party is granted a certain number of peremptory challenges, and jury instructions are fashioned to clarify the jury's role and impress upon them the importance of their task and the oath to which they have sworn.

29. By manufacturing confusion in the minds of the jury and preventing the court or the attorneys from correcting it, the "10-12 Rule" creates fertile ground for jurors to draw upon their own biases and preconceived notions in coming to a verdict. This is particularly dangerous when jurors are confused about their sentencing options and the results of their sentencing decisions. The concept of a hung jury is widely understood to be a disfavored result. In most trials, a hung jury leads to a mistrial, and most people understand that a mistrial will either lead to a costly retrial or to the dropping of charges. While neither of these undesirable outcomes will result in the case of capital sentencing under the Texas statute, jurors are required to be kept in the dark with regard to that materially relevant fact. The "10-12 Rule" effectively forces the jury to wonder what would happen were they are unable to answer the special issues, possibly leads them to

14

243

believe that an unacceptable third alternative other than life and death would follow, and then leaves them to draw upon their own preconceived notions in coming to a verdict. While the concept of a mistrial might be distasteful to a holdout, and is certainly disfavored by the court, during the guilt/innocence phase of a criminal trial, it is surely all the more unacceptable to a juror in a capital sentencing proceeding who has already found the defendant guilty of a capital offense.  The risk that jurors will enter the courtroom with that misconception is too great to allow them to continue deliberating in the dark.

30. To ensure that capital juries do not rely upon their biases regarding hung juries during deliberations, jurors must either have their misperceptions corrected, or they must be examined for bias during voir dire.  Because of the additional Eighth Amendment problems with forcing jurors to deliberate using false information, this Court should declare Article 37.071(2)(a) unconstitutional with respect to its prohibition on informing the jury of the effects of a deadlock.  The Court should protect the right to a fair and impartial jury by informing the jury that if they are unable to reach the minimum number of votes required to give an answer to any one of the special issues, they are permitted to return the ballot without any answer.  In the event that the jury is unable to answer any of the three special issues, the court will sentence the defendant to life imprisonment as if he had been sentenced by the jury itself.

31. Should this Court not wish to protect the defendant's right to a fair and impartial jury by invalidating Article 37.071(2)(a), the Court must permit the attorneys to voir dire potential jurors to discover what they believe would happen in the event of a non-answer. See Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981)(holding that voir dire "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored").  Not only is such questioning permitted by the Texas statute on the grounds that it would not involve informing prospective jurors of the actual consequences of a non-answer, but it is clearly in line with the central holding in Turner v. Murray that the risk of juror bias must be considered "in light of the ease with which that risk could have been minimized." Turner v. Murray, 476 U.S. 28, 36 (1986) (overruled on other grounds).  In Turner, the Court held that because of the complete finality of the death penalty, and the risk that racial prejudice would infect jury

244

deliberations, the trial judge failed to protect the defendant's right to an impartial jury by not permitting the lawyers to question prospective jurors on their racial prejudice. Id. Similarly, because of the finality of the death penalty, and the risk that preconceived notions regarding the effects of a hung jury will improperly infiltrate jury deliberations, the right to an impartial jury must be protected at the very least by granting attorneys the right to question jurors about their beliefs. While defendants may not have an absolute right to voir dire potential jurors regarding their beliefs about deadlocked juries, when the legislature has barred all other means of bringing such biases to light and correcting them it becomes imperative that defendants be equipped with the tools to confront those who sit in judgment upon them.

32. In King v. Lynaugh, the Fifth Circuit sitting en banc reversed an earlier decision by a three judge panel which concluded that for Texas to deny a defendant the opportunity to present information about parole eligibility is, therefore, to limit his decision to bring to the sentencer's consideration relevant information and circumstances that might cause the jury to decline capital punishment. King v. Lynaugh, 828 F.2d 257, 264 (5th Cir. 1987). In his dissent from the en banc ruling, Judge Rubin wrote: "It is precisely because Texas courts refuse to give accurate, corrective instructions that voir dire about potential jurors' understandings of parole law becomes necessary." King v. Lynaugh, 850 F.2d 1055, 1067 (1988)(Rubin, Williams, Johnson, JJ. dissenting). An essential feature of the Court's holding in that case was that trial judges can use their discretion in determining how to restrict voir dire and fashion jury instructions, relying upon "immediate perceptions," Rosales-Lopez, 451 U.S. at 188-89, and the "demeanor" of the jury, Ristaino v. Ross, 424 U.S. 589, 595 (citation omitted). The present case is distinguishable from King, however, in that it is the legislature, and not the trial judge, that has decided not to issue accurate, corrective instructions to the jury regarding deadlock. Whereas the trial judge maintains the freedom to instruct the jury on parole or to allow the attorneys to voir dire the jury with regard to their beliefs on parole, the "10-12 Rule" expressly restricts the judge's discretionary powers with regard to instructing the jury on the law of deadlock. Thus, even if King is correct in instances in which it is the courts which make the decision to not give clarifying instructions, when the legislature makes such a decision as is the case here, it is the duty of the courts to protect

16

245

the right to an impartial jury by providing additional safeguards through the process of voir dire. That duty derives from the unique advantages that the trial judge has over the legislature to ensure a fair and impartial jury on a case by case basis.

### The "10-12 Rule" Prevents the Defendant from Receiving Effective Assistance of Counsel

33. It is a fundamental principle in death penalty jurisprudence that "If an experienced trial judge, who daily faces the difficult task of imposing sentences, has a vital need for accurate information about a defendant and the crime he committed in order to be able to impose a rational sentence in the typical criminal case, then accurate sentencing information is an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision." Gregg, 428 U.S. at 190 (Stewart, Powell, and Stevens, JJ.). This is so clear that the Fifth Circuit in Burley v. Cabana declared that it was ineffective assistance of counsel in violation of the Sixth Amendment for the trial lawyer to not "inform the trial court of sentencing alternatives . . . ." Burley v. Cabana, 818 F.2d 414, 418 (5th Cir., 1987).

34. If it was ineffective assistance of counsel to not inform the judge of his sentencing alternatives, it would surely be ineffective assistance of counsel to not inform a sentencing jury of its sentencing alternatives. Yet this is precisely what the "10-12 Rule" forces trial counsel to do by preventing attorneys from informing the jury of the true state of the law. A reasonable defense attorney would surely inform each juror that not only is it that juror's right, but it is in fact that juror's duty, to individually weigh the evidence presented and make a determination for life or death on the basis of that individual's conscience. Such a statement would accurately describe the role of the capital juror, and would provide the jury with information materially relevant to their sentencing responsibilities. To prevent an attorney from informing the jury of the true state of the law when such information is essential to the capital juror's role is to prevent the attorney from providing the defendant with his right to adequate counsel. This is equally true in the event that counsel is prevented from conducting voir dire in order to intelligently utilize counsel's peremptory strikes to remove prospective jurors harboring devastating misunderstandings of the consequences of deadlock under the Texas death penalty.

### The "10-12 Rule" Has a Coercive Effect upon the Jury

35. "[T]he principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." <u>Jenkins v. United States</u>, 380 U.S. 445, 446 (1965)(quoting the Solicitor General's brief to the Court). In <u>Jenkins</u>, the Court declared that "in its context and under all the circumstances" the judge's statement to the jury that "'You have got to reach a decision in this case'" was coercive. <u>Id.</u> In <u>United States v. United States Gypsum Company</u>, the Court applied <u>Jenkins</u> in holding that reversal would have been appropriate "solely because of the risk that the foreman believed the court was insisting on a dispositive verdict." <u>United States v. United States Gypsum Company</u>, 438 U.S. 422, 460-62 (1978). In his concurrence with the Third Circuit's judgment in the case prior to the Supreme Court's ruling, Judge Adams concluded that when the jury foreman suggested to the trial judge that he knew the court wanted a verdict "one way or the other," the trial judge at that time "possessed the affirmative obligation to make it clear to the foreman that the jury had the option of reaching no verdict, should juror unanimity prove impossible." <u>United States v. United States Gypsum Company</u>, 550 F.2d. 115, 133 (3rd Cir., 1977)(Adams, J. concurring).

36. Within the context of capital sentencing, and taking into consideration the circumstances required by the Texas statute, instructing the jury that they "shall" answer "yes" or "no" to the special issues presented to them acts as undue coercion. It has already been shown above that the Texas statute necessarily creates confusion in the minds of jurors, and might affirmatively mislead jurors to believe that a third alternative to life and death exists. Within the context of the demand that each issue must be answered, setting minimum votes for each answer has the effect of coercing holdouts for life or death to feel that the need to come to a verdict takes precedent over their conscientiously held belief. While this is unacceptable in all criminal trials, it is particularly unacceptable in capital sentencing proceedings.

37. In <u>Lowenfield</u>, the Court in a capital case upheld the use of a supplemental charge similar to an "Allen charge" that was intended to encourage the jury to come to a verdict. <u>Lowenfield</u>, 484 U.S. at 240-41. The Court acknowledged that although the traditional justification for such a charge – "the avoidance of the societal costs of a retrial" – did not

18

exist, the State still had a strong interest in having the jury "'express the conscience of the community on the ultimate question of life or death.'" Id., at 238 (citation omitted).

38. Under the Texas sentencing statute the societal cost justification for pressuring juries to return a verdict is similarly absent. Thus the only possible State interest that could balance against the strong State and private interests that jurors not be coerced, that defendants be tried by a fair and impartial jury, and that determinations of punishment be reliable and non-arbitrary is that capital juries are meant to speak the conscience of the community.

39. While it is true that capital juries are meant to represent the community, two reasons exist for why this value cannot outweigh the risk of coercion, bias, and arbitrariness that are created by not informing the jury that they have the option of not answering a question, and that the effect of a non-answer is a life sentence. First, in order for the jury to enter a verdict of death under the Texas scheme, all twelve members of the jury must agree on all three special issues. Thus, while the purpose of the jury is to express the collective conscience of the community, just as each community is made up of individuals each jury is made up of individuals. What we are really looking for is not a jury that as a unit is asked to speak the singular voice of the community, but rather we are asking twelve representative individuals to each speak his or her own voice, and through that we hope to discern the collective conscience of the community.[6] It is a mistake, therefore, to consider that the State's interest in having the jury speak the conscience of the community conflicts with the State's interests in not coercing the jury, providing a fair and impartial jury, and limiting the risk for arbitrary and unreliable decisions. Those interests are one and the same, for if any member of the jury feels undue pressure to change his vote in order for the jury to come to a verdict, the State's interest in having the jury speak the conscience of the community is frustrated. It is only when each member of the jury is left entirely free to weigh the evidence presented, is

---

[6] This statement of representativeness should not be taken to be an admission that capital juries are representative of the community. The process of death qualification leads to the removal for cause of conscientious objectors to the death penalty despite the fact that they are no less members of the community than anyone else, as well as individuals with qualms about the death penalty who are stricken through the use of peremptory challenges. Numerous studies have shown that those individuals who remain are more prone to support the death penalty than the average member of society, and are also more likely to convict the defendant either because of their personal beliefs, or because the extremely time-intensive process of death qualification focuses jurors not upon the guilt or innocence of the defendant, but rather upon what penalty he deserves once his guilt has been reached.

permitted to unilaterally introduce and consider mitigation, and is fully informed of the individual, awesome responsibility that he or she bears in making this decision between life and death that the conscience of the community will be expressed. The Court must allow for the very real possibility that a non-verdict is itself an expression of the community's truly divided conscience with respect to the issue of whether an individual should live or die.

40. Secondly, even if the State's interest in a verdict does stand in opposition to the other interests that the State and the individual defendant might hold, the entire body of capital punishment jurisprudence speaks to the overriding nature of our need to protect against unwarranted impositions of death. The State always has an interest in reaching a verdict and having the jury speak the voice of the community. That interest has not been allowed to supercede the defendant's right to a fair and impartial jury, to not be subjected to cruel and unusual punishment, or to not receive the equal protection of the law.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that: (1) the Court declare Tex. C. Crim. P. Articles 37.071(2)(d)(2), 37.071(2)(f)(2), and 37.071(2)(a) unconstitutional; (2) the Court instruct the jury that in the event that they are unable to answer any issue presented to them they are to return the ballot without said answer, and that a life sentence will be imposed upon the defendant pursuant to state law; and in the alternative (3) the Court permit the attorneys to voir dire prospective jurors to discover whether they harbor any preconceived notions regarding the consequences of a deadlock that will prevent them from accurately and reliably weighing the evidence presented at sentencing.

Respectfully submitted on this the *16* day of *August* 2006.

By: _____

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

20        249

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ____ day of _____ 2006.

_Paul Johnson_

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

8-23-06

21

259

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO INTRODUCE THE TESTIMONY OF DEFENDANT'S FAMILY AND FRIENDS REGARDING THEIR FEELINGS ON THE PROSPECT OF A DEATH SENTENCE AND THE IMPACT AN EXECUTION WOULD HAVE ON THEM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant herein and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 & 19 of the Texas Constitution and offers the following in support of this Motion:

**THE EIGHTH AMENDMENT REQUIRES THAT A CAPITAL DEFENDANT SHOULD HAVE THE RIGHT TO PRESENT, AS MITIGATION EVIDENCE DURING HIS SENTENCING HEARING, TESTIMONY FROM HIS FAMILY AND FRIENDS REGARDING NOT ONLY THEIR FEELINGS ABOUT WHETHER THEIR LOVED ONE SHOULD BE EXECUTED, BUT ALSO THE IMPACT THAT AN EXECUTION WOULD HAVE ON THEM.**

A.    Introduction.

Defendant moves this Court to permit him to question his family members and friends regarding two topics: (i) whether Defendant's family and friends want Defendant to live or die; and (ii) what the impact would be on such persons if Defendant were in fact sentenced to death and ultimately executed.

251

B.     Controlling authority from the lower courts.

Pursuant to the ethical duties imposed on members of the Bar, undersigned counsel calls the following judicial decisions to this Court's attention.

In *Fuller v. State*, 827 S.W.2d 919 (Tex. Crim. App. 1992), the Court of Criminal Appeals rejected a capital defendant's argument that Supreme Court decisions such as *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982), require that a sentencing jury be permitted to consider mercy pleas from a capital defendant's family members during the sentencing phase. The court held that since testimony from a capital defendant's family regarding their feelings about the possible execution of their loved one does not relate to "evidence concerning his background, character, or the circumstances surrounding the offense," it is not admissible under *Lockett* and its progeny. Presumably, in view of *Fuller*, the Court of Criminal Appeals' holding also applies to testimony from the family of the victim as to the impact that an execution would have on them.

The current state of the law in Texas regarding victim impact is even more unclear with the recent cases of *Smith v. State*, ___ S.W.2d ___ (Tex. Crim. App. No. 71,794, February 21, 1996) and *Ford v. State*, ___ S.W.2d ___ (Tex. Crim. App. No. 71,760, February 21, 1996).

Similarly, the Fifth Circuit has held that "[t]hough [mercy pleas from a capital defendant's family] may well impact a jury's decision, they are not mitigating evidence" required to be admitted under the Eighth Amendment. *See, Kelly v. Lynaugh*, 862 F.2d 1126, 1133 n. 12 (5th Cir. 1988). *But, see, People v. Mickle*, 814 P.2d 290, 321 (1991) ("[A] capital defendant is entitled to introduce at the penalty phase the opinions of family and friends about the appropriateness of a death sentence."); *Romine v. State*, 305 S.E.2d 93, 251 Ga. 208, 216-17 (1983) (same).

Defendant contends that, while these decisions may control this Court's disposition of this Motion, they were wrongly decided. This Motion is being filed in order to challenge *Fuller* and *Kelly* in the U.S. Supreme Court. Defendant will also request the Court of Criminal Appeals to overrule <u>Fuller</u>.

C.   ***Payne v. Tennessee.***

In *Payne v. Tennessee*, 111 S. Ct. 2597 (1991), the U.S. Supreme Court removed the prior *per se* bar on the introduction of "victim impact statements" by the prosecution as part of aggravating evidence during a capital sentencing hearing. *Id.* at 2616. Chief Justice Rehnquist's opinion for the Court in *Payne* noted that in the context of mitigating evidence, the Court's decisions have allowed the sentencer to consider "'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death," 111 S. Ct. at 2606 (citing *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)), and that a capital defendant should be "treated as a 'uniquely individual human being'" during capital sentencing, *Id.* at 2606-07 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). The Chief Justice then concluded, comparing aggravation and mitigation evidence, that what is good for the goose is good for the gander: that a sentencing jury should be permitted to know about the individual characteristics of the murder victim -- as well as of the convicted capital defendant -- which necessarily includes evidence about the victim's family and their reaction to the murder. *See*, 111 S. Ct. at 2607-09. He held that it was not a bar to introducing such aggravating evidence that it "was [not] related to the circumstances of Payne's brutal crimes." *Id.* at 2609. As the Chief Justice noted:

> Human nature being what it is, capable lawyers trying cases to juries try to convey to the jurors that <u>the people involved in the underlying events [i.e., including the victim's survivors] are . . . living human beings who have something to be gained or lost from the jury's verdict.</u> Under the aegis of the Eighth Amendment, we have given the broadest latitude to the defendant to introduce

> relevant mitigating evidence reflecting his own individual personality. ...[W]e now reject the view . . . that a State may not permit the prosecutor to similarly argue to the jury the human cost of the crime of which the defendant stands convicted. ..."[J]ustice, though due to the accused, is due to the accuser also. ...We are to keep the balance true." (citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934).

*Id.* (emphasis added).

Justice O'Connor's concurrence in *Payne* also sheds some light on the Court's reasoning. She noted at the outset of her opinion that "[a] State may decide that the jury, before determining whether a convicted murder should receive the death penalty, should know the full extent of the harm caused by the crime, <u>including its impact on the victim's family</u>. . ." *Id.* at 2611. She later noted, like the Chief Justice, that a victim should be portrayed to the jury as a "unique human being" -- which includes knowledge of the victim's family's reaction to the murder. *See, Id.* at 2612.

Justice Scalia's concurring opinion echoed Chief Justice Rehnquist's reciprocity arguments: "The Court correctly observes the injustice of requiring the exclusion of relevant aggravating evidence during the capital sentencing, while requiring the admission of all relevant mitigating evidence. ...[T]he Eighth Amendment permits parity between mitigating and aggravating factors." *Id.* at 2613.

Justice Souter's concurring opinion noted, like the Court's opinion did (*Id.* at 2605), that "traditionally" criminal conduct has been punished in view of the degree of harm, if any, caused. Hence, he argued, a victim impact statement was relevant because it allowed the jury to better know this "traditional" factor in assessing punishment. *Id.* at 2614. Such aggravating evidence was considered "morally relevant" and allowed for a "reasoned moral response" from the jury. It

also permitted the jury to better know the victim as a "uniquely individual human being," whose

unique personality was in part a product of his family. *Id.* at 2614-15. As Justice Souter stated:

> Just as defendants know that they are not faceless human ciphers,
> they know that their victims are not faceless fungibles, and <u>just as
> defendants appreciate the web of relationship and dependencies in
> which they live, they know that their victims are not human
> islands, but individuals with parents or children, spouses or
> friends, or dependents.</u> Thus, when a defendant chooses to kill . . .
> this choice necessarily relates to a whole human being and
> threatens the association of others, who may be distinctly hurt.

*Id.* at 2616 (emphasis added).

The collective reasoning of the Court and the concurring opinions in *Payne* applies

equally to testimony from a capital defendant's family and friends about their feelings regarding

the possible execution of their loved one and the impact that an execution would have on them.

Such testimony is relevant to mitigation in at least three ways: first, it goes directly to the

question of mercy, a quintessential element of mitigation. *See, e.g., Gregg v. Georgia*, 428 U.S.

153, 199 (1976) (plurality) ("Nothing in any of our cases suggests that the decision to afford an

individual defendant mercy violates the Constitution."); *People v. Sanchez,* 115 Ill. 2d 238, 269

(Ill. 1986) ("mercy" recognized as important part of mitigation); *State v. Petary*, 781 S.W.2d

534, 541 (Mo. 1989) (same).

Any objective standard of human decency permits close relatives and friends to ask the

jury not to impose death on their loved one. Preventing a capital defendant's relatives and

friends from expressing such opinions, and instructing a sentencing jury to disregard them, is as

cruel and unusual as can be imagined. Allowing the jury to consider such testimony surely aids

in eliciting a "reasoned moral response," *California v. Brown*, 479 U.S. 538, 545 (1987)

(O'Connor, J., concurring). Mercy is an integral part of the traditional Western notion of

dispensing justice. *See, e.g.*, John Milton, <u>Paradise Lost</u>, Book X, line 77 ("so temper justice

with mercy"); William Shakespeare, The Merchant of Venice, Act 4, Scene 1, lines 184 et seq.;

Holy Bible, New Testament, Matthew 5:5; Old Testament, Mica 6:8.  If the exclusion from the

jury's consideration of such a basic human response as a mother's concern for her child's life --

which hardly disappears when he is convicted of capital murder -- does not violate the Eighth

Amendment, nothing does.

In *Saffle v. Parks*, 110 S. Ct. 1257, 1266 (1990) (Brennan, J., dissenting), Justice

Brennan quoted the Tenth Circuit's en banc opinion below, which recognized that, "mercy,

humane treatment, compassion, and consideration of the unique humanity of the defendant . . .

have all been affirmed as relevant considerations in the penalty phase of a capital case." *Id.* at

1266 (quoting *Parks v. Brown*, 860 F.2d 1545, 1556 (10th Cir. 1988) (en banc).  Such factors, of

course, were of the very type relied upon by the *Payne* Court in holding that the prosecution's

use of victim impact statements was proper during a capital sentencing hearing, *see* discussion

*supra*, albeit with reference to the victims' family.

Not to apply the same considerations to the testimony of a capital defendant's relatives

regarding their feelings about the possible execution of their loved one would be as "unfair" and

"imbalanced" an approach during sentencing as the Court's prior approach in *Booth v.

Maryland*, which Chief Justice Rehnquist so condemned in *Payne*.  *See,* 111 S. Ct. at 2609.

Once again, what is good for the goose is good for the gander.  If *Payne* permits testimony from

the victim's relatives regarding their feelings about the crime as part of the prosecution's

presentation of aggravating circumstances, the Court should likewise permit testimony of the

capital defendant's relatives regarding their feelings about the proposed punishment as part of the

defense's presentation of mitigating circumstances.

A second way that such testimony is relevant as mitigating evidence is that it evinces that a particular defendant may still possess enough redeeming qualities as a human being to warrant his life being spared. The clear message sent to jury by such testimony is that the defendant's life until the murder had enough positive elements to lead his family members to express their love by pleading that a life sentence be imposed. *People v. Mickle*, 814 P.2d 290, 321 (Cal. 1991) (Such testimony "exemplifie[s] the feelings held toward the defendant by a person with whom he [has] had a significant relationship" and "bears on his overall character and humanity" (citation omitted)); *cf. Martin v. Dugger*, 686 F. Supp. 1523, 1538-41 (S.D. Fla. 1988) (quoting extensive testimony from capital defendant's relative in which numerous pleas for mercy interspersed with discussions of defendant's character and background).

Third, as was extensively discussed in *Payne* with respect to the testimony of the victim's survivors used as aggravation evidence, but equally applicable to testimony of the defendant's relatives used as mitigation evidence, testimony from the defendant's family aids the sentencing jury in seeing the defendant as a "uniquely individual human being." He is part of a family who still loves him, notwithstanding his crime, and that family, just like the victim's family, has a vested interest in the jury's verdict. To refuse to consider the defendant's family's feelings, which in many cases would be juxtaposed to the victim's family's feelings, simply because the former is related to a convicted capital murderer would violate a basic principle of our criminal jurisprudence: the criminal law does not visit the sins of one family member upon the remainder of his family.[1]

---

[1] This was even recognized by the Framers of the Constitution. *See*, U.S. Const. Art. III, Sec. 3, Clause 2 (punishment for treason may not work "Corruption of Blood"). *See also, King v. Smith*, 88 S. Ct. 2128, 2143 n.5 (1968) (Douglas, J., concurring).

Just as Chief Justice Rehnquist argued the need to convey to a jury that "the people involved in the underlying events [i.e., the victim's survivors] are . . . living human beings, with something to be gained or lost from the jury's verdict," *Id.* at 2609, a capital sentencing jury should likewise know that a capital defendant also has a family of "living human beings," who care deeply about what verdict the jury reaches. Just as Justice Souter noted of a murder victim, a capital defendant such as Mr. Long is not a "human island." He has "a web of relationships and dependencies." He is "an individual[] with parents or children, [a] spouse[] or friends, or dependents." The jury's choice that the State of Texas should kill Mr. Long "necessarily relates to the whole human being and threatens the association of others, who may be distinctly hurt." *Payne*, 111 S. Ct. at 2615. And just as Justice O'Connor noted that a jury cannot fully know a murder victim as a "unique human being" without knowing of the impact of the crime on the victim's family, *see Id.* at 2611, neither can a jury know of the capital defendant as a "uniquely individual human being," *see, Woodson v. North Carolina*, 428 U.S. 280, 304, without hearing the defendant's family's feelings about the possible execution of their loved one.

In non-capital cases, countless courts in various ways have taken into consideration a criminal defendant's family in imposing a particular sentence. *See, e.g., State v. Laird*, 547 So. 2d 1, 3 (La.App. 3d Cir. 1989); *United States v. Denardi*, 892 F.2d 269, 271 (3d Cir. Pa. 1989); *United States v. Risco*, 1989 U.S. Dist. LEXIS 16493 at *2 (E.D. Pa. Mar. 16, 1989); *United States v. Moran*, 601 F. Supp. 205 (D. Me. 1985); *United States v. Ramos*, 605 F. Supp. 277, 279 (S.D.N.Y. 1985); *Irizzary v. United States*, 58 F.R.D. 65 (D. Mass. 1983); *United States v. Orlando*, 206 F. Supp. 419, 420-21 (E.D.N.Y. 1962). As the First Circuit noted in *United States v. Villarin Gerena*, 553 F.2d 727 (1st Cir. 1977), "[t]hat any sentence may be a hardship to [a criminal defendant's] family is undeniable, the consequences of any crime are rarely visited only

upon the actor and the immediate victim." Since "traditionally," *cf. Payne*, 111 S. Ct. at 2614

(Souter, J. concurring), a criminal defendant's family has not been irrelevant to non-capital

sentencing, a fortiori it should not be excluded from capital sentencing.

In sum, almost every argument made by the majority and concurring members in *Payne*

regarding the propriety of victim impact statements applies with equal force to a capital

defendant's right to offer testimony by his family regarding their feelings about the prospect of

losing their loved one. Thus, especially in view of *Payne*'s reasoning, the Court of Criminal

Appeals decision in *Fuller v. State, supra*, was wrongly decided.

D.     Defendant's Right to put on a Bill of Exception.

Assuming that this Court denies Defendant the right to introduce such testimony to the

jury, Defendant requests the right to make a bill of exception in narrative form for purposes of

appeal. As will be explained in such a bill, counsel for Defendant would ask numerous friends

and family members of Defendant whether they wished for Defendant's life to be spared.

Defendant would also ask such persons about what impact that a death sentence and execution

would have on them.

WHEREFORE, PREMISES CONSIDERED,  Movant prays that  upon hearing hereof the court find that testimony from the family of the Defendant, all as set out herein, is admissible and that the Defendant have such other and further relief to which he may show himself to be just entitled.

Respectfully submitted on this the *16* day of *August*, 2006.

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of _____*8/16/06*_____, 2006.

_____
Paul Johnson

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTION TO BE ARRAIGNED
## OUT OF THE JURY'S PRESENCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, DEFENDANT, in the above-entitled and numbered cause, and moves the Court to order the District Attorney to arraign the Defendant out of the presence of the jury before the indictment is read to the jury and before the Defendant's plea is entered before the jury, pursuant to Article 36.01, C.C.P. In support of this Motion, the Defendant would respectfully show the Court the following:

I.

The purpose of the arraignment before the Court is to fix the identity of the Defendant to determine the nature of his plea to the charges against him. See Articles 26.01, 26.04, 28.01 C.C.P. The arraignment contemplates a confrontation between the Court, the Defendant and his counsel, and the prosecution, but not the jury that will determine the Defendant's guilt or innocence of the crime charged. Therefore, the Defendant should not be admonished and asked to enter his plea before the trier of fact.

II.

The Defendant in this cause desires to enter a plea of not guilty at the time of his arraignment and will do so when called upon by the Court to enter his plea at arraignment outside the jury's presence. However, when the prosecutor reads the indictment herein before the jury that is

empaneled to try the case, the Defendant desires that his attorney be allowed to make known to the jury that the Defendant's plea is not guilty.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court conduct the arraignment of the Defendant out of the presence of the jury before the trial of this cause, and that no question concerning the nature of the plea be posed to the Defendant by the Court or the prosecuting attorney in the presence of the jury, or that the Court permit defense counsel to enter a plea of not guilty before the jury.

Respectfully submitted

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the *16* day of _____, 2006.

Paul Johnson

## ORDER

IT IS THEREFORE, ORDERED that said Motion is hereby (granted) (denied) to which

ruling of the Court, the Defendant excepts.

DONE AND ENTERED this the _____ day of _____, 2006.


_____

JUDGE PRESIDING

CAUSE  NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO PROHIBIT USE OF IMPROPER HYPOTHETICALS AT VOIR DIRE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant, by and through his attorneys of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution, Article 1, Sections 3, 10, 13, 15, and 19 of the Texas Constitution and Texas. C. Crim. P. Art. 1.05 and files this his Motion to Prohibit the Use of Improper Hypotheticals at Voir Dire, and as grounds therefore would show the Court as follows:

1.  The prosecutors have presented several jury panelists with a hypothetical set of facts, set forth in the most explicit terms, in which an older couple consent to an act of euthanasia by one against the other to put an end to suffering.  This fact situation is presented in a long narrative format and at the end the prosecutor asks the venire person if the prospective juror could consider the full rage of punishment from 5 years probated to life imprisonment for the lesser included offense of murder.

2.  The hypothetical is presented by the prosecutors in the hope of qualifying jurors as to the minimum punishment for the lessor included offense of murder under a set of facts that are not related to the case at bar and have no relationship to the allegations in the indictment in this case (capital murder).

264

3.   The hypothetical is improper for use at voir dire because the fact pattern presented by the prosecutors does not exist under the indictment in the case at bar and that it is of no practical benefit to the juror or to the cause of justice.

4.   The use of this hypothetical, presented by the attorneys representing the State of Texas, under the auspices of the Court, gives the false impression to the juror that the alleged factual hypothetical could exist in this case and that the prospective juror would be qualified as to the minimum punishment for murder.

5.   Further, the hypothetical is a back door attempt to avoid the prohibition of factual commitment questions prohibited by *Standefer v. State*.

6.   The Defendant is entitled to have prospective jurors qualified as to the proper possible punishment range for the primary charge of capital murder and possible lessor included charge of murder as framed by the indictment in the case at bar and not some unrelated hypothetical that has no basis in factual relation to the case.  To allow otherwise permits the State to misrepresent the possible factual basis of the prosecution and it application to the law presented in this case.

7.   Defendant moves the court to order the prosecutors to cease their use of the hypothetical described above.

265

WHEREFORE, PREMISES CONSIDERED, Defendant requests that the court order the prosecutors to refrain from the use of the hypotheticals described above.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the 16 day of _____, 2006.

Paul Johnson

266

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## ORDER ON MOTION TO PROHIBIT USE OF IMPROPER HYPOTHETICALS AT VOIR DIRE

BE IT REMEMBERED, that on the _23_ day of _____Aug_____, 2006, came

on to be considered the Defendant's Motion. After consideration of the same, it is the opinion of

the Court that Defendant's Motion be:

( )   GRANTED, and the prosecutors are ordered to refrain from using the hypothetical

set forth in Defendant's motion.

(X)   DENIED as to all relief not specifically granted above, to which ruling the

Defendant excepts.

SIGNED on the _23_ day of _____Aug_____, 2006.

_____
JUDGE PRESIDING

267

CAUSE  NO. F05-52918-MR

| | |
|---|---|
| THE STATE OF TEXAS        )( | IN THE 265TH  JUDICIAL |
| VS                        )( | DISTRICT COURT OF |
| STEVEN L. LONG            )( | DALLAS COUNTY, TEXAS |

## MOTION TO PRESERVE RIGHT TO FILE OTHER MOTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG,  Defendant in the above-cause, by and through counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and  files this Motion to Preserve Right to File Other Motions, and for good and sufficient cause would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.

3. Defense counsel is not always able to present every pertinent motion at the initial pre-trial motion hearing in that, even with due diligence, they may not learn of the relevance of a particular motion until after said hearing, e.g., Motion to Quash because of defective indictment based on recent Court of Criminal Appeals of federal court ruling, or a Motion to Suppress based on evidence that is produced as a result of a Pre-Trial Motion hearing.

CAUSE  NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S ELECTION AS TO PUNISHMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN L. LONG, the Defendant in the above styled and numbered cause

and, prior to the entry of the plea in open Court in this cause, the Defendant hereby elects the jury to

assess the punishment herein in the event a verdict of guilty of any lessor included offense is

returned by the jury.

_____
Defendant

_____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

Attorney for Defendant

270

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Defendant's Election as to Punishment was served upon the attorney for the State on _____ 8/16/06 _____, 2006.

_____
Paul Johnson
Attorney for Defendant

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the _____ day of _____, 2006.

_____
JUDGE PRESIDING

271

NO. F05-52918-R

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 265TH |
| V. | § | JUDICIAL DISTRICT COURT |
| STEVEN LYNN LONG | § | OF DALLAS COUNTY, TEXAS |

## COURT'S CHARGE

MEMBERS OF THE JURY:

Steven Lynn Long, the defendant, stands charged by indictment with the offense of capital murder, alleged to have been committed on or about May 21, 2005, in Dallas County, Texas.   To this charge, the defendant has pleaded not guilty.

You are instructed that the law applicable to this case is as follows:

## Offense Definitions

A person commits murder if he intentionally or knowingly causes the death of an individual.

A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit aggravated sexual assault.

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by any means and (1) causes serious bodily injury or attempts to cause the death of the child or (2) the child is younger than 14 years of age.

## Term Definitions

"Actor" means a person whose criminal responsibility is in issue in a criminal action.

1

"Attempt" means to commit an act with specific intent to commit an offense where the act committed amounts to more than mere preparation but fails to effect the commission of the offense intended.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Child" means a person younger than 17 years of age who is not the spouse of the actor.

"Deadly weapon" means a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or, anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

"Individual" means a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth.

"Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

"Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Spouse" means a person who is legally married to another.

## Mental State Definitions

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct.  A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

2

273

## Voluntary Intoxication

Voluntary intoxication does not constitute a defense to the commission of crime.

## Capital Murder

Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that on or about May 21, 2005, in Dallas County, Texas, the defendant intentionally caused the death of Kaitlyn Smith, an individual, by strangling her with a cord, a deadly weapon, or an unknown object, a deadly weapon, the exact nature and description of which is unknown to the grand jury, or by blunt force trauma to the pelvic region, and the defendant was then and there in the course of committing or attempting to commit the offense of aggravated sexual assault of Kaitlyn Smith, then you will find the defendant guilty of capital murder as charged in the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and proceed to consider whether he is guilty of the lesser-included offense of murder.

## Murder

Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt, that on or about May 21, 2005, in Dallas County, Texas, the defendant knowingly caused the death of Kaitlyn Smith, an individual, by strangling her with a cord, a deadly weapon, or an unknown object, a deadly weapon, the exact nature and description of which is unknown to the grand jury, or by blunt force trauma to the pelvic region, then you will find the defendant guilty of murder as included in the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty."

3

## Evidentiary Instructions

At times throughout the trial, the Court has been called upon to pass on the question of whether or not certain offered evidence might properly be admitted. Do not be concerned with the reasons for such rulings or draw any inferences from them. Whether offered evidence is admissible is purely a question of law. In admitting evidence to which an objection is made, the Court neither determines what weight should be given such evidence nor passes on the credibility of the witness. As to any offer of evidence that has been rejected by the Court, you, of course, must not consider the same. As to any question to which an objection was sustained, you must not conjecture as to what the answer might have been or as to the reason for the objection.

The fact that the defendant has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial.

You are instructed that you may consider all relevant facts and circumstances surrounding the killing, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense alleged in the indictment.

You are instructed that if there is any testimony before you in this case regarding the defendant's having committed an offense, if any, other than the offense, if any, alleged against him in the indictment in this case, you cannot consider that testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense, if any was committed.

You are instructed that the defendant may testify in his own behalf if he chooses to do so, but if he elects not to do so, that fact cannot be taken by you as a circumstance against him or prejudice him in any way. The defendant has elected not to testify, and you are instructed that you cannot and must not refer to

4

or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever.

## Presumptions and Burden of Proof

All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The law does not require the defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless you are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in this case.

The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant. The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt. If the State fails to meet its burden, you must acquit the defendant.

## Concluding Instructions

You are charged that it is only from the witness stand that the jury is permitted to receive evidence regarding the case, and no juror is permitted to communicate to any other juror anything he may have heard regarding the case from any source other than the witness stand.

In deliberating on this case, you are not to refer to or discuss any matter or issue not in evidence before you. Further, you shall not talk about this case to anyone not of your jury.

You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony, but you are bound to receive and to follow the law from the Court.

5

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff who has you in their charge. You may communicate with this Court in writing, signed by your presiding juror, through the bailiff who has you in their charge. Do not attempt to talk to the bailiff, the attorneys, or the Court concerning any question you may have.

After argument of counsel, you will retire and select one of your members as your presiding juror. It is the duty of your presiding juror to preside at your deliberations and to vote with you in arriving at a verdict. Your verdict must be unanimous, and after you have arrived at your verdict, you may use one of the forms attached by having your presiding juror sign the particular form that conforms to your verdict.

JUDGE

6

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## MOTION TO IMPANEL SEPARATE JURY FOR
## GUILT/INNOCENCE AND PENALTY PHASE OF CAPITAL TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG, Defendant in the above cause, by and through

counsel and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution

and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution and moves the Court to

impanel a jury for the guilt/innocence phase of this trial and a separate jury should a punishment

phase of the trial be necessary.   In support thereof, Movat would show the Court the following:

1. The Defendant has been indicted for the offense of capital murder.

2. The State is seeking the death penalty.  The Eight Amendment requires a greater

degree of accuracy and fact finding than would be true in a noncapital case. Gilmore v.

Taylor, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed.2d 306 (1993) and Woodson v. North

Carolina, 428 U.S. 280, 305 (1976).

3. Social science studies have revealed a "processing effect" of the death-

qualification procedure which benefits the prosecution and has deleterious effects

on the capital defendant's right to a fair trial. *See, e.g.*, Haney, *On the Selection of*

*Capital Juries*, 8 Law & Human Behavior 121-151 (1984)(hereinafter referred to

as "Haney"). *See also* Jurow, *New Data on the Effect of a "Death Qualified" Jury*

*on the Guilt Determination Process*, 84 Harv.L.Rev. 567 (1971); Cowan, Thompson, & Ellsworth, *The Effects of Death Qualification on Jurors' Predisposition to Convict and on the Quality of Deliberation*, 8 Law & Hum.Behav. 53 (1984). Such a procedure prejudices capital juries "not only because it alters the composition of the group 'qualified' to sit, but also because it exposes them to an unusual and suggestive legal process." *Haney*, at 121. Significantly, jurors organized evidence elicited at trial in the way that it was presented to them during voir dire. "[O]nce jurors have imagined themselves in the penalty phase of the trial, they may come to assume that it will occur, and begin to organize subsequent information in a manner consistent with that assumption." *Haney* at 130-131.

Exposure to death qualification increased subjects' belief in the guilt of the defendant and their estimate that he would be convicted. It also increased their estimate of the prosecutor, defense attorney, and *judge's belief in the guilt of the defendant*. The death qualification process led subjects to perceive both prosecutor *and judge* as more strongly in favor of the death penalty, and to believe that the law disapproves of people who oppose the death penalty. And it led jurors to choose the death penalty as an appropriate punishment much more frequently than persons not exposed to it. Thus, persons who had been exposed to death qualification not only differed from non-death-qualified subjects, but they differed in ways that

were consistently prejudicial to the interests and rights of the defendants.

*Haney* at 128-129 (emphasis added).

4. Death -qualified jurors are more conviction-prone than jurors who have not been "processed" through the death qualification procedure.  See Cowan, et al  at _____.

5. Without waiving the Defendant's contention that process of "death qualifying" a jury in a capital case violates the Defendant's rights to a Fair Trial, Equal Protection, Due Process and Effective Assistance of Counsel under both the State and Federal Constitutions, Movant respectfully requests that this Court impanel one jury to consider the Defendant's guilt or innocence and, should the Defendant be found guilty,  a separate jury to consider his punishment.

WHEREFORE, PREMISES CONSIDERED, the Defendant  prays that this Court grant the relief as prayed for herein.

Respectfully submitted on this the _16_ day of _August_, 2006.

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to counsel for the State by hand-delivery of a copy of same this the ____ day of _____8/16/06_____, 2006.

Paul Johnson

## ORDER

On this the _____ day of _____ 2006, came on to be heard the above and foregoing motion of the defendant herein and the Court having considered same is of the opinion that the motion should be (DENIED) (GRANTED)

SIGNED this the 23 day of Aug _____, 2006.

~~Paul Johnson~~

281

CAUSE NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S OBJECTIONS TO THE CHARGE AT PUNISHMENT.

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered cause, and after the State and the Defendant have rested their respective cases during the hearing on punishment, and prior to the arguments of counsel and prior to the reading of the Charge to the jury, the Defendant hereby submits his objections to the Court's charge as follows:

1. The Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 95%, and to make a proper application of such law to the facts. 

2. In the event the Court shall overrule this objection, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 90%, and to make a proper application of such law to the facts. 

3. In the event the Court shall overrule this objection, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 85%, and to make a proper application of such law to the facts. 

4. In the event the Court shall overrule this objection, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 80%, and to make a proper application of such law to the facts. 

5. In the event the Court shall overrule this objection, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 75%, and to make a proper application of such law to the facts.

6.   In the event the Court shall overrule the above objection, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 70%, and to make a proper application of such law to the facts. 

7.   In the event the Court shall overrule this objection, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 65%, and to make a proper application of such law to the facts. 

8.   In the event the Court shall overrule the above objections, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 60%, and to make a proper application of such law to the facts. 

9.   In the event the Court shall overrule the above objections, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 55%, and to make a proper application of such law to the facts. 

10.   In the event the Court shall overrule the above objections, the Defendant objects to the failure of the Court to instruct the jury that the word "probability" as used in Special Issue No. 2, inquiring into future dangerousness, means a high probability, at least 50%, and to make a proper application of such law to the facts. 

11.   The Defendant objects to the Court's failure to instruct the jury that there is no presumption in favor of death, even if they find the Defendant to be a "future danger" in answer to Special Issue No. 2, and that Special Issue No. 4 is to be taken up and considered independently, if at all, without regard to the jury finding made in numbers one through three, and to make a proper application of such law to the facts. 

12.   The Defendant objects to the failure of the Court to instruct the jury that the phrase "criminal acts of violence" as used in Special Issue No. 2, inquiring into future dangerousness, means serious criminal activity, causing serious bodily injury or death; not trivial, accidental, reckless, or highly provoked acts, and to make a proper application of such law to the facts. 

13.   The Defendant objects to the Court's failure to require proof of the extraneous offenses and other misconduct beyond a reasonable doubt, and to make a proper application of such law to the facts. See *Ring v.* Arizona, _536_ U.S. _584_ (2002) 

14.   The Defendant objects to the definitional instruction of beyond a reasonable doubt, on page 2 of the first proposed charge, as it dilutes the meaning of that phrase, and effectively lowers the state's burden of proof; Defendant objects to the failure to give the formerly required *Geesa* charge on reasonable doubt, and if both these objections

are overruled, the Defendant objects further Court's failure to instruct the jurors on the meaning of the phrase "preponderance of the evidence", and failure to charge that proof beyond a reasonable doubt is higher than that, and the Defendant further objects to the Court's failure to charge the jury on the meaning of "clear and convincing evidence", and that beyond a reasonable doubt is even higher than that; if all these objections are overruled, the Defendant objects that the Court has failed to instruct the jury that reasonable doubt is defined as follows:

The State has the burden of proving the elements of the special issues beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In order to return affirmative answers to the following special issues, the state's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that your answer to the special issue should be affirmative. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the elements of the special issue(s) have been established, you must return an affirmative answer. If on the other hand, you think there is a real possibility that the elements have not been established, you must give the Defendant the benefit of the doubt, and return a negative answer.

Source: concurrence by Justice Ginsburg in *Victor v Nebraska*, 511 U.S. 1 (1994)

15. The Defendant objects to the Court's failure to limit the jury's consideration of victim impact evidence such that it is not to be considered in connection with the future dangerousness special issue, and to make a proper application of such law to the facts.

16. The Defendant objects to the Court's failure to instruct the jury that victim character or impact evidence does not meet or relieve the State of its burden to prove the continuing threat issue beyond a reasonable doubt.

17. The Defendant objects to the Court's failure to instruct the jury that jurors are not to use the victim evidence to make any comparative worth analysis: victim's worth to the community, or to his family, as compared to other members of society, or victim's worth compared to worth of the Defendant.

18. The Defendant objects to the Court's failure to instruct that the defendant's conviction for capital murder does not preclude the jury from considering evidence of the circumstances of the offense that tend to show that there existed another cause contributing to the death of the deceased, and to make a proper application of such law to the facts.

19.   The Defendant objects to the Court's failure to  instruct that the defendant's conviction for capital murder does not preclude the jury from considering evidence of the circumstances of the offense that tend to show that the Defendant did not commit the crime alleged, and to make a proper application of such law to the facts.

20.   The Defendant objects to the Court's failure to require proof of the extraneous offenses and other misconduct beyond a reasonable doubt, and to make a proper application of such law to the facts.

21.   The Defendant objects to the Court's failure to  instruct the  jury that there is no presumption in favor of death, even if they find the Defendant acted deliberately, with a reasonable expectation that the death of the victim would occur, that he will be a "future danger" in answer to Special Issue No. 2, and that there was no sense of provocation or self-defense, that Special Issue No. 4 is to be taken up and considered independently, if at all, without regard to the jury findings made in the other special issues, and to make a proper application of such law to the facts.

22.   The Defendant objects to the failure of the Court to instruct the jury that the phrase "criminal acts of violence" as used in Special Issue No. 2, inquiring into future dangerousness, does not mean mere property crimes, not in conjunction or combination with crimes causing serious bodily injury or death, and to make a proper application of such law to the facts.

23.   The Defendant objects to the failure of the Court to instruct the jury that the phrase "criminal acts of violence" as used in Special Issue No. 2, inquiring into future dangerousness, does not mean mere property crimes, not in conjunction or combination with crimes against the person, and to make a proper application of such law to the facts.

24.   The Defendant objects to the proposed charge, *see* Section II at p. 1, inasmuch as it instructs the jury to "consider all evidence . . . that militates for . . . the imposition of the death penalty." There is no basis in law for this instruction, which lies outside the four special issues and obviates the constitutionally mandated requirement that specific, statutorily sanctioned aggravators–and only such aggravators–be used to distinguish capital defendants for whom the death penalty is appropriate from those for whom it is not.

25.   The Defendant objects to the proposed charge, *see* Section II at p. 1, inasmuch as it improperly emphasizes, and comments on the weight of, the evidence pertaining to the Defendant's "character or background" and evidence pertaining to the "circumstances of the offense" above all other evidence "that militates for or mitigates against the imposition of the death penalty."

26.   The Defendant objects to the proposed charge inasmuch as the proposed charge, in the third paragraph of Section II at p. 1, limits the mitigating  evidence that the jury

may consider to such evidence as may pertain to "all *relevant* mitigating circumstances" (emphasis added). By limiting the mitigating evidence that the jury may consider to only that which pertains to so-called "relevant" mitigating circumstances, the proposed charge, contrary to law, erroneously instructs the jury to disregard certain mitigating evidence. *See Penry v. Lynaugh*, 492 U.S. 302 (1989); *Lockett v. Ohio*, 438 U.S. 586 (1978). Since all mitigating evidence is also "relevant", this is confusing and irrational. See Penry II.

27.    The Defendant objects to the Court's limitation on the scope of mitigating evidence to that which a juror might regard as reducing the defendant's moral blameworthiness, and to make a proper application of such law to the facts. *See Skipper v. South Carolina*, 476 U.S. 1 (1986).

28.    The Defendant objects to the Court's failure to  instruct the  jury that there is no presumption in favor of death, even if they find the Defendant to be a "future danger" in answer to Special Issue No. 2, and that Special Issue No. 4 is to be taken up and considered independently, if at all, without regard to the jury finding made in number one, and to make a proper application of such law to the facts.

29.    The Defendant objects to the Court's failure to instruct the jury that the burden of proof with respect to Special Issue No. 4 is on the State to prove beyond a reasonable doubt that there are no sufficient mitigating circumstances to warrant a life sentence, and to make a proper application of such law to the facts. *See Ring v.* Arizona, 536 U.S. 584 (2002); Apprendi *v. New Jersey*, 530 U.S. 466 (2000).

30.    In the event the Court overrules the immediately preceding objection, the Defendant objects to the Court's failure to instruct the jury that in the event of equipoise as to Special Issue No. 4, the jury shall answer "yes" as to that special issue.

31.    The Defendant objects to the Court's failure to instruct the jury that it shall answer "yes" to Special Issue No. 4 if 10 jurors agree that one or more mitigating circumstances exist that, separately or in conjunction, is or are sufficient to warrant that a sentence of life imprisonment rather than death be imposed, even if such jurors disagree as to which mitigating circumstance or circumstances, separately or in conjunction, is or are sufficient to warrant that a sentence of life imprisonment rather than death be imposed.

32.    In the event the Court overrules the immediately preceding objection, the Defendant objects to the Court's failure to instruct the jury that it may answer "yes" to Special Issue No. 4 if 10 jurors agree that one or more mitigating circumstances exist that, separately or in conjunction, is or are sufficient to warrant that a sentence of life imprisonment rather than death be imposed, even if such jurors disagree as to which mitigating circumstance or circumstances, separately or in conjunction, is or are sufficient to warrant that a sentence of life imprisonment rather than death be imposed.

33.  In the event the Court overrules the two preceding objections, the Defendant objects to the Court's failure to instruct the jury that it shall answer "yes" to Special Issue No. 4 even if the jurors disagree as to which mitigating circumstance or circumstances is or are sufficient to warrant that a sentence of life imprisonment rather than death be imposed.

34.  In the event the Court overrules the three preceding objections, the Defendant objects to the Court's failure to instruct the jury that it may answer "yes" to Special Issue No. 4 even if the jurors disagree as to which mitigating circumstance or circumstances is or are sufficient to warrant that a sentence of life imprisonment rather than death be imposed.

35.  The Defendant objects to the Court's failure to instruct the jury on the elements of the offense of which the Defendant was convicted in his first trial.

36.  The Defendant objects to the Court's failure to instruct the jury to disregard victim impact evidence that was not shown to be within the knowledge or reasonable expectation of the Defendant.

37.  The Defendant objects to the Court's failure to provide a reasoned moral process for the consideration and giving of effect to mitigating circumstances. (i.e., no burden of proof, no standard of proof, no guidance as to the nature and strength of the presumption in favor of death that may arise, if at all, from the possible future dangerousness finding, etc.)

38.  The Defendant objects to the Court's failure to instruct the jury that "continuing threat to society" does not mean "any threat of harm or death, no matter how minor or remote, that might hypothetically be posed, in any place, in or out of prison, for any length of time after the jury verdict, no matter how short", but instead means "a clear and present threat of serious bodily injury or death to others while in prison or free society, which will continue after the Defendant becomes parole eligible, and until such time as there is a reasonable likelihood of parole, unless death is imposed as a sentence".

39.  The Defendant objects to the Court's failure to instruct the jury that "continuing threat to society" does not mean "any threat of harm or death, no matter how minor or remote, that might hypothetically be posed, in any place, in or out of prison, for any length of time after the jury verdict, no matter how short", but instead means that the Defendant will be so incorrigible that his serious misconduct will continue after the Defendant becomes parole eligible, and until such time as there is a reasonable likelihood of parole, unless death is imposed as a sentence".

40.  The Defendant objects to the Court's failure to provide a rational process for the jury to determine life or death: the special issue on mitigation is made vaguely conditional

on the one on future dangerousness, burdening the consideration of mitigating circumstances that are not related to future dangerousness with a vague presumption in favor of death if the mitigating circumstances are somehow not "sufficient" in comparison to something not stated in the special issues–perhaps the degree of future dangerousness, the deterrent value the jurors hold for the death penalty, the general deservedness of death estimated by the juror.

41.    The Defendant objects to the Court's failure to instruct the jury on how to rationally resolve the tension between the requirement of an individualized sentencing procedure and the provision of a mechanism to deter others from committing similar crimes. The charge, as it now appears, simply allows jurors to nullify one part of the charge, the special issues, in order to give effect to evidence that the jurors, for whatever reason, may believe to militate in favor of death.

42.    The Defendant objects to the Court's failure to submit an definitional instruction to the jury defining continuing threat to society so as to select only the "worst of the worst" for the death penalty.

43.    The Defendant objects to the punishment charge as a whole because the literal language used in Special Issue No. 2 trivializes the value of human life and the legal processes used to choose between life and death: "probability" without proper explanation, means no more than a bare chance, criminal acts of violence may mean no more than traffic violations, "threat" no more than minor property damage or loss, and "continuing" may similarly mean only for a very short time. The failure to define use of such important terms may well be regarded by jurors as strategic: it implies that death is the preferred sentence and amounts to a subtle comment on the weight of the evidence to be considered under all the special issues. Consideration of mitigating circumstances is made conditional upon, and perhaps related to a finding far too easily made. Given such an invitation to trivialize the process as this language affords, jurors may well fail to give serious consideration to any of the mitigating evidence before them.

44.    The Defendant objects to the punishment charge as a whole because it fails to permit a discretionary grant of mercy based on mitigating circumstances unrelated to, and apart from, the jurors' assessment of the degree of the defendant's deliberation, reasonable expectation of death of the victim, "future dangerousness", and lack of sense of provocation or self defense.

45.    The Defendant objects to the instructions, on page 1 of the proposed charge, that commands the jurors to consider evidence that "militates" for the imposition of the death penalty, and to the punishment charge as a whole because it fails to afford a rational, individualized sentencing process, or provide a rational process to permit a discretionary grant of mercy based on mitigating circumstances unburdened by the jurors' perhaps strong desire to deter others from committing similar crimes.

46.  The Defendant objects to the instruction, in the second paragraph of part II of the proposed charge, that inappropriately highlights at the outset of the charge the "character" the Defendant and the "circumstances of the offense."

47.  The Defendant objects to the punishment charge as a whole because it fails to provide a rational process to permit a discretionary grant of mercy based on mitigating circumstances.

48.  Subject to the court's adverse rulings on his previously filed motions for relief under Atkins v Virginia 536 U.S. 304 (2002), and without intending to waive the same, but still insisting upon a separate jury trial on the issue of mental retardation, the Defendant objects to the punishment charge as a whole because it fails to provide a rational process to determine whether the Defendant is mentally retarded.

49.  Subject to the court's adverse rulings on his previously filed motions for relief under Atkins v Virginia 536 U.S. 304 (2002), and without intending to waive the same, but still insisting upon a separate jury trial on the issue of mental retardation, the Defendant objects to the manner of the conduct of this trial and punishment charge as a whole because the Court has failed to provide a rational process to determine whether the Defendant is mentally retarded, separate and apart from, and untainted by, any consideration of the facts of the crime, and any extraneous offenses or misconduct the Defendant may have committed.

50.  The Defendant objects to the punishment charge as a whole because it fails to instruct the jury that the Defendant was held to be mentally retarded by the Supreme Court of the United States in its 1989 opinion, and that it must therefore return a life verdict. *See Penry v. Lynaugh*, 492 U.S. 302 (1989).

51.  The Defendant objects to Special Issue No. 2, inquiring into "future dangerousness", and the punishment charge as a whole because there is no rational or scientific basis upon which to base such a prediction.

52.  The Defendant objects to Special Issue No. 2, inquiring into "future dangerousness", and the punishment charge as a whole, because there is no instruction to the jury that they may consider "non-Penry" mitigating evidence to rebut, and raise a reasonable doubt about, the state's claim of future dangerousness, deliberation and reasonable expectation of death, as well as in consideration of Special Issue No. 4 on mitigating circumstances.

53.  The Defendant objects to the first special issue, inquiring into "deliberation" on the grounds that, by such phrase, the Court attempts to hold Defendant to the "reasonable man" standard where there is ample evidence that the Defendant is mentally retarded to such a degree that he does not have the same ability to deliberate as would a person with normal intelligence, and that without an explanation of what is meant by "deliberately", making it clear to the jury that they are to take into account the

Defendant's mental condition, social and cultural deprivation, and all other factors shown by the evidence which serve to diminish the capacity of the Defendant to appreciate the consequences of his acts, in making their determination as to whether or not he acted deliberately, this special issue denies the right of the Defendant to an individualized sentencing proceeding and a fair trial by a fair and impartial jury which renders this proceeding unreliable, all of which violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Texas Constitution.

54.     The Defendant objects to the first special issue, inquiring into "reasonable expectation that death would result" on the grounds that, by such phrase, the Court attempts to hold the Defendant to the "reasonable man" standard where there is ample evidence that the Defendant is mentally retarded to such a degree that he might very well not have had the expectation that death would result from the injuries inflicted, even if an ordinary and prudent person would have had such an expectation, which is not admitted, but expressly denied, and that without an explanation of this phrase, making it clear to the jury that they are to take into account the Defendant's mental condition, social and cultural deprivation, and all other factors shown by the evidence which serve to diminish the capacity of the Defendant to appreciate the consequences of his acts, in making their determination as to whether or not he had such an expectation, this special issue denies the right of the Defendant to an individualized sentencing proceeding and a fair trial by a fair and impartial jury which renders this proceeding unreliable, all of which violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Texas Constitution.

55.     The Defendant objects to the portion of the charge which defines a mitigating circumstance on the ground that it places the burden on the Defendant to show that a death sentence is inappropriate in this case, rather than placing the burden on the State to show that a death sentence is appropriate beyond a reasonable doubt.

56.     The Defendant objects to the Court's proposed instruction on mitigation as it violates the Eight Amendment to the United States Constitution because there is a reasonable likelihood that it would be interpreted by a rational jury to require a death sentence, unless the Defendant proffers mitigating evidence that casts doubt on his guilt. Since there is nothing in the instruction that explains the difference between "guilt" and "personal culpability," the jury will probably equate the two terms.

57.     The Defendant objects to the charge because the charge fails to instruct the jury that mental retardation may only be considered as a mitigating circumstance and not as an aggravating circumstance.

58.     The Defendant objects to the charge because the charge fails to instruct the jury that brain damage may only be considered as a mitigating circumstance and not as an aggravating circumstance.

59.   The Defendant objects to the charge because the charge fails to instruct the jury that child abuse may only be considered as a mitigating circumstance and not as an aggravating circumstance.

60.   The Defendant objects to the "no-sympathy" instruction contained in the proposed charge because this language does not appear anywhere in Texas' capital sentencing statutes; it is at variance with the critical provisions of Article 38.05, 36.14 and 37.071 Sec. 2(3) (e), Texas Code of Criminal Procedure, and it renders the process of consideration of mitigating circumstances irrational in violation of *Penry II.* The anti-sympathy charge violates Texas Code of Criminal Procedure, Article 36.14, in that it 1) fails to distinctly set forth the law applicable to the case; instead this anti-sympathy charge is a confusing and conflicting "overlay" that leaves the jury without guidance as to what they may and may not consider 2) states the opinion of the Court as to the weight of the evidence, by suggesting that some unknown part of the evidence engenders "mere sympathy," etc. 3) is calculated to arouse sympathy for the victim and her family, or excite the passions of the jury against the Defendant. *See Rocha v. State* 16 S.W.3d 1 (Tex.Crim.App.2000), *Johnson v. State*, 2000 WL 1598620 (Tex.App.--Dallas 2000). Further, the anti-sympathy charge violates Texas Code of Criminal Procedure Article 38.05, in that it amounts to 1) a comment on the weight of the evidence, 2) a comment on the bearing of the evidence upon the case, and, 3) a remark calculated to convey to the jury the Court's opinion of the case. *See Blue v. State*, 41 S.W.3d 129 (Tex.Crim.App.2000), citing *Lagrone v. State*, 209 S.W. 411 (Tex.Crim.App. 1919).

61.   The Defendant objects to the "no-sympathy" instruction contained in the proposed charge because it has been improperly inserted and imported from a California punishment charge which reads as follows: "(a) The circumstances of the crime of which the Defendant was convicted in the present proceeding and the existence of any special circumstance[s] found to be true. "(b) The presence or absence of criminal activity by the Defendant which involved the use or attempted use of force or violence or the expressed or implied threat to use force or violence. "(c) The presence or absence of any prior felony conviction. "(d) Whether or not the offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance. "(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act. "(f) Whether or not the offense was committed under circumstances which the Defendant reasonably believed to be a moral justification or extenuation for his conduct. "(g) Whether or not the Defendant acted under extreme duress or under the substantial domination of another person. "(h) Whether or not at the time of the offense the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or the affects [sic] of intoxication. "(i) The age of the Defendant at the time of the crime. "(j) Whether or not the Defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor. "(k) Any other

circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime." CALJIC 8.84.1. The proposed "no-sympathy' instruction, taken out of the context, where it was narrowly approved, in *California v. Brown*, 479 U.S. 538 (1987), improperly limits, or at least creates impermissible confusion about, the propriety of the jury's consideration of legitimate mitigating evidence that may also arouse sympathy in the minds of reasonable jurors with the normal and usual sensibilities about child abuse and mental retardation. This is a violation of *Penry I* and *Penry II.*

62. The Defendant objects to that part of the punishment charge at part VI., page 4 of the first proposed charge, which requires only "clear proof" that the Defendant committed extraneous offenses, on the grounds that such language impermissibly dilutes the Court's charge on reasonable doubt, thus rendering the punishment trial too inherently unreliable to support the imposition of death as a penalty.

63. The Defendant objects to that part of the punishment charge at part VII., page 5 of the first proposed charge, which requires the jurors to "consult with one another" and to "deliberate with a view toward reaching an agreement", if they can do so "without violence to individual judgment." This instruction contravenes and dilutes CCP Art. 37.0711, Sec. 3(3)(d)(1), which requires a unanimous verdict to support an affirmative finding to the first three special issues. It also conflicts with the jurors' oath to render a true verdict according to the law and the evidence required by Art. 35.22. An individual juror's "true verdict" may well not be in "agreement" with that of any other juror; if that is so, it still is entitled to the same dignity and respect as that of any other juror or jurors. The use of the word "violence", as applied to the jurors' individual judgment is metaphoric, as it conjures images of one juror actually using or threatening force against another; such language is confusing and renders the entire jury trial an irrational process that cannot be relied upon. This language will have the effect of coercing "holdout" jurors who, perhaps unknowingly, hold veto power over the state executioner. This is improper; such a check is needed to assure that the death sentences that are actually carried out result from an undeniably reliable, rational process.

64. The Defendant objects to the concluding paragraphs on page 4 and 5 of the proposed charge because they, and the charge as a whole, fail to instruct the jury not to return a compromise verdict.

65. The Defendant objects to the Court's instruction, *see* Proposed Charge, Section IV at p. 2, that "[t]he jury *will* answer Special Issue No. 4 either 'Yes' or 'No'" (emphasis added) inasmuch as this instruction precludes the possibility of a hung jury and thus could in effect coerce one or more jurors to switch their vote and thus return a false verdict against their oath.

66. The Defendant objects to the failure of the Court's charge to inform the jury that if they do not unanimously agree on special issues one through three, that has the same

dignity and respect as a "Yes" or "No" answer, and is the same in legal effect as a "No" answer. This failure to inform the jury of all their options provided by our law renders our capital sentencing process irrational and unreliable under the Eighth and Fourteenth Amendments. Jurors are required to take oaths regarding their qualifications to be jurors, and to render a true jury verdict <u>according to the law</u>. They expect no less of their public officials, such as judges and prosecutors.

67.  The Defendant objects to the failure of the Court's charge to inform the jury that if they do not unanimously agree on special issues one through three, that has the same dignity and respect as a "Yes" or "No" answer, and is the same in legal effect as a "No" answer. The making of such a material omission of applicable law in the charge to the jury denies the <u>jurors</u> the equal protection of the law and due process of law in that it subverts and distorts their right to freely participate in their own tax supported criminal justice system, managed by public officials they elect at the polls. The judge, the prosecutors, the defense counsel, even the bailiff likely know the effect of a holdout juror; the jurors themselves deserve, and through the undersigned counsel, demand fair and equal treatment under the law. Since the jurors are not in a position to assert their rights in this regard, the Defendant may do so. *See Batson v Kentucky*, 476 U.S. 79 (1986).

68.  The Defendant objects to the failure of the Court's charge to inform the jury that if they do not unanimously agree on special issues one through three, that has the same dignity and respect as a "Yes" or "No" answer, and is the same in legal effect as a "No" answer. The Supreme Court granted relief in *Penry II* because the jurors were required to give false answers in their verdict in order to give effect to mitigating circumstances. *See Penry v. Johnson*, 532 U.S. 782 (2001). Now, in *Penry III*, the State proposes that the judge give a misleading charge to the jury. Aside from violating the ancient maxim that "Honesty is the best policy", and the biblical commandment about bearing false witness, this charge violates CCP Art. 36.14, which requires the Court to give a charge that "distinctly" sets forth the "law applicable to the case." Art. 36.14 simply carries out and gives effect to the Texas "due course of law" clause of the Texas Constitution and the Due Process Clause of the United States Constitution; it must control over Art. 37.0711, Sec. 3(3)(i), which seeks to suppress and conceal important information from the jurors. *See Simmons v South Carolina*, 512 U.S. 154 (1994), requiring truth in capital sentencing.

69.  The Defendant objects to the Court's instruction that "the Court shall sentence the Defendant to death" in the event that the jury answers "yes" to Special Issues Nos. 1, 2 and 3 and "no" to Special Issue No. 4 on the grounds that this instruction misstates the law and violates the right of the Defendant, a mentally retarded person, to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution. *See Atkins v. Virginia*, _536_ U.S. _304_ (2002).

70. The Defendant who, pursuant to Tex. Crim. Proc. Code Ann. art. 1.14(a) (Vernon 2001), has knowingly, voluntarily and irrevocably waived any and all time credits accrued since his incarceration in 1979, whether due him under Tex. Crim. Proc. Code Ann. art. 42.03 § 2(a) (Vernon 2001), Tex. Gov't Code Ann. § 498.003 (Vernon 2001), or under any other law, statute, rule or regulation, objects to the Court's failure to instruct the jury that if sentenced to life imprisonment he would in any event not be eligible for parole for at least 20 years from the date of sentencing. *See Simmons v. South Carolina*, 512 U.S. 154 (1994); *see also Brown v. Texas*, 522 U.S. 940 (1997) (Stevens, J., opinion with respect to denial of cert.).

71. The Defendant who, pursuant to Tex. Crim. Proc. Code Ann. art. 1.14(a) (Vernon 2001), has knowingly, voluntarily and irrevocably waived the right to be sentenced and to be considered for parole under the law in effect in 1979 and has, as an integral part of that waiver, knowingly, voluntarily and irrevocably agreed to be sentenced and considered for parole under Tex. Gov't Code Ann. §§ 508.145(b), 508.149 (Vernon 2001), objects to the Court's failure to instruct the jury that if sentenced to life imprisonment he would in any event not be eligible for parole for at least 40 years from the date of sentencing. *See Simmons v. South Carolina*, 512 U.S. 154 (1994); *see also Brown v. Texas*, 522 U.S. 940 (1997) (Stevens, J., opinion with respect to denial of cert.). *—IN A Charge*

72. In the event that the Court overrules the immediately preceding objection, the Defendant who, pursuant to Tex. Crim. Proc. Code Ann. art. 1.14(a) (Vernon 2001), has knowingly, voluntarily and irrevocably waived the right to be sentenced and to be considered for parole under the law in effect in 1979 and has, as an integral part of that waiver, knowingly, voluntarily and irrevocably agreed to be sentenced and considered for parole under Tex. Gov't Code Ann. §§ 508.145(b), 508.149 (Vernon 2001), and has thereby placed himself in the identical position as all other persons subject to sentencing under Tex. Gov't Code Ann. § 508.145(b) (Vernon 2001), objects to the Court's failure to instruct the jury in the manner specified by Tex. Code Crim. Proc. Ann. art. 37.071 § 2(e)(2)(B) (Vernon 2001). *See Simmons v. South Carolina*, 512 U.S. 154 (1994); *see also Brown v. Texas*, 522 U.S. 940 (1997) (Stevens, J., opinion with respect to denial of cert.).

73. The Defendant objects to the Court's failure to instruct the jury that "If sentenced to life imprisonment the Defendant would not be eligible for parole for at least 40 years from the date of sentencing. That is to say, he would not be eligible at any time before the year 2042. Moreover, eligibility for parole does not mean that parole will be granted." *See Simmons v. South Carolina*, 512 U.S. 154 (1994); *see also Brown v. Texas*, 522 U.S. 940 (1997) (Stevens, J., opinion with respect to denial of cert.).

74. In the event that the Court overrules the immediately preceding objection, the Defendant objects to the Court's failure to instruct the jury that eligibility for parole does not mean that parole will be granted. *See Simmons v. South Carolina*, 512 U.S. *IN Charge*

154 (1994); *see also Brown v. Texas*, 522 U.S. 940 (1997) (Stevens, J., opinion with respect to denial of cert.).

75.   The Defendant objects to the proposed verdict form as currently formatted and requests that Special Issue No. 4 be placed before the other Special Issues and that the jury be directed to answer Special Issue No. 4 before proceeding, if necessary, to the remaining Special Issues, so as to dispel the false impression that the mitigation issue is related to or dependent upon the answers to one or more of the other special issues.

76.   The Defendant objects to the proposed verdict form as currently formatted and requests that each Special Issue, together with the possible answers that correspond to the respective Special Issues, appear on a separate page and that accordingly no page break appear either between a given Special Issue and the corresponding possible answers or between the two possible answers to a given Special Issue.

77.   The Defendant objects to the proposed verdict form as currently formatted and requests that the order of the possible answers to Special Issue No. 4 be reversed from their current order so that the "yes" answer appears before the "no" answer, so as to dispel the false impression that a negative answer is preferred by the law or by the court.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will sustain the foregoing objections to the Court's charge, pursuant to Texas Code of Criminal Procedure, Article 36.14,  Article 1, Sections 10, 13, 15 & 19 of the Texas Constitution, and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and give an appropriate Instruction to the jury on the matters raised by said objections during this the hearing on punishment.

Respectfully submitted,

Paul Johnson
311 N. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was delivered to the office of the Criminal District Attorney, Collin County, Texas, on this the _ day of 8/16/06 . 2006.

Paul Johnson

CAUSE  NO. F05-52918-MR

| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
|---|---|---|
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## O R D E R

On this day came on to be heard the foregoing Defendant's objections to the charge,  and the same having been timely and properly presented to the Court, prior to the reading of the charge to the jury, the same are hereby denied, to which the Defendant duly excepts  under Texas Code of Criminal Procedure, Article 36.14,  Article 1, Sections 10, 13, & 19 of the Texas Constitution. and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

SIGNED:

_____

JUDGE PRESIDING

297

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S MOTIONS AND ADDITIONAL OBJECTIONS TO THE CHARGE AT PUNISHMENT BASED UPON *Atkins V. Virginia*, 536 U.S. 304 (2002)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered cause, and after the State and the Defendant have rested their respective cases during the hearing on punishment, and prior to the arguments of counsel and prior to the reading of the Charge to the jury, the Defendant hereby moves for relief under *Atkins V. Virginia*, 536 U.S. 304 (2002), and he submits his additional objections to the Court's charge as follows:

A.    Defendant reiterates, and says that he intends to preserve, each and all of the contentions previously urged under the principles underlying *Atkins V. Virginia*, 536 U.S. 304 (2002) in this matter, as asserted in each of his several motions and objections, and including:

(i) Defendant's motions to abate the sentencing proceeding and for imposition of a sentence less than death as a matter of constitutional law;

(ii) Defendant's objection to continuing this sentencing proceeding instead of imposing a sentence less than death;

(iii) Defendant's objection to proceeding with this jury , which has not been qualified to serve in a case where mental retardation exempts the defendant from the death penalty under *Atkins*.

(iv) Defendant's demand for a separate jury proceeding solely on the issue of mental retardation, where the burden of proof lies on the state to establish that the defendant is not mentally retarded beyond a reasonable doubt, and where evidence not relevant to that issue is not presented to the jury.

B.     However, solely as a result of the Court's denial of these motions and objections, and without waiving the rights and positions asserted in each of them, but still insisting on the rights and the relief claimed therein, Defendant makes the following additional motions and objections:

(i) Defendant moves that the Court make an independent determination of the issue whether Penry is mentally retarded before submitting any sentencing issue or issues to the jury, and the Defendant objects to allowing the jury to consider a death sentence in the absence of a previous determination of this issue by the Court.  The determination should be made out of the presence of the jury, and the Court should consider issues (such as whether the prosecution is estopped from denying Penry's retardation, and whether the Due Process Clause or the Equal Protection Clause will preclude the state from seeking or carrying out the death penalty in this case where it has consented to an exemption under *Atkins* in other similar cases) which have not been presented to the jury.  If the court finds mental retardation, it should enter a sentence less than death; if it fails to find mental retardation, its finding should not be imparted to the jury.

(ii) The defendant objects to the failure of the court to instruct the jury that, before it considers any other issue, it must determine whether the Defendant is free from mental retardation.  On this issue, the jurors should be instructed that the prosecution bears the burden of proof beyond a reasonable doubt, and that the jury must be unanimous in finding beyond a reasonable doubt that the Defendant is not afflicted with mental retardation.  A "Special Issue" verdict form should be submitted on this issue, parallel to the verdict forms for the other Texas "Special Issues," containing explicit statements of the unanimity requirement and the beyond-a-reasonable-doubt burden on the prosecution; and the jury should be told on the verdict forms that the mental retardation verdict is to be completed before the jury goes on to discuss or consider any other issues.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully prays that this Honorable Court will grant all the relief requested herein, and that the court sustain the foregoing objections to the Court's charge, all pursuant to Texas Code of Criminal Procedure, Article 36.14, Article 1, Sections 10, 13, & 19 of the Texas Constitution. and the Fifth, Sixth, Eighth

and Fourteenth Amendments to the United States Constitution, and give an appropriate

Instruction to the jury on the matters raised by said motions and objections during this the

hearing on punishment.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was delivered to the office of the Criminal District Attorney, Dallas County, Texas, on this the _16_ day of _August_, 2006.

Paul Johnson

CAUSE  NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH  JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### ORDER ON DEFENDANT'S MOTIONS AND ADDITIONAL OBJECTIONS TO THE CHARGE AT PUNISHMENT BASED UPON *ATKINS V. VIRGINIA*    U.S.  (2002)

On this day came on to be heard the foregoing Defendant's motions for relief pursuant to

*Atkins V. Virginia*,  536 U.S. 304 (2002), and his  additional objections to the charge,  and the

same having been timely and properly presented to the Court, prior to the reading of the charge to

the jury, all of the same are hereby **denied**, to which the Defendant duly excepts  under Texas

Code of Criminal Procedure, Article 36.14,  Article 1, Sections 10, 13, & 19 of the Texas

Constitution. and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States

Constitution.

SIGNED on this day of _____, 2006.


_____
JUDGE PRESIDING


301

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

## DEFENDANT'S REQUESTED JURY INSTRUCTIONS
## REGARDING PAROLE FROM A CAPITAL LIFE SENTENCE

TO THE JUDGE OF SAID COURT:

COMES NOW, STEVEN L. LONG , Defendant in the above numbered and styled cause,

by and through his attorneys, and pursuant to the 6th, 8th, and 14th Amendments to the United

States Constitution, as well as Article I, §§ 3, 10, 13, 15 and 19 of the Texas Constitution, would

request that the court give the following instruction to the jury, and would show the following:

I.

Section 508.046 of the Government Code provides in pertinent part:

*To release on parole an inmate who was convicted of a capital felony, all
members of the [18 member] board [of pardons and paroles] must vote on the
release on parole of the inmate, and at least two_thirds of the members must vote
in favor of the release on parole. A member of the board may not vote on the
release unless the member first receives a copy of a written report from the
department [of criminal justice] on the probability that the inmate would commit
an offense after being released on parole.*

II.

The Defendant therefore request that the jury be instructed as above and as follows:

*Therefore, you are instructed that Mr. Long becomes eligible for parole in 40
calendar years, or, if you find that Mr. Long committed a capital offense while he
was a prison inmate, then he will become elgible for parole in 40 calendar years
after completion of his original prison sentence. Once he becomes eligible for
parole in any case, the Board of Pardons and Paroles may not authorize his
release to parole unless every board member receives a written report from the*

302

*Department of Criminal Justice on the probability that Mr. Long would commit an offense after being released on parole, and at least two-thirds of the membership votes to release him to parole.*

Failure to give these instructions will violate Article I, §§10, 13, 15 and 19 of the Texas Constitution as well as the Fifth Sixth, Eight and Fourteenth Amendments to the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the jury in this case be so instructed.

Respectfully submitted,

Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

By affixing my signature above, I hereby certify that a true and correct copy of the foregoing *Requested Jury Instructions* was personally delivered to the Dallas County District Attorney's Office on this day, _8/16/06_____, 2006.

Paul Johnson

2

303

CAUSE NO. F05-52918-MR

| | | |
|---|---|---|
| THE STATE OF TEXAS | )( | IN THE 265TH JUDICIAL |
| VS | )( | DISTRICT COURT OF |
| STEVEN L. LONG | )( | DALLAS COUNTY, TEXAS |

### MOTION FOR JURY INSTRUCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Defendant, Steven L. Long, by and through his attorneys of record and pursuant to the 5th, 6th, 8th and 14th Amendments to the United States Constitution and Article 1, Sections 3, 10, 13 and 19 of the Texas Constitution moves the Court as follows:

### I.

### Failure of Jurors to Agree on Answers to Instructions

1. Tex. C. Crim. P. Article 37.071(2)(d)(2) requires the court to charge the jury that it may not answer any issue submitted under Subsection (b) of this article "yes" unless it agrees unanimously and it may not answer any issue "no" unless 10 or more jurors agree;

2. The Court is required by Tex. C. Crim. P. Article 37.071(2)(f)(2) to charge the jury that it may not answer the issue "no" unless it agrees unanimously and may not answer the issue "yes" unless 10 or more jurors agree.

3. These instructions are confusing to jurors. In an attempt to reduce such confusion and without waiving the Accused's assertion that both of the above cited Articles are unconstitutional as set out the Accused's motion filed herein, the Accused moves the Court to charge the jury as follows:

**Instruction No. 2**

If the jury is unable to agree unanimously to an answer to Special issue No. 1, the foreperson is instructed not to sign the jury form or answer to instruction No. 1 (continuing threat to society), but shall so notify the bailiff and return to the courtroom.

**Instruction No. 6**

If at least one, but fewer than 10 jurors are able to answer "yes" to Instruction No. 5 (mitigation), the foreperson is instructed not to sign the jury form or answer to instruction No. 5, but shall so notify the bailiff and return to the courtroom.

4.   This method of instructing the jury is supported by the reasoning of the Court of Criminal Appeals in *McFarland v. State,* 928 S.W.2d 482, 519-520 (Tex. Crim.App. 1996)(overruled on other grounds).

5.   The Defendant requests that the jurors be also provided with the following instructions.

**Instruction No. ____**

In arriving at an answer to Instruction No. 5 (mitigation) you are instructed that mitigating evidence does not have to be proven to you beyond a reasonable doubt.  Each juror may consider any evidence that the juror believes is true.  No two jurors have to agree on the truth of same mitigating evidence.  A juror may answer Instruction No. 5 with a"yes" for any reason that justifies that response in the mind of the juror.

## II.

### Request for Instruction on *Tennard* definition of Mitigating Evidence

Defendant request the Court to instruct jurors at the close of punishment that the statutory definition of mitigating evidence does not impose and "nexus" or "reduces moral blameworthiness" limitation, either as to whether they may consider evidence or whether they must accord it particular weight.  Defendant requests a separate instruction in the language of *Tennard,* that the jury may consider and give effect to as mitigation "any evidence that may serve as a basis for a sentence less than death, regardless of whether the defendant is able to establish a nexus between the evidence and him commission of the crime." U.S. CONST. Amends. 8 and 14, TEX.CONST. Art. 1 Secs. 10,13, and 19.

6.  The Defendant still maintains that Tex. C. Crim. P. Article 37.071 is unconstitutional as is set out in his motion filed herein. These requested instructions are requested in an attempt to lessen the harm inflicted upon the Defendant by the sections cited above.  Instructing the jury as requested will not eliminate the harm, prejudice, confusion and unfairness to the Defendant and to the jurors deciding this case that results from the Court's compliance with the mandates of Tex. C. Crim. P. Article 37.071(2)(d)(2) and 37.071(2)(f)(2).

**WHEREFORE, PREMISES CONSIDERED,** Movant prays that upon hearing hereof

the court order that the jury be instructed as requested herein and that the Accused have such

other and further relief to which he may show himself to be entitled.

Respectfully submitted;

By: _____
Paul Johnson
311 No. Market St. Ste 300
Dallas, Texas 75202-1846
(214) 761-0707
SBOT# 10778230

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument

has been furnished to counsel for the State by hand-delivery of a copy of same this the ___ day of

_____8/16/06_____, 2006.

_____
Paul Johnson

F05-52918-R

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 265TH JUDICIAL |
| V. | § | DISTRICT COURT OF |
| STEVEN LYNN LONG | § | DALLAS COUNTY, TEXAS |

## PUNISHMENT PHASE JURY INSTRUCTIONS

By your verdict in this case you have found Steven Lynn Long ("the Defendant"), guilty of the offense of capital murder, alleged to have been committed on or about May 21, 2005, in Dallas County, Texas. It is now your duty to determine, from all the evidence in the case, answers to certain questions called special issues.

You are instructed that the punishment for the offense of capital murder in this state is either death or confinement for life in the Institutional Division of the Texas Department of Criminal Justice.

Two special issues, numbered one and two, are included in this charge. You are instructed to answer these two special issues either "Yes" or "No" in accordance with the instructions given in this charge. Special Issue No. 2 should be answered only if you have answered "Yes" to Special Issue No. 1. If you have answered "No" to Special Issue No. 1, then you shall cease your deliberations.

In deliberating on your answer to Special Issue No. 1, you are instructed that the State has the burden of proving beyond a reasonable doubt that Special Issue No. 1 should be answered "Yes."

You shall consider all evidence admitted during the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 1 "Yes" unless the jury agrees

1

unanimously, and you may not answer Special Issue No. 1 "No" unless 10 or more members of the jury agree. The members of the jury need not agree on what particular evidence supports a negative answer to Special Issue No. 1.

If you do not find and believe from the evidence beyond a reasonable doubt that the answer to Special Issue No. 1 should be "Yes," or if you have a reasonable doubt thereof, then you shall answer the special issue "No."

If you have answered Special Issue No. 1 "No," then you shall cease your deliberations. If you have found beyond a reasonable doubt that the answer to Special Issue No. 1 is "Yes," then you shall next consider Special Issue No. 2.

In deliberating on your answer to Special Issue No. 2, you are instructed that you may not answer Special Issue No. 2 "No" unless the jury agrees unanimously, and you may not answer Special Issue No. 2 "Yes" unless 10 or more members of the jury agree. The members of the jury need not agree on what particular evidence supports an affirmative answer to Special Issue No. 2. In arriving at your answer, you shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.

You are further instructed that if the jury returns an affirmative finding on Special Issue No. 1 and a negative finding on Special Issue No. 2, the Court shall sentence the defendant to death. If the jury returns a negative finding on Special Issue No. 1 or an affirmative finding on Special Issue No. 2, the Court shall sentence the defendant to confinement for life in the Institutional Division of the Texas Department of Criminal Justice.

If the jury's answers are unanimous to the special issues answered, then the presiding juror may sign each special issue for the entire jury. If any answer or answers are not unanimous, but agreed to by at least 10 members of the jury, as set out above, then the 10 or more jurors who agree shall individually sign the special issue.

2

Under the law applicable in this case, if the defendant is sentenced to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time.  It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

You are further instructed the law allows the defendant to testify in his own behalf at this phase of the trial, but a choice on his part not to do so is not a circumstance against him and no presumption can be indulged in by the jury for a choice on his part not to do so.  You are instructed in this case not to consider, discuss or even refer to the choice on the part of the defendant not to testify during your consideration of this case.

You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony, but you are bound to receive the law from the Court, which is herein given you, and be governed thereby.

Judge Keith Dean
265th Judicial District Court
Dallas County, Texas

3

310

## SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Steven Lynn Long, would commit criminal acts of violence that would constitute a continuing threat to society?

Answer: *Yes*

*Marco E Cisneros* 10/13/06
PRESIDING JUROR
*1:10 pm*

If your answer to this special issue is "No," and is not unanimous, then the 10 or more jurors who agree should sign individually below:

_____

_____

_____

_____

_____

_____

4

If your answer to Special Issue No. 1 is "Yes," you shall proceed to answer Special Issue No. 2.

If your answer to Special Issue No. 1 is "No," you shall cease your deliberations.

## SPECIAL ISSUE NO. 2

Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

Answer: _No_

_Marco L Cisneros_ 10/13/06
PRESIDING JUROR  1:46pm

If your answer to this special issue is "Yes," and is not unanimous, then the 10 or more jurors who agree should sign individually below:

_____

_____

_____

_____

_____

_____

5

## VERDICT SHEET

We, the jury, find the defendant guilty of capital murder, as charged in the indictment.

_Marco E Cisneros_                    10/6/06

PRESIDING JUROR

_Marco A. Cisneros_

We, the jury, find the defendant guilty of murder, as included in the indictment.

_____

PRESIDING JUROR

We, the jury, find the defendant not guilty.

_____

PRESIDING JUROR

7

CASE No. F-05-52918-R

INCIDENT No./TRN: 9106943276

| THE STATE OF TEXAS | | IN THE 265th JUDICIAL DISTRICT |
|---|---|---|
| v. | **THIS CASE IS** | COURT |
| STEVEN L. LONG | **ON APPEAL** | DALLAS COUNTY, TEXAS |
| STATE ID No.: TX04536106 | | |

## JUDGMENT OF CONVICTION BY JURY

| Judge Presiding: | HON. **Keith Dean** | Date Judgment Entered: | **10/13/2006** |
|---|---|---|---|
| Attorney for State: | **Andy Beach** | Attorney for Defendant: | **PAUL JOHNSON** |

Offense for which Defendant Convicted:
**CAPITAL MURDER**

| Charging Instrument: **INDICTMENT** | Statute for Offense: **19.03 Penal Code** |
|---|---|

Date of Offense:
**5/21/2005**

| Degree of Offense: **CAPITAL FELONY** | Plea to Offense: **NOT GUILTY** |
|---|---|
| Verdict of Jury: **GUILTY** | Findings on Deadly Weapon: **YES, NOT A FIREARM** |

| Plea to 1st Enhancement Paragraph: | **N/A** | Plea to 2nd Enhancement/Habitual Paragraph: | **N/A** |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | **N/A** | Findings on 2nd Enhancement/Habitual Paragraph: | **N/A** |

| Punished Assessed by: **JURY** | Date Sentence Imposed: **10/13/2006** | Date Sentence to Commence: **N/A** |
|---|---|---|

| Punishment and Place of Confinement: | **Death  INSTITUTIONAL DIVISION, TDCJ** |
|---|---|

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine: **$ N/A** | Court Costs: **$ 543.00** | Restitution: **$ N/A** | Restitution Payable to: ☐ VICTIM (see below)   ☐ AGENCY/AGENT (see below) |
|---|---|---|---|

**Sex Offender Registration Requirements apply to the Defendant.** TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **11 years.**

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. | | | |
|---|---|---|---|---|
| | From **5/22/2005** to **10/13/2006** | From      to | From      to | |
| Time Credited: | From      to | From      to | From      to | |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. | | | |
| | **N/A DAYS**   NOTES: **N/A** | | | |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Dallas County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and **ORDERED** it entered upon the minutes of the Court.

### Punishment Assessed by Jury / Court / No election  (select one)

☒ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court **FINDS** Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court **FINDS** the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court **ORDERS** Defendant punished as indicated above. The Court **ORDERS** Defendant to pay all fines, court costs, and restitution as indicated above.

### Punishment Options  (select one)

☒ **Confinement in State Jail or Institutional Division.** The Court **ORDERS** the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court **ORDERS** Defendant to be confined for the period and in the manner indicated above. The Court **ORDERS** Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court **ORDERS** that upon release from confinement, Defendant proceed immediately to the Dallas County District Clerk Felony Collections Department. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court **ORDERS** Defendant immediately committed to the custody of the Sheriff of Dallas County, Texas on the date the sentence is to commence. Defendant shall be confined in the Dallas County Jail for the period indicated above. The Court **ORDERS** that upon release from confinement, Defendant shall proceed immediately to the Dallas County District Clerk Felony Collections Department. Once there, the Court **ORDERS** Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court **ORDERS** Defendant to proceed immediately to the Office of the Dallas County District Clerk Felony Collections Department. Once there, the Court **ORDERS** Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

### Execution / Suspension of Sentence  (select one)

☒ The Court **ORDERS** Defendant's sentence **EXECUTED.**

☐ The Court **ORDERS** Defendant's sentence of confinement **SUSPENDED.** The Court **ORDERS** Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court **ORDERS** that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

#### Deadly Weapon.

**The Court FINDS Defendant used or exhibited a deadly weapon, namely, a cord, and an unknown object, during the commission of a felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42.12 §3g.Deadly Weapon.**

---

**Signed and entered on October 13, 2006**

X _Keith Dean_ _(signature)_
Keith Dean
JUDGE PRESIDING

DEFENDANT EXCEPTS AND GIVES NOTICE
OF APPEAL TO THE COURT OF APPEALS,
FIFTH DISTRICT OF TEXAS AT DALLAS

## THIS CASE IS
## ON APPEAL

Clerk: K. PRUITT

Steven L. Long F-05-52918                          Page 2 of 3

Right Thumbprint*

315

**JUDGMENT**
**CERTIFICATE OF THUMBPRINT**

CAUSE NO. _F05-52918 R_

THE STATE OF TEXAS                    IN THE ___265___

VS.                                  DISTRICT COURT _____

_Steven L. Long_                     DALLAS COUNTY, TEXAS



RIGHT THUMB                    DEFENDANT'S _Rt_ HAND

THIS IS TO CERTIFY THAT THE FINGERPRINTS ABOVE ARE THE ABOVE-
NAMED DEFENDANT'S FINGERPRINTS TAKEN AT THE TIME OF DISPOSITION
OF THE ABOVE STYLED AND NUMBERED CAUSE.

DONE IN COURT THIS _6_ DAY OF ___Oct___, 20_06_.

_____
BAILIFF/DEPUTY SHERIFF

*INDICATE HERE IF PRINT OTHER THAN DEFENDANT'S RIGHT THUMBPRINT IS PLACED IN BOX:

_____ LEFT THUMBPRINT        _✔_ LEFT/RIGHT INDEX FINGER

_____ OTHER, _____

SIGNED AND ENTERED ON THIS _6_ DAY OF ___Oct___, 20_06_.

_____
PRESIDING JUDGE

Cause No. _2-05-5_

| THE STATE OF TEXAS | § | IN THE _265_ |
|---|---|---|
| VS. | § | DISTRICT COURT _in and of_ |
| _Steven L. Long_ | § | DALLAS COUNTY, TEXAS |

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

☐ is not a plea-bargain case, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial, and not withdrawn or waived, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, and the defendant has NO right of appeal, [or]

☐ the defendant has waived the right of appeal.

☒ _automatic appeal to Ct of Crim. Appeal_

_____   _10-19-06_
Judge                       Date Signed

I have received a copy of this certification:

_____   _____
Defendant (if not represented by counsel)   Defendant's Counsel
Mailing Address:                             State Bar No.:
                                             Mailing Address:
Telephone #:
Fax # (if any)                               Telephone #:
                                             Fax # (if any):

*A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable order. In a plea bargain case ---- that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant ---- a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal. TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2).

2006 OCT 13 PM 3:13

THE STATE OF TEXAS          DISTR CAUSE NO.  2-05-52918
                           DALLAS C.., TEXAS
VS.                        ___ __ ___ DEPUTY    265 DISTRICT COURT

*Steven Long*                    DALLAS COUNTY, TEXAS

### DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

 Now comes the Defendant in the above cause and by his Attorney, and moves the Court to grant him a New Trial herein for the good and sufficient reason that the verdict is contrary to the law and the evidence.

 WHEREFORE, Defendant prays the Court grant a new trial herein.

                          Respectfully submitted,

                          _____
                                 Attorney for Defendant


### ORDER

 The above Motion is hereby (granted) (overruled).

                          _____
                                      Judge


318

JUDGEMENT / SENTENCE DATE _10-13-06_
MOTION FOR NEW TRIAL FILED __✓YES____NO DATE _10-13-06_

*Kelly Pruitt*
Deputy District Clerk

DRAWER #40

THE STATE OF TEXAS

VS.

*Steven Long*

CAUSE NO. _F05-52918_

_265_ DISTRICT COURT_____

DALLAS COUNTY, TEXAS

### DEFENDANT'S NOTICE OF APPEAL AND PAUPER OATH

### APPOINTMENT OF ATTORNEY ON APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

    Comes now Defenant in the above cause and states: I am the defendant in the above cause; I was convicted in this cause and now give Notice of Appeal to the Texas Court of Appeals for the Fifth Supreme Judicial District of Texas of Dallas, Texas, and that I am penniless, destitute and indigent person, too poor to employ counsel to represent me on the appeal, and too poor to pay for or give security for the Statement of Facts and a true copy thereof herein. WHEREFORE, I pray that the Court will appoint an attorney to represent me in this appeal and that the Court will order the Court Reporter of this Court to prepare and deliver me or my appointed Counsel the original and a true copy of the Statement of Facts in this case, together with all exhibits attached thereto if practical.

Defendant

    BEFORE ME, the undersigned authority, personally appeared the above Defendant, known to me to be the person whose signature appears above, and after being duly sworn on oath states that he is the defendant in the above cause, and that the matters and things set forth in the foregoing are true and correct in all things.

JIM HAMLIN
DISTRICT CLERK
Dallas County, Texas

By *Kelly Pruitt*
Deputy District Clerk

### ORDER

The Defendant having requested the Court to appoint Counsel,

it is Ordered the Honorable _Robert Udashen - 214-468-8100_

Address: _2301 Cedar Springs Rd, Ste 400, Dallas, Tx 75201_
a regular licensed and practicing attorney of Texas, be, and he/she is hereby appointed to represent Defendant in prosecuting his/her appeal herein, and it is further Ordered that the Court Reporter is hereby directed to transcribe all of the notes as same may appertain to this cause and as taken during the trial of this cause which began on

_____, _____, and make Statement of Facts in duplicate and furnish same to defendant or his appointed Counsel.

Judge

319

CAUSE NO(S). *F05-52918-R*

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT |
| | ) | |
| VS. | ) | 265TH JUDICIAL DISTRICT |
| | ) | |
| *Steven Lynn Long* | ) | DALLAS COUNTY, TEXAS |

## DEPUTY REPORTER STATEMENT

Pursuant to Rule 13.5 of the *Texas Rules of Appellate Procedure*, Appointing Deputy Reporter, I hereby certify the following:

A.   The judge of the above-named trial court designated the undersigned as a deputy reporter in the above cause(s).

B.   I, the undersigned deputy reporter, worked the following dates in the above court and on the above cause number(s).

SIGNED on this the 4th day of *August*, 2006.

*General Voir Dire*

DEBRA G. SAENZ, CSR NO. 3158
Expiration: 12-31-07
DFW Court Reporting, Inc.
Firm Registration No. 291
4621 S. Cooper, #131-184
Arlington, Texas 76017-5856
(817) 467-3444 and fax (800) 403-9352
info@dfwcourtreporting.com

CAUSE NO (S). _F05-52918-R_

_____State_____ )   IN THE CRIMINAL DISTRICT COURT

_____ )

VS. )   265TH JUDICIAL DISTRICT

_Steven Lynn Long_ )

_____ )   DALLAS COUNTY, TEXAS

## DEPUTY REPORTER STATEMENT

Pursuant to Rule 13.5 of the Texas Rules of Appellate Procedure, Appointing Deputy Reporter, I hereby certify the following:

A.  The judge of the above-named trial court designated the undersigned as a deputy reporter in the above cause (s).

B.  I, the undersigned deputy reporter, worked the following date in the above court and on the above case.

SIGNED on this the ___14th___ day of ___August___, 2006.


Deana K. Adams, CSR # 7939
Deputy Official Court Reporter
DFW Court Reporting, Inc.
 4621 South Cooper, #131-184
Arlington, Texas 76017-5856
Telephone:  (817) 467-3444
Expiration:  12/31/07
Info@dfwcourtreporting.com
Firm Registration No. 291

CAUSE NO(S). _FO5-52918 -R_

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT |
| | ) | |
| VS. | ) | 265TH JUDICIAL DISTRICT |
| | ) | |
| Steven Glynn Long | ) | DALLAS COUNTY, TEXAS |

## DEPUTY REPORTER STATEMENT

Pursuant to Rule 13.5 of the *Texas Rules of Appellate Procedure*, Appointing Deputy Reporter, I hereby certify the following:

A.    The judge of the above-named trial court designated the undersigned as a deputy reporter in the above cause(s).

B.    I, the undersigned deputy reporter, worked the following dates in the above court and on the above cause number(s).

*August 4, 2006, August 28 to August 31, 2006, Sept. 5-8, 2006, Sept. 11-15, 2006, Sept. 18-21, 2006, October 2, 2006, October 4-6, 2006, October 10-13, 2006.*

SIGNED on this the 13th day of _October_, 2006.

8-14-06 Deana Adams, CSR
8-21 to 8-25-06 Sharina Fowler, CSR
Reported by the above
Reporters on these dates

DEBRA G. SAENZ, CSR NO. 3158
Expiration: 12-31-07
DFW Court Reporting, Inc.
Firm Registration No. 291
4621 S. Cooper, #131-184
Arlington, Texas 76017-5856
(817) 467-3444 and fax (800) 403-9352
info@dfwcourtreporting.com

NO. F05-52918-R

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 265TH JUDICIAL DISTRICT |
| | § | |
| STEVEN L. LONG | § | DALLAS COUNTY, TEXAS |

## MOTION TO INCLUDE JUROR INFORMATION
## CARDS AND JUROR QUESTIONNAIRES IN RECORD

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN L. LONG, Defendant/Appellant, and respectfully asks that

this Court direct the clerk of the court to certify and transmit to the Court of Criminal

Appeals as part of the record on appeal in this case the juror information cards and the juror

questionnaires completed by all of the members of the jury panel in this case. A review of

these items by the undersigned counsel is necessary to ensure that Defendant/Appellant

receives effective assistance of counsel on appeal.

WHEREFORE, Defendant/Appellant respectfully asks that this motion be granted.

Respectfully submitted,

ROBERT N. UDASHEN, P.C.
Bar Card No. 20369600

SORRELS, UDASHEN & ANTON
2301 Cedar Springs Road
Suite 400
Dallas, Texas 75201
214-468-8100
214-468-8104 fax

Attorney for Defendant/Appellant

Motion to Include Juror Information Cards and Juror Questionnaires in Record - Page 1

## CERTIFICATE OF SERVICE

On this _2_ day of ___November___, 2006, a true and correct copy of the foregoing Motion to Include Juror Information Cards and Juror Questionnaires in Record was ~~mailed~~ _delivered_ to the District Attorney of Dallas County, Texas.

_[signature]_

Robert N. Udashen, P.C.

## ORDER

On this day came on to be heard the Defendant Steven L. Long's Motion to Include Juror Information Cards and Juror Questionnaires in Record. The Court, after considering same, is of the opinion that said motion should be GRANTED.

IT IS THEREFORE ORDERED that the clerk of the trial court certify and transmit to the Court of Criminal Appeals as part of the record on appeal the juror information cards and the juror questionnaires for the entire jury panel in this cause.

SIGNED this _16_ day of ___Nov___, 2006.

_[signature]_

JUDGE PRESIDING

Motion to Include Juror Information Cards and Juror Questionnaires in Record - Page 2

## CERTIFICATION

| | |
|---|---|
| **The State of Texas** | § |
| **County of Dallas** | § |

I, Gary Fitzsimmons, Clerk of the ___265TH JUDICIAL DISTRICT COURT___ of Dallas County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5 (a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5 (b).

GIVEN UNDER MY HAND AND SEAL at my office in Dallas County, Texas this ___26TH___ day of ___JANUARY___, ___2007___.

Signature of Clerk:

Name of Clerk:        Jane Miller

Title:        Deputy Clerk