## PRICE, PROCTOR & ASSOCIATES, LLP
*A LIMITED LIABILITY PARTNERSHIP OF BOARD CERTIFIED FORENSIC PSYCHOLOGISTS*
11882 Greenville Ave., Suite 107·Dallas, Texas 75243
Telephone: 972-644-8686·Facsimile: 972-644-8688

**J. Randall Price, Ph.D., ABPP, ABPN**
*Board Certified in Forensic Psychology*
*Board Certified in Neuropsychology*

**Timothy J. Proctor, Ph.D., ABPP**
*Board Certified in Forensic Psychology*
*Fellowship Trained in Forensic Psychology*

### Report of Psychological Evaluation

#### Identifying Information:

| | |
|---|---|
| Name: | Steven Lynn Long |
| Date of Birth: | 8/17/71 |
| Date of Evaluation: | 7/13/09 |
| Chronological Age: | 37-10 (at time of testing) |
| Date of Final Report: | 10/30/09 |
| Style of Case | Ex Parte: Steven Long |
| Cause Numbers: | Trial: No. F05-52918<br>Appeal: No. 75, 539 |
| Court: | 265th Criminal District Court<br>Dallas County, Texas |
| Referring Attorney: | Christi Dean |
| Address: | Criminal District Attorney<br>Dallas County, Texas<br>Frank Crowley Courts Building<br>133 North Industrial Boulevard<br>LB-19<br>Dallas, Texas 75207-4399 |
| Telephone: | (214) 653-3600 |

PETITIONER'S EXHIBIT 4
3:12cv839

1

### Referral:

Ms. Christi Dean, of the Office of the Criminal District Attorney of Dallas County, requested an analysis of the records and a psychological evaluation to determine whether or not this defendant meets the diagnostic criteria for mental retardation. Counsel for this inmate has filed an appeal based on *Atkins v. Virginia*, which held that the execution of individuals with mental retardation is prohibited based on the 8th Amendment to the U.S. Constitution.

Several very similar definitions of mental retardation are in use today. The following are the most often used:

> Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage general intellectual functioning existing concurrently with related limitations in two or more of the following applicable adaptive skills area: communication, self-care, home living, social skills, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18. *[American Association on Mental Retardation (AAMR), 1992]*

> Mental retardation is a disability characterized by significant limitation both in intellectual functioning and in adaptive behavior as expressed in conceptual, social, and practical adaptive skills. This disability originates before the age of 18. . *[American Association on Mental Retardation (AAMR), 2002]*

> The essential feature of mental retardation is significantly subaverage general intellectual functioning that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. The onset must occur before age 18 years. *[Diagnostic and Statistical Manual of the American Psychiatric Association, Fourth Edition, Text-Revision, 2000 (DSM-IV-TR)]*

> Person with mental retardation means a person determined by a physician or psychologist licensed in this state or certified by the department to have subaverage general intellectual functioning with deficits in adaptive behavior. *[§ 591.003 (16) of the Texas Health & Safety Code]*

Steven Long was convicted of capital murder on 10/13/06. He was received at Death Row on TDCJ-ID on 10/19/06.

"On 5/21/05 in Dallas County, Long sexually assaulted and asphyxiated an 11-year-old white female." (www.tdcj.state.tx.us/stat/longsteven.htm)

2

The Direct Appeal from Case No. F05-52918-R of the 265th Judicial Court, Dallas County indicates the following facts of this case:

> Kaitlyn Smith and her mother and stepfather lived in a trailer park in Dallas County. Kenneth Edwards, Deborah Dawn Port, and her eight-year-old daughter Savannah lived in a trailer across the street, and the appellant [Long] had recently moved in with them.
>
> On May 20, 2005, Kaitlyn's parents hosted a party. The guests included the appellant, Edwards, Porter, and several others. During the party, Kaitlyn's mother agreed that Kaitlyn could spend the night with Savannah at her trailer across the street. Savannah's mother and the appellant were the last guests to leave the party. When they go back to the trailer, Savannah's mother asked the appellant to check on the girls. He reported they were asleep. Savannah's mother went to bed.
>
> In the morning, Savannah's mother checked on the girls and discovered that Kaitlyn was missing. Once it became apparent that Kaitlyn had not returned to her own trailer, a full-blown search of the trailer park ensued. Kaitlyn's grandfather soon found her body, wrapped partially in trash bags, underneath a vacant trailer. The appellant became a suspect, and later that evening, homicide detectives secured his confession to the rape and murder of Kaitlyn Smith.

## Evaluation Methods:

- Review of Records
- Behavioral Observations and Mental Status
- Clinical Interview and History
- Rey 15 Item Test (RFIT)
- Dot Counting Test (DCT)
- Test of Memory Malingering
- Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV)
- Reynolds Intellectual Assessment Scales (RIAS)
- Kaufman Functional Academic Skills Test (K-FAST)

## Records Received:

- Psychosocial History, Steven Long
- Time Line, Steven Long
- Genograms
- Title 22 (Examining Boards), Texas Administrative Code, 3, 781
- Interview with Juror Ancil Adkins
- Interview with Juror Nancy Gillham
- Proposed Supplemental Guidelines for the Mitigation Function of Defense
- Curriculum Vitae—Kelly R. Goodness, Ph.D.
- Dr. Kelly Goodness Credentials—prepared for Steven Long's Counsel
- Stephen Bright Article
- Steven Long Interview

3

- The Nature and Role of Mitigating Evidence
- Windham School District Records
- Dr. Laura Lacritz Interview
- Thomas Tidwell Arrest/Trial Records
- 1956 and 1957 Blue Ridge School Annual Pictures
- Garland Independent School District Records
- Dallas Independent School District Records
- Graphs of Steven Long's Achievement Scores
- Declaration of Daneen A. Milam, Ph.D.
- Letter from Kelly R. Goodness, Ph.D.
- Report from Laura Lacritz, Ph.D.
- Application fro Writ of Habeas Corpus, Capital Murder—Death Penalty

**Review and Analysis of Records:**

*Focusing on the issue of mental retardation, the records revealed the following relevant information:*

School records from both the Garland Independent School District and the Dallas Independent School District show poor performance in school with grade retentions and low grades. However, standardized test results are quite variable, showing percentile rankings as low as the 1st percentile to as high as the 70th percentile. Such variability is inconsistent with mental retardation but consistent with a learning or behavioral disorder.

On 6/22/95, Mr. Long was administered an IQ Test and found to have an IQ of 97. The records indicate that Mr. Long reported that he "hired" an inmate (by paying him with cigarettes) to help him with the test so that he could enter a prison GED preparation program.

TDCJ-ID files from 2002 indicate a psychological consult on 5/31/02 during which Mr. Long reported that he was depressed, hearing voices, and possibly suicidal. The interviewer noted that Mr. Long was overly dramatic, and he suspected malingering, and he deferred diagnoses. However, on 6/7/09, Mr. Long was transferred to the Montfort Unit for diagnosis and treatment where he remained until 10/25/02. A history was taken that indicated that Mr. Long told the evaluator that he was smart when he was a kid but in the 5th grade, he started using drugs and "went down". He told the evaluator that he had few friends in school and preferred to be around his mother, with whom he slept in the same bed until he was 17 years old. He said that he was both physically and emotionally abused by his mother and that he was also abusive to others himself. The records indicate gender confusion and homosexual orientation. When assessed for mental functioning at Montfort, Mr. Long was noted as falling in the normal ranged with good concentration, no significant impairments in memory, an intact fund of information, but with moderate abstract and practical reasoning deficits. A PAI was attempted but was invalid due to lack of attending to item content. He was diagnosed with Major Depressive Disorder, Recurrent, Severe with Mood-Congruent Psychotic Features, a Borderline Personality Disorder (fear of

abandonment, unstable/intense relationships, impulsivity, and suicidal ideation/gestures). Intelligence was noted to fall in the average range. Mental retardation as a possible diagnosis was not mentioned.

At trial stage in October of 2006, Mr. Long was evaluated by three mental health professionals: Kelly Goodness, Ph.D. (psychologist), Laura Lacritz, Ph.D. (neuropsychologist) and Jaye Crowder, M.D. (psychiatrist). Dr. Goodness opined that she had "no doubt that Mr. Long is not a mentally retarded individual and that his IQ is well above 70". Dr. Lacritz found Mr. Long's IQ to fall in the range of mild mental retardation but that "he performed suboptimally on tests of motivation and effort". She also noted that his presentation was possibly "borderline or perhaps low average". Dr. Crowder found Mr. Long competent to stand trial and possibly malingering.

TDCJ-ID files from 2006 indicate a psychiatric evaluation was conducted on 10/19/06. A history of abuse was indicated. A history of polysubstance dependence was indicated. Mr. Long apparently told the evaluator that at trial stage, he was found to have "frontal lobe brain damage". Mental status examination was found to be completely within normal limits and intelligence was estimated to be average. Adaptive skills were also assessed and found to fall within normal limits. Mr. Long was diagnosed with Antisocial Personality Disorder and PTSD with a "rule-out" for Schizophrenia, Paranoid Type". Mental retardation as a possible diagnosis was not mentioned.

In November of 2007, Daneen A. Milam, Ph.D. (neuropsychologist) evaluated Mr. Long and found a WAIS-III Full Scale IQ of 63. No independent effort tests were administered. Dr. Milam opined that Mr. Long's diagnoses include: (1) mental retardation; (2) organic brain damage; and, (3) PTSD. Dr. Milam reported that Mr. Long has a history of adaptive behavior deficits that was evidenced by his: (1) never lived independently; (2) never been able to manage his finances or support his family; (3) never maintained employment: and, (4) never contributing to the household chores. Dr. Milam does not mention alternative explanations for Mr. Long's irresponsible behavior as an adult such as Polysubstance Dependence and Anti-social Personality Disorder.

### Results of Clinical Interview:

On 7/13/09, I met with Mr. Long in a private room at the Polunsky Unit of the Texas Department of Criminal Justice-Institutional Division for the purpose of conducting a psychological evaluation. Mr. Long agreed to participate in the evaluation. He was informed that the purpose of this evaluation was to perform an assessment of his mental functioning, that the results were not confidential, and that a report would be distributed to both defense and prosecution attorneys. He gave verbal consent and repeated back critical components of the informed consent. He then signed the requisite written consent form.

When asked for his understanding of the basis of his current appeal, Mr. Long stated, "I'm taking tests to see if I have some kind of issue concerning mental retardation."

Mr. Long was superficially cooperative with all procedures in that he compliant. He was polite. He was moderately distractible, but his gross mental status was intact, in that he was alert and oriented and without significant emotional interference. He reported that he no longer depressed or suicidal due to the medication regime of Prozac. He was euthymic. No psychotic signs or symptoms were elicited or observed. However, validity and effort testing indicated that he was not putting forth good effort rendering the test results unreliable and invalid indicators of the status of his intellectual and academic functioning.

Upon clinical interview, Mr. Long reported that he came to Death Row in 1998. He reported, and the records confirm that he was previously incarcerated for attempted murder from 1995 to 2002. The last unit of his housing was the Price Daniel Unit. Currently, he spends his time in his cell pacing, writing letters, and reading. He said that he has been hyperactive since childhood. He reported that he taught himself to read and write in prison. He reported that he writes approximately one letter per week to pen pals. He likes to read Maxim magazine, John Grisham novels, or the Bible. He reported that he most recently read *The Chamber* and *The Testament* by John Grisham. He accurately described the storyline of each. He said that he has read the entire Bible several times.

History given by Mr. Long indicates that the highest grade he passed was the 4th grade after failing the 1st and 2nd grade as well as failing the 5th grade twice. He said that he had a learning problem and was in special education. He also said that he began to use drugs when he was 11 years old and that was the cause of his academic failures. He said he had several jobs that he did not keep for long because he "couldn't get along with nobody". His longest job was working for approximately one year at the company where his mother worked. He was married to a woman named Olga with whom he had two children, who are now 15 and 16 years old. He indicated that he has a history of psychiatric treatment including treatment at Parkland Hospital in Dallas when he was homicidal and suicidal as well as and treatment for anxiety at the Montfort Unit of TDCJ-ID when he was incarcerated the first time. He said that he hated his mother who "beat the fuck out of me". He said that his mother sent his father to prison. He said that his mother was an alcoholic who hated men and took it out on him. Mr. Long described a long history of drug abuse, beginning at 11 years of age and including alcohol, crack cocaine, acid, glue, PCP, marijuana, and pills.

When asked about the criminal conviction that resulted in his death sentence, Mr. Long reported that he did not remember exactly what happened because he was partying with whiskey and the illegal drug "ice". He said that all he remembers is that the mother of the victim saw him engaged in oral sex with the wife of a man at the party.

## Results of Testing:

### Validity Indicators

| | | |
|---|---|---|
| Rey 15 Item Test: | Number Correct: | 6/15 |
| Test of Memory Malingering: | Trial 1: | 34/50 |
| | Trial 2: | 38/50 |
| | Retention Trial: | 33/50 |
| Dot Counting Test: | Grouped Mean Time: | 10" |
| | Ungrouped Mean Time: | 10.5" |
| | E-Score | 20.5 |

### Intellectual Functioning

Wechsler Adult Intelligence Scale-Third Edition (WAIS-IV):

| Scale | Composite | Percentile |
|---|---|---|
| Verbal Comprehension | 70 | 2nd |
| Perceptual Reasoning | 73 | 4th |
| Working Memory | 71 | 3rd |
| Processing Speed | 62 | 1st |
| Full Scale | 64 | 1st |
| General Ability | 69 | 2nd |

| Subtests | Scaled Score | Percentile |
|---|---|---|
| Block Design | 6 | 9th |
| Similarities | 4 | 2nd |
| Digit Span | 5 | 5th |
| Matrix Reasoning | 4 | 2nd |
| Vocabulary | 6 | 9th |
| Arithmetic | 5 | 5th |
| Symbol Search | 3 | 1st |
| Visual Puzzles | 6 | 9th |
| Information | 4 | 2nd |
| Coding | 3 | 1st |

7

Reynolds Intellectual Assessment Scales (RIAS):

| Subtest | T-Score | Percentile |
|---|---|---|
| Guess What | 31 | 3rd |
| Odd-Item Out | 36 | 8th |
| Verbal Reasoning | 29 | 2nd |
| What's Missing | 21 | <1st |

| Index | Standard Score | Percentile |
|---|---|---|
| VIX | 71 | 3rd |
| NIX | 65 | 1st |
| CIX | 63 | 1st |

Academic Functioning

Kaufman Functional Academic Skills Test (K-FAST):

| Subject Area | Standard Score | Percentile |
|---|---|---|
| Arithmetic | 72 | 3rd |
| Reading | 68 | 2nd |
| Composite | 69 | 2nd |

**Conclusions and Opinions:**

Based on the findings of this examination, my training and experience, and a reasonable degree of scientific and psychological certainty, the following opinions are respectfully offered:

1. Three independent tests of effort and motivation were administered to Mr. Long. The RFIT was administered at the beginning of the evaluation, the TOMM was administered in the middle of the evaluation, and the DCT was administered at the end of the evaluation. Mr. Long scored in the malingered range on all three tests of effort and motivation. His score of 6/15 on the RIFT exceeds the recommended cutoff of 9/15. His scores of 34/50, 38/50, and 33/50 on the TOMM exceed the cutoffs of 45/50 on either Trial 2 or the Retention Trial. His E-Score of 20.5 exceeds the nonclinical group cutoff of 14 and the learning disorder group cutoff of 15. In addition, observation of Mr. Long during testing is consistent with a conclusion that he put forth poor effort. Finally, records indicate multiple examiners have opined that malingering was a factor in their evaluations of Mr. Long.

2. Due to lack of effort and motivation to perform poorly, the scores on tests of intellectual and academic functioning administered during this evaluation of Mr. Long are considered invalid, and a diagnosis of Malingering (DSM-IV-TR V65.2) is considered appropriate.

8

3.     Based on the review of records provided in this case, any apparent deficits in adaptive functioning during Mr. Long's life are most likely attributable to emotional and behavioral disorders, personality disorders, or to alcohol and drug dependence. Additional diagnoses give to Mr. Long as a result of this evaluation are: (1) Polysubstance Dependence, In Remission Secondary to a Controlled Environment (DSM-IV-TR 304.80); (2) Antisocial Personality Disorder (DSM-IV-TR 301.70); and, (3) Borderline Personality Disorder (DSM-IV-TR 301.83).

4.     Finally, it is the opinion of this examiner that, using any of the definitions of mental retardation currently in common use, Steven Lynn Long is _not_ a person with mental retardation.

If I can answer any further questions or be more expansive in my opinions, please do not hesitate to contact me.

Sincerely,

*[signature]*

J. Randall Price, Ph.D.

9