IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN LYNN LONG, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 3:12-CV-839-P |
| | § | |
| WILLIAM STEPHENS, Director | § | (Death Penalty Case) |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER DENYING RELIEF

Petitioner Steven Lynn Long ("Long") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, primarily complaining about the state court's denial of his claims asserting intellectual disability. Because this Court concludes that the state court reasonably denied each of his claims, the application is **DENIED**.

### I

Long was convicted and sentenced to death for the capital murder of eleven-year-old Kaitlyn Smith in the course of sexual assault. *State v. Long*, No. F05-52918-R (265th Dist. Ct., Dallas Cty., Tex. Oct. 13, 2006) (Volume 1, Clerk's Record, "CR", at 314-16). His conviction and sentence were affirmed on direct appeal. *Long v. State,* No. AP-75,539 (Tex. Crim. App. Apr. 8, 2009). Long filed an application for a post-conviction writ of habeas corpus on May 29, 2008 (Volume 1, State Habeas Record, "SHR", at 2, 84), that was denied by the Texas Court of Criminal Appeals ("CCA"). *Ex parte Long*, No. WR-76,324-01 (Tex. Crim. App., Mar. 7, 2012). Long subsequently filed a petition for writ of habeas corpus in this Court (Petition, doc. 20) on February 27, 2013, including a request

for an evidentiary hearing.  (Pet. at 117.)  Respondent has filed his answer (Answer, doc. 30) on

January 5, 2014.  Long filed his reply to the Answer (Reply, doc 35) on March 13, 2014.

## II

In his petition, Long presents seven grounds for relief, as follows:

1. Long was denied the effective assistance of counsel when trial counsel failed to investigate and present mitigating evidence at his trial (Pet. at 46-69);

2. Long was denied the effective assistance of counsel when trial counsel failed to investigate and present evidence that he was ineligible to receive the death penalty due to intellectual disability (Pet. at 70-98);

3. Long is ineligible to receive the death penalty due to intellectual disability (Pet. at 70-92, 97-98);

4. The jury instructions at the punishment phase unconstitutionally failed to inform the jury of the effect of their failure to reach a verdict (Pet. at 99-102);

5. The jury instructions at the punishment phase unconstitutionally failed to place the burden of proof on the prosecution for the mitigation special issue (Pet. at 103-04);

6. The jury instructions at the punishment phase violated Long's due process and Eighth Amendment rights by failing to define the term "probability" (Pet. at 105-08); and

7. The State's failure to provide meaningful appellate review of the sufficiency of evidence to support the jury's verdict on the mitigation special issue evidence violated the Eighth Amendment's prohibition against cruel and unusual punishment (Pet. at 109-17).

Respondent asserts that all of Long's claims lack merit and were all reasonably rejected by

the state court, and that several of them were also barred by the nonretroactivity doctrine of *Teague*

*v. Lane,* 489 U.S. 288 (1989).  (Ans. at 30-87.)  In his Reply, Long asserts that he thoroughly proved

intellectual disability before the state courts and this Court.  (Reply at 1-11.)  For the reasons set out

below, all of Long's claims are denied.

2

# III

The CCA summarized the facts of the offense as follows:

> Kaitlyn Smith and her mother and stepfather lived in a trailer park in Dallas County.  Kenneth Edwards, Deborah Dawn Porter, and her eight-year-old daughter Savanah lived in a trailer across the street, and [Long] had recently moved in with them.

> On May 20, 2005, Kaitlyn's parents hosted a party.  The guests included [Long], Edwards, Porter, and several others.  During the party, Kaitlyn's mother agreed that Kaitlyn could spend the night with Savanah at her trailer across the street.  Savanah's mother and [Long] were the last guests to leave the party.  When they got back to the trailer, Savanah's mother asked [Long] to check on the girls.  He reported that they were asleep.  Savanah's mother went to bed.

> In the morning, Savanah's mother checked on the girls and discovered that Kaitlyn was missing.  Once it became apparent that Kaitlyn had not returned to her own trailer, a full-blown search of the trailer park ensued.  Kaitlyn's grandfather soon found her body, wrapped partially in trash bags, underneath a vacant trailer.  [Long] became a suspect, and later that evening, homicide detectives secured his confession to the rape and murder of Kaitlyn Smith.

*Long v. State,* No. AP-75,539, slip op. at 2.  These findings are entitled to deference.  *See* 28 U.S.C.

2254(e).

The state's forensic pathologist testified that Kaitlyn suffered more extensive sexual-assault injuries, including bite marks, internal and external hemorrhaging, strangulation and blunt-force injuries, than he had ever seen before during his 19 years as a medical examiner.  (26 RR 135.) Long's DNA was found in a bite mark on Kaitlyn (27 RR 43) and in a stain on Long's mattress mixed with Kaithlyn's DNA (26 RR 81, 113, 120; 27 RR 49-51)).  Kaitlyn's DNA was also found in the dryer that Long was using in the morning following Kaitlyn's assault and murder.  (26 RR 71; 27 RR 52.)  When Kaitlyn's grandfather found her body under a trailer during the search, he touched her face and felt her tears on his hand.  (26 RR 48, 112.)

**IV**

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This statute sets forth the

preliminary requirements that must be satisfied before reaching the merits of a claim made in a

federal habeas proceeding, including heightened deference to state court adjudications.

If the state court denies the claim on the merits, a federal court may not grant relief unless

it first determines that the claim was unreasonably adjudicated by the state court, as defined in §

2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim——
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

*Id.*  In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a

state court's disposition of a case on substantive rather than procedural grounds.  *Green v. Johnson*,

116 F.3d 1115, 1121 (5th Cir. 1997).  This provision does not authorize habeas relief, but restricts

this Court's power to grant relief to state prisoners by barring claims in federal court that were not

first unreasonably denied by the state courts.  The AEDPA limits rather than expands the availability

of habeas relief.  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412

(2000).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state

court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Richter*, 131 S. Ct. at 784. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted) (quoting *Richter*, 131 S. Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review if "if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *White v. Woodall,* 134 S. Ct. 1697, 1705 (Apr. 23, 2014) (quoting *Williams*, 529 U.S. at 407-408). " '[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions.' " *Woodall*, 134 S. Ct. at 1702 (quoting *Howes v. Fields,* 132 S. Ct. 1181, 1187 (2012)). The standard for determining whether a state court's application was unreasonable is an objective one and applies to federal habeas corpus petitions that, like the instant case, were filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before that state court first satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state

court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

## V

In each of his first three claims, Long asserts that he is intellectually disabled. Therefore, they are analyzed together.[1] In his first claim, Long complains that his trial counsel provided ineffective assistance in failing to investigate and present certain mitigating evidence at his trial, including his intellectual disability, brain damage, and post-traumatic stress disorder. (Pet. at 46-69.) In his second claim, Long complains that his trial counsel provided ineffective assistance specifically in failing to investigate and prove his ineligibility for execution due to intellectual disability. (Pet. at 70-98.) In his third claim, Long contends that he is intellectually disabled and, therefore, ineligible for execution. (Pet. at 70-98.) Respondent asserts that each of these claims were reasonably rejected by the state courts and lack merit (Ans. at 33-61).

### A. Intellectual Disability

In his third claim, Long asserts that he is intellectually disabled and ineligible to receive the death penalty under *Atkins v. Virginia,* 536 U.S. 304 (2002). (Pet. at 70-92, 97-98 .) Respondent asserts that Long has failed to show intellectual disability and that the state court reasonably denied this claim. (Ans. at 61-84.)

#### 1. Law

---

[1]Long's petition used the term "mental retardation," which has since been replaced with the term "intellectual disability." *Hall v. Florida,* 134 S. Ct. 1986, 1990 (2014). This opinion uses the updated term.

In *Atkins,* 536 U.S. at 317, the Supreme Court held that the Eighth Amendment prohibits the execution of intellectually disabled offenders but left to the States "the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." In Texas, intellectual disability under the *Atkins* test "is a disability characterized by: (1) 'significantly subaverage' general intellectual functioning; (2) accompanied by 'related' limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18." *Ex parte Briseno,* 135 S.W.3d 1, 7 (Tex. Crim. App. 2004) (quoting American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (rev. 4th ed. 2000), and American Association on Mental Deficiency, <u>Classification in Mental Retardation N1</u> (Grossman ed. 1983)).

"Significantly subaverage general intellectual functioning" is shown by a measured intelligence quotient ("IQ") of about 70 or below. *See Lewis v. Quarterman,* 541 F.3d 280, 283 (5th Cir. 2008). Due to the nature of IQ testing, each test has an allowance for a standard error of measurement.

> The professionals who design, administer, and interpret IQ tests have agreed, for years now, that IQ test scores should be read not as a single fixed number but as a range. *See* D. Wechsler, The Measurement of Adult Intelligence 133 (3d ed. 1944) (reporting the range of error on an early IQ test). Each IQ test has a "standard error of measurement," *ibid.,* often referred to by the abbreviation "SEM."

*Hall v. Florida,* 134 S. Ct. 1986, 1995 (2014). To find intellectual disability, the court must find that this significantly subaverage intellectual functioning exists concurrently with related limitations or deficits in two or more recognized adaptive skill areas, such as "communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work." *Atkins,* 536 U.S. at 308 n.3 (quoting American Association on Mental Retardation,

Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992)). Finally, intellectual disability "manifests before age 18." *Id.*

"To succeed on an *Atkins* claim, a defendant must prove by a preponderance of the evidence that he is [intellectually disabled]." *Lewis,* 541 F.3d at 283. In order to grant habeas relief when the state court found the petitioner not intellectually disabled, the federal court must determine that each of the three elements of intellectual disability found by the state court was based upon an unreasonable determination of the facts in light of all the evidence. *Id.* at 286.

### 2. State Court Proceedings

During the pretrial investigation, Long's attorneys obtained the assistance of three mental health professionals who tested him for intellectual disability. (Volume 3, State Habeas Clerk's Record ("SHCR"), p. 225.) All of them agreed that Long was not intellectually disabled and that the IQ scores within the range of intellectual disability were inaccurate because of his malingering. (3 SHCR 226, 232; Volume 3, State Habeas Reporter's Record ("SHRR"), p. 62.)

During the state habeas proceedings, Long was granted the assistance of another mental health expert, Dr. Daneen Milam, Ph.D., who opined that Long was indeed intellectually disabled (3 SHCR 243). Dr. Milam did not administer a test for malingering at the time of her intelligence testing. (3 SHCR 245-46; 3 SHRR 11-15.) She later administered a test that the state court found to be too new and untried to be reliable. (3 SHCR 248.) The state court found that Dr. Milam did not follow the standard of practice for determining effort because she did not administer a test at the time of her intelligence testing, and that her conclusion that Long was not malingering was erroneous. (3 SHCR 245, 248.) The state court concluded that Long was not intellectually disabled, but had malingered to produce lower IQ scores than his true IQ. (3 SHCR 240-41.) The state court

8

ultimately denied relief on all of his claims. *Ex parte Long,* No. WR-76,324-01 (Tex. Crim. App. 2012.)

### 3. Analysis

Long has not shown that the state court unreasonably denied Long's claim based on the record before it. Long argues that the state court unreasonably determined that Long's malingering produced invalid IQ scores and, therefore, unreasonably found that he was not intellectually disabled. (Pet. at 74-75, 97-98.) The state court's conclusions, however, appear to be reasonably based on the opinion of all three experts that Long had obtained before trial (3 SHCR 55-56; 3 SHRR 8-9, 60-62, 66-67; 4 SHRR 11-13), and the opinion of the State's expert in the post-conviction habeas proceedings. (3 SHCR 238, 240-42, 257; 2 SHRR 177.) The state court's conclusion that the sole expert who found Long's IQ to be within the range of intellectual disability incorrectly failed to properly test for effort during her IQ testing has not been shown to be incorrect, much less unreasonable. Instead, this conclusion appears consistent with established professional practices shown by the expert testimony. (2 SHRR 124-25.) Therefore, the state court acted reasonably in finding that Long was not intellectually disabled and in denying this claim.

### B. Ineffective Assistance of Counsel

In his first and second claims, Long complains that he was denied the effective assistance of counsel when his trial counsel failed to investigate and present mitigating evidence during his trial, including intellectual disability, and prove that he was exempt from execution under *Atkins*. Because Long has not shown himself to be intellectually disabled and trial counsel's investigation appears adequate, these claims are also denied.

### 1. Law

9

The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *Id.* at 687. The second prong of this test requires the defendant to show prejudice resulting from counsel's deficient performance. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697.

In measuring whether counsel's representation was deficient, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). "It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffectively by hindsight." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

To satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's errors were so egregious "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The test to establish whether there was prejudice is whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability under this test is "a probability sufficient to undermine confidence in the outcome." *Id.*

It is not enough for a habeas petitioner to merely allege deficiencies on the part of counsel.

The petitioner must affirmatively plead the resulting prejudice in the habeas petition. *Hill v.*

*Lockhart*, 474 U.S. 52, 60 (1985); *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985). For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009). This requirement applies to both uncalled lay and expert witnesses. *Id.*

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). "When § 2254(d) applies, federal-court review

is "doubly deferential." *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111,

123 (2009)).

### 2. State Court Proceedings

The state court appointed two trial counsel who both met the high qualifications for

appointment as first-chair counsel in death penalty cases and were found well qualified to formulate

an effective mitigation trial strategy. (3 SHR at 214-17.) The state court also found that trial counsel

diligently sought the assistance of mental health professionals to prepare a mitigation case.

> 81. The Court finds that before defense counsel retained Dr. Goodness, they had hired a social worker "who didn't work out," a psychiatrist who "quit the case," psychiatrist Jay Crowder who evaluated applicant for competency and sanity, and psychologist Laura Lacritz who conducted a neuropsychological evaluation and IQ testing.

(3 SHCR 225 (citing 3 SHRR 26, 60-61).)  During that pretrial investigation, Long's attorneys

ultimately obtained the assistance of three mental health professionals who agreed that Long was not

11

intellectually disabled and that the IQ scores within the range of intellectual disability were

inaccurate because of his malingering. (3 SHCR 226, 232; 3 SHRR 62.)

Long's pattern of malingering and deceit was obvious to trial counsel.

[T]he crime was horrific. And the actions that I saw from the defendant in trying to explain that to me and trying to explain it to others just showed a pattern of deceitfulness and trying to cover it up, not accepting any responsibility for it. And the ... the bottom line was, the whole history and everything I discovered from his background was symptomatic from the same thing, where he would do something wrong and try to cover it up.

(3 SHRR 66.) This difficulty prompted trial counsel to change Dr. Goodness from a consulting

expert to the testifying expert regarding mitigation. Counsel explained:

[E]veryone that I spoke to and interviewed in regards to his whole lifetime has been one of manipulation and deceit and a lot of evil doing. So, and that was the problem that I had as I was developing the case and through all the interviews that I did.

I'm looking for someone -- and that's one of the reasons why I took place in part of the interviews. I'm looking for anybody that I can find that I can put in front of twelve jurors to say anything that might strike a nerve or strike a tone of sympathy. And unfortunately, everybody I spoke to just added another layer of bad things that would not help him or assist in his defense.

And Dr. Goodness, it finally got to the point where the only thing I could do with Dr. Goodness is throw her to the wolf or else not call anybody to try to explain anything, and that's where some of the issues that have arisen in this case in regards to some things I didn't really want her to be too intimately familiar with. I wanted her to talk about the defendant's childhood and the things that led him to be what he is, but also to try to shield her somewhat from some of the other things that would, you know, just show that the defendant was undergoing a pattern of malingering and a pattern of deceitfulness and that the other people were telling me of.

(3 SHRR 63-64.) The state court found that Long's attorneys reasonably decided to present at trial

the testimony of Dr. Kelly Goodness, Ph.D., the mental health expert who was the least familiar with

Long's pattern of deception and malingering. (3 SHCR 226, 233-34.)

12

During the state habeas proceedings, Long complained that trial counsel failed to adequately investigate and present mitigating evidence, including evidence that he was intellectually disabled and, therefore, ineligible for execution. After granting Long the assistance of another mental health expert, Dr. Milam, the state habeas conducted an evidentiary hearing and recommended the denial of each of these claims. (3 SHCR 258.) The state court concluded that Long was not intellectually disabled, but had malingered to produce lower IQ scores than his true IQ. (3 SHCR 240-41.)

While Long's expert testified in the hearing before the state habeas court regarding post-traumatic stress disorder and attachment disorder, she explained that her criticism was not that Long was not evaluated regarding these things, or that evidence was not presented to the jury, but rather that she disagreed with presenting evidence of such disorders without including a diagnosis of intellectual disability. "Yes. It was being placed in terms of this is a bad person rather than taking into -- into account the fact that he was mentally retarded." (2 RR 101-102.) The state court ultimately denied relief on all of his claims. *Ex parte Long,* No. WR-76,324-01 (Tex. Crim. App. 2012.)

### 3. *Analysis*

The state court reasonably denied Long's claims based on the record before it. Its conclusion that Long's attorneys were not ineffective for failing to prove that he was intellectually disabled was based on its reasonable conclusion that Long was not intellectually disabled and that his trial counsel reasonably relied upon the opinions of all three experts that Long had obtained before trial. (3 SHCR 257; 3 SHCR 55-56; 3 SHRR 8-9, 60-62, 66-67; 4 SHRR 11-13.) The state court reasonably concluded that trial counsel presented a reasonable mitigation case that made use of Dr. Goodness, who would have been the best expert to explain the impact of Long's childhood and circumstances

13

that molded him, while being the least likely to reveal Long's pattern of deceitfulness and malingering. (3 SHCR 233 (citing 3 SHRR 63-64).) *See, e.g., Hinton v. Alabama,* 134 S. Ct. 1081, 1089 (2014) ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" (quoting *Strickland,* 466 U.S., at 690)); see also, *Dowthitt v. Johnson,* 230 F.3d 733, 748 (5th Cir.2000) ("trial counsel was not deficient by not canvassing the field to find a more favorable defense expert"). Therefore, the state court acted reasonably in denying these claims.

## C. Conclusion

The state court findings are entitled to deference. The state court denied these claims on the reasonable factual bases that Long has not shown to be incorrect, much less unreasonable, and on legal bases that he has not shown to be contrary to, or an unreasonable application of, clearly established federal law. Therefore, Long has not shown that the state court adjudication of any of these claims was unreasonable under 28 U.S.C. § 2254(d). Accordingly, the first, second and third claims are all **DENIED**.

## VI

Long acknowledges that each of this remaining claims are foreclosed by circuit precedent but asserts them to preserve them for appellate review. (Pet. at 99 n.78, 102, 103 n.85, 116 n.101.) Respondent asserts that all of these claims are barred by the nonretroactivity bar of *Teague v. Lane,* 489 U.S. 288 (1989), and, in the alternative, lack merit. (Ans. at 85-87.) This Court agrees.

## A. Texas Jury Instructions

In his fourth, fifth and sixth claims, Long makes complaints against the jury instructions at the punishment stage of his trial. Long's fourth claim complains that these jury instructions

14

unconstitutionally failed to require that the jury be informed of the effect of their failure to reach a verdict during the punishment stage. (Pet. at 99-102.) Long's fifth claim asserts that the jury instructions failed to place the burden of proof on the State for the mitigation special issue. (Pet. at 103-04.) Long's sixth claim complains that the language of the special issues at punishment violated Long's due process and Eighth Amendment rights by failing to define the term "probability." (Pet. at 105-08.) Long acknowledges that these claims "are all presently not legally viable under existing Circuit precedent" but presents them to preserve the issues for appeal. (Pet. at 99 n.78.)

### 1. Failure to Inform Jurors

Long claims that the "failure of the Texas death penalty statute to inform jurors that the effect of the jury's failure to reach a unanimous verdict on any issue at the punishment phase of the trial would result in a life sentence violated Mr. Long's rights against cruel and unusual punishment and to due process of law under the 8th and 14th Amendments to the United States Constitution." (Pet. at 99.) He acknowledges that this claim is presently foreclosed by Circuit precedent, but he presents it to preserve the issue for appeal. (Pet. at 99 n.78, 102.)

Long also claims that he exhausted this claim in the first and second subparts of his first claim for relief on direct appeal. (Pet. at 99.) In his direct appeal, the CCA provided the following analysis of those claims.

> In his first and second subissues, the appellant urges that the jury instructions violated the tenets of [*Mills v. Maryland,* 486 U.S. 367 (1988)]. He argues that the jury instructions inaccurately stated the law by giving the impression that, in order to impose a life sentence instead of death, ten jurors needed to answer the second special issue affirmatively. The appellant reasons that the instructions thus misled the jury, such that a juror would have believed that she could not give effect to mitigating evidence without nine other jurors joining her. The instructions therefore unconstitutionally minimized each juror's responsibility for imposing a death sentence, especially given that jurors were repeatedly told of the gravity of their

15

decision. The inaccuracy, he maintains, rendered the sentencing proceeding so unfair that the imposition of the death penalty amounted to a denial of due process, in violation of the Eighth and Fourteenth Amendments to the Constitution.

This court has consistently rejected similar challenges and upheld the constitutionality of the instructions at issue, known as the "10-12 rule." We find nothing in the appellant's arguments to alter our decision here. We therefore reject the appellant's contention.

*Long v. State,* slip op. at 4 (footnote omitted). Respondent asserts that this claim lacks merit and is also barred by the *Teague* nonretroactivity bar. (Ans. at 85.)

Long relies upon an extension of *Mills v. Maryland,* 486 U.S. 367 (1988) and *McCoy v. North Carolina,* 494 U.S. 294 (1990), that has also been consistently rejected in this Circuit. *See Miller v. Johnson,* 200 F.3d 274, 288-89 (5th Cir. 2000) (quoting *Jacobs v. Scott,* 31 F.3d 1319, 1329 (5th Cir.1994)). Circuit precedent also provides that "no clearly established federal law invalidates the 10-12 Rule or calls its constitutionality into doubt," *Blue v. Thaler,* 665 F.3d 647, 670 (5th Cir. 2011), and that *Teague* bars the federal court from extending *Mills* to invalidate the Texas scheme. *Druery v. Thaler,* 647 F.3d 535, 543 (5th Cir. 2011) (citing *Hughes v. Dretke,* 412 F.3d 582, 594 (5th Cir.2005)). Long's fourth ground for habeas relief is foreclosed by Circuit precedent and **DISMISSED** as barred by *Teague*. In the alternative, it is **DENIED** for lack of merit.

### 2. Burden of Proof on Mitigation Special Issue

In his fifth ground for habeas relief, Long claims that his "Eighth and Fourteenth Amendment rights were violated because the Texas death penalty statute impermissibly placed the burden of proving the mitigation issue on Mr. Long, rather than requiring the State to prove the absence of mitigating factors beyond a reasonable doubt." (Pet. at 103.) Long asserts that he exhausted this

claim in the third subpart of his first claim for relief on direct appeal. (Pet. at 103-04.) In his direct

appeal, the CCA provided the following analysis of those claims.

> In his third subissue, the appellant argues that the jury instructions violated his due process rights by failing to place on the State the burden of proving the mitigation issue beyond a reasonable doubt. He argues that the due-process requirement that every fact necessary to constitute a crime be proved beyond a reasonable doubt extends to "all elements that result in imposition of a penalty of death." He relies for support on *Apprendi v. New Jersey*, [530 U.S. 466 (2000),] and *Ring v. Arizona*, [536 U.S. 584 (2002)]. In *Apprendi*, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The appellant contends that the mitigation issue falls within this mandate and therefore warrants a jury instruction that the State bears the burden to prove it beyond a reasonable doubt.

> This court has previously rejected such a claim. *Apprendi* and *Ring* apply only to facts that increase the penalty beyond the maximum penalty authorized by statute. Because the maximum statutory penalty under Article 37.071 is death, and the jury's answer to the mitigation issue therefore cannot increase the penalty beyond the maximum the statute allows, *Apprendi* is inapplicable to the mitigation special issue. Furthermore, we have held that neither party bears the burden of proof as to the mitigation issue, and the holding in *Apprendi* does not affect that decision. We reject the appellant's argument.

*Long v. State,* slip op. at 4-5 (footnotes and internal citations omitted). Long "acknowledges that

*Rowell v. Dretke,* 398 F.3d 370, 378 (5th Cir. 2005), holds that no Supreme Court or Circuit

precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of

proof, but wishes to preserve the issue for review." (Pet. at 103 n.85.) Respondent asserts that this

claim lacks merit and is also barred by the *Teague* nonretroactivity bar. (Ans. at 85.)

Since these pleadings were filed, the Supreme Court has reaffirmed that no particular

standard is required to be expressed in the jury instructions regarding the burden to prove mitigating

circumstances. *Kansas v. Carr,* 136 S. Ct. 633, 643 (2016). Long's fifth ground for habeas relief

is foreclosed by Circuit precedent and **DISMISSED** as barred by *Teague*. In the alternative, it is **DENIED** for lack of merit.

### 3. Vague Term

In his sixth claim, Long complains that his right to Due Process of Law and his Eighth Amendment right to be free from cruel and unusual punishment were violated by the failure to define the term "probability" in the instructions to the jury at the punishment stage of his trial. (Pet. at 105.) Long asserts that he exhausted this claim as his second claim for relief on direct appeal. (Pet. at 105 n.86.) In his direct appeal, the CCA denied this claim on the basis that it had "previously rejected this identical claim and said that well-settled law requires no such definition in the jury charge." *Long,* slip op. at 7 (citing *Chamberlain v. State,* 998 S.W.2d 230, 237-38 (Tex.Crim.App. 1999) and *King v. State,* 553 S.W.2d 105, 107 (Tex.Crim.App. 1977)).

Again, Long "acknowledges that the Fifth Circuit has consistently held that the terms in the Texas statute are not unconstitutionally vague and can instead be understood in their common meaning," but makes this argument " to preserve this claim for review." (Pet. at 105 n.88 (citing *Woods v. Johnson,* 75 F.3d 1017, 1033-34 (5th Cir. 1996), *James v. Collins,* 987 F.2d 1116, 1119-20 (5th Cir. 1993), and *Nethery v. Collins,* 993 F.2d 1154, 1162 (5th Cir. 1993)).) Respondent asserts that this claim lacks merit and is barred by the nonretroactivity bar in *Teague*. (Ans. at 86.) This Court agrees. This claim has been repeatedly rejected in this Circuit and the Supreme Court has not addressed the issue.

Long's sixth ground for habeas relief is foreclosed by Circuit precedent and **DISMISSED** as barred by *Teague*. In the alternative, it is **DENIED** for lack of merit.

### B. Meaningful Appellate Review

18

In his seventh and final claim, Long asserts that the "State's failure to provide meaningful appellate review of the insufficient evidence to support the jury's verdict with regard to mitigating evidence violates the Eighth Amendment's prohibition against cruel and unusual punishment." (Pet. at 109.) Long asserts that he exhausted this claim in his fourth point of error on direct appeal. (Pet. at 109 n.94.) The CCA denied this claim on the basis that it had "repeatedly rejected this argument." *Long*, slip op. at 10 (citing *Russeau v. State*, 171 S.W.3d 871, 886 (Tex. Crim. App. 2005), *Prystash v. State*, 3 S.W.3d 522, 536 (Tex. Cr. App. 1999), and *McFarland v. State*, 928 S.W.2d 482, 498-99 (Tex. Crim. App. 1996), *overruled on other grounds*, (added italics) *Lawton v. State*, 913 S.W.2d 542, 558-59 (Tex. Crim. App. 1995)). "So long as the jury is not precluded from hearing and effectuating mitigating evidence, we have never regarded appellate review of mitigating evidence to be an essential component of a constitutionally acceptable capital punishment scheme." *Id.* (quoting *McFarland*, 928 S.W.2d at 499).

Again, Long "recognizes that this argument has been presented to and rejected by the Fifth Circuit in *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005). However, petitioner would argue that the different statutory schemes have created an arbitrary and capricious violation of the Eighth Amendment due to evolution of capital litigation." (Pet. at 116 n.101.) Respondent asserts that this claim lacks merit and is barred by the nonretroactivity bar in *Teague*. (Ans. at 87.) This Court agrees. The United States Court of Appeals for the Fifth Circuit has consistently held that "the Texas Court of Criminal Appeals is not unreasonable in its refusal to review the sufficiency of mitigating evidence." *See Woods v. Cockrell*, 307 F.3d 353, 360 (5th Cir. 2002).

Long's seventh ground for habeas relief is foreclosed by Circuit precedent and **DISMISSED** as barred by *Teague*. In the alternative, it is **DENIED** for lack of merit.

19

## VII

In the conclusion and prayer for relief in his petition, Long requests an evidentiary hearing. (Pet. at 117.) "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). Prior to the AEDPA, "[w]hen there is a 'factual dispute, [that,] if resolved in the petitioner's favor, would entitle [her] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing,' a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing." *Perillo v. Johnson,* 79 F.3d 441, 444 (5th Cir. 1996) (quoting *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994)). In *Schriro*, the Supreme Court observed that while the basic rule has not changed, the standards for granting relief have.

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

*Schriro*, 550 U.S. at 474 (footnote omitted) (internal citations omitted). Regarding any claim adjudicated on the merits, the proper standard is set forth in 28 U.S.C. § 2254(d). Federal habeas review under § 2254(d)(1) is, "limited to the record that was before the state court," *Pinholster*, 563 U.S. at 181, and review under § 2254 (d)(2) is limited to the "determination of the facts in light of the evidence presented in the State court proceeding."

On the allegations and record before this Court, an evidentiary hearing on the merits of any of his claims would not enable Long to establish a right to federal habeas relief. Even if facts were

further developed in federal court on any of the claims presented, it would not establish a right to federal habeas relief under the AEDPA. Accordingly, Long 's request for an evidentiary hearing is **DENIED**.

## VIII

Long's first, second and third claims (that Long is intellectually disabled and trial counsel provided ineffective assistance in failing to present that and other mitigating evidence) are each **DENIED** for lack of merit. Long has not shown that the adjudication of these claims by the state court either resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 22S4(d).

Long 's remaining claims (claims four through seven) are all **DISMISSED** as barred by the nonretroactivity doctrine of *Teague* and, in the alternative, **DENIED** as lacking merit.

Therefore, the petition for writ of habeas corpus (doc. 16) is **DENIED**.

## IX

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. The Court finds that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

21

In the event the petitioner files a notice of appeal, the Court notes that the petitioner will be allowed to proceed *in forma pauperis*.

**SO ORDERED.**

DATED: March 28, 2016.

JORGE A. SOLIS
CHIEF UNITED STATES DISTRICT JUDGE